1    JEROME L. LEVINE (Bar No. 038613)
     FRANK R. LAWRENCE (Bar No. 147531)
2    DAVID M. GONDEN (Bar No. 154306)
     **HOLLAND & KNIGHT LLP**
3    50 California Street, 28th Floor
     San Francisco, California 94111
4    Telephone: (415) 743-6900
     Facsimile:  (415) 743-6910
5
     Attorneys for Specially-Appearing Defendants
6    RIVER ROCK ENTERTAINMENT AUTHORITY
     RIVER ROCK CASINO
7    HARVEY HOPKINS

8

9                     **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                      **SAN FRANCISCO DIVISION**

12

13   NORMAN RUNYAN,                    )    CASE No.
                                       )
14             Plaintiff,              )
                                       )    **NOTICE OF REMOVAL OF ACTION**
15        vs.                          )    **UNDER 28 U.S.C. §1441(B)**
                                       )    **(FEDERAL QUESTION)**
16   RIVER ROCK ENTERTAINMENT          )
     AUTHORITY, RIVER ROCK CASINO,     )
17   HARVEY HOPKINS, an individual, and )
     DOES 1-50, inclusive,             )
18                                     )
               Defendants.            )
19                                     )
                                       )
20   _____)

21

22        TO THE CLERK OF THE ABOVE-ENTITLED COURT:

23        PLEASE TAKE NOTICE that Specially-Appearing Defendants River Rock

24   Entertainment Authority, River Rock Casino, and Harvey Hopkins hereby remove to this Court

25   the state court action described below.

26        1.    On or about March 7, 2008, an action was commenced in the Superior Court of

27   the State of California in and for the City and County of Sonoma, entitled *Norman Runyan v.*

28

                                       1

1    *River Rock Entertainment Authority, River Rock Casino, Harvey Hopkins, and Does 1-50*, Caseo

2    No. SCV-242491.

3         2.     On or about March 10, 2008 Plaintiff filed an amendment to the Complaint in

4    State court.

5         3.     The first date upon which any defendant received a copy of the Complaint,

6    amendment thereto, and summons was March 14, 2008.  A copy of these pleadings is attached

7    hereto as Exhibit A.

8         4.     Defendants received additional copies of the pleadings on or about March 21,

9    2008.  It is unclear which of these pleadings was intended for Harvey Hopkins and which was for

10    the River Rock Casino because neither summons names a particular defendant.  A copy of each

11    of these pleadings is attached hereto as Exhibit B and C, respectively.

12         5.     The following discovery requests were served on defendants: A Request For

13    Production addressed to River Rock Entertainment Authority, attached hereto as Exhibit D;

14    Notice of Deposition and Request for Production addressed to River Rock Entertainment

15    Authority, River Rock Casino, and Harvey Hopkins with Notice of Deposition addressed to

16    Harvey Hopkins, River Rock Entertainment Authority and Shawn Smyth, attached hereto as

17    Exhibit E; and Form Interrogatories addressed to River Rock Entertainment Authority, attached

18    hereto as Exhibit F.  The effectiveness of these discovery requests is nullified by operation of

19    this removal and the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(d)(1); *Visicorp v.*

20    *Software Arts, Inc*., 575 F. Supp 1528, 1531 (N.D. Cal. 1983).

21         6.     This action is a civil action of which this Court has original jurisdiction under 28

22    U.S.C. § 1331, and is one which may be removed to this Court by defendants pursuant to the

23    provisions of 28 U.S.C. § 1441(b) because plaintiff's Complaint arises under federal law in that it

24    expressly and necessarily turns on interpretations of fundamental questions of federal law,

25    including the Tribal-State Gaming Compact between the Dry Creek Rancheria Band of Pomo

26    Indians and the State of California ("Compact") (*Oklahoma v. New Mexico*, 501 U.S. 221, 234

27    n.5, 111 S.Ct. 2281, 2289 n.5 (1991) (Compact is both a contract between the State and the

28

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

1   Tribe, and also a federal law)), the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*., and

2   the Bankruptcy Act, 11 U.S.C. § 525.

3        7.    This case further arises under federal law because the relief sought is predicated

4   on subject matters committed exclusively to federal jurisdiction, namely an alleged violation of

5   the Securities Exchange Act, which is exclusively committed to federal jurisdiction under 15

6   U.S.C. § 78aa and/or Rule 10b-5 thereunder, and an interpretation of the Compact, which is

7   exclusively committed to federal jurisdiction under the Indian Gaming Regulatory Act, 25

8   U.S.C. § 2710 *et seq*.

9                        **INTRADISTRICT ASSIGNMENT (LOCAL RULE 3-5(B)**

10       8.    This Notice is filed in the San Francisco Division since the state court action that

11   is removed was filed in the Superior Court for the County of Sonoma.

12       WHEREFORE, Specially-Appearing Defendants River Rock Entertainment Authority,

13   River Rock Casino, and Harvey Hopkins request that this Court assume full jurisdiction over the

14   cause herein as provided by law.

15   Dated: April 11, 2008                    HOLLAND & KNIGHT LLP

16

17                                           By:  _____\S_____
                                                        David M. Gonden

18                                           Attorneys for Specially-Appearing Defendants,
                                             RIVER ROCK ENTERTAINMENT AUTHORITY
19                                           RIVER ROCK CASINO
                                             HARVEY HOPKINS
20

21

22   # 5220989_v5

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

# EXHIBIT A

03/10/2008   08:22   6567267471              DAVID S SECREST                PAGE  01/01

**AMENDED**

**SUMMONS**

*(CITACION JUDICIAL)*

|  | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY. RIVER ROCK
CASINO. HARVEY HOPKINS, an individual, and DOES 1-50

**ENDORSED
FILED**

MAR 1 0 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Sonoma County Superior Court | SCV-242491 |
| Hall of Justice, Room 107J, 600 Administration Drive | |
| Santa Rosa, CA 95403-2818 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

| DATE: *(Fecha):* MAR 1 0 2008 | DENISE L. GORDON | Clerk, by *(Secretario)* | JENNIFER ELLIS | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): RIVER ROCK ENTERTAINMENT AUTHORITY'

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☑ other (specify): BUSINESS ORGANIZATION
4. ☐ by personal delivery on (date): FORM UNKNOWN

[SEAL]

| Form Adopted for Mandatory Use | SUMMONS | Page 1 of 1 |
| Judicial Council of California | | Code of Civil Procedure §§ 412.20, 465 |
| SUM-100 [Rev. January 1, 2004] | | |

112AB4497496.III - 3/10/2008 9:23:12 AM

1   Law Offices of David S. Secrest
    A Professional Corporation
2   David S. Secrest, Esq. [State Bar #142299]
    504 Plaza Alhambra, Suite 201
3   P. O. Box 1029
    El Granada, CA 94018-1029
4   Tel: 650-726-7461
    Fax: 650-726-7471
5   Attorney for Plaintiff
    Norman Runyan

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10

11                                         Case No. SCV-242491

12   NORMAN RUNYAN,                        AMENDMENT TO VERIFIED COMPLAINT
                                           FOR DAMAGES
13              Plaintiff,

14   vs,

15   RIVER ROCK ENTERTAINMENT
     AUTHORITY, RIVER ROCK CASINO,        BY FAX
16   HARVEY HOPKINS, an individual, and
     DOES 1-50, inclusive,
17
                Defendants.
18

19

20

21

22

23

24

25

26

27

28

ENDORSED
FILED

MAR 10 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

Law Offices of
DAVID S. SECREST
A Professional Corporation
504 Plaza Alhambra, Suite 201
P.O. Box 1029
El Granada, CA 94018-1029

-1-

1   Law Offices of David S. Secrest
    A Professional Corporation
2   David S. Secrest, Esq. [State Bar #142299]
    504 Plaza Alhambra, Suite 201
3   P. O. Box 1029
    El Granada, CA 94018-1029
4   Tel: 650-726-7461
    Fax: 650-726-7471
5   Attorney for Plaintiff
    Norman Runyan
6

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                            COUNTY OF SONOMA

10

11   NORMAN RUNYAN,                        Case No.  SCV-242491

12                Plaintiff,               AMENDMENT TO VERIFIED COMPLAINT
                                           FOR DAMAGES
13   vs.

14
     RIVER ROCK ENTERTAINMENT
15   AUTHORITY, RIVER ROCK CASINO,
     HARVEY HOPKINS, an individual, and
16   DOES 1-50, inclusive,

17                Defendants.

18

19

20

21

22

23

24

25

26

27

28

-1-

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No. SCV-242491
Amendment to Verified Complaint for Damages

## AMENDMENT TO VERIFIED COMPLAINT FOR DAMAGES

The Complaint in this action, filed March 7, 2008, previously stated, at page 1, lines 20-22, as follows:

"Plaintiff hereby demands a jury trial.

~~Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on~~ information and belief, as follows:..."

The Complaint in this action, filed March 7, 2008, should now state, at page 1, lines 20-22, as follows:

"Plaintiff NORMAN RUNYAN hereby demands a jury trial, and hereby alleges as follows:..."

Dated: March 4, 2008

                    Law Offices of David S. Secrest
                    A Professional Corporation

                    David S. Secrest (KM)
                    ─────────────────────────
                    David S. Secrest
                    Attorney for Plaintiff Norman Runyan

-2-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No. SCV-242491*
Amendment to Verified Complaint for Damages

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
David S. Secrest, Esq. (SB# 142299)
Law Offices of David S. Secrest, A Professional Corporation
P. O. Box 1029, 504 Plaza Alhambra, Suite 205, El Granada, CA 94018-1029
TELEPHONE NO.: 650-726-7461    FAX NO.: 650-726-7471
ATTORNEY FOR *(Name):* Plaintiff NORMAN RUNYAN

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sonoma
STREET ADDRESS:  600 Administration Drive, Room 107J
MAILING ADDRESS:
CITY AND ZIP CODE:  Santa Rosa, CA 95403
BRANCH NAME:  Sonoma County Hall of Justice

**FOR COURT USE ONLY**

ENDORSED
FILED
MAR 07 2008
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

CASE NAME:
NORMAN RUNYAN vs. RIVER ROCK ENTERTAINMENT, et al.

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: SCV 242431 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE:<br>DEPT: ROBERT S. BOYD |

*Items 1–5 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse condemnation (14) | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Defamation (13) | [ ] Residential (32) | [ ] Other complaint (not specified above) (42) |
| [ ] Fraud (16) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | [ ] Other petition (not specified above) (43) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | |
| **Employment** | [ ] Writ of mandate (02) | |
| [✓] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

**2.** This case [ ] is [✓] is not   complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

**BY FAX**

**3.** Type of remedies sought *(check all that apply):*
   a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
**4.** Number of causes of action *(specify):* 4: Contract Breach, Wrongful Termination ; Interference with Contract. IIED
**5.** This case [ ] is [✓] is not   a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  March 7, 2008
David S. Secrest
*(TYPE OR PRINT NAME)*          ▶ David S. Secrest (xm)
                                *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2006]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 201.8, 1800–1812;
Standards of Judicial Administration, § 19
www.courtinfo.ca.gov

Law Offices of David S. Secrest
A Professional Corporation
David S. Secrest, Esq. [State Bar #142299]
504 Plaza Alhambra, Suite 201
P. O. Box 1029
El Granada, CA 94018-1029
Tel: 650-726-7461
Fax: 650-726-7471
Attorney for Plaintiff
Norman Runyan

ENDORSED
FILED

MAR 07 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SONOMA

Case No. SCV  242491

NORMAN RUNYAN,

Plaintiff,

vs.

RIVER ROCK ENTERTAINMENT
AUTHORITY, RIVER ROCK CASINO,
HARVEY HOPKINS, an individual, and
DOES 1-50, inclusive,

Defendants.

COMPLAINT FOR DAMAGES:

1.    Breach of Contract;
2.    Wrongful Termination in Violation of
Public Policy [Title 11, United States Code,
§525; Rule 13a-15(e), 15d-15(e) Securities
Exchange Act of 1934];
3.    Intentional Interference with Contract;
and
4.    Intentional Infliction of Emotional
Distress

BY FAX

**DEMAND FOR JURY TRIAL.**

Plaintiff hereby demands a jury trial.

Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on

information and belief, as follows:

**THE PARTIES**

1.    Plaintiff NORMAN RUNYAN ("Plaintiff") is an individual and resides in the City of

Cloverdale, County of Sonoma, California.

2.    At all times pertinent, and since 2002, Plaintiff was the Chief Operations Officer of

Defendant River Rock Entertainment Authority (RREA or the "Authority"), and Defendant River

Rock Casino (RRC), located in Geyserville, County of Sonoma, California.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

| FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE) |
| --- |
| **ENDORSED FILED** |
| MAR 0 7 2008 |
| SUPERIOR COURT OF CALIFORNIA COUNTY OF SONOMA |

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | CASE NUMBER: (Número del Caso) |
| --- | --- |
| The name and address of the court is: *(El nombre y dirección de la corte es):* Sonoma County Superior Court Hall of Justice, Room 107J, 600 Administration Drive Santa Rosa, CA 95403-2818 | SCV 242491 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

JENNIFER ELLIS

| DATE: *(Fecha)* MAR 0 7 2008 | DENISE L. GORDON | Clerk, by *(Secretario)* _____ | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

1    3.    Defendant HARVEY HOPKINS ("HOPKINS") is an individual and resides in the County

2    of Sonoma, California. HOPKINS was, at all times pertinent, the Tribe's Chairman and a Member

3    of the RREA Board of Directors. HOPKINS was elected as Chairman of Dry Creek Rancheria on

4    November 20, 2004 and continues to serve as the Tribe's Chairman. HOPKINS served as River

5    Rock Entertainment Authority's Chairperson from November 20, 2004 to July 14, 2006. After

6    that date, HOPKINS remained a Member of the RREA Board of Directors. HOPKINS has been a

7    licensed excavating contractor for 29 years, began a professional career in construction in 1970,

8    and is a licensed excavating contractor. HOPKINS currently owns American Indian Management

9    Inc. Trucking Company.

10    4.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

11    50, inclusive, and therefore sues these defendants by such fictitious names and capacities when

12    ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously

13    named defendant is responsible in some manner for the occurrences herein alleged, and that

14    plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

15    5.    Plaintiff is informed and believes and thereupon alleges that, at all times material herein,

16    each of the defendants was the agent, employee and/or working in concert with his co- defendants

17    and was acting within the course and scope of such agency, employment and/or concerted activity.

18    To the extent that certain defendants perpetrated certain acts and omissions, the remaining

19    defendant or defendants confirmed and ratified said acts and omissions.

20    6.    Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each

21    defendant was completely dominated and controlled by his co-defendant and each was the alter

22    ego of the other.

23    7.    Whenever and wherever reference is made in this complaint to any act by a defendant or

24    defendants, such allegations and reference shall also be deemed to mean the acts and failures to act

25    of each defendant acting individually, jointly, and severally.

26    8.    Whenever and wherever reference is made to individuals who are not named as plaintiff or

27    defendants in this complaint but were employees/agents of Defendants, such individuals at all

28    relevant times acted on behalf of Defendants within the scope of their employment.

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No.
Complaint for Damages

## FACTS COMMON TO ALL CAUSES OF ACTION

9.      Until his unlawful termination of employment as alleged herein, Plaintiff was Chief Operations Officer of RREA since October 2002. Plaintiff acted as Chief Executive Officer and General Manager from November 8, 2005 through April 13, 2006, following the resignation of RREA's former Chief Executive Officer in November 2005. Plaintiff's total compensation in 2006 was $301,939.55.

10.     There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY and RIVER ROCK CASINO. A true and correct copy of the Employment Agreement is attached hereto as Ex. "A."

11.     RREA owns and operates the RIVER ROCK CASINO, a gaming and entertainment facility located on the Tribe's reservation, approximately 75 miles north of San Francisco, California. RIVER ROCK CASINO is a 62,000 square-foot gaming and entertainment facility, which is located in the Alexander Valley, and is open 24-hours a day, seven days a week,[1]

12.     The Compact requires the Tribe to carry public liability insurance with initial limits of at least $5.0 million for personal injury and property damage claims. The Tribe is required to waive its sovereign immunity to the extent of the $5.0 million liability insurance limits. Thus, for purpose of this action, sovereign immunity has been legally waived and is no defense to the claims made in this action by any defendant.

13.     According to the Form 10-K filed with the Securities and Exchange Commission April 17, 2007, Defendant RREA is a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians of California (the "Tribe"). The Tribe is a federally recognized Indian tribe with 947 enrolled members, with an approximately 75-acre reservation in Sonoma County, California. RREA was formed in 2003 as an unincorporated governmental instrumentality of the Tribe, to own and operate Defendant RIVER ROCK CASINO in Sonoma County, California. The River Rock Casino had previously operated as a wholly owned governmental operating property of the Tribe.

---

[1] Paragraphs 11-20 are alleged on information and belief.

-3-

14.    The Indian Gaming Regulatory Act of 1988, ("IGRA") as amended, permits federally
recognized Indian tribes to conduct casino gaming operations on certain Indian lands, subject to,
among other things, the negotiation of a compact with the affected state. The Tribe and the State
of California entered into a compact (the "Compact") in September, 1999, which became legally
effective when it was approved by the U.S. Department of the Interior and notice of approval was
published in the Federal Register in May, 2000. The Compact authorizes certain forms of Class III
casino gaming, including slot machines and house-banked card games.

15.    RREA must maintain disclosure controls and procedures that are designed to ensure that
the information required to be disclosed in reports filed with, or furnished to the SEC, pursuant to
the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed,
summarized and reported within the time periods specified in the SEC's rules, regulations and
forms, and that such information is accumulated and communicated to our management, including
its Chief Executive Officer, Assistant Financial Controller (Principal Financial Officer) and Chief
Operations Officer, as appropriate, to allow timely decisions regarding required disclosure based
on the definition of "disclosure controls and procedures" in Rule 13a-15(e) and 15d-15(e) of the
Exchange Act.

16.    On November 7, 2003, RREA issued and sold Notes in a private placement to certain
"qualified institutional buyers" pursuant to Regulation 144A of the Securities Act of 1933, as
amended (the "Notes Offering"). On June 21, 2004, pursuant to a registration rights agreement
entered into in connection with the issuance of the Notes, RREA consummated an offer to
exchange all of the Notes for $200.0 million in aggregate principal amount of 9-3/4% senior notes
due 2011 (the "Outstanding Notes") registered with the Securities and Exchange Commission.
The terms of the Outstanding Notes are substantially identical to the terms of the Notes, except
that the transfer restrictions and registration rights applicable to the Notes do not apply to the
Outstanding Notes. RREA did not receive any additional proceeds from the exchange offer. The
Outstanding Notes and the Notes were issued under an Indenture, dated as of November 7, 2003
(the "Indenture"), among RREA, the Tribe and U.S. Bank National Association, as trustee. The
terms of the Outstanding Notes include those stated in the Indenture, as well as those made part of

-4-

1    the Indenture by reference to the Trust Indenture Act of 1939, as amended.

2    17.    The Indenture includes affirmative and negative covenants that limit RREA's ability to

3    borrow money, create liens, sell assets, engage in transactions with affiliates, engage in other

4    businesses, open other gaming facilities, engage in certain mergers and consolidations, make

5    certain investments, make certain accelerated payments on our indebtedness that is subordinated to

6    the Outstanding Notes, and make payments to the Tribe.

7    18.    RREA is also governed by a five-member Board of Directors consisting of the same five

8    members as those of the Tribe's Board of Directors.  The Tribe's Board of Directors is elected

9    biennially by the Tribal Council (the approximately 528 voting members of the Tribe), and

10   includes a Chairperson, a Vice Chairperson, a Secretary-Treasurer and two members-at-large.

11   19.    The Indenture provides, at Section 4.10, as follows:

**Transactions with Affiliates.**
12   The Authority shall not make any payment to, or sell, lease,
transfer or otherwise dispose of any of its properties or assets to, or purchase
13   any property or assets from, or enter into or make or amend any transaction,
contract, agreement, understanding, loan, advance or Guarantee with, or for the
14   benefit of, any Affiliate (each, an "Affiliate Transaction"), unless:

15           (a) the Affiliate Transaction is on terms that are no less
favorable to the Authority than those that would have been obtained in
16   a comparable transaction by the Authority with an unrelated Person;

17           (b) with respect to any Affiliate Transaction or series of
related Affiliate Transactions involving aggregate consideration in
18   excess of $1.0 million, the Authority delivers to the Trustee a
resolution of its Board of Directors set forth in an Officers'
19   Certificate certifying that the Affiliate Transaction complies with
this Section 4.10 and that the Affiliate Transaction has been approved
20   by a majority of the disinterested members of its Board of Directors,
provided, that if there are no disinterested members of the Board of
21   Directors, such compensation arrangements must be approved unanimously
by the members of the Board of Directors; and

22           (c) with respect to any Affiliate Transaction or series of
related Affiliate Transactions involving aggregate consideration of
23   $7.5 million or more, the Authority delivers to the Trustee an opinion
as to the fairness to the Authority of that Affiliate Transaction from
24   a financial point of view issued by an accounting, consulting,
appraisal or investment banking firm of reputable standing.

25   The following items shall not be deemed to be Affiliate Transactions and shall not be
subject to the provisions of the prior paragraph:

26           (1) any employment agreement or arrangement entered into by
the Authority in the ordinary course of business of the Authority;

27

28

1    (2) reasonable compensation paid to, and indemnities provided
on behalf of, officers, directors or employees of the Authority;

2    (3) transactions with Persons in whom the Authority owns an
Equity Interest, so long as the remaining equity Holders of such

3  Persons are not Affiliates of the Authority;

    (4) contractual arrangements existing on the date hereof, any

4  arrangements disclosed in the Offering Memorandum and any renewals,

5  extensions and modifications thereof that are not materially adverse to
the Holders of the Notes;

6    (5) Restricted Payments, Permitted Payments, Service Payments,
Permitted Investments and other payments and distributions to the

7  extent permitted by Section 4.07 hereof; and

    (6) reasonable bid preferences to Tribal members and their

8  businesses in accordance with Tribal policy.

9

10 20. The Indenture provides, at Section 10.01 a (iii) and (iv), as follows:

11  **Covenants of the Tribe:**

12    (a) The Tribe shall not do, and shall not permit any of its
representatives, political subunits or councils, agencies,

13  instrumentalities or enterprises, directly or indirectly, except as
required by federal or state law or the Compact to do, any of the

14  following:...

    (iii) deny access by the Authority or patrons of the

15  Gaming Business to Key Project Assets or otherwise restrict or
eliminate the right of the Authority to conduct gaming

16  operations at the Project in a manner that would be materially
and adversely affect the Gaming Business;

17    (iv) take any other action, enter into any agreement,
amend its constitution or amend or enact any ordinance, law,

18  rule or regulation that would have a material adverse effect
on the economic interests of holders of the Notes; including,

19  without limitation, taking any action to engage in the Gaming
Business in California other than through the Authority;...

20

21 21. From approximately October, 2005, until the present date, HOPKINS engaged in

22 systematic violations of the Indenture, specifically Sections 4.10, 10.01 a (iii) and (iv), which also

23 constituted an ongoing violation of Rule 13a-15(e) and 15d-15(e) of the disclosure controls and

24 procedures of the Exchange Act, by controlling the activities, developmental and otherwise, of

25 RREA, to his own financial and pecuniary benefit, and contrary to the benefit of RREA, the Tribe,

26 and the members, agents, officers and employees of RREA.

27 22. HOPKINS interfered with the business operations of RIVER ROCK CASINO,

28 intimidating its vendors and employees, and prolonging budget formation and approval processes.

-6-

1   Plaintiff is informed and believes, and thereon alleges, that HOPKINS' interference resulted in the

2   loss of tens of millions of dollars in revenue to the Tribe, RREA, and RIVER ROCK CASINO.

3   23.     Plaintiff is informed and believes, and thereon alleges, that in April 2006, HOPKINS

4   formed, took ownership of, and operated, a corporate entity called Dry Creek Development

5   Company (DCDC), using HOPKINS' Contractors license.

6   24.     In violation of the express terms of the Indenture, which required Affiliated Transactions

7   by RREA to be at an arm's length with the Tribe, and properly documented based upon fair

8   bidding, HOPKINS forced RIVER ROCK CASINO to use the contracting services of DCDC,

9   improperly "steering" RREA business to that entity to his own financial benefit, at a higher cost

10  and with bad results, including: Road patching; roof repair on the parking garage; planting the

11  parking garage planters, which voided a guarantee with landscaping company; paying the Tribe

12  $20,000 a month for their campground/RV center, with no benefit to the operations of RREA; and

13  similar unethical, illegal, self-dealing actions.

14  25.     In August of 2007, David Gunn, Project Manager, advised Plaintiff and Defendants that the

15  Project would run out of funds by end of September. Plaintiff and Defendants conducted numerous

16  meetings discussing options, specifically how to slow down the Project until it was prepared for

17  market. HOPKINS nonetheless insisted upon, and improperly directed, full steam with

18  infrastructure work.

19  26.     In October, 2007, RREA's CFO was in discussion with Merrill Lynch about the funding

20  situation, the fact that the Project was almost out of funds, and with respect to negotiation of

21  additional funds on a "bridge loan." RREA was attempting to acquire funding for an additional

22  $30,000,000. Merrill Lynch representatives stated it had the Tribe's current balance sheet, and the

23  Tribe had $14,800,000 in its account. RREA's CFO insisted that he was looking at the Tribe's

24  current balance sheet, and it showed zero funds available.

25  27.     Several days later there was conducted a meeting of the RREA Board, including

26  HOPKINS, BEK's Management Team, and all RREA Officers. The discussion was how the Tribe

27  had $14,800,000 in its account. BEK's Management Team was adamant that their coding of the

28  receipts and expenses showed a different scenario. $11,000,000 was allocated to master plan and

-7-

1    $27,000,000 to infrastructure. The Tribe was asked how it paid for the extra $6,000,000 for the

2    Master Plan, since RREA had not approved or dispensed any funds to them. The Tribal CFO said

3    they had "used all their resources," and RIVER ROCK CASINO needed to reimburse the Tribe

4    $6,000,000. It was transferred a few days later. At the specific direction of HOPKINS, a "re-

5    classification of expenses" thereafter ensued, without appropriate approval by RREA, without

6    appropriate explanation to the appropriate recipients of such disclosures.

7    28.    David Gunn of BEK advised that he would attempt to reconcile the invoices, and attempt to

8    find out if the "re-classification was appropriate." Gunn was visibly confused as to who would

9    "reclassify" *his invoices*. One week later, HOPKINS "released" Gunn of BEK, from his position

10    as RREA's Team leader for BEK, and was transferred to another post within BEK.

11    29.    Plaintiff was not informed of how the above-alleged monies were "reclassified," or why the

12    Tribe had so much money in reserve in from the bridge loan.

13    30.    As a direct result of the foregoing, Plaintiff opposed these actions in discussions and

14    communications with the RREA Board. The RREA Board represented to Plaintiff that it would

15    obtain an independent audit to "find out what was going on," and that it needed a "third party

16    review." Plaintiff also informed the RREA Board that once we get permanent funding the $40M

17    bridge loan debt would need to be properly transferred to RIVER ROCK CASINO, and RREA

18    would need to reconcile these discrepancies, and report to the SEC and Investment community.

19    31.    No audit was pursued.

20    32.    Plaintiff opposed the actions by HOPKINS, by timely and repeatedly advising the RREA

21    Board and RREA officers and Directors, and demanding an independent audit.

22    33.    As a direct and proximate result, Defendants intentionally retaliated against Plaintiff, by

23    forcing Plaintiff's resignation from employment based on false and pretextual grounds, and by

24    breaching and/or causing the breach of Plaintiff's Employment Contract, as alleged herein.

25    34.    On November 14, 2007, Defendants forced Plaintiff to resign his employment under threat

26    of immediate termination, without benefits, which conduct caused a real and legitimate

27    apprehension by Plaintiff of economic duress. Such conduct by Defendants caused Plaintiff great

28    and irreparable financial hardship, damages to reputation, and extreme emotional distress.

-8-

35.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff suffered damages, including, but not limited to, severe emotional distress; loss of professional reputation; loss of employment; and loss of employability.

36.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff is informed and believes, and thereon alleges, that Plaintiff has sustained and will sustain financial damages in excess of $10,000,000.

### FIRST CAUSE OF ACTION
### Breach of Contract
#### (Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

37.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 36 in this Complaint as if they were fully set forth here.

38.    There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY/ RIVER ROCK CASINO. A true and correct copy of the Employment Agreement is attached hereto as Ex. "A."

39.    Plaintiff performed all that he was obliged to do under the Employment Agreement.

40.    Defendants breached the Employment Agreement, despite having had the ability to perform.

41.    Defendants terminated the Agreement without good cause as required under the Employment Agreement.

42.    Defendants unjustifiably and inexcusably failed to perform their obligations under the contract, despite having had the ability to perform.

43.    As a direct and proximate result of defendants' conduct, Plaintiff has suffered and will continue to suffer economic and financial losses; related, consequential damages; and a loss of earnings and other employment benefits including, but not limited to, the fixed or ascertainable value of his Employment Agreement and the benefits derived from the Employment Agreement. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

### SECOND CAUSE OF ACTION
### Wrongful, Constructive Termination in Violation of Public Policy
#### [Title 11, U.S. Code, §525; 1934 Securities and Exchange Act, Rule 13a-15(c),15d-15(c)]
#### (Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

-9-

51.     As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits, loss of income, loss of employability, and damage to professional reputation. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

52.     The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants, pursuant to California Civil Code Section 3294.

### THIRD CAUSE OF ACTION
### Intentional Interference with Contract
### (Against Defendant HARVEY HOPKINS)

53.     Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52 in this Complaint as if they were fully set forth here.

54.     At all times pertinent, there was an enforceable contract of employment between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK CASINO, a contractual relationship.

55.     By engaging in the conduct alleged herein, HOPKINS' intentional acts or conduct was designed to induce a breach or interruption of the contractual relationship.

56.     HOPKINS' intentional acts or conduct were not privileged.

57.     As a direct and proximate result thereof, there was an actual breach or disruption of the contractual relationship.

58.     As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental

-11-

1    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

2    employment benefits, loss of income, loss of employability, and damage to professional reputation.

3    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

4    59.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

5    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

6    and for the deleterious consequences of defendants' actions. Defendants and each of them, and

7    their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of

8    each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants,

9    pursuant to California Civil Code Section 3294.

10
11

### FOURTH CAUSE OF ACTION
#### Intentional Infliction of Emotional Distress
#### (Against All Defendants)

12    60.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

13    contained in Paragraphs 1 through 59 in this Complaint as if they were fully set forth here.

14    61.    The conduct of defendants, and each of them, as alleged above, was outrageous and outside

15    the normal scope of the employment relationship. Defendants, and each of them, knew that their

16    conduct would result in plaintiff's severe emotional distress, and said conduct was perpetrated by

17    defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability

18    of inflicting, humiliation, mental anguish, and severe emotional distress upon plaintiff. Such

19    conduct did, in fact, result in severe emotional distress caused to Plaintiff.

20    62.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

21    will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

22    and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for

23    treatment by physicians, psychiatrists and other health professionals, and for other incidental

24    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

25    employment benefits, loss of income, loss of employability, and damage to professional reputation.

26    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

27    63.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

28    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

-12-

1    and for the deleterious consequences of defendants' actions.  Defendants and each of them, and

2    their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of

3    each other.  Consequently, Plaintiff is entitled to punitive damages against each of said defendants,

4    pursuant to California Civil Code Section 3294.

5                         **PRAYER FOR RELIEF**

6    WHEREFORE, Plaintiff prays judgment against Defendants as follows:

7       1.     For compensatory and general damages in an amount according to proof;

8       2.     For punitive damages against all defendants under Civ. Code §3294;

9       3.     For statutory attorneys' fees and costs;

10      4.     For prejudgment and post-judgment interest according to any applicable provision

        of law, according to proof;

11

12      5.     For costs of suit;

13      6.     For such other and further relief as the court deems proper.

      7.     Respectfully submitted.

14

15 Dated: March 4, 2008

16            Law Offices of David S. Secrest

17            A Professional Corporation

18

19            David S. Secrest

            Attorney for Plaintiff Norman Runyan

20

21

22

23

24

25

26

27

28

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
*Complaint for Damages*

## VERIFICATION

I, Norman Runyan, declare as follows:

1.    I am the plaintiff in this action.

2.    I certify and declare that I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know its contents, and the matters stated in the document described above are true.

3.    As to matters alleged on information and belief, I am informed, and believe, and on that basis allege, that those matters are true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Executed on this 4th day of March, 2008, at Geyserville, California.



                                    Norman Runyan

*Norman Runyan v. River Rock Entertainment Authority, et al.,* Sonoma Superior Court No.
Complaint for Damages

# EXHIBIT "A"

MAR-14-2008(FRI) 14:48    UNE LEGAL                (FAX)1+510+873+0984        P. 027/045



## RIVER ROCK ENTERTAINMENT AUTHORITY

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is entered into as of the 14th day of October, 2005 ("Effective Date") by and between the River Rock Entertainment Authority ("Authority"), a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians ("Tribe"), on behalf of its Tribal governmental gaming project, the River Rock Casino ("Casino"), and Norman Runyan ("Employee"), and succeeds and supersedes that certain Employment Agreement ("Initial Agreement") made and effective as of the 14th of October, 2002 by and between the Tribe, predecessor in interest to the Authority, and Employee.

The parties hereto expressly intend that this Agreement describe Employee's relationship as an employee of the Casino and not as a contractor, including but not limited to not being a contractor as that term is used in 25 USC § 2711 and 25 CFR § 502.15. The parties have purposefully structured the terms and provisions of this Agreement consistent with, and in furtherance of, this expressed intent.

1. **Employment.** On and subject to the terms and conditions of this Agreement, the Casino hereby employs Employee, and Employee hereby continues his employment by the Casino, as its Chief Operations Officer (COO). As COO, Employee shall undertake responsibility for the day-to-day operational responsibilities for the Casino, assist in the development of the Casino and other gaming related entities of the Authority as the Board shall direct, and carry out such other duties as are set forth in Section 2. Employee shall report to, be accountable to and work under the authority of the Authority's Board of Directors (the "Board"), the CEO of the Authority, the Casino General Manager, and such other Tribal entities as the Authority or, if the Authority shall cease to exist, the Tribe may thereafter designate.

2. **Reporting and Duties.** Employee shall report directly to the CEO of the Authority and General Manager of the Casino with respect to all operations and expenditures of the Casino and otherwise to the extent requested by the Board. Without limiting the foregoing, Employee shall perform such executive duties as are commonly attendant upon the office of a casino Chief Operations Officer (COO) and such further executive duties as may be specified from time to time by the Board, the CEO or the General Manager (in that order of precedence), which shall include:

Tribal Government Offices
190 Foss Creek Circle Suite A, Healdsburg, CA 95448
(707) 473-2106 ~ (707) 473-2197 Fax

#762281_v8

(a)    Assisting the CEO/General Manager with the overall responsibility of managing, directing and supervising the design, development, construction and operation of the Casino;

(b)    Enforce the River Rock Casino mission statement;

(c)    Provide leadership to all personnel and management of the Casino;

(d)    In collaboration with Human Resources, responsible for the selection, assignment, re-assignment, structure of any and all employees, department, duties, responsibilities and organizational charts, and the implementation for personnel, wage and benefit policies approved by the Board for the employees of the Casino;

(e)    Assist in the development of short and long term goals and objectives for the operation;

(f)    Preparation of annual operating budgets and required modifications to such budgets, subject to the approval of the Board, and implementation of such budgets;

(g)    Oversee the marketing plan in conjunction with the Marketing Manager, which includes all promotions, sponsorships, advertising, media, and public relations;

(h)    Assist in the analysis of Casino to ensure maximum efficiency;

(i)    Planning and preparation for food and beverage and other services of the Casino;

(j)    Responsible for the overall ambience, maintenance and cleanliness of the Casino;

(k)    Optimize operational efficiency, increase cost effectiveness and ensure that quality assurance programs are adopted and implemented;

(l)    Work with Human Resources in the Recruitment and hiring of managers, supervisors, and employees of the Casino according to the Tribal TERO plan

(m)    Development and implementation of programs for training Tribal members for supervisory and management positions in accordance with the preference policies of the Tribe and the Casino;

2

# 762281_v8

(n)    Preparation, implementation and direction of Authority and Casino compliance programs, including assurance that the Casinos meets the requirements of the Indian Gaming Regulatory Act, the Tribal-State Gaming Compact between the Tribe and the State of California (the "Compact"), the laws and ordinances of the Tribe and other applicable laws as well as agreements to which the Tribe and/or the Authority is a party;

(o)    Preparation, implementation and direction of programs to assure that the Casino meets all federal, Tribal and Compact requirements for internal controls, including establishment and enforcement of policies designed to maintain the integrity of the Casino and any other Tribal or Authority gaming operations to which Employee is assigned, for the protection of the Tribe, the Authority, the Board, the Casino, its customers and the public in accordance with law and standards in the industry; and.

(p)    Attend all required meetings and trainings.

3. **Term.** The term of this Agreement ("Term") shall commence on the Effective Date and shall end three (3) years after the Effective Date, unless terminated earlier by the parties as provided herein. The parties acknowledge that this agreement succeeds and supersedes the Initial Agreement. It is the intent of the parties hereto that there shall be no gap in the Employee's employment between the expiration and termination of the Initial Agreement and the commencement of the Term, and that Employee's employment shall be deemed to have been continuous from the commencement of the Initial Agreement through the date of termination of this Agreement..

4. **Full-Time Service.** Employee agrees that during the Term of this Agreement unless earlier terminated, he will commit his full time and energies to the duties imposed hereby and, further, agrees that during the term of this Agreement he will not (whether as an officer, director, member, employee, partner, proprietor, investor, security holder, lender, associate, consultant, adviser or otherwise) directly or indirectly, engage in the business of the Casino as a competitor or otherwise without the express prior written consent of the Board in its sole discretion.

5. **Compensation.**

(a) Employee will be paid a base salary of Two Hundred Fifty Thousand Dollars ($250,000.00) per annum ("Base Compensation"), subject to applicable withholding taxes and required deductions.

(b) Payments in discharge of the Base Compensation shall be paid in 1/26 payments thereof every other workweek on the day established for payroll payments to other employees of the Casino.

(c) Employee's Base Compensation shall be increased annually, effective on the anniversary of the Effective Date ("Anniversary Date"), by seven percent (7%) unless otherwise agreed in writing by both parties.

3

# 7G22A1_HA

(d) Employee shall be paid an annual bonus of not less than seven percent (7%) and not more than twenty-five percent (25%), as determined by the Board in its sole discretion, of the Base Compensation earned for the year in question, payable within 45 days after the Anniversary Date.

(f) Employee will be entitled, on the same basis as other executive employees of the Casino, to participate in and receive benefits under the Casino's benefit plans for executives, if any, as such plans may be modified from time to time, except that Employee will be entitled to seven (7) days of additional Personal Time Off (PTO) in excess of the Casino's normal PTO policy.

(g) The Employee shall be reimbursed all reasonable and necessary business expenses incurred on behalf of his employment during the performance of his duties under this Agreement, subject to the existing reimbursement policy established by the Casino. Such reimbursements shall be supported by adequate record-keeping and other requirements as may be necessary or appropriate to comply with the Internal Revenue Code.

(h) Employee will have the right to be reimbursed for any legal fees incurred as the result of defending himself in any third party lawsuit arising out of Employee's obligations under this Agreement; provided that all such defenses shall be managed and controlled by the Authority and with counsel reasonably approved by Authority. Employee is and will continue to be covered under the Authority's errors and omissions insurance as such insurance covers all members of the Board.

6. **Licensing Issues.** Employee warrants and represents that he is eligible and suitable for a license and background clearance under the Tribe's and State's gaming licensing authority. Employee agrees to timely apply for any license(s) as may be required pursuant to the Compact, the Tribe's gaming ordinances or otherwise required by law, as may be necessary to enable him to engage in his employment hereunder. The Casino shall pay all costs associated with such licensing. Employee will maintain such licenses in good standing as a continuing condition of his employment under this Agreement, and shall notify the Tribal Gaming Commission of any information that is material to, or a change from, any information sought or contained in his Tribal gaming license application or his suitability in general for a gaming license, and shall do so as soon as possible after such information is known to Employee..

7. **Termination.**

(a) Employee may be terminated prior to the end of the Term by the Authority under the following circumstances:

(i) Upon termination, revocation or disapproval of any license required by law to be held by Employee to perform as an employee of a gaming operation of the Tribe, the Authority or the Casino, or if any event renders it unlawful for the Tribe or the

4

Authority to continue to operate the Casino or conduct casino gaming on the reservation; or

(ii) Employee shall commit an act constituting "Cause", Cause being defined as (a) an act of intentional dishonesty against the Tribe, the Authority or the Casino; (b) conviction of any criminal charge involving moral turpitude; (c) the deliberate or intentional refusal by Employee (except by reason of disability) to perform his duties hereunder; (d) gross negligence in the performance of his duties hereunder; or, (e) failure to perform his duties in a manner consistent with his professional obligations after prior sufficient verbal and written warnings; or

(iii) Employee shall die; or

(iv) The Authority shall for any reason cease to conduct the Casino; or

(v) Employee shall become unable to perform the duties and responsibilities set forth in this Agreement by reason of long-term physical or mental disability, defined as a period of disability that exceeds six (6) months; or

(vi) Either party shall give the other party hereto ninety (90) days' written notice of Employee's resignation or termination.

(b) If Employee's employment should be terminated under paragraphs 7 (a)(i), (a)(ii) or (a)(vi) above (provided that this subparagraph (b) shall only apply to paragraph 7 (a)(vi) to the extent that Employee has resigned), then Authority shall within ten (10) days of such termination pay Employee the accrued Base Compensation, bonuses and benefits to the date Employee is terminated, whereupon Authority shall have no further liability or obligation to Employee under this Agreement.

(c) If Employee is terminated under paragraphs 7 (a)(iii), (a)(iv), (a)(v) or (a)(vi) (provided that this subparagraph (c) shall only apply to paragraph 7 (a)(vi) to the extent that Authority has terminated Employee), the Authority shall pay to the Employee on a pro-rata basis the Base Compensation for a period of three (3) months from the date of termination and he shall be eligible for all employee benefits during that three-month period, pro-rated to that period. Employee shall be paid all amounts due him at the time of termination when they would otherwise be paid, including the pro rata share of the bonus for the year in which the termination occurred.

(d) Upon the payment of all or any part of the compensation provided for in this paragraph 7, or its mitigation under this paragraph, the Authority will have no further liability or obligation to Employee under this Agreement or arising from the employment relationship except that obligation provided for in this paragraph 7.

(e) Employee will be liable in damages for all losses and expenses incurred by Authority if he is terminated for cause or if Employee terminates his employment for any reason not authorized herein, with the exception of termination by written notice agreed to by both

5

# 768281_v8

parties. Any such termination of or by Employee will constitute a waiver by Employee of all claims against the Authority and the Casino except for the accrued Base Compensation, bonus and benefits to the date of his termination as provided for in this Section 7, and subject to any amounts due from Employee.

8. **Confidentiality of Proprietary Information.** Any information acquired by Employee while employed under this Agreement or in any way connected with the Casino or any Tribal or Authority gaming operation, related to employee lists, patron lists, marketing plans, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are acknowledged by Employee to be confidential information belonging to one or more of such entities, and Employee shall not disclose such information without the express written authorization of the Board except in the ordinary course of the business of the Casino. Employee shall, upon termination of this Agreement for any reason whatsoever, turn over to the Board any and all copies he may have of employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the tribe, the Authority or the Casino. Employee acknowledges that employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are confidential and proprietary information of one or more of such entities and the Tribe, the Authority or the Casino, or any of them, may exercise any and all remedies available at law or in equity to enforce this Agreement with respect to non-disclosure of any such proprietary information. Particularly, the parties agree that, because of the nature of the subject matter of this paragraph 8, in event of a threat or danger of disclosure of such information, it could be extremely difficult to determine the actual damages suffered or to be suffered by breach of this Section 8 or to fully repair the harm done by such action. Accordingly, Authority shall be entitled to injunctive relief (both temporary and permanent), it being acknowledged and agreed that any such actual or threatened breach will cause irreparable injury and that money damages alone will not provide an adequate remedy.. Notwithstanding the foregoing, Tribe, Authority and Casino or any of them as may be appropriate shall be entitled to money damages for any loss suffered or to be suffered as a consequence of Employee's breach of this Agreement. The parties acknowledge that this provision shall survive the termination of this Agreement. Notwithstanding anything herein to the contrary, Employee acknowledges and agrees that information regarding the internal operations, actions, plans, statements (other than public statements), or activities of the Tribe, the Authority, the Casino, the Board, the Tribal Board of Directors, or the Tribal Council, or any of their officers, employees, members or representatives (including personal information), are included within the meaning of confidential or proprietary information herein and shall be protected as such.

9. **Assignment.** This Agreement may be assigned by the Authority, on behalf of itself or the Casino, to any entity formed by the Tribe or the Authority for the express purpose of operating the Casino and any related economic development activities. This Agreement contemplates the personal services of Employee and neither this Agreement nor any of the rights herein granted to Employee or the duties assumed by him hereunder may be assigned by him.

6

10. **Miscellaneous.**

(a) Employee warrants and represents that there are no restrictions to which he is subject or agreements to which he is a party that would be violated by his execution of this Agreement and his employment hereunder.

(b) This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the Dry Creek Rancheria and the State of California.

(c) No amendment to this Agreement or any attempted waiver of a provision of this Agreement shall be effective unless in writing and signed by the parties to this Agreement.

(d) Any controversy that arises between Employee and the Casino or the Authority regarding the rights, duties or liabilities hereunder of either of them, shall be settled by binding arbitration under the Uniform Arbitration Act as adopted by the State of California. In no event shall any liability of the Tribe, the Authority or the Casino or any of them, exceed an amount equal in total to three (3) months of the Base Compensation for a one year period.

The Parties have executed this Agreement on November 8, 2005, as of the Effective Date hereof.

RIVER ROCK ENTERTAINMENT AUTHORITY, a government
Instrumentality of the DRY CREEK RANCHERIA BAND OF
POMO INDIANS, a federally recognized Indian tribe, on behalf
of its governmental economic development project, the RIVER
ROCK CASINO,

By: _____
Name: HARVEY HOPKINS,
Its: Chairman of the River Rock Board of Directors

EMPLOYEE

_____
NORMAN RUNYAN

# 762281_v8

7

# 762281_v8

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonomasuperiorcourt.com | (FOR COURT USE ONLY)<br><br>**ENDORSED<br>FILED**<br>MAR 0 7 2008<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
|---|---|
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number: 242491 |

## A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT

1. **THIS ACTION IS ASSIGNED TO HON.** _____ROBERT S. BOYD_____ **FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. A Case Management Conference has been set at the time and place indicated below:

| Date: JUL 1 0 2008<br>Location: | 3035 CLEVELAND AVE STE 200<br>SANTA ROSA CA 95406 | Time: 21 | Courtroom: 330p |
|---|---|---|---|

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://www.sonomasuperiorcourt.com/tentative/index.php.

## ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:

If, on the date shown above, you are not in compliance with timely filing requirements stated in California Rules of Court, Rules 3.110 and/or 3.725, you must then and there show cause why this Court should not impose monetary and/or terminating sanctions.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):        FAX NO. (Optional):<br>ATTORNEY FOR (Name): | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
|---|---|
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| ADR INFORMATION SHEET<br>(Sonoma County Superior Court Rules, Rule 16) | | CASE NUMBER: |
|---|---|---|
| (Check one): ☐ UNLIMITED CASE<br>(Amount demanded exceeds<br>$25,000) | ☐ LIMITED CASE<br>(Amount demanded is<br>$25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:

"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

A. MEDIATION: Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**B. ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C. EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D. PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)

| | | | |
|---|---|---|---|
| ☐ | Mediation | ☐ | Early Neutral Evaluation |
| ☐ | Non-binding Private Arbitration | ☐ | Binding Private Arbitration |
| ☐ | Voluntary Settlement Conference | ☐ | Summary Jury Trial |
| ☐ | Other | ☐ | Judicial Arbitration |

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: _____     _____
                                                            Signature of Party

Date: _____     _____
                                                            Signature of Party

Date: _____     _____
                                                            Signature of Attorney for Party
                                           ☐ Additional signatures are attached

**NOTE:** This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**
600 ADMINISTRATION DRIVE, ROOM 107-J
SANTA ROSA, CALIFORNIA 95403-2878

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|
| (Check one):   ☐ **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000)   ☐ **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:
☐ Mediation                                    ☐ Non-binding Private Arbitration
☐ Binding Private Arbitration          ☐ Private Settlement Conference
☐ Early Neutral Evaluation             ☐ Judicial Arbitration

The ADR process will be conducted by (name of individual): _____

Provider's Address: _____

Provider's Telephone: _____ Fax: _____ E-mail address: _____
☐ No agreement

The ADR process will be conducted on (date): _____
☐ No agreement

☐ The parties have reached agreement as to the payment of fees of ADR provider.
☐ The parties have not reached agreement as to the payment of fees of ADR provider.

Type or print name of ☐ Party without attorney ☐ Attorney for        _____
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant            (Date and Sign) Attorney or party without
                                                                      attorney (Sign in blue Ink)

Type or print name of ☐ Party without attorney ☐ Attorney for        _____
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant            (Date and Sign) Attorney or party without
                                                                      attorney (Sign in blue Ink)

☐ Additional signatures are attached

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

## ORDER

**A REVIEW HEARING IS SCHEDULED AS FOLLOWS:**

---

_____          _____
            Date                                    Time

All parties must appear at the Review Hearing.  In the event that the case is settled and a dismissal, a
notice of settlement or a judgment is filed at least 3 court days before the scheduled Review Hearing,
the Review Hearing will be dropped  and no one should appear. You must check the phone message
at _____ or go to http://www.SonomaSuperiorCourt.com/tentative/index.html where the
tentative dispositions will be posted the day before you are scheduled to come to court to determine if
you must appear.

***THE FIRST ATTORNEY OR PARTY LISTED  MUST FILE PROOF OF SERVICE OF A COPY OF
THIS ORDER ON ALL PARTIES.***

_____          _____
            Date                             JUDGE OF THE SUPERIOR COURT

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:    FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | |
| ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | | | CASE NUMBER: |
|---|---|---|---|
| (Check one):  ☐ UNLIMITED CASE (Amount demanded exceeds $25,000) | ☐ LIMITED CASE (Amount demanded is $25,000 or less) | | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: | | | |
|---|---|---|---|
| Date:    Time:    Dept.:    Div.:    Room: | | | |
| Address of court (if different from the address above): | | | |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties (answer one):**
   a. ☐ This statement is submitted by party (name):
   b. ☐ This statement is submitted jointly by parties (names):

2. **Complaint and cross-complaint (to be answered by plaintiffs and cross-complainants only)**
   a. The complaint was filed on (date):
   b. ☐ The cross-complaint, if any, was filed on (date):

3. **Service (to be answered by plaintiffs and cross-complainants only)**
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served (specify names and explain why not):
      (2) ☐ have been served but have not appeared and have not been dismissed (specify names):
      (3) ☐ have had a default entered against them (specify names):
   c. ☐ The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4. **Description of case**
   a. Type of case in ☐ complaint  ☐ cross-complaint  (describe, including causes of action):

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court, rules 3.720–3.730 www.courtinfo.ca.gov |
|---|---|---|
| | | American LegalNet, Inc. www.FormsWorkflow.com |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. (If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)

☐  (If more space is needed, check this box and attach a page designated as Attachment 4b.)

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial    (If more than one party, provide the name of each party requesting a jury trial):

6.  **Trial date**
a.  ☐  The trial has been set for (date):
b.  ☐  No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint (if not, explain):

c.  Dates on which parties or attorneys will not be available for trial (specify dates and explain reasons for unavailability):

7.  **Estimated length of trial**
The party or parties estimate that the trial will take (check one):
a.  ☐  days (specify number):
b.  ☐  hours (short causes) (specify):

8.  **Trial representation** (to be answered for each party)
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference (specify code section):

10. **Alternative Dispute Resolution (ADR)**
a.  Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐  All parties have agreed to a form of ADR. ADR will be completed by (date):
c.  ☐  The case has gone to an ADR process (indicate status):

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply):*

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify):*

    e.   ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

    f.   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

    g.   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

    a.   ☐ Insurance carrier, if any, for party filing this statement *(name):*

    b.   Reservation of rights:   ☐ Yes   ☐ No

    c.   ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy   ☐ Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

    a.   ☐ There are companion, underlying, or related cases.

        (1) Name of case:

        (2) Name of court:

        (3) Case number:

        (4) Status:

    ☐ Additional cases are described in Attachment 14a.

    b.   ☐ A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

    c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other Issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
    Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____    ▶ _____
    (TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY)

_____    ▶ _____
    (TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY)

                               ☐ Additional signatures are attached

## · NOTICE

## SONOMA COUNTY SUPERIOR COURT
## CIVIL DIVISION PRO TEM JUDGE PROGRAM

This is to advise that the Civil Division's Pro Tem Judge Program is available to those civil litigants who wish to expedite trial by stipulating to the use of an attorney to serve as Pro Tem Judge. The court maintains a Pro Tem Judge panel, which consists of attorneys sworn by the Court and willing to serve in this capacity. Parties may stipulate to a trial by a Pro Tem Judge of their choice and may inform the Court of such a stipulation by contacting Connie Origer, the Pro Tem Judge Program Coordinator, at (707) 521-6726.

The Program offers three primary benefits to litigants: (1) the date and location of trial can often be scheduled by stipulation of the parties; (2) the trial will take place on the agreed date for trial, thus eliminating the need to trail other cases, and; (3) the trial can be scheduled for full days on a 5 day per week basis, thus shortening the time to try the case. The Program is available for both jury and court trials.

For cases that are tried in 5 days or less (9:00 a.m. to 5:00 p.m., jury or non-jury), the Pro Tem Judge serves at no cost to the parties. For trials that exceed 5 days in length, the parties and the Pro Tem Judge are obliged to agree to a daily fee, not to exceed $1,200 per day, for each full or partial day of trial beginning with the 6th day of trial. Additionally, the Court will charge the parties $656.72 for each day of trial for the Clerk and Court Reporter. The Court discourages the use of overtime and will charge an additional cost of $123.14 for each hour or portion thereof exceeding 8 hours in any day. The parties are also responsible for the payment of jury fees as in any other civil case. Cases in which there are fee waivers are eligible for the Program.

The Court is enthusiastic about this Program and urges all counsel to discuss the availability of the Program and the feasibility of its use with opposing counsel. Counsel must also obtain permission from clients to participation in the Program. To participate in the Program, contact Ms. Origer as soon as possible to discuss trial dates. Ms. Origer will generate and mail all required stipulations and orders with respect to the Program. Parties may obtain additional information on this program by contacting Ms. Origer or by reviewing the court's website at www.sonomasuperiorcourt.com.

Plaintiff is ordered to serve this Notice on all parties and to certify by proof of service filed with the Court that such service has been accomplished within 60 days of the filing of the Complaint.

---

CV-41, Revised 1/1/08    PETALUMA PRO TEM JUDGE PROGRAM NOTICE

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name & Address*): | FOR COURT USE ONLY |
|---|---|
| Telephone No.:                    FAX No.: | |
| ATTORNEY FOR (Name):                    Bar No. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 521-6500 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

### NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION
(Sonoma County Superior Court Local Rule 16)

Name of Mediator Selected: _____

PLEASE TAKE NOTICE that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. PLEASE NOTE: you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts www.courtinfo.ca.gov.

If you are not a member of the Sonoma County Superior Court panel of mediators, in order to serve as mediator in this case, you must complete the acceptance below (see CRC Rule 3.851(a) (2)), sign it in the space provided, and file the completed Notice *with your original signature* with the Court not less than five days before commencement of the mediation. Please also provide the courtesy copy of the completed and signed Notice to the ADR Program Coordinator, 1450 Guerneville Road, Building G, Santa Rosa, California 95403 or by facsimile transmission to (707) 521-6756.

If you are mediating a case referred to court-connected mediation during calendar year 2007, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court Local form CV-38) within five (5) days after completion or other termination of the mediation. The completed questionnaire may be mailed or faxed to ADR Program Coordinator at the above address or FAX number. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court www.sonomasuperiorcourt.com.

If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 561-6500 or ADR@sonomacourt.org.

### MEDIATOR'S ACCEPTANCE

I, _____, hereby agree to mediate the above-captioned matter subject to
      (print name)

the conditions stated in this notice.

Dated: _____       _____
                                     (Mediator's Signature)

County of Sonoma
CLERK OF THE SUPERIOR COURT

Receipt 400777832  03/07/2008 1539

Fee Type: CIVIL COMPLAINT
           SCV 245491

Amount                    $320.00

Tender Type: Check
        Check # SC18929

Remarks: CV10 SC18929
Payee:
   ONE LEGAL

                   0732

# EXHIBIT B

MAR-14-2008(FRI) 14:44    ONE LEGAL                    (FAX)1+510+873+0984          P. 005/045

03/10/2008  08:22  6507267471              DAVID S SECREST                      PAGE 01/01

## A M E N D E D
## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED

MAR 10 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Sonoma County Superior Court<br>Hall of Justice, Room 107J, 600 Administration Drive<br>Santa Rosa, CA 95403-2818 | CASE NUMBER:<br>*(Número del Caso):*<br>SCV-242491 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

| DATE:<br>*(Fecha)* MAR 10 2008 | DENISE L. GORDON | Clerk, by<br>*(Secretario)* | JENNIFER ELLIS | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

112HB4497498.tif - 3/10/2008 9:23:12 AM

*AMENDED*

**SUM-100**

## SUMMONS

### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| Sonoma County Superior Court | SCV-242491 |

Hall of Justice, Room 107J, 600 Administration Drive
Santa Rosa, CA 95403-2818

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

| DATE: *(Fecha)* | Clerk, by _____ , Deputy |
|---|---|
| | *(Secretario)* *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

MAR-14-2008(FRI) 14:44   ONE LEGAL                (FAX)1+510+873+0984        P.007/045

1  Law Offices of David S. Secrest
   A Professional Corporation
2  David S. Secrest, Esq. [State Bar #142299]
   504 Plaza Alhambra, Suite 201
3  P. O. Box 1029
   El Granada, CA 94018-1029
4  Tel: 650-726-7461
   Fax: 650-726-7471
5  Attorney for Plaintiff
   Norman Runyan
6

7

**ENDORSED FILED**

MAR 10 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SONOMA

10

11  NORMAN RUNYAN,                       Case No.  SCV-242491

12              Plaintiff,               AMENDMENT TO VERIFIED COMPLAINT
                                         FOR DAMAGES
13  vs.

14  RIVER ROCK ENTERTAINMENT
    AUTHORITY, RIVER ROCK CASINO,
15  HARVEY HOPKINS, an individual, and
    DOES 1-50, inclusive,
16
                                                        **BY FAX**
17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

Law Offices of
DAVID S. SECREST
A Professional Corporation
504 Plaza Alhambra, Ste. 201
P.O. Box 1029
El Granada, CA 94018-1029

-1-

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No. SCV-242491
Amendment to Verified Complaint for Damages

MAR-14-2008(FRI) 14:45    ONE LEGAL                (FAX)1+510+873+0984        P.008/045

1  Law Offices of David S. Secrest
   A Professional Corporation
2  David S. Secrest, Esq. [State Bar #142299]
   504 Plaza Alhambra, Suite 201
3  P. O. Box 1029
   El Granada, CA 94018-1029
4  Tel: 650-726-7461
   Fax: 650-726-7471
5  Attorney for Plaintiff
   Norman Runyan
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10

11  NORMAN RUNYAN,                    Case No. SCV-242491

12             Plaintiff,             AMENDMENT TO VERIFIED COMPLAINT
                                      FOR DAMAGES
13  vs.

14  RIVER ROCK ENTERTAINMENT
15  AUTHORITY, RIVER ROCK CASINO,
    HARVEY HOPKINS, an individual, and
16  DOES 1-50, inclusive,

17             Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## AMENDMENT TO VERIFIED COMPLAINT FOR DAMAGES

2

3    The Complaint in this action, filed March 7, 2008, previously stated, at page 1, lines 20-22,

4    as follows:

5    "Plaintiff hereby demands a jury trial.

6    Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on

information and belief, as follows:..."

7    The Complaint in this action, filed March 7, 2008, should now state, at page 1, lines 20-22,

8    as follows:

9    "Plaintiff NORMAN RUNYAN hereby demands a jury trial, and hereby alleges as

follows:..."

10

11

12

13    Dated: March 4, 2008

14    Law Offices of David S. Secrest
A Professional Corporation

15

16    David S. Secrest (EM)

David S. Secrest
17    Attorney for Plaintiff Norman Runyan

18

19

20

21

22

23

24

25

26

27

28

-2-

MAR-14-2008(FRI) 14:45    ONE LEGAL                      (FAX)1+510+873+0984          P. 010/045

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>David S. Secrest, Esq. (SB# 142299)<br>Law Offices of David S. Secrest, A Professional Corporation<br>P. O. Box 1029, 504 Plaza Alhambra, Suite 205, El Granada, CA 94018-1029<br>TELEPHONE NO.: 650-726-7461     FAX NO.: 650-726-7471<br>ATTORNEY FOR *(Name)*:  Plaintiff NORMAN RUNYAN | **FOR COURT USE ONLY**<br><br>ENDORSED<br>FILED<br>MAR 07 2008<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: Sonoma
STREET ADDRESS:  600 Administration Drive, Room 107J
MAILING ADDRESS:
CITY AND ZIP CODE:  Santa Rosa, CA 95403
BRANCH NAME:  Sonoma County Hall of Justice

CASE NAME:
NORMAN RUNYAN vs. RIVER ROCK ENTERTAINMENT, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: SCV 242431 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter | [ ] Joinder | JUDGE: ROBERT S. BOYD |
| | | Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 1800–1812)** |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Other contract (37) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | **Real Property** | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse<br>condemnation (14) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Wrongful eviction (33) | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case |
| [ ] Other PI/PD/WD (23) | [ ] Other real property (26) | types (41) |
| **Non-PI/PD/WD (Other) Tort** | **Unlawful Detainer** | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Commercial (31) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | [ ] Residential (32) | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Drugs (38) | [ ] RICO (27) |
| [ ] Fraud (16) | **Judicial Review** | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | [ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Writ of mandate (02) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Other judicial review (39) | |
| [✓] Wrongful termination (36) | | |
| [ ] Other employment (15) | | |

2. This case [ ] is  [✓] is not  complex under rule 1800 of the California Rules of Court. If the case is complex, mark the
   factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

   **BY FAX**

3. Type of remedies sought *(check all that apply):*
   a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 4: Contract Breach, Wrongful Termination ; Interference with Contract. IIED
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:  March 7, 2008

David S. Secrest                                          ▶ David S. Secrest (xm)
*(TYPE OR PRINT NAME)*                          *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result
  in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>
Judicial Council of California<br>
CM-010 [Rev. January 1, 2006]
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 201.8, 1800–1812;<br>
Standards of Judicial Administration, § 19<br>
www.courtinfo.ca.gov<br>
American LegalNet, Inc.<br>
www.USCourtForms.com

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED

MAR 0 7 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Sonoma County Superior Court Hall of Justice, Room 107J, 600 Administration Drive Santa Rosa, CA 95403-2818 | CASE NUMBER: *(Número del Caso):* SCV 242491 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461     JENNIFER ELLIS

| DATE: *(Fecha)* MAR 0 7 2008 | DENISE L. GORDON | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*LexisNexis® Automated California Judicial Council Forms*

1    Law Offices of David S. Secrest
    A Professional Corporation
2    David S. Secrest, Esq. [State Bar #142299]
    504 Plaza Alhambra, Suite 201
3    P. O. Box 1029
    El Granada, CA 94018-1029
4    Tel: 650-726-7461
    Fax: 650-726-7471
5    Attorney for Plaintiff
    Norman Runyan

**ENDORSED FILED**

MAR 07 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SONOMA

| | |
|---|---|
| NORMAN RUNYAN,<br><br>       Plaintiff,<br><br>vs.<br><br>RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK CASINO, HARVEY HOPKINS, an individual, and DOES 1-50, inclusive,<br><br>       Defendants. | Case No. SCV 242491<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1.    Breach of Contract;<br>2.    Wrongful Termination in Violation of Public Policy [Title 11, United States Code, §525; Rule 13a-15(e), 15d-15(e) Securities Exchange Act of 1934];<br>3.    Intentional Interference with Contract; and<br>4.    Intentional Infliction of Emotional Distress |

**BY FAX**

### DEMAND FOR JURY TRIAL

    Plaintiff hereby demands a jury trial.

    Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on information and belief, as follows:

### THE PARTIES

1.    Plaintiff NORMAN RUNYAN ("Plaintiff") is an individual and resides in the City of Cloverdale, County of Sonoma, California.

2.    At all times pertinent, and since 2002, Plaintiff was the Chief Operations Officer of Defendant River Rock Entertainment Authority (RREA or the "Authority"), and Defendant River Rock Casino (RRC), located in Geyserville, County of Sonoma, California.

-1-

1    3.    Defendant HARVEY HOPKINS ("HOPKINS") is an individual and resides in the County

2    of Sonoma, California. HOPKINS was, at all times pertinent, the Tribe's Chairman and a Member

3    of the RREA Board of Directors. HOPKINS was elected as Chairman of Dry Creek Rancheria on

4    November 20, 2004 and continues to serve as the Tribe's Chairman. HOPKINS served as River

5    Rock Entertainment Authority's Chairperson from November 20, 2004 to July 14, 2006. After

6    that date, HOPKINS remained a Member of the RREA Board of Directors. HOPKINS has been a

7    licensed excavating contractor for 29 years, began a professional career in construction in 1970,

8    and is a licensed excavating contractor. HOPKINS currently owns American Indian Management

9    Inc. Trucking Company.

10    4.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

11    50, inclusive, and therefore sues these defendants by such fictitious names and capacities when

12    ascertained. Plaintiff is informed and believes and, on that basis, alleges that each fictitiously

13    named defendant is responsible in some manner for the occurrences herein alleged, and that

14    plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

15    5.    Plaintiff is informed and believes and thereupon alleges that, at all times material herein,

16    each of the defendants was the agent, employee and/or working in concert with his co- defendants

17    and was acting within the course and scope of such agency, employment and/or concerted activity.

18    To the extent that certain defendants perpetrated certain acts and omissions, the remaining

19    defendant or defendants confirmed and ratified said acts and omissions.

20    6.    Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each

21    defendant was completely dominated and controlled by his co-defendant and each was the alter

22    ego of the other.

23    7.    Whenever and wherever reference is made in this complaint to any act by a defendant or

24    defendants, such allegations and reference shall also be deemed to mean the acts and failures to act

25    of each defendant acting individually, jointly, and severally.

26    8.    Whenever and wherever reference is made to individuals who are not named as plaintiff or

27    defendants in this complaint but were employees/agents of Defendants, such individuals at all

28    relevant times acted on behalf of Defendants within the scope of their employment.

-2-

## FACTS COMMON TO ALL CAUSES OF ACTION

9.     Until his unlawful termination of employment as alleged herein, Plaintiff was Chief Operations Officer of RREA since October 2002. Plaintiff acted as Chief Executive Officer and General Manager from November 8, 2005 through April 13, 2006, following the resignation of RREA's former Chief Executive Officer in November 2005. Plaintiff's total compensation in 2006 was $301,939.55.

10.     There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY and RIVER ROCK CASINO. A true and correct copy of the Employment Agreement is attached hereto as Ex. "A."

11.     RREA owns and operates the RIVER ROCK CASINO, a gaming and entertainment facility located on the Tribe's reservation, approximately 75 miles north of San Francisco, California. RIVER ROCK CASINO is a 62,000 square-foot gaming and entertainment facility, which is located in the Alexander Valley, and is open 24-hours a day, seven days a week.[1]

12.     The Compact requires the Tribe to carry public liability insurance with initial limits of at least $5.0 million for personal injury and property damage claims. The Tribe is required to waive its sovereign immunity to the extent of the $5.0 million liability insurance limits. Thus, for purpose of this action, sovereign immunity has been legally waived and is no defense to the claims made in this action by any defendant.

13.     According to the Form 10-K filed with the Securities and Exchange Commission April 17, 2007, Defendant RREA is a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians of California (the "Tribe"). The Tribe is a federally recognized Indian tribe with 947 enrolled members, with an approximately 75-acre reservation in Sonoma County, California. RREA was formed in 2003 as an unincorporated governmental instrumentality of the Tribe, to own and operate Defendant RIVER ROCK CASINO in Sonoma County, California. The River Rock Casino had previously operated as a wholly owned governmental operating property of the Tribe.

---

[1] Paragraphs 11-20 are alleged on information and belief.

-3-

14.    The Indian Gaming Regulatory Act of 1988, ("IGRA") as amended, permits federally recognized Indian tribes to conduct casino gaming operations on certain Indian lands, subject to, among other things, the negotiation of a compact with the affected state. The Tribe and the State of California entered into a compact (the "Compact") in September, 1999, which became legally effective when it was approved by the U.S. Department of the Interior and notice of approval was published in the Federal Register in May, 2000. The Compact authorizes certain forms of Class III casino gaming, including slot machines and house-banked card games.

15.    RREA must maintain disclosure controls and procedures that are designed to ensure that the information required to be disclosed in reports filed with, or furnished to the SEC, pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules, regulations and forms, and that such information is accumulated and communicated to our management, including its Chief Executive Officer, Assistant Financial Controller (Principal Financial Officer) and Chief Operations Officer, as appropriate, to allow timely decisions regarding required disclosure based on the definition of "disclosure controls and procedures" in Rule 13a-15(e) and 15d-15(e) of the Exchange Act.

16.    On November 7, 2003, RREA issued and sold Notes in a private placement to certain "qualified institutional buyers" pursuant to Regulation 144A of the Securities Act of 1933, as amended (the "Notes Offering"). On June 21, 2004, pursuant to a registration rights agreement entered into in connection with the issuance of the Notes, RREA consummated an offer to exchange all of the Notes for $200.0 million in aggregate principal amount of 9-3/4% senior notes due 2011 (the "Outstanding Notes") registered with the Securities and Exchange Commission. The terms of the Outstanding Notes are substantially identical to the terms of the Notes, except that the transfer restrictions and registration rights applicable to the Notes do not apply to the Outstanding Notes. RREA did not receive any additional proceeds from the exchange offer. The Outstanding Notes and the Notes were issued under an Indenture, dated as of November 7, 2003 (the "Indenture"), among RREA, the Tribe and U.S. Bank National Association, as trustee. The terms of the Outstanding Notes include those stated in the Indenture, as well as those made part of

-4-

1   the Indenture by reference to the Trust Indenture Act of 1939, as amended.

2   17.    The Indenture includes affirmative and negative covenants that limit RREA's ability to

3   borrow money, create liens, sell assets, engage in transactions with affiliates, engage in other

4   businesses, open other gaming facilities, engage in certain mergers and consolidations, make

5   certain investments, make certain accelerated payments on our indebtedness that is subordinated to

6   the Outstanding Notes, and make payments to the Tribe.

7   18.    RREA is also governed by a five-member Board of Directors consisting of the same five

8   members as those of the Tribe's Board of Directors.  The Tribe's Board of Directors is elected

9   biennially by the Tribal Council (the approximately 528 voting members of the Tribe), and

10  includes a Chairperson, a Vice Chairperson, a Secretary-Treasurer and two members-at-large.

11  19.    The Indenture provides, at Section 4.10, as follows:

**Transactions with Affiliates.**

12  The Authority shall not make any payment to, or sell, lease,
    transfer or otherwise dispose of any of its properties or assets to, or purchase

13  any property or assets from, or enter into or make or amend any transaction,
    contract, agreement, understanding, loan, advance or Guarantee with, or for the

14  benefit of, any Affiliate (each, an "Affiliate Transaction"), unless:

15              (a) the Affiliate Transaction is on terms that are no less
            favorable to the Authority than those that would have been obtained in

16          a comparable transaction by the Authority with an unrelated Person;

17              (b) with respect to any Affiliate Transaction or series of
            related Affiliate Transactions involving aggregate consideration in

18          excess of $1.0 million, the Authority delivers to the Trustee a
            resolution of its Board of Directors set forth in an Officers'

19          Certificate certifying that the Affiliate Transaction complies with
            this Section 4.10 and that the Affiliate Transaction has been approved

20          by a majority of the disinterested members of its Board of Directors,
            provided, that if there are no disinterested members of the Board of

21          Directors, such compensation arrangements must be approved unanimously
            by the members of the Board of Directors; and

22              (c) with respect to any Affiliate Transaction or series of
            related Affiliate Transactions involving aggregate consideration of

23          $7.5 million or more, the Authority delivers to the Trustee an opinion
            as to the fairness to the Authority of that Affiliate Transaction from

24          a financial point of view issued by an accounting, consulting,
            appraisal or investment banking firm of reputable standing.

25  The following items shall not be deemed to be Affiliate Transactions and shall not be
    subject to the provisions of the prior paragraph:

26              (1) any employment agreement or arrangement entered into by
            the Authority in the ordinary course of business of the Authority;

27

28

1          (2) reasonable compensation paid to, and indemnities provided
on behalf of, officers, directors or employees of the Authority;

2          (3) transactions with Persons in whom the Authority owns an
Equity Interest, so long as the remaining equity Holders of such

3  Persons are not Affiliates of the Authority;

4          (4) contractual arrangements existing on the date hereof, any
arrangements disclosed in the Offering Memorandum and any renewals,

5  extensions and modifications thereof that are not materially adverse to
the Holders of the Notes;

6          (5) Restricted Payments, Permitted Payments, Service Payments,
Permitted Investments and other payments and distributions to the

7  extent permitted by Section 4.07 hereof; and

8          (6) reasonable bid preferences to Tribal members and their
businesses in accordance with Tribal policy.

9

10  20.    The Indenture provides, at Section 10.01 a (iii) and (iv), as follows:

11  **Covenants of the Tribe:**

12          (a) The Tribe shall not do, and shall not permit any of its
representatives, political subunits or councils, agencies,

13  instrumentalities or enterprises, directly or indirectly, except as
required by federal or state law or the Compact to do, any of the

14  following:...
          (iii) deny access by the Authority or patrons of the

15  Gaming Business to Key Project Assets or otherwise restrict or
eliminate the right of the Authority to conduct gaming

16  operations at the Project in a manner that would be materially
and adversely affect the Gaming Business;

17          (iv) take any other action, enter into any agreement,
amend its constitution or amend or enact any ordinance, law,

18  rule or regulation that would have a material adverse effect
on the economic interests of holders of the Notes; including,

19  without limitation, taking any action to engage in the Gaming
Business in California other than through the Authority;...

20

21  21.    From approximately October, 2005, until the present date, HOPKINS engaged in

22  systematic violations of the Indenture, specifically Sections 4.10, 10.01 a (iii) and (iv), which also

23  constituted an ongoing violation of Rule 13a-15(e) and 15d-15(e) of the disclosure controls and

24  procedures of the Exchange Act, by controlling the activities, developmental and otherwise, of

25  RREA, to his own financial and pecuniary benefit, and contrary to the benefit of RREA, the Tribe,

26  and the members, agents, officers and employees of RREA.

27  22.    HOPKINS interfered with the business operations of RIVER ROCK CASINO,

28  intimidating its vendors and employees, and prolonging budget formation and approval processes,

-6-

1   Plaintiff is informed and believes, and thereon alleges, that HOPKINS' interference resulted in the

2   loss of tens of millions of dollars in revenue to the Tribe, RREA, and RIVER ROCK CASINO.

3   23.    Plaintiff is informed and believes, and thereon alleges, that in April 2006, HOPKINS

4   formed, took ownership of, and operated, a corporate entity called Dry Creek Development

5   Company (DCDC), using HOPKINS' Contractors license.

6   24.    In violation of the express terms of the Indenture, which required Affiliated Transactions

7   by RREA to be at an arm's length with the Tribe, and properly documented based upon fair

8   bidding, HOPKINS forced RIVER ROCK CASINO to use the contracting services of DCDC,

9   improperly "steering" RREA business to that entity to his own financial benefit, at a higher cost

10  and with bad results, including: Road patching; roof repair on the parking garage; planting the

11  parking garage planters, which voided a guarantee with landscaping company; paying the Tribe

12  $20,000 a month for their campground/RV center, with no benefit to the operations of RREA; and

13  similar unethical, illegal, self-dealing actions.

14  25.    In August of 2007, David Gunn, Project Manager, advised Plaintiff and Defendants that the

15  Project would run out of funds by end of September. Plaintiff and Defendants conducted numerous

16  meetings discussing options, specifically how to slow down the Project until it was prepared for

17  market. HOPKINS nonetheless insisted upon, and improperly directed, full steam with

18  infrastructure work.

19  26.    In October, 2007, RREA's CFO was in discussion with Merrill Lynch about the funding

20  situation, the fact that the Project was almost out of funds, and with respect to negotiation of

21  additional funds on a "bridge loan." RREA was attempting to acquire funding for an additional

22  $30,000,000. Merrill Lynch representatives stated it had the Tribe's current balance sheet, and the

23  Tribe had $14,800,000 in its account. RREA's CFO insisted that he was looking at the Tribe's

24  current balance sheet, and it showed zero funds available.

25  27.    Several days later there was conducted a meeting of the RREA Board, including

26  HOPKINS, BEK's Management Team, and all RREA Officers. The discussion was how the Tribe

27  had $14,800,000 in its account. BEK's Management Team was adamant that their coding of the

28  receipts and expenses showed a different scenario. $11,000,000 was allocated to master plan and

-7-

1   $27,000,000 to infrastructure. The Tribe was asked how it paid for the extra $6,000,000 for the

2   Master Plan, since RREA had not approved or dispensed any funds to them. The Tribal CFO said

3   they had "used all their resources," and RIVER ROCK CASINO needed to reimburse the Tribe

4   $6,000,000. It was transferred a few days later. At the specific direction of HOPKINS, a "re-

5   classification of expenses" thereafter ensued, without appropriate approval by RREA, without

6   appropriate explanation to the appropriate recipients of such disclosures.

7   28.    David Gunn of BEK advised that he would attempt to reconcile the invoices, and attempt to

8   find out if the "re-classification was appropriate." Gunn was visibly confused as to who would

9   "reclassify" *his invoices*. One week later, HOPKINS "released" Gunn of BEK, from his position

10   as RREA's Team leader for BEK, and was transferred to another post within BEK.

11   29.    Plaintiff was not informed of how the above-alleged monies were "reclassified," or why the

12   Tribe had so much money in reserve in from the bridge loan.

13   30.    As a direct result of the foregoing, Plaintiff opposed these actions in discussions and

14   communications with the RREA Board. The RREA Board represented to Plaintiff that it would

15   obtain an independent audit to "find out what was going on," and that it needed a "third party

16   review." Plaintiff also informed the RREA Board that once we get permanent funding the $40M

17   bridge loan debt would need to be properly transferred to RIVER ROCK CASINO, and RREA

18   would need to reconcile these discrepancies, and report to the SEC and Investment community.

19   31.    No audit was pursued.

20   32.    Plaintiff opposed the actions by HOPKINS, by timely and repeatedly advising the RREA

21   Board and RREA officers and Directors, and demanding an independent audit.

22   33.    As a direct and proximate result, Defendants intentionally retaliated against Plaintiff, by

23   forcing Plaintiff's resignation from employment based on false and pretextual grounds, and by

24   breaching and/or causing the breach of Plaintiff's Employment Contract, as alleged herein.

25   34.    On November 14, 2007, Defendants forced Plaintiff to resign his employment under threat

26   of immediate termination, without benefits, which conduct caused a real and legitimate

27   apprehension by Plaintiff of economic duress. Such conduct by Defendants caused Plaintiff great

28   and irreparable financial hardship, damages to reputation, and extreme emotional distress.

-8-

35.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff suffered damages, including, but not limited to, severe emotional distress; loss of professional reputation; loss of employment; and loss of employability.

36.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff is informed and believes, and thereon alleges, that Plaintiff has sustained and will sustain financial damages in excess of $10,000,000.

## FIRST CAUSE OF ACTION
### Breach of Contract
(Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

37.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 36 in this Complaint as if they were fully set forth here.

38.    There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY/ RIVER ROCK CASINO. A true and correct copy of the Employment Agreement is attached hereto as Ex. "A."

39.    Plaintiff performed all that he was obliged to do under the Employment Agreement.

40.    Defendants breached the Employment Agreement, despite having had the ability to perform.

41.    Defendants terminated the Agreement without good cause as required under the Employment Agreement.

42.    Defendants unjustifiably and inexcusably failed to perform their obligations under the contract, despite having had the ability to perform.

43.    As a direct and proximate result of defendants' conduct, Plaintiff has suffered and will continue to suffer economic and financial losses; related, consequential damages; and a loss of earnings and other employment benefits including, but not limited to, the fixed or ascertainable value of his Employment Agreement and the benefits derived from the Employment Agreement. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### Wrongful, Constructive Termination in Violation of Public Policy
[Title 11, U.S. Code, §525; 1934 Securities and Exchange Act, Rule 13a-15(c),15d-15(c)]
(Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

-9-

44. Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 43 this Complaint as if they were fully set forth here.

45. As alleged herein, on November 14, 2007, Defendants forced Plaintiff to resign his employment under threat of immediate termination, without benefits, which conduct caused a real and legitimate apprehension by Plaintiff of economic duress. Such conduct by Defendants caused Plaintiff great and irreparable financial hardship, damages to reputation, and extreme emotional distress.

46. The stated reason for the decision by Defendants to force Plaintiff to resign his employment under threat of immediate termination, without benefits, was his prospective petition for protection under Chapter 13, Title 11, United States Code.

47. It is unlawful for an employer to terminate the employment of, or discriminate with respect to employment against any person that seeks to, or does, avail himself or herself of the legal protections against financial insolvency know as bankruptcy.

48. Title 11, United States Code, §525, provides legal protection against discriminatory treatment in private employment relationships:

> "No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act; has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act." Title 11, United States Code, §525(b) (1) – (3).

49. Plaintiff's termination from employment was a direct result of his expressing opposition to the illegal activity alleged herein, which opposition constituted protected activity under applicable, firmly established public policy, and federal law, specifically Title 11, United States Code, §525.

50. Additionally and alternatively, Plaintiff's termination from employment was a direct result of his opposition to the continuous and systematic violations by HOPKINS of the terms and conditions of Securities and Exchange Act, Rule 13a-15(e),15d-15(e), which opposition constituted protected activity under applicable law.

-10-

51. As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits, loss of income, loss of employability, and damage to professional reputation. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

52. The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants, pursuant to California Civil Code Section 3294.

### THIRD CAUSE OF ACTION
#### Intentional Interference with Contract
#### (Against Defendant HARVEY HOPKINS)

53. Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52 in this Complaint as if they were fully set forth here.

54. At all times pertinent, there was an enforceable contract of employment between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK CASINO, a contractual relationship.

55. By engaging in the conduct alleged herein, HOPKINS' intentional acts or conduct was designed to induce a breach or interruption of the contractual relationship.

56. HOPKINS' intentional acts or conduct were not privileged.

57. As a direct and proximate result thereof, there was an actual breach or disruption of the contractual relationship.

58. As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental

1    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

2    employment benefits, loss of income, loss of employability, and damage to professional reputation.

3    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

4    59.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

5    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

6    and for the deleterious consequences of defendants' actions. Defendants and each of them, and

7    their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of

8    each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants,

9    pursuant to California Civil Code Section 3294.

10    **FOURTH CAUSE OF ACTION**
**Intentional Infliction of Emotional Distress**
11    (Against All Defendants)

12    60.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

13    contained in Paragraphs 1 through 59 in this Complaint as if they were fully set forth here.

14    61.    The conduct of defendants, and each of them, as alleged above, was outrageous and outside

15    the normal scope of the employment relationship. Defendants, and each of them, knew that their

16    conduct would result in plaintiff's severe emotional distress, and said conduct was perpetrated by

17    defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability

18    of inflicting, humiliation, mental anguish, and severe emotional distress upon plaintiff. Such

19    conduct did, in fact, result in severe emotional distress caused to Plaintiff.

20    62.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

21    will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

22    and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for

23    treatment by physicians, psychiatrists and other health professionals, and for other incidental

24    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

25    employment benefits, loss of income, loss of employability, and damage to professional reputation.

26    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

27    63.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

28    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

LAW OFFICES OF
DAVID S. SECREST
A Professional Corporation
5th Floor, Montclair Tower
P.O. Box 859
St. Helena, CA 94574-0859

-12-

and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants, pursuant to California Civil Code Section 3294.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. For compensatory and general damages in an amount according to proof;
2. For punitive damages against all defendants under Civ. Code §3294;
3. For statutory attorneys' fees and costs;
4. For prejudgment and post-judgment interest according to any applicable provision of law, according to proof;
5. For costs of suit;
6. For such other and further relief as the court deems proper.
7. Respectfully submitted.

Dated: March 4, 2008

Law Offices of David S. Secrest
A Professional Corporation

David S. Secrest
Attorney for Plaintiff Norman Runyan

-13-

**VERIFICATION**

I, Norman Runyan, declare as follows:

1.     I am the plaintiff in this action.

2.     I certify and declare that I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know its contents, and the matters stated in the document described above are true.

3.     As to matters alleged on information and belief, I am informed, and believe, and on that basis allege, that those matters are true.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 4th day of March, 2008 at Geyserville, California.

                                    Norman Runyan

-14-

# EXHIBIT "A"

MAR-14-2008(FRI) 14:48    ONE LEGAL                    (FAX)1+510+873+0984        P.027/045



# RIVER ROCK ENTERTAINMENT AUTHORITY

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is entered into as of the 14th day of October, 2005 ("Effective Date") by and between the River Rock Entertainment Authority ("Authority"), a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians ("Tribe"), on behalf of its Tribal governmental gaming project, the River Rock Casino ("Casino"), and Norman Runyan ("Employee"), and succeeds and supersedes that certain Employment Agreement ("Initial Agreement") made and effective as of the 14th of October, 2002 by and between the Tribe, predecessor in interest to the Authority, and Employee.

The parties hereto expressly intend that this Agreement describe Employee's relationship as an employee of the Casino and not as a contractor, including but not limited to not being a contractor as that term is used in 25 USC § 2711 and 25 CFR § 502.15. The parties have purposefully structured the terms and provisions of this Agreement consistent with, and in furtherance of, this expressed intent.

1. **Employment.** On and subject to the terms and conditions of this Agreement, the Casino hereby employs Employee, and Employee hereby continues his employment by the Casino, as its Chief Operations Officer (COO). As COO, Employee shall undertake responsibility for the day-to-day operational responsibilities for the Casino, assist in the development of the Casino and other gaming related entities of the Authority as the Board shall direct, and carry out such other duties as are set forth in Section 2. Employee shall report to, be accountable to and work under the authority of the Authority's Board of Directors (the "Board"), the CEO of the Authority, the Casino General Manager, and such other Tribal entities as the Authority or, if the Authority shall cease to exist, the Tribe may thereafter designate.

2. **Reporting and Duties.** Employee shall report directly to the CEO of the Authority and General Manager of the Casino with respect to all operations and expenditures of the Casino and otherwise to the extent requested by the Board. Without limiting the foregoing, Employee shall perform such executive duties as are commonly attendant upon the office of a casino Chief Operations Officer (COO) and such further executive duties as may be specified from time to time by the Board, the CEO or the General Manager (in that order of precedence), which shall include:

P. 09        70757676481    'ON XVJ        'JJJ 'JəïuəJ ïïɐW Wd 01:10 ənı 1002-72-ʌON

 

 

(a)    Assisting the CEO/General Manager with the overall responsibility of managing, directing and supervising the design, development, construction and operation of the Casino;

(b)    Enforce the River Rock Casino mission statement;

(c)    Provide leadership to all personnel and management of the Casino;

(d)    In collaboration with Human Resources, responsible for the selection, assignment, re-assignment, structure of any and all employees, department, duties, responsibilities and organizational charts, and the implementation for personnel, wage and benefit policies approved by the Board for the employees of the Casino;

(e)    Assist in the development of short and long term goals and objectives for the operation;

(f)    Preparation of annual operating budgets and required modifications to such budgets, subject to the approval of the Board, and implementation of such budgets;

(g)    Oversee the marketing plan in conjunction with the Marketing Manager, which includes all promotions, sponsorships, advertising, media, and public relations;

(h)    Assist in the analysis of Casino to ensure maximum efficiency;

(i)    Planning and preparation for food and beverage and other services of the Casino;

(j)    Responsible for the overall ambience, maintenance and cleanliness of the Casino;

(k)    Optimize operational efficiency, increase cost effectiveness and ensure that quality assurance programs are adopted and implemented;

(l)    Work with Human Resources in the Recruitment and hiring of managers, supervisors, and employees of the Casino according to the Tribal TERO plan

(m)    Development and implementation of programs for training Tribal members for supervisory and management positions in accordance with the preference policies of the Tribe and the Casino;

2

MAR-14-2008(FRI) 14:48    ONE LEGAL                    (FAX)1+510+873+0984

(n)    Preparation, implementation and direction of Authority and Casino compliance programs, including assurance that the Casinos meets the requirements of the Indian Gaming Regulatory Act, the Tribal-State Gaming Compact between the Tribe and the State of California (the "Compact"), the laws and ordinances of the Tribe and other applicable laws as well as agreements to which the Tribe and/or the Authority is a party;

(o)    Preparation, implementation and direction of programs to assure that the Casino meets all federal, Tribal and Compact requirements for internal controls, including establishment and enforcement of policies designed to maintain the integrity of the Casino and any other Tribal or Authority gaming operations to which Employee is assigned, for the protection of the Tribe, the Authority, the Board, the Casino, its customers and the public in accordance with law and standards in the industry; and

(p)    Attend all required meetings and trainings.

3. **Term.** The term of this Agreement ("Term") shall commence on the Effective Date and shall end three (3) years after the Effective Date, unless terminated earlier by the parties as provided herein. The parties acknowledge that this agreement succeeds and supersedes the Initial Agreement. It is the intent of the parties hereto that there shall be no gap in the Employee's employment between the expiration and termination of the Initial Agreement and the commencement of the Term, and that Employee's employment shall be deemed to have been continuous from the commencement of the Initial Agreement through the date of termination of this Agreement.

4. **Full-Time Service.** Employee agrees that during the Term of this Agreement unless earlier terminated, he will commit his full time and energies to the duties imposed hereby and, further, agrees that during the term of this Agreement he will not (whether as an officer, director, member, employee, partner, proprietor, investor, security holder, lender, associate, consultant, adviser or otherwise) directly or indirectly, engage in the business of the Casino as a competitor or otherwise without the express prior written consent of the Board in its sole discretion.

5. **Compensation.**

(a) Employee will be paid a base salary of Two Hundred Fifty Thousand Dollars ($250,000.00) per annum ("Base Compensation"), subject to applicable withholding taxes and required deductions.

(b) Payments in discharge of the Base Compensation shall be paid in 1/26 payments thereof every other workweek on the day established for payroll payments to other employees of the Casino.

(c) Employee's Base Compensation shall be increased annually, effective on the anniversary of the Effective Date ("Anniversary Date"), by seven percent (7%) unless otherwise agreed in writing by both parties.

3

MAR-14-2008(FRI) 14:48    UNE LEGAL                    (FAX)1+510+873+0984      P. 050/076

(d) Employee shall be paid an annual bonus of not less than seven percent (7%) and not more than twenty-five percent (25%), as determined by the Board in its sole discretion, of the Base Compensation earned for the year in question, payable within 45 days after the Anniversary Date.

(f) Employee will be entitled, on the same basis as other executive employees of the Casino, to participate in and receive benefits under the Casino's benefit plans for executives, if any, as such plans may be modified from time to time, except that Employee will be entitled to seven (7) days of additional Personal Time Off (PTO) in excess of the Casino's normal PTO policy.

(g) The Employee shall be reimbursed all reasonable and necessary business expenses incurred on behalf of his employment during the performance of his duties under this Agreement, subject to the existing reimbursement policy established by the Casino. Such reimbursements shall be supported by adequate record-keeping and other requirements as may be necessary or appropriate to comply with the Internal Revenue Code.

(h) Employee will have the right to be reimbursed for any legal fees incurred as the result of defending himself in any third party lawsuit arising out of Employee's obligations under this Agreement; provided that all such defenses shall be managed and controlled by the Authority and with counsel reasonably approved by Authority. Employee is and will continue to be covered under the Authority's errors and omissions insurance as such insurance covers all members of the Board.

6. **Licensing Issues.** Employee warrants and represents that he is eligible and suitable for a license and background clearance under the Tribe's and State's gaming licensing authority. Employee agrees to timely apply for any license(s) as may be required pursuant to the Compact, the Tribe's gaming ordinances or otherwise required by law, as may be necessary to enable him to engage in his employment hereunder. The Casino shall pay all costs associated with such licensing. Employee will maintain such licenses in good standing as a continuing condition of his employment under this Agreement, and shall notify the Tribal Gaming Commission of any information that is material to, or a change from, any information sought or contained in his Tribal gaming license application or his suitability in general for a gaming license, and shall do so as soon as possible after such information is known to Employee..

7. **Termination.**

(a) Employee may be terminated prior to the end of the Term by the Authority under the following circumstances:

(i) Upon termination, revocation or disapproval of any license required by law to be held by Employee to perform as an employee of a gaming operation of the Tribe, the Authority or the Casino, or if any event renders it unlawful for the Tribe or the

4

NOV-27-2001 TUE 01:01 PM Mail Center ETC.        FAX NO. 7075276491                      P. 12

Authority to continue to operate the Casino or conduct casino gaming on the reservation; or

(ii) Employee shall commit an act constituting "Cause". Cause being defined as (a) an act of intentional dishonesty against the Tribe, the Authority or the Casino; (b) conviction of any criminal charge involving moral turpitude; (c) the deliberate or intentional refusal by Employee (except by reason of disability) to perform his duties hereunder; (d) gross negligence in the performance of his duties hereunder; or, (e) failure to perform his duties in a manner consistent with his professional obligations after prior sufficient verbal and written warnings; or

(iii) Employee shall die; or

(iv) The Authority shall for any reason cease to conduct the Casino; or

(v) Employee shall become unable to perform the duties and responsibilities set forth in this Agreement by reason of long-term physical or mental disability, defined as a period of disability that exceeds six (6) months; or

(vi) Either party shall give the other party hereto ninety (90) days' written notice of Employee's resignation or termination.

(b) If Employee's employment should be terminated under paragraphs 7 (a)(i), (a)(ii) or (a)(vi) above (provided that this subparagraph (b) shall only apply to paragraph 7 (a)(vi) to the extent that Employee has resigned), then Authority shall within ten (10) days of such termination pay Employee the accrued Base Compensation, bonuses and benefits to the date Employee is terminated, whereupon Authority shall have no further liability or obligation to Employee under this Agreement.

(c) If Employee is terminated under paragraphs 7 (a)(iii), (a)(iv), (a)(v) or (a)(vi) (provided that this subparagraph (c) shall only apply to paragraph 7 (a)(vi) to the extent that Authority has terminated Employee), the Authority shall pay to the Employee on a pro-rata basis the Base Compensation for a period of three (3) months from the date of termination and he shall be eligible for all employee benefits during that three-month period, pro-rated to that period. Employee shall be paid all amounts due him at the time of termination when they would otherwise be paid, including the pro rata share of the bonus for the year in which the termination occurred.

(d) Upon the payment of all or any part of the compensation provided for in this paragraph 7, or its mitigation under this paragraph, the Authority will have no further liability or obligation to Employee under this Agreement or arising from the employment relationship except that obligation provided for in this paragraph 7.

(e) Employee will be liable in damages for all losses and expenses incurred by Authority if he is terminated for cause or if Employee terminates his employment for any reason not authorized herein, with the exception of termination by written notice agreed to by both

5

parties. Any such termination of or by Employee will constitute a waiver by Employee of all claims against the Authority and the Casino except for the accrued Base Compensation, bonus and benefits to the date of his termination as provided for in this Section 7, and subject to any amounts due from Employee.

8. **Confidentiality of Proprietary Information.** Any information acquired by Employee while employed under this Agreement or in any way connected with the Casino or any Tribal or Authority gaming operation, related to employee lists, patron lists, marketing plans, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are acknowledged by Employee to be confidential information belonging to one or more of such entities, and Employee shall not disclose such information without the express written authorization of the Board except in the ordinary course of the business of the Casino. Employee shall, upon termination of this Agreement for any reason whatsoever, turn over to the Board any and all copies he may have of employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the tribe, the Authority or the Casino. Employee acknowledges that employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are confidential and proprietary information of one or more of such entities and the Tribe, the Authority or the Casino, or any of them, may exercise any and all remedies available at law or in equity to enforce this Agreement with respect to non-disclosure of any such proprietary information. Particularly, the parties agree that, because of the nature of the subject matter of this paragraph 8, in event of a threat or danger of disclosure of such information, it could be extremely difficult to determine the actual damages suffered or to be suffered by breach of this Section 8 or to fully repair the harm done by such action. Accordingly, Authority shall be entitled to injunctive relief (both temporary and permanent), it being acknowledged and agreed that any such actual or threatened breach will cause irreparable injury and that money damages alone will not provide an adequate remedy. Notwithstanding the foregoing, Tribe, Authority and Casino or any of them as may be appropriate shall be entitled to money damages for any loss suffered or to be suffered as a consequence of Employee's breach of this Agreement. The parties acknowledge that this provision shall survive the termination of this Agreement. Notwithstanding anything herein to the contrary, Employee acknowledges and agrees that information regarding the internal operations, actions, plans, statements (other than public statements), or activities of the Tribe, the Casino, the Board, the Tribal Board of Directors, or the Tribal Council, or any of their officers, employees, members or representatives (including personal information), are included within the meaning of confidential or proprietary information herein and shall be protected as such.

9. **Assignment.** This Agreement may be assigned by the Authority, on behalf of itself or the Casino, to any entity formed by the Tribe or the Authority for the express purpose of operating the Casino and any related economic development activities. This Agreement contemplates the personal services of Employee and neither this Agreement nor any of the rights herein granted to Employee or the duties assumed by him hereunder may be assigned by him.

# 762881_v5

10. **Miscellaneous.**

(a) Employee warrants and represents that there are no restrictions to which he is subject or agreements to which he is a party that would be violated by his execution of this Agreement and his employment hereunder.

(b) This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the Dry Creek Rancheria and the State of California.

(c) No amendment to this Agreement or any attempted waiver of a provision of this Agreement shall be effective unless in writing and signed by the parties to this Agreement.

(d) Any controversy that arises between Employee and the Casino or the Authority regarding the rights, duties or liabilities hereunder of either of them, shall be settled by binding arbitration under the Uniform Arbitration Act as adopted by the State of California. In no event shall any liability of the Tribe, the Authority or the Casino or any of them, exceed an amount equal in total to three (3) months of the Base Compensation for a one year period.

The Parties have executed this Agreement on November 8, 2005, as of the Effective Date hereof.

RIVER ROCK ENTERTAINMENT AUTHORITY, a government Instrumentality of the DRY CREEK RANCHERIA BAND OF POMO INDIANS, a federally recognized Indian tribe, on behalf of its governmental economic development project, the RIVER ROCK CASINO.

By: _____
Name: HARVEY HOPKINS,
Its: Chairman of the River Rock Board of Directors

EMPLOYEE

_____
NORMAN RUNYAN

# 762281_v8

7

# 762281_v8

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonomasuperiorcourt.com | (FOR COURT USE ONLY)<br><br>ENDORSED<br>FILED<br>MAR 0 7 2008<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
|---|---|
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number: 242491 |

## A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT
## AND WITH ANY CROSS-COMPLAINT

1. **THIS ACTION IS ASSIGNED TO HON.** _____ROBERT S. BOYD_____**FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. A Case Management Conference has been set at the time and place indicated below:

| Date: JUL 1 0 2008 | Time: | Courtroom: |
|---|---|---|
| Location: | 3035 CLEVELAND AVE STE 200<br>SANTA ROSA CA 95406 | 9-1 | 330p |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://www.sonomasuperiorcourt.com/tentative/index.php.

## ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:

If, on the date shown above, you are not in compliance with timely filing requirements stated in California Rules of Court, Rules 3.110 and/or 3.725, you must then and there show cause why this Court should not impose monetary and/or terminating sanctions.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| ADR INFORMATION SHEET<br>(Sonoma County Superior Court Rules, Rule 16) | CASE NUMBER: |
|---|---|
| (Check one): ☐ UNLIMITED CASE<br>(Amount demanded exceeds $25,000) ☐ LIMITED CASE<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:
"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

A. **MEDIATION:** Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**B. ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C. EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D. PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)

| | | | |
|---|---|---|---|
| ☐ | Mediation | ☐ | Early Neutral Evaluation |
| ☐ | Non-binding Private Arbitration | ☐ | Binding Private Arbitration |
| ☐ | Voluntary Settlement Conference | ☐ | Summary Jury Trial |
| ☐ | Other | ☐ | Judicial Arbitration |

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: _____          _____
                                                          Signature of Party

Date: _____          _____
                                                          Signature of Party

Date: _____          _____
                                                      Signature of Attorney for Party
                                    ☐ Additional signatures are attached

**NOTE: This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                      FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
600 ADMINISTRATION DRIVE, ROOM 107-J
SANTA ROSA, CALIFORNIA 95403-2878

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|
| (Check one):  ☐ UNLIMITED CASE<br>(Amount demanded exceeds $25,000) ☐ LIMITED CASE<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:
☐ Mediation                          ☐ Non-binding Private Arbitration
☐ Binding Private Arbitration        ☐ Private Settlement Conference
☐ Early Neutral Evaluation           ☐ Judicial Arbitration

The ADR process will be conducted by (name of individual): _____

Provider's Address: _____

Provider's Telephone: _____ Fax _____ E-mail address: _____
☐ No agreement
The ADR process will be conducted on (date): _____
☐ No agreement

☐ The parties have reached agreement as to the payment of fees of ADR provider.
☐ The parties have not reached agreement as to the payment of fees of ADR provider.

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or party without attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

(Date and Sign) Attorney or party without attorney (Sign in blue ink)

☐ Additional signatures are attached

CV-7 (Rev. June 14, 2004)          STIPULATION AND ORDER REFERRING MATTER TO ADR          SCR. Rules 16 & 22

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

## ORDER

**A REVIEW HEARING IS SCHEDULED AS FOLLOWS:**

_____          _____
Date                                              Time

All parties must appear at the Review Hearing.  In the event that the case is settled and a dismissal, a notice of settlement or a judgment is filed at least 3 court days before the scheduled Review Hearing, the Review Hearing will be dropped  and no one should appear. You must check the phone message at _____ or go to http://www.SonomaSuperiorCourt.com/tentative/index.html where the tentative dispositions will be posted the day before you are scheduled to come to court to determine if you must appear.

*THE FIRST ATTORNEY OR PARTY LISTED  MUST FILE PROOF OF SERVICE OF A COPY OF THIS ORDER ON ALL PARTIES.*

_____          _____
Date                                              JUDGE OF THE SUPERIOR COURT

MAR-14-2008(FRI) 14:50    ONE LEGAL                    (FAX)1+510+873+0984

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one): ☐ UNLIMITED CASE (Amount demanded exceeds $25,000) ☐ LIMITED CASE (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:                Time:                Dept:        Div.:        Room:
Address of court (if different from the address above):

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. Party or parties (answer one):
   a. ☐ This statement is submitted by party (name):
   b. ☐ This statement is submitted jointly by parties (names):

2. Complaint and cross-complaint (to be answered by plaintiffs and cross-complainants only)
   a. The complaint was filed on (date):
   b. ☐ The cross-complaint, if any, was filed on (date):

3. Service (to be answered by plaintiffs and cross-complainants only)
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served (specify names and explain why not):
      (2) ☐ have been served but have not appeared and have not been dismissed (specify names):
      (3) ☐ have had a default entered against them (specify names):
   c. ☐ The following additional parties may be added (specify names, nature of involvement in case, and the date by which they may be served):

4. Description of case
   a. Type of case in ☐ complaint ☐ cross-complaint    (describe, including causes of action):

| Form Adopted for Mandatory Use Judicial Council of California CM-110 [Rev. January 1, 2007] | CASE MANAGEMENT STATEMENT | Cal. Rules of Court rules 3.720–3.730 www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date (indicate source and amount), estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request  ☐ a jury trial  ☐ a nonjury trial  *(if more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation (to be answered for each party)**
The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption  ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10.  **Alternative Dispute Resolution (ADR)**
a.  Counsel  ☐ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.   The party or parties are willing to participate in *(check all that apply)*:
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify)*:

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**
  ☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:
  b. Reservation of rights: ☐ Yes ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
  ☐ Bankruptcy ☐ Other *(specify)*:
Status:

**14. Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
  ☐ Additional cases are described in Attachment 14a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**
  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
a. ☐ The party or parties have completed all discovery.
b. ☐ The following discovery will be completed by the date specified (describe all anticipated discovery):

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated (specify):

**18. Economic Litigation**
a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed (if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):

**19. Other Issues**
☐ The party or parties request that the following additional matters be considered or determined at the case management conference (specify):

**20. Meet and confer**
a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court (if not, explain):

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following (specify):

**21. Case management orders**
Previous case management orders in this case are (check one): ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached (if any):** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▶ _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY)
                                        ☐ Additional signatures are attached

CM-110 [Rev. January 1, 2007]          **CASE MANAGEMENT STATEMENT**                    Page 4 of 4

## · NOTICE

## SONOMA COUNTY SUPERIOR COURT
## CIVIL DIVISION PRO TEM JUDGE PROGRAM

This is to advise that the Civil Division's Pro Tem Judge Program is available to those civil litigants who wish to expedite trial by stipulating to the use of an attorney to serve as Pro Tem Judge. The court maintains a Pro Tem Judge panel, which consists of attorneys sworn by the Court and willing to serve in this capacity. Parties may stipulate to a trial by a Pro Tem Judge of their choice and may inform the Court of such a stipulation by contacting Connie Origer, the Pro Tem Judge Program Coordinator, at (707) 521-6726.

The Program offers three primary benefits to litigants: (1) the date and location of trial can often be scheduled by stipulation of the parties; (2) the trial will take place on the agreed date for trial, thus eliminating the need to trail other cases, and; (3) the trial can be scheduled for full days on a 5 day per week basis, thus shortening the time to try the case. The Program is available for both jury and court trials.

For cases that are tried in 5 days or less (9:00 a.m. to 5:00 p.m., jury or non-jury), the Pro Tem Judge serves at no cost to the parties. For trials that exceed 5 days in length, the parties and the Pro Tem Judge are obliged to agree to a daily fee, not to exceed $1,200 per day, for each full or partial day of trial beginning with the 6th day of trial. Additionally, the Court will charge the parties $656.72 for each day of trial for the Clerk and Court Reporter. The Court discourages the use of overtime and will charge an additional cost of $123.14 for each hour or portion thereof exceeding 8 hours in any day. The parties are also responsible for the payment of jury fees as in any other civil case. Cases in which there are fee waivers are eligible for the Program.

The Court is enthusiastic about this Program and urges all counsel to discuss the availability of the Program and the feasibility of its use with opposing counsel. Counsel must also obtain permission from clients to participation in the Program. To participate in the Program, contact Ms. Origer as soon as possible to discuss trial dates. Ms. Origer will generate and mail all required stipulations and orders with respect to the Program. Parties may obtain additional information on this program by contacting Ms. Origer or by reviewing the court's website at www.sonomasuperiorcourt.com.

Plaintiff is ordered to serve this Notice on all parties and to certify by proof of service filed with the Court that such service has been accomplished within 60 days of the filing of the Complaint.

---

CV-41, Revised 1/1/08    PETALUMA PRO TEM JUDGE PROGRAM NOTICE

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name & Address): | FOR COURT USE ONLY |
|---|---|
| Telephone No.:                          FAX No.: | |
| ATTORNEY FOR (Name):                     Bar No. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 521-6500 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

## NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION
### (Sonoma County Superior Court Local Rule 16)

Name of Mediator Selected: _____

   PLEASE TAKE NOTICE that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. PLEASE NOTE: you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts www.courtinfo.ca.gov.

   If you are not a member of the Sonoma County Superior Court panel of mediators, in order to serve as mediator in this case, you must complete the acceptance below (see CRC Rule 3.851(a) (2)), sign it in the space provided, and file the completed Notice with your original signature with the Court not less than five days before commencement of the mediation. Please also provide a courtesy copy of the completed and signed Notice to the ADR Program Coordinator, 1450 Guerneville Road, Building G, Santa Rosa, California 95403 or by facsimile transmission to (707) 521-6756.

   If you are mediating a case referred to court-connected mediation during calendar year 2007, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court Local form CV-36) within five (5) days after completion or other termination of the mediation. The completed questionnaire may be mailed or faxed to ADR Program Coordinator at the above address or FAX number. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court www.sonomasuperiorcourt.com.

   If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 561-6500 or ADR@sonomacourt.org.

### MEDIATOR'S ACCEPTANCE

I, _____ hereby agree to mediate the above-captioned matter subject to
            (print name)

the conditions stated in this notice.


Dated: _____    _____
                                              (Mediator's Signature)

CV-35(Revised 1/1/08)    **NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION** Page 1 of 1

MAR-14-2008(FRI) 14:51    ONE LEGAL    (FAX)1+510+873+0984    P. 045/045

County of Sonoma
CLERK OF THE SUPERIOR COURT

Receipt No: 04/07/2008 14:35

Pan Canon CIVIL COMPLAINT
BTN: 846451

Amount: $320.00

Tender type: Check
Check # 8468840

Amount: $320.00
Change: $0.00

Thank You

# EXHIBIT C

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name & Address*): | *FOR COURT USE ONLY* |
|---|---|
| Telephone No.:                    FAX No.: | |
| ATTORNEY FOR (Name):                    Bar No. | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 521-6500 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

## NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION
### (Sonoma County Superior Court Local Rule 16)

**Name of Mediator Selected:** _____

    **PLEASE TAKE NOTICE** that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. **PLEASE NOTE:** you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts www.courtinfo.ca.gov.

    If you <u>are not</u> a member of the Sonoma County Superior Court panel of mediators, in order to serve as mediator in this case, you must complete the acceptance below (see CRC Rule 3.851(a)'(2)), sign it in the space provided, and file the completed Notice *with your original signature* with the Court not less than five days before commencement of the mediation. Please also provide a courtesy copy of the completed and signed Notice to the ADR Program Coordinator; 1450 Guerneville Road, Building G, Santa Rosa, California 95403 or by facsimile transmission to (707) 521-6756.

    If you are mediating a case referred to court-connected mediation during calendar year 2007, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court Local form CV-36) within five (5) days after completion or other termination of the mediation. The completed questionnaire may be mailed or faxed to ADR Program Coordinator at the above address or FAX number. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court www.sonomasuperiorcourt.com.

    If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 561-6500 or ADR@sonomacourt.org.

### MEDIATOR'S ACCEPTANCE

I, _____ hereby agree to mediate the above-captioned matter subject to
        (print name)

the conditions stated in this notice.

Dated: _____    _____
                                       (Mediator's Signature)

CV-35[Revised 1/1/08]    **NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION** Page 1 of 1

RECEIVED
MAR 24 2008

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED

MAR 0 7 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* SCV 242491 |
| --- | --- |

Sonoma County Superior Court
Hall of Justice, Room 107J, 600 Administration Drive
Santa Rosa, CA 95403-2818

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461    JENNIFER ELLIS

| DATE: *(Fecha)* MAR 0 7 2008 | DENISE L. GORDON | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
| --- | --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | SUMMONS | Code of Civil Procedure §§ 412.20, 465 American LegalNet, Inc. \| www.USCourtForms.com |
| --- | --- | --- |

<table>
<tr><td>1</td><td>Law Offices of David S. Secrest</td></tr>
</table>

1   Law Offices of David S. Secrest
    A Professional Corporation
2   David S. Secrest, Esq. [State Bar #142299]
    504 Plaza Alhambra, Suite 201
3   P. O. Box 1029
    El Granada, CA 94018-1029
4   Tel: 650-726-7461
    Fax: 650-726-7471
5   Attorney for Plaintiff
    Norman Runyan

6

7

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10

11  NORMAN RUNYAN,                    Case No.  SCV  242491

12              Plaintiff,            **COMPLAINT FOR DAMAGES:**

13  vs.                               1.      Breach of Contract;
                                      2.      Wrongful Termination in Violation of
14                                    Public Policy [Title 11, United States Code,
    RIVER ROCK ENTERTAINMENT          §525; Rule 13a-15(e), 15d-15(e) Securities
15  AUTHORITY, RIVER ROCK CASINO,     Exchange Act of 1934];
    HARVEY HOPKINS, an individual, and
16  DOES 1-50, inclusive,             3.      Intentional Interference with Contract;
                                      and
17              Defendants.           4.      Intentional Infliction of Emotional
                                      Distress
18
                                                        **BY FAX**
19                    **DEMAND FOR JURY TRIAL**

20          Plaintiff hereby demands a jury trial.

            Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on
21
    information and belief, as follows:
22
                                **THE PARTIES**
23
    1.      Plaintiff NORMAN RUNYAN ("Plaintiff") is an individual and resides in the City of
24
    Cloverdale, County of Sonoma, California.
25
    2.      At all times pertinent, and since 2002, Plaintiff was the Chief Operations Officer of
26
    Defendant River Rock Entertainment Authority (RREA or the "Authority"), and Defendant River
27
    Rock Casino (RRC), located in Geyserville, County of Sonoma, California.
28

Law Offices of
DAVID S. SECREST
A Professional Corporation
504 Plaza Alhambra, Ste 201
P.O. Box 1029
El Granada, CA 94018-1029

                                    -1-

ENDORSED
FILED

MAR 0 7 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

1   3.     Defendant HARVEY HOPKINS ("HOPKINS") is an individual and resides in the County

2   of Sonoma, California. HOPKINS was, at all times pertinent, the Tribe's Chairman and a Member

3   of the RREA Board of Directors. HOPKINS was elected as Chairman of Dry Creek Rancheria on

4   November 20, 2004 and continues to serve as the Tribe's Chairman.  HOPKINS served as River

5   Rock Entertainment Authority's Chairperson from November 20, 2004 to July 14, 2006.  After

6   that date, HOPKINS remained a Member of the RREA Board of Directors.  HOPKINS has been a

7   licensed excavating contractor for 29 years, began a professional career in construction in 1970,

8   and is a licensed excavating contractor.  HOPKINS currently owns American Indian Management

9   Inc. Trucking Company.

10   4.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1-

11   50, inclusive, and therefore sues these defendants by such fictitious names and capacities when

12   ascertained.  Plaintiff is informed and believes and, on that basis, alleges that each fictitiously

13   named defendant is responsible in some manner for the occurrences herein alleged, and that

14   plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

15   5.     Plaintiff is informed and believes and thereupon alleges that, at all times material herein,

16   each of the defendants was the agent, employee and/or working in concert with his co- defendants

17   and was acting within the course and scope of such agency, employment and/or concerted activity.

18   To the extent that certain defendants perpetrated certain acts and omissions, the remaining

19   defendant or defendants confirmed and ratified said acts and omissions.

20   6.     Plaintiff is informed, believes, and thereupon alleges that, at all times material herein, each

21   defendant was completely dominated and controlled by his co-defendant and each was the alter

22   ego of the other.

23   7.     Whenever and wherever reference is made in this complaint to any act by a defendant or

24   defendants, such allegations and reference shall also be deemed to mean the acts and failures to act

25   of each defendant acting individually, jointly, and severally.

26   8.     Whenever and wherever reference is made to individuals who are not named as plaintiff or

27   defendants in this complaint but were employees/agents of Defendants, such individuals at all

28   relevant times acted on behalf of Defendants within the scope of their employment.

Law Offices of
DAVID S. SECREST
A Professional Corporation
304 Pine Alhambra, Ste. 304
P.O. Box 1028
El Cerrado, CA 94916-1028

-2-

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No.
**Complaint for Damages**

## FACTS COMMON TO ALL CAUSES OF ACTION

9.      Until his unlawful termination of employment as alleged herein, Plaintiff was Chief Operations Officer of RREA since October 2002. Plaintiff acted as Chief Executive Officer and General Manager from November 8, 2005 through April 13, 2006, following the resignation of RREA's former Chief Executive Officer in November 2005. Plaintiff's total compensation in 2006 was $301,939.55.

10.     There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY and RIVER ROCK CASINO. A true and correct copy of the Employment Agreement is attached hereto as Ex. "A."

11.     RREA owns and operates the RIVER ROCK CASINO, a gaming and entertainment facility located on the Tribe's reservation, approximately 75 miles north of San Francisco, California. RIVER ROCK CASINO is a 62,000 square-foot gaming and entertainment facility, which is located in the Alexander Valley, and is open 24-hours a day, seven days a week.[1]

12.     The Compact requires the Tribe to carry public liability insurance with initial limits of at least $5.0 million for personal injury and property damage claims. The Tribe is required to waive its sovereign immunity to the extent of the $5.0 million liability insurance limits. Thus, for purpose of this action, sovereign immunity has been legally waived and is no defense to the claims made in this action by any defendant.

13.     According to the Form 10-K filed with the Securities and Exchange Commission April 17, 2007, Defendant RREA is a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians of California (the "Tribe"). The Tribe is a federally recognized Indian tribe with 947 enrolled members, with an approximately 75-acre reservation in Sonoma County, California. RREA was formed in 2003 as an unincorporated governmental instrumentality of the Tribe, to own and operate Defendant RIVER ROCK CASINO in Sonoma County, California. The River Rock Casino had previously operated as a wholly owned governmental operating property of the Tribe.

---

[1] Paragraphs 11-20 are alleged on information and belief.

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
364 PLACER AVENUE, STE 104
P.O. BOX 1029
EL GRANADA, CA 94018 1029

-3-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
**Complaint for Damages**

14.    The Indian Gaming Regulatory Act of 1988, ("IGRA") as amended, permits federally recognized Indian tribes to conduct casino gaming operations on certain Indian lands, subject to, among other things, the negotiation of a compact with the affected state.  The Tribe and the State of California entered into a compact (the "Compact") in September, 1999, which became legally effective when it was approved by the U.S. Department of the Interior and notice of approval was published in the Federal Register in May, 2000.  The Compact authorizes certain forms of Class III casino gaming, including slot machines and house-banked card games.

15.    RREA must maintain disclosure controls and procedures that are designed to ensure that the information required to be disclosed in reports filed with, or furnished to the SEC, pursuant to the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is recorded, processed, summarized and reported within the time periods specified in the SEC's rules, regulations and forms, and that such information is accumulated and communicated to our management, including its Chief Executive Officer, Assistant Financial Controller (Principal Financial Officer) and Chief Operations Officer, as appropriate, to allow timely decisions regarding required disclosure based on the definition of "disclosure controls and procedures" in Rule 13a-15(e) and 15d-15(e) of the Exchange Act.

16.    On November 7, 2003, RREA issued and sold Notes in a private placement to certain "qualified institutional buyers" pursuant to Regulation 144A of the Securities Act of 1933, as amended (the "Notes Offering").  On June 21, 2004, pursuant to a registration rights agreement entered into in connection with the issuance of the Notes, RREA consummated an offer to exchange all of the Notes for $200.0 million in aggregate principal amount of 9-3/4% senior notes due 2011 (the "Outstanding Notes") registered with the Securities and Exchange Commission. The terms of the Outstanding Notes are substantially identical to the terms of the Notes, except that the transfer restrictions and registration rights applicable to the Notes do not apply to the Outstanding Notes.  RREA did not receive any additional proceeds from the exchange offer.  The Outstanding Notes and the Notes were issued under an Indenture, dated as of November 7, 2003 (the "Indenture"), among RREA, the Tribe and U.S. Bank National Association, as trustee.  The terms of the Outstanding Notes include those stated in the Indenture, as well as those made part of

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
304 PINE ALHAMBRA, STE. 104
P.O. Box 1035
El Granada, CA 91018-1035

-4-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
**Complaint for Damages**

1     the Indenture by reference to the Trust Indenture Act of 1939, as amended.

2     17.     The Indenture includes affirmative and negative covenants that limit RREA's ability to

3     borrow money, create liens, sell assets, engage in transactions with affiliates, engage in other

4     businesses, open other gaming facilities, engage in certain mergers and consolidations, make

5     certain investments, make certain accelerated payments on our indebtedness that is subordinated to

6     the Outstanding Notes, and make payments to the Tribe.

7     18.     RREA is also governed by a five-member Board of Directors consisting of the same five

8     members as those of the Tribe's Board of Directors.  The Tribe's Board of Directors is elected

9     biennially by the Tribal Council (the approximately 528 voting members of the Tribe), and

10    includes a Chairperson, a Vice Chairperson, a Secretary-Treasurer and two members-at-large.

11    19.     The Indenture provides, at Section 4.10, as follows:

**Transactions with Affiliates.**

12    The Authority shall not make any payment to, or sell, lease,
transfer or otherwise dispose of any of its properties or assets to, or purchase

13    any property or assets from, or enter into or make or amend any transaction,
contract, agreement, understanding, loan, advance or Guarantee with, or for the

14    benefit of, any Affiliate (each, an "Affiliate Transaction"), unless:

15            (a) the Affiliate Transaction is on terms that are no less
favorable to the Authority than those that would have been obtained in

16    a comparable transaction by the Authority with an unrelated Person;

17            (b) with respect to any Affiliate Transaction or series of
related Affiliate Transactions involving aggregate consideration in

18    excess of $1.0 million, the Authority delivers to the Trustee a
resolution of its Board of Directors set forth in an Officers'

19    Certificate certifying that the Affiliate Transaction complies with
this Section 4.10 and that the Affiliate Transaction has been approved

20    by a majority of the disinterested members of its Board of Directors,
provided, that if there are no disinterested members of the Board of

21    Directors, such compensation arrangements must be approved unanimously

22    by the members of the Board of Directors; and

            (c) with respect to any Affiliate Transaction or series of

23    related Affiliate Transactions involving aggregate consideration of
$7.5 million or more, the Authority delivers to the Trustee an opinion

24    as to the fairness to the Authority of that Affiliate Transaction from
a financial point of view issued by an accounting, consulting,

25    appraisal or investment banking firm of reputable standing.

26    The following items shall not be deemed to be Affiliate Transactions and shall not be
subject to the provisions of the prior paragraph:

27            (1) any employment agreement or arrangement entered into by
the Authority in the ordinary course of business of the Authority;

28

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
904 Plaza Alhambra, Ste. 204
P.O. Box 1690
El Granada, CA 94018-1690

-5-

1             (2) reasonable compensation paid to, and indemnities provided
on behalf of, officers, directors or employees of the Authority;

2             (3) transactions with Persons in whom the Authority owns an
Equity Interest, so long as the remaining equity Holders of such

3 Persons are not Affiliates of the Authority;

            (4) contractual arrangements existing on the date hereof, any

4 arrangements disclosed in the Offering Memorandum and any renewals,
extensions and modifications thereof that are not materially adverse to

5 the Holders of the Notes;

            (5) Restricted Payments, Permitted Payments, Service Payments,

6 Permitted Investments and other payments and distributions to the

7 extent permitted by Section 4.07 hereof; and

            (6) reasonable bid preferences to Tribal members and their

8 businesses in accordance with Tribal policy.

9 20.     The Indenture provides, at Section 10.01 a (iii) and (iv), as follows:

10

**Covenants of the Tribe:**

11

            (a) The Tribe shall not do, and shall not permit any of its

12 representatives, political subunits or councils, agencies,
instrumentalities or enterprises, directly or indirectly, except as

13 required by federal or state law or the Compact to do, any of the
following:..

14             (iii) deny access by the Authority or patrons of the
Gaming Business to Key Project Assets or otherwise restrict or

15 eliminate the right of the Authority to conduct gaming
operations at the Project in a manner that would be materially

16 and adversely affect the Gaming Business;

            (iv) take any other action, enter into any agreement,

17 amend its constitution or amend or enact any ordinance, law,
rule or regulation that would have a material adverse effect

18 on the economic interests of holders of the Notes; including,
without limitation, taking any action to engage in the Gaming

19 Business in California other than through the Authority;...

20

21.     From approximately October, 2005, until the present date, HOPKINS engaged in

21 systematic violations of the Indenture, specifically Sections 4.10, 10.01 a (iii) and (iv), which also

22 constituted an ongoing violation of Rule 13a-15(e) and 15d-15(e) of the disclosure controls and

23 procedures of the Exchange Act, by controlling the activities, developmental and otherwise, of

24 RREA, to his own financial and pecuniary benefit, and contrary to the benefit of RREA, the Tribe,

25 and the members, agents, officers and employees of RREA.

26 22.     HOPKINS interfered with the business operations of RIVER ROCK CASINO,

27 intimidating its vendors and employees, and prolonging budget formation and approval processes.

28

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
304 Pine Alhambra, Etc. 304
P.O. Box 1020
El Grande, CA 94046-1020

-6-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
**Complaint for Damages**

1    Plaintiff is informed and believes, and thereon alleges, that HOPKINS' interference resulted in the

2    loss of tens of millions of dollars in revenue to the Tribe, RREA, and RIVER ROCK CASINO.

3    23.    Plaintiff is informed and believes, and thereon alleges, that in April 2006, HOPKINS

4    formed, took ownership of, and operated, a corporate entity called Dry Creek Development

5    Company (DCDC), using HOPKINS' Contractors license.

6    24.    In violation of the express terms of the Indenture, which required Affiliated Transactions

7    by RREA to be at an arm's length with the Tribe, and properly documented based upon fair

8    bidding, HOPKINS forced RIVER ROCK CASINO to use the contracting services of DCDC,

9    improperly "steering" RREA business to that entity to his own financial benefit, at a higher cost

10    and with bad results, including: Road patching; roof repair on the parking garage; planting the

11    parking garage planters, which voided a guarantee with landscaping company; paying the Tribe

12    $20,000 a month for their campground/RV center, with no benefit to the operations of RREA; and

13    similar unethical, illegal, self-dealing actions.

14    25.    In August of 2007, David Gunn, Project Manager, advised Plaintiff and Defendants that the

15    Project would run out of funds by end of September. Plaintiff and Defendants conducted numerous

16    meetings discussing options, specifically how to slow down the Project until it was prepared for

17    market. HOPKINS nonetheless insisted upon, and improperly directed, full steam with

18    infrastructure work.

19    26.    In October, 2007, RREA's CFO was in discussion with Merrill Lynch about the funding

20    situation, the fact that the Project was almost out of funds, and with respect to negotiation of

21    additional funds on a "bridge loan." RREA was attempting to acquire funding for an additional

22    $30,000,000.  Merrill Lynch representatives stated it had the Tribe's current balance sheet, and the

23    Tribe had $14,800,000 in its account.  RREA's CFO insisted that he was looking at the Tribe's

24    current balance sheet, and it showed zero funds available.

25    27.    Several days later there was conducted a meeting of the RREA Board, including

26    HOPKINS, BEK's Management Team, and all RREA Officers. The discussion was how the Tribe

27    had $14,800,000 in its account. BEK's Management Team was adamant that their coding of the

28    receipts and expenses showed a different scenario. $11,000,000 was allocated to master plan and

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
101 Plaza Alhambra, Ste. 104
P.O. Box 7028
El Granada, CA 94018-7028

-7-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
*Complaint for Damages*

1   $27,000,000 to infrastructure. The Tribe was asked how it paid for the extra $6,000,000 for the

2   Master Plan, since RREA had not approved or dispensed any funds to them. The Tribal CFO said

3   they had "used all their resources," and RIVER ROCK CASINO needed to reimburse the Tribe

4   $6,000,000. It was transferred a few days later. At the specific direction of HOPKINS, a "re-

5   classification of expenses" thereafter ensued, without appropriate approval by RREA, without

6   appropriate explanation to the appropriate recipients of such disclosures.

7   28.    David Gunn of BEK advised that he would attempt to reconcile the invoices, and attempt to

8   find out if the "re-classification was appropriate." Gunn was visibly confused as to who would

9   "reclassify" *his invoices.* One week later, HOPKINS "released" Gunn of BEK, from his position

10  as RREA's Team leader for BEK, and was transferred to another post within BEK.

11  29.    Plaintiff was not informed of how the above-alleged monies were "reclassified," or why the

12  Tribe had so much money in reserve in from the bridge loan.

13  30.    As a direct result of the foregoing, Plaintiff opposed these actions in discussions and

14  communications with the RREA Board. The RREA Board represented to Plaintiff that it would

15  obtain an independent audit to "find out what was going on," and that it needed a "third party

16  review." Plaintiff also informed the RREA Board that once we get permanent funding the $40M

17  bridge loan debt would need to be properly transferred to RIVER ROCK CASINO, and RREA

18  would need to reconcile these discrepancies, and report to the SEC and Investment community.

19  31.    No audit was pursued.

20  32.    Plaintiff opposed the actions by HOPKINS, by timely and repeatedly advising the RREA

21  Board and RREA officers and Directors, and demanding an independent audit.

22  33.    As a direct and proximate result, Defendants intentionally retaliated against Plaintiff, by

23  forcing Plaintiff's resignation from employment based on false and pretextual grounds, and by

24  breaching and/or causing the breach of Plaintiff's Employment Contract, as alleged herein.

25  34.    On November 14, 2007, Defendants forced Plaintiff to resign his employment under threat

26  of immediate termination, without benefits, which conduct caused a real and legitimate

27  apprehension by Plaintiff of economic duress. Such conduct by Defendants caused Plaintiff great

28  and irreparable financial hardship, damages to reputation, and extreme emotional distress.

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
304 PINE ALAMEDA, SEC. 304
P.O. Box 1629
El Granada, CA 94018 1629

-8-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
**Complaint for Damages**

35.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff suffered damages, including, but not limited to, severe emotional distress; loss of professional reputation; loss of employment; and loss of employability.

36.    As a direct and proximate result of the actions and conduct of Defendants, Plaintiff is informed and believes, and thereon alleges, that Plaintiff has sustained and will sustain financial damages in excess of $10,000,000.

### FIRST CAUSE OF ACTION
**Breach of Contract**
(Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

37.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 36 in this Complaint as if they were fully set forth here.

38.    There existed a valid contract, specifically an Employment Agreement, between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY/ RIVER ROCK CASINO.  A true and correct copy of the Employment Agreement is attached hereto as **Ex. "A."**

39.    Plaintiff performed all that he was obliged to do under the Employment Agreement.

40.    Defendants breached the Employment Agreement, despite having had the ability to perform.

41.    Defendants terminated the Agreement without good cause as required under the Employment Agreement.

42.    Defendants unjustifiably and inexcusably failed to perform their obligations under the contract, despite having had the ability to perform.

43.    As a direct and proximate result of defendants' conduct, Plaintiff has suffered and will continue to suffer economic and financial losses; related, consequential damages; and a loss of earnings and other employment benefits including, but not limited to, the fixed or ascertainable value of his Employment Agreement and the benefits derived from the Employment Agreement. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

### SECOND CAUSE OF ACTION
**Wrongful, Constructive Termination in Violation of Public Policy**
[Title 11, U.S. Code, §525; 1934 Securities and Exchange Act, Rule 13a-15(e),15d-15(e)]
(Against Defendants RIVER ROCK ENTERTAINMENT AUTHORITY)

Law Offices of
DAVID S. SECREST
A Professional Corporation
204 Plaza Alhambra, Ste. 304
P.O. Box 1070
El Granada, CA 94018-1070

-9-

44.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 43 this Complaint as if they were fully set forth here.

45.    As alleged herein, on November 14, 2007, Defendants forced Plaintiff to resign his employment under threat of immediate termination, without benefits, which conduct caused a real and legitimate apprehension by Plaintiff of economic duress.  Such conduct by Defendants caused Plaintiff great and irreparable financial hardship, damages to reputation, and extreme emotional distress.

46.    The stated reason for the decision by Defendants to force Plaintiff to resign his employment under threat of immediate termination, without benefits, was his prospective petition for protection under Chapter 13, Title 11, United States Code.

47.    It is unlawful for an employer to terminate the employment of, or discriminate with respect to employment against any person that seeks to, or does, avail himself or herself of the legal protections against financial insolvency know as bankruptcy.

48.    Title 11, United States Code, §525, provides legal protection against discriminatory treatment in private employment relationships:

> "No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act; has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act." Title 11, United States Code, §525(b) (1) – (3).

49.    Plaintiff's termination from employment was a direct result of his expressing opposition to the illegal activity alleged herein, which opposition constituted protected activity under applicable, firmly established public policy, and federal law, specifically Title 11, United States Code, §525.

50.    Additionally and alternatively, Plaintiff's termination from employment was a direct result of his opposition to the continuous and systematic violations by HOPKINS of the terms and conditions of Securities and Exchange Act, Rule 13a-15(e),15d-15(e), which opposition constituted protected activity under applicable law.

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
304 Plaza Alhambra, Ste. 304
P.O. Box 1038
El Granada, CA 94018-1039

51.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other employment benefits, loss of income, loss of employability, and damage to professional reputation. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

52.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious, fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of defendants' actions. Defendants and each of them, and their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants, pursuant to California Civil Code Section 3294.

### THIRD CAUSE OF ACTION
**Intentional Interference with Contract**
(Against Defendant HARVEY HOPKINS)

53.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 52 in this Complaint as if they were fully set forth here.

54.    At all times pertinent, there was an enforceable contract of employment between Plaintiff and Defendants RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK CASINO, a contractual relationship.

55.    By engaging in the conduct alleged herein, HOPKINS' intentional acts or conduct was designed to induce a breach or interruption of the contractual relationship.

56.    HOPKINS' intentional acts or conduct were not privileged.

57.    As a direct and proximate result thereof, there was an actual breach or disruption of the contractual relationship.

58.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, psychiatrists and other health professionals, and for other incidental

Law Offices of
DAVID S. SECREST
A Professional Corporation
304 Plaza Alhambra, Ste. 304
P.O. Box 1039
El Granada, CA 94018-1039

-11-

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No.
**Complaint for Damages**

1    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

2    employment benefits, loss of income, loss of employability, and damage to professional reputation.

3    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

4    59.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

5    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

6    and for the deleterious consequences of defendants' actions. Defendants and each of them, and

7    their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of

8    each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants,

9    pursuant to California Civil Code Section 3294.

10                       **FOURTH CAUSE OF ACTION**
                      **Intentional Infliction of Emotional Distress**
11                            (Against All Defendants)

12    60.    Plaintiff hereby realleges and incorporates herein by reference each and every allegation

13    contained in Paragraphs 1 through 59 in this Complaint as if they were fully set forth here.

14    61.    The conduct of defendants, and each of them, as alleged above, was outrageous and outside

15    the normal scope of the employment relationship. Defendants, and each of them, knew that their

16    conduct would result in plaintiff's severe emotional distress, and said conduct was perpetrated by

17    defendants, and each of them, with the intent to inflict, or with reckless disregard of the probability

18    of inflicting, humiliation, mental anguish, and severe emotional distress upon plaintiff. Such

19    conduct did, in fact, result in severe emotional distress caused to Plaintiff.

20    62.    As a direct and proximate result of defendants' unlawful conduct, Plaintiff has suffered and

21    will continue to suffer physical injuries, pain and suffering, and extreme and severe mental anguish

22    and emotional distress. Plaintiff has incurred and will continue to incur medical expenses for

23    treatment by physicians, psychiatrists other health professionals, and for other incidental

24    medical expenses. Plaintiff has suffered and continues to suffer a loss of earnings and other

25    employment benefits, loss of income, loss of employability, and damage to professional reputation.

26    Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

27    63.    The conduct of defendants, and/or their agents/employees, as alleged herein was malicious,

28    fraudulent, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights

LAW OFFICES OF
DAVID S. SECREST
A PROFESSIONAL CORPORATION
201 Plaza Alhambra, Ste. 101
P.O. Box 1920
El Granada, CA 94018-1920

-12-

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No.*
**Complaint for Damages**

1  and for the deleterious consequences of defendants' actions. Defendants and each of them, and

2  their agents/employees or supervisors, authorized, condoned, and ratified the unlawful conduct of

3  each other. Consequently, Plaintiff is entitled to punitive damages against each of said defendants,

4  pursuant to California Civil Code Section 3294.

5  ### PRAYER FOR RELIEF

6  WHEREFORE, Plaintiff prays judgment against Defendants as follows:

7      1.    For compensatory and general damages in an amount according to proof;

8      2.    For punitive damages against all defendants under Civ. Code §3294;

9      3.    For statutory attorneys' fees and costs;

10      4.    For prejudgment and post-judgment interest according to any applicable provision of law, according to proof;

11

12      5.    For costs of suit;

13      6.    For such other and further relief as the court deems proper.

    7.    Respectfully submitted.

14

15  Dated: March 4, 2008

16      Law Offices of David S. Secrest

17      A Professional Corporation

18

19      David S. Secrest
    Attorney for Plaintiff Norman Runyan

20

21

22

23

24

25

26

27

28

*Norman Runyan v. River Rock Entertainment Authority, et al.;* Sonoma Superior Court No.
**Complaint for Damages**

## VERIFICATION

I, Norman Runyan, declare as follows:

1.    I am the plaintiff in this action.

2.    I certify and declare that I have read the foregoing VERIFIED COMPLAINT FOR DAMAGES and know its contents, and the matters stated in the document described above are true.

3.    As to matters alleged on information and belief, I am informed, and believe, and on that basis allege, that those matters are true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 4ᵉ day of March, 2008 at Geyserville, California.

_____
             Norman Runyan

-14-

EXHIBIT "A"



## RIVER ROCK ENTERTAINMENT AUTHORITY

# EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is entered into as of the 14th day of October, 2005 ("Effective Date") by and between the River Rock Entertainment Authority ("Authority"), a governmental instrumentality of the Dry Creek Rancheria Band of Pomo Indians ("Tribe"), on behalf of its Tribal governmental gaming project, the River Rock Casino ("Casino"), and Norman Runyan ("Employee"), and succeeds and supersedes that certain Employment Agreement ("Initial Agreement") made and effective as of the 14th of October, 2002 by and between the Tribe, predecessor in interest to the Authority, and Employee.

The parties hereto expressly intend that this Agreement describe Employee's relationship as an employee of the Casino and not as a contractor, including but not limited to not being a contractor as that term is used in 25 USC § 2711 and 25 CFR § 502.15. The parties have purposefully structured the terms and provisions of this Agreement consistent with, and in furtherance of, this expressed intent.

1. **Employment.** On and subject to the terms and conditions of this Agreement, the Casino hereby employs Employee, and Employee hereby continues his employment by the Casino, as its Chief Operations Officer (COO). As COO, Employee shall undertake responsibility for the day-to-day operational responsibilities for the Casino, assist in the development of the Casino and other gaming related entities of the Authority as the Board shall direct, and carry out such other duties as are set forth in Section 2. Employee shall report to, be accountable to and work under the authority of the Authority's Board of Directors (the "Board"), the CEO of the Authority, the Casino General Manager, and such other Tribal entities as the Authority or, if the Authority shall cease to exist, the Tribe may thereafter designate.

2. **Reporting and Duties.** Employee shall report directly to the CEO of the Authority and General Manager of the Casino with respect to all operations and expenditures of the Casino and otherwise to the extent requested by the Board. Without limiting the foregoing, Employee shall perform such executive duties as are commonly attendant upon the office of a casino Chief Operations Officer (COO) and such further executive duties as may be specified from time to time by the Board, the CEO or the General Manager (in that order of precedence), which shall include:

*An Enterprise of the Dry Creek Rancheria Band of Pomo Indians*

Tribal Government Offices
190 Foss Creek Circle Suite A, Healdsburg, CA 95448
(707) 473-2106 · (707) 473-2197 Fax

# 762281_v8

(a)    Assisting the CEO/General Manager with the overall responsibility of managing, directing and supervising the design, development, construction and operation of the Casino;

(b)    Enforce the River Rock Casino mission statement;

(c)    Provide leadership to all personnel and management of the Casino;

(d)    In collaboration with Human Resources, responsible for the selection, assignment, re-assignment, structure of any and all employees, department, duties, responsibilities and organizational charts, and the implementation for personnel, wage and benefit policies approved by the Board for the employees of the Casino;

(e)    Assist in the development of short and long term goals and objectives for the operation;

(f)    Preparation of annual operating budgets and required modifications to such budgets, subject to the approval of the Board, and implementation of such budgets;

(g)    Oversee the marketing plan in conjunction with the Marketing Manager, which includes all promotions, sponsorships, advertising, media, and public relations;

(h)    Assist in the analysis of Casino to ensure maximum efficiency;

(i)    Planning and preparation for food and beverage and other services of the Casino;

(j)    Responsible for the overall ambience, maintenance and cleanliness of the Casino;

(k)    Optimize operational efficiency, increase cost effectiveness and ensure that quality assurance programs are adopted and implemented;

(l)    Work with Human Resources in the Recruitment and hiring of managers, supervisors, and employees of the Casino according to the Tribal TERO plan

(m)    Development and implementation of programs for training Tribal members for supervisory and management positions in accordance with the preference policies of the Tribe and the Casino;

2

(n)    Preparation, implementation and direction of Authority and Casino compliance programs, including assurance that the Casinos meets the requirements of the Indian Gaming Regulatory Act, the Tribal-State Gaming Compact between the Tribe and the State of California (the "Compact"), the laws and ordinances of the Tribe and other applicable laws as well as agreements to which the Tribe and/or the Authority is a party;

(o)    Preparation, implementation and direction of programs to assure that the Casino meets all federal, Tribal and Compact requirements for internal controls, including establishment and enforcement of policies designed to maintain the integrity of the Casino and any other Tribal or Authority gaming operations to which Employee is assigned, for the protection of the Tribe, the Authority, the Board, the Casino, its customers and the public in accordance with law and standards in the industry; and.

(p)    Attend all required meetings and trainings.

3. **Term.** The term of this Agreement ("Term") shall commence on the Effective Date and shall end three (3) years after the Effective Date, unless terminated earlier by the parties as provided herein. The parties acknowledge that this agreement succeeds and supersedes the Initial Agreement. It is the intent of the parties hereto that there shall be no gap in the Employee's employment between the expiration and termination of the Initial Agreement and the commencement of the Term, and that Employee's employment shall be deemed to have been continuous from the commencement of the Initial Agreement through the date of termination of this Agreement..

4. **Full-Time Service.** Employee agrees that during the Term of this Agreement unless earlier terminated, he will commit his full time and energies to the duties imposed hereby and, further, agrees that during the term of this Agreement he will not (whether as an officer, director, member, employee, partner, proprietor, investor, security holder, lender, associate, consultant, adviser or otherwise) directly or indirectly, engage in the business of the Casino as a competitor or otherwise without the express prior written consent of the Board in its sole discretion.

5. **Compensation.**

(a) Employee will be paid a base salary of Two Hundred Fifty Thousand Dollars ($250,000.00) per annum ("Base Compensation"), subject to applicable withholding taxes and required deductions.

(b) Payments in discharge of the Base Compensation shall be paid in 1/26 payments thereof every other workweek on the day established for payroll payments to other employees of the Casino.

(c) Employee's Base Compensation shall be increased annually, effective on the anniversary of the Effective Date ("Anniversary Date"), by seven percent (7%) unless otherwise agreed in writing by both parties.

3

(d) Employee shall be paid an annual bonus of not less than seven percent (7%) and not more than twenty-five percent (25%), as determined by the Board in its sole discretion, of the Base Compensation earned for the year in question, payable within 45 days after the Anniversary Date.

(f) Employee will be entitled, on the same basis as other executive employees of the Casino, to participate in and receive benefits under the Casino's benefit plans for executives, if any, as such plans may be modified from time to time, except that Employee will be entitled to seven (7) days of additional Personal Time Off (PTO) in excess of the Casino's normal PTO policy.

(g) The Employee shall be reimbursed all reasonable and necessary business expenses incurred on behalf of his employment during the performance of his duties under this Agreement, subject to the existing reimbursement policy established by the Casino. Such reimbursements shall be supported by adequate record-keeping and other requirements as may be necessary or appropriate to comply with the Internal Revenue Code.

(h) Employee will have the right to be reimbursed for any legal fees incurred as the result of defending himself in any third party lawsuit arising out of Employee's obligations under this Agreement; provided that all such defenses shall be managed and controlled by the Authority and with counsel reasonably approved by Authority. Employee is and will continue to be covered under the Authority's errors and omissions insurance as such insurance covers all members of the Board.

6. **Licensing Issues.** Employee warrants and represents that he is eligible and suitable for a license and background clearance under the Tribe's and State's gaming licensing authority. Employee agrees to timely apply for any license(s) as may be required pursuant to the Compact, the Tribe's gaming ordinances or otherwise required by law, as may be necessary to enable him to engage in his employment hereunder. The Casino shall pay all costs associated with such licensing. Employee will maintain such licenses in good standing as a continuing condition of his employment under this Agreement, and shall notify the Tribal Gaming Commission of any information that is material to, or a change from, any information sought or contained in his Tribal gaming license application or his suitability in general for a gaming license, and shall do so as soon as possible after such information is known to Employee..

7. **Termination.**

(a) Employee may be terminated prior to the end of the Term by the Authority under the following circumstances:

(i) Upon termination, revocation or disapproval of any license required by law to be held by Employee to perform as an employee of a gaming operation of the Tribe, the Authority or the Casino, or if any event renders it unlawful for the Tribe or the

4

Authority to continue to operate the Casino or conduct casino gaming on the reservation; or

(ii) Employee shall commit an act constituting "Cause", Cause being defined as (a) an act of intentional dishonesty against the Tribe, the Authority or the Casino; (b) conviction of any criminal charge involving moral turpitude; (c) the deliberate or intentional refusal by Employee (except by reason of disability) to perform his duties hereunder; (d) gross negligence in the performance of his duties hereunder; or, (e) failure to perform his duties in a manner consistent with his professional obligations after prior sufficient verbal and written warnings; or

(iii) Employee shall die; or

(iv) The Authority shall for any reason cease to conduct the Casino; or

(v) Employee shall become unable to perform the duties and responsibilities set forth in this Agreement by reason of long-term physical or mental disability, defined as a period of disability that exceeds six (6) months; or

(vi) Either party shall give the other party hereto ninety (90) days' written notice of Employee's resignation or termination.

(b) If Employee's employment should be terminated under paragraphs 7 (a)(i), (a)(ii) or (a)(vi) above (provided that this subparagraph (b) shall only apply to paragraph 7 (a)(vi) to the extent that Employee has resigned), then Authority shall within ten (10) days of such termination pay Employee the accrued Base Compensation, bonuses and benefits to the date Employee is terminated, whereupon Authority shall have no further liability or obligation to Employee under this Agreement.

(c) If Employee is terminated under paragraphs 7 (a)(iii), (a)(iv), (a)(v) or (a)(vi) (provided that this subparagraph (c) shall only apply to paragraph 7 (a)(vi) to the extent that Authority has terminated Employee), the Authority shall pay to the Employee on a pro-rata basis the Base Compensation for a period of three (3) months from the date of termination and he shall be eligible for all employee benefits during that three-month period, pro-rated to that period. Employee shall be paid all amounts due him at the time of termination when they would otherwise be paid, including the pro rata share of the bonus for the year in which the termination occurred.

(d) Upon the payment of all or any part of the compensation provided for in this paragraph 7, or its mitigation under this paragraph, the Authority will have no further liability or obligation to Employee under this Agreement or arising from the employment relationship except that obligation provided for in this paragraph 7.

(e) Employee will be liable in damages for all losses and expenses incurred by Authority if he is terminated for cause or if Employee terminates his employment for any reason not authorized herein, with the exception of termination by written notice agreed to by both

5

parties. Any such termination of or by Employee will constitute a waiver by Employee of all claims against the Authority and the Casino except for the accrued Base Compensation, bonus and benefits to the date of his termination as provided for in this Section 7, and subject to any amounts due from Employee.

8. **Confidentiality of Proprietary Information.** Any information acquired by Employee while employed under this Agreement or in any way connected with the Casino or any Tribal or Authority gaming operation, related to employee lists, patron lists, marketing plans, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are acknowledged by Employee to be confidential information belonging to one or more of such entities, and Employee shall not disclose such information without the express written authorization of the Board except in the ordinary course of the business of the Casino. Employee shall, upon termination of this Agreement for any reason whatsoever, turn over to the Board any and all copies he may have of employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the tribe, the Authority or the Casino. Employee acknowledges that employee lists, patron lists, marketing programs, operating procedures and other information proprietary to the Tribe, the Authority or the Casino are confidential and proprietary information of one or more of such entities and the Tribe, the Authority or the Casino, or any of them, may exercise any and all remedies available at law or in equity to enforce this Agreement with respect to non-disclosure of any such proprietary information. Particularly, the parties agree that, because of the nature of the subject matter of this paragraph 8, in event of a threat or danger of disclosure of such information, it could be extremely difficult to determine the actual damages suffered or to be suffered by breach of this Section 8 or to fully repair the harm done by such action. Accordingly, Authority shall be entitled to injunctive relief (both temporary and permanent), it being acknowledged and agreed that any such actual or threatened breach will cause irreparable injury and that money damages alone will not provide an adequate remedy.. Notwithstanding the foregoing, Tribe, Authority and Casino or any of them as may be appropriate shall be entitled to money damages for any loss suffered or to be suffered as a consequence of Employee's breach of this Agreement. The parties acknowledge that this provision shall survive the termination of this Agreement. Notwithstanding anything herein to the contrary, Employee acknowledges and agrees that information regarding the internal operations, actions, plans, statements (other than public statements), or activities of the Tribe, the Authority, the Casino, the Board, the Tribal Board of Directors, or the Tribal Council, or any of their officers, employees, members or representatives (including personal information), are included within the meaning of confidential or proprietary information herein and shall be protected as such.

9. **Assignment.** This Agreement may be assigned by the Authority, on behalf of itself or the Casino, to any entity formed by the Tribe or the Authority for the express purpose of operating the Casino and any related economic development activities. This Agreement contemplates the personal services of Employee and neither this Agreement nor any of the rights herein granted to Employee or the duties assumed by him hereunder may be assigned by him.

6

10. **Miscellaneous.**

(a) Employee warrants and represents that there are no restrictions to which he is subject or agreements to which he is a party that would be violated by his execution of this Agreement and his employment hereunder.

(b) This Agreement and all questions relating to its validity, interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the Dry Creek Rancheria and the State of California.

(c) No amendment to this Agreement or any attempted waiver of a provision of this Agreement shall be effective unless in writing and signed by the parties to this Agreement.

(d) Any controversy that arises between Employee and the Casino or the Authority regarding the rights, duties or liabilities hereunder of either of them, shall be settled by binding arbitration under the Uniform Arbitration Act as adopted by the State of California. In no event shall any liability of the Tribe, the Authority or the Casino or any of them, exceed an amount equal in total to three (3) months of the Base Compensation for a one year period.

The Parties have executed this Agreement on November 8, 2005, as of the Effective Date hereof.

RIVER ROCK ENTERTAINMENT AUTHORITY, a government Instrumentality of the DRY CREEK RANCHERIA BAND OF POMO INDIANS, a federally recognized Indian tribe, on behalf of its governmental economic development project, the RIVER ROCK CASINO,

By: _____
Name: HARVEY HOPKINS,
Its: Chairman of the River Rock Board of Directors

EMPLOYEE

_____
NORMAN RUNYAN

# 762281_v8

7

# 762281_v8

# AMENDED
## SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN

ENDORSED
FILED
MAR 10 2008
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Sonoma County Superior Court<br>Hall of Justice, Room 107J, 600 Administration Drive<br>Santa Rosa, CA 95403-2818 | CASE NUMBER:<br>*(Número del Caso):*<br>SCV-242491 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

| DATE:<br>*(Fecha)* MAR 10 2008 | DENISE L. GORDON | Clerk, by<br>*(Secretario)* | JENNIFER ELLIS | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

(SEAL)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

*AMENDED*

**SUM-100**

## SUMMONS

## *(CITACION JUDICIAL)*

<table>
<tr><td>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER ROCK
CASINO, HARVEY HOPKINS, an individual, and DOES 1-50


**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
NORMAN RUNYAN
</td><td>

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
</td></tr>
</table>

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form.   If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen.  Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas.  Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados.  Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro.  Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

<table>
<tr><td>
The name and address of the court is:
*(El nombre y dirección de la corte es):*
Sonoma County Superior Court
Hall of Justice, Room 107J, 600 Administration Drive
Santa Rosa, CA 95403-2818
</td><td>
CASE NUMBER:
*(Número del Caso):*
</td><td>
SCV-242491
</td></tr>
</table>

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of David S. Secrest, APC [State Bar #142299], 504 Plaza Alhambra, Suite 205, P. O. Box 1029,
El Granada, CA 94018-1029, Tel: 650-726-7461

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

1  Law Offices of David S. Secrest
   A Professional Corporation
2  David S. Secrest, Esq. [State Bar #142299]
   504 Plaza Alhambra, Suite 201
3  P. O. Box 1029
   El Granada, CA 94018-1029
4  Tel: 650-726-7461
   Fax: 650-726-7471
5  Attorney for Plaintiff
   Norman Runyan
6

7

**ENDORSED
FILED**

MAR 1 0 2008

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SONOMA

10

11                                        | Case No.  SCV-242491

12  NORMAN RUNYAN,                        | **AMENDMENT TO VERIFIED COMPLAINT
                                          | FOR DAMAGES**
            Plaintiff,

13

    vs.
14

15  RIVER ROCK ENTERTAINMENT
    AUTHORITY, RIVER ROCK CASINO,
16  HARVEY HOPKINS, an individual, and
    DOES 1-50, inclusive,                            **BY FAX**

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

1   Law Offices of David S. Secrest
    A Professional Corporation
2   David S. Secrest, Esq. [State Bar #142299]
    504 Plaza Alhambra, Suite 201
3   P. O. Box 1029
    El Granada, CA 94018-1029
4   Tel: 650-726-7461
    Fax: 650-726-7471
5   Attorney for Plaintiff
    Norman Runyan
6

7

8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SONOMA

10

11                                          | Case No.  SCV-242491
    NORMAN RUNYAN,
12                                          | **AMENDMENT TO VERIFIED COMPLAINT**
                     Plaintiff,             | **FOR DAMAGES**
13
    vs.
14
    RIVER ROCK ENTERTAINMENT
15  AUTHORITY, RIVER ROCK CASINO,
    HARVEY HOPKINS, an individual, and
16  DOES 1-50, inclusive,

17                   Defendants.

18

19

20

21

22

23

24

25

26

27

28

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No. SCV-242491*
**Amendment to Verified Complaint for Damages**

## AMENDMENT TO VERIFIED COMPLAINT FOR DAMAGES

The Complaint in this action, filed March 7, 2008, previously stated, at page 1, lines 20-22, as follows:

"Plaintiff hereby demands a jury trial.

Plaintiff NORMAN RUNYAN, by and through his attorneys, hereby alleges, on information and belief, as follows:..."

The Complaint in this action, filed March 7, 2008, should now state, at page 1, lines 20-22, as follows:

"Plaintiff NORMAN RUNYAN hereby demands a jury trial, and hereby alleges as follows:..."

Dated: March 4, 2008

Law Offices of David S. Secrest
A Professional Corporation

David S. Secrest (KM)
David S. Secrest
Attorney for Plaintiff Norman Runyan

*Norman Runyan v. River Rock Entertainment Authority, et al.; Sonoma Superior Court No. SCV-242491*
Amendment to Verified Complaint for Damages

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>**CIVIL DIVISION**<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>www.sonomasuperiorcourt.com | (FOR COURT USE ONLY)<br><br>E N D O R S E D<br>F I L E D<br><br>MAR 0 7 2008<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number: 242491 |

### A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT AND WITH ANY CROSS-COMPLAINT

1. **THIS ACTION IS ASSIGNED TO HON.** ROBERT S. BOYD **FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. A Case Management Conference has been set at the time and place indicated below:

| Date: JUL 1 0 2008<br>Location: | 3035 CLEVELAND AVE STE 200<br>SANTA ROSA CA 95406 | Time: 71 | Courtroom: 330p |
|---|---|---|---|

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://www.sonomasuperiorcourt.com/tentative/index.php.

### ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with timely filing requirements stated in California Rules of Court, Rules 3.110 and/or 3.725, you must then and there show cause why this Court should not impose monetary and/or terminating sanctions.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA <br> 600 ADMINISTRATION DRIVE, ROOM 107-J <br> SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

| ADR INFORMATION SHEET <br> [Sonoma County Superior Court Rules, Rule 16] | CASE NUMBER: |
|---|---|
| (Check one): ☐ UNLIMITED CASE (Amount demanded exceeds $25,000)     ☐ LIMITED CASE (Amount demanded is $25,000 or less) | Date: <br> Time: <br> Location: <br> Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:

"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a distincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

A. MEDIATION: Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| PLAINTIFF/PETITIONER: · | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**B.** **ARBITRATION:** The parties jointly employ a neutral third party or a panel of neutrals to listen to both sides and render a decision. The parties are free to make the arbitrator's decision binding or non-binding. When non-binding, the arbitrator's decision serves as guide or influence upon the parties to bring them closer to settlement. If it is binding, the decision of the arbitrator will be final and generally avoids any further proceedings in the case. Non-binding judicial arbitration may be ordered in certain cases before trial.

**C.** **EARLY NEUTRAL EVALUATION:** A neutral evaluator is hired by the parties to give an evaluation of the case to help settle it. You or your attorney will be permitted to prepare a written statement, present critical witnesses or other evidence, argue your case to the evaluator, meet separately and confidentially with the evaluator, and utilize the evaluator to communicate any settlement offers to the opposing party.

**D.** **PRIVATE SETTLEMENT CONFERENCE:** A voluntary settlement conference is similar to early neutral evaluation in that the parties employ a neutral settlement officer who attempts to persuade the parties to accept a compromise position. It is a form of facilitated negotiation in which the settlement officer may express an opinion about the value of the case, the substantive merits of each party's position, and the probable outcome of the trial.

There are various other methods or combinations of methods of ADR, such as summary jury trial, mini-trial, special master and discovery referee. The court encourages the parties to be creative in selecting the process which has the best chance of resolving the case as quickly, effectively, and inexpensively as possible. You will have a chance to review your ADR options at the time of the Early Mediation and Case Management Conference.

**The undersigned party is willing to agree to any of the following forms of ADR at this time (for family law and probate actions only). Your selection will inform the other parties in the case of your current thoughts regarding the use of ADR. If all parties agree on a particular ADR method, you will be asked to file a stipulation on the court's form. The stipulation form (Sonoma County Superior Court form #MISC-101) can be found at the court's web site and is available at the court.)**

☐ Mediation                              ☐ Early Neutral Evaluation

☐ Non-binding Private Arbitration        ☐ Binding Private Arbitration

☐ Voluntary Settlement Conference        ☐ Summary Jury Trial

☐ Other _____          ☐ Judicial Arbitration

I / We certify that I / We have read and understood (or have had explained to me / us) the foregoing.

Date: _____          _____
                                                Signature of Party

Date: _____          _____
                                                Signature of Party

Date: _____          _____
                                                Signature of Attorney for Party
                                       ☐ Additional signatures are attached

**NOTE: This form requires the signatures of the parties and their attorney. All parties must complete, file and serve this form in accordance with Sonoma County Superior Court Rules, Rule 16. See Rule 16.3 for specific filing and service instructions.**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                          FAX NO. *(Optional)*: <br> E-MAIL ADDRESS *(Optional)*: <br> ATTORNEY FOR *(Name)*: | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA <br> 600 ADMINISTRATION DRIVE, ROOM 107-J <br> SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER: <br><br> DEFENDANT/RESPONDENT: | |

| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|
| (Check one):  ☐ **UNLIMITED CASE** <br> (Amount demanded <br> exceeds $25,000)  ☐ **LIMITED CASE** <br> (Amount demanded is <br> $25,000 or less) | Date: <br> Time: <br> Location: <br> Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

☐ Mediation            ☐ Non-binding Private Arbitration
☐ Binding Private Arbitration    ☐ Private Settlement Conference
☐ Early Neutral Evaluation      ☐ Judicial Arbitration

The ADR process will be conducted by (name of individual): _____

Provider's Address: _____

Provider's Telephone: _____  Fax: _____  E-mail address: _____
☐ No agreement

The ADR process will be conducted on (date): _____
☐ No agreement

☐ The parties have reached agreement as to the payment of fees of ADR provider.
☐ The parties have not reached agreement as to the payment of fees of ADR provider.

Type or print name of ☐ Party without attorney ☐ Attorney for    **(Date and Sign)** Attorney or party without
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant    attorney (Sign in blue ink)

Type or print name of ☐ Party without attorney ☐ Attorney for    **(Date and Sign)** Attorney or party without
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant    attorney (Sign in blue ink)

☐ Additional signatures are attached

| PLAINTIFF/PETITIONER: | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: | |

## <u>ORDER</u>

**A REVIEW HEARING IS SCHEDULED AS FOLLOWS:**

_____    _____
          Date                        Time

All parties must appear at the Review Hearing.  In the event that the case is settled and a dismissal or notice of settlement or a judgment is filed at least 3 court days before the scheduled Review Hearing, the Review Hearing will be dropped  and no one should appear. You must check the phone message at _____ or go to http://www.SonomaSuperiorCourt.com/tentative/index.html where the tentative dispositions will be posted the day before you are scheduled to come to court to determine if you must appear.

*THE FIRST ATTORNEY OR PARTY LISTED  MUST FILE PROOF OF SERVICE OF A COPY OF THIS ORDER ON ALL PARTIES.*

_____    _____
          Date                JUDGE OF THE SUPERIOR COURT

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):*

ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| (Check one): ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE** (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:            Div.:            Room:

Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
       (1) ☐  have not been served *(specify names and explain why not):*

       (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*

       (3) ☐  have had a default entered against them *(specify names):*

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.  Type of case in ☐  complaint  ☐  cross-complaint    *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]
**CASE MANAGEMENT STATEMENT**
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request  ☐ a jury trial  ☐ a nonjury trial  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial  ☐ by the attorney or party listed in the caption  ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  Fax number:
f.  E-mail address:
g.  Party represented:
☐  Additional representation is described in Attachment 8.

9.  **Preference**
☐  This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a.  Counsel  ☐ has  ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b.  ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c.  ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

10. d.    The party or parties are willing to participate in *(check all that apply)*:

    (1) ☐ Mediation

    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

    (4) ☐ Binding judicial arbitration

    (5) ☐ Binding private arbitration

    (6) ☐ Neutral case evaluation

    (7) ☐ Other *(specify)*:

e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption)*:

**11. Settlement conference**

☐ The party or parties are willing to participate in an early settlement conference *(specify when)*:

**12. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name)*:

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain)*:

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

☐ Bankruptcy ☐ Other *(specify)*:

Status:

**14. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

☐ Additional cases are described in Attachment 14a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party)*:

**15. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons)*:

**16. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues)*:

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

    c. ☐ The following discovery issues are anticipated *(specify):*

**18. Economic Litigation**
    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**19. Other Issues**
    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**20. Meet and confer**
    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**21. Case management orders**
    Previous case management orders in this case are *(check one):* ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| _____ | ▶ _____ |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| _____ | ▶ _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached |

# · NOTICE

## SONOMA COUNTY SUPERIOR COURT
## CIVIL DIVISION PRO TEM JUDGE PROGRAM

This is to advise that the Civil Division's Pro Tem Judge Program is available to those civil litigants who wish to expedite trial by stipulating to the use of an attorney to serve as Pro Tem Judge. The court maintains a Pro Tem Judge panel, which consists of attorneys sworn by the Court and willing to serve in this capacity. Parties may stipulate to a trial by a Pro Tem Judge of their choice and may inform the Court of such a stipulation by contacting Connie Origer, the Pro Tem Judge Program Coordinator, at (707) 521-6726.

The Program offers three primary benefits to litigants: (1) the date and location of trial can often be scheduled by stipulation of the parties; (2) the trial will take place on the agreed date for trial; thus eliminating the need to trail other cases, and; (3) the trial can be scheduled for full days on a 5 day per week basis, thus shortening the time to try the case. The Program is available for both jury and court trials.

For cases that are tried in 5 days or less (9:00 a.m. to 5:00 p.m., jury or non-jury), the Pro Tem Judge serves at no cost to the parties. For trials that exceed 5 days in length, the parties and the Pro Tem Judge are obliged to agree to a daily fee, not to exceed $1,200 per day, for each full or partial day of trial beginning with the 6th day of trial. Additionally, the Court will charge the parties $656.72 for each day of trial for the Clerk and Court Reporter. The Court discourages the use of overtime and will charge an additional cost of $123.14 for each hour or portion thereof exceeding 8 hours in any day. The parties are also responsible for the payment of jury fees as in any other civil case. Cases in which there are fee waivers are eligible for the Program.

The Court is enthusiastic about this Program and urges all counsel to discuss the availability of the Program and the feasibility of its use with opposing counsel. Counsel must also obtain permission from clients to participation in the Program. To participate in the Program, contact Ms. Origer as soon as possible to discuss trial dates. Ms. Origer will generate and mail all required stipulations and orders with respect to the Program. Parties may obtain additional information on this program by contacting Ms. Origer or by reviewing the court's website at www.sonomasuperiorcourt.com.

Plaintiff is ordered to serve this Notice on all parties and to certify by proof of service filed with the Court that such service has been accomplished within 60 days of the filing of the Complaint.

---

CV-41, Revised 1/1/08    PETALUMA PRO TEM JUDGE PROGRAM NOTICE

# EXHIBIT D

APR-03-2008(THU) 11:30      ONE LEGAL      (FAX)1+510+873+0984      P 016.032

1 | Law Offices of David S. Secrest
A Professional Corporation
2 | David S. Secrest, Esq. [State Bar #142299]
504 Plaza Alhambra, Suite 205
3 | P. O. Box 1029
El Granada, CA 94018-1029
4 | Tel: 650-726-7461
Fax: 650-726-7471
5 | Attorney for Plaintiff
Norman Runyan
6

7

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SONOMA

10 | NORMAN RUNYAN, | Case No. SCV-242491

11 | Plaintiff, | REQUEST FOR PRODUCTION OF
DOCUMENTS - CCP § 2031.010

12 | vs.

13 | RIVER ROCK ENTERTAINMENT
14 | AUTHORITY, RIVER ROCK CASINO,
HARVEY HOPKINS, an individual, and
15 | DOES 1-50, inclusive,

16 | Defendants.

17

18 | PROPOUNDING PARTY: PLAINTIFF NORMAN RUNYAN
RESPONDING PARTY: DEFENDANT RIVER ROCK ENTERTAINMENT AUTHORITY
19 | NUMBER: ONE

20 |     TO DEFENDANT RIVER ROCK ENTERTAINMENT AUTHORITY AND TO ITS

21 | ATTORNEYS OF RECORD:

22 |     Plaintiff NORMAN RUNYAN hereby requests a verified, written and original response to

23 | this Inspection Demand be served, and that the responding party produce all DOCUMENTS, and

24 | allow the inspection of all original DOCUMENTS and tangible things which are itemized herein,

25 | which are responsive to any of the following numbered requests, on the date specified herein or as

26 | otherwise required under applicable provisions of the California Code of Civil Procedure, in

27 | accordance with the definitions and instructions below. This request is made pursuant to Section

28 | 2031.010 of the California Code of Civil Procedure.

    The following definitions and instructions apply throughout this Inspection Demand, unless

-1-

the context clearly indicates otherwise:

A. This Inspection Demand is directed to, and includes, you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf (hereinafter, "YOU").

B. Plaintiff hereby requests that the responding party produce all DOCUMENTS, and allow the inspection of all original DOCUMENTS and tangible things which are itemized herein, which are responsive to any of the following numbered requests, on the date specified herein or as otherwise required under applicable provisions of the California Code of Civil Procedure, in accordance with the definitions and instructions below. This request is made pursuant to Section §2025.010 of the California Code of Civil Procedure.

C. This Inspection Demand is directed to, and includes, you, *your agents*, *your employees*, *your insurance companies*, *their agents*, *their employees*, *your attorneys*, *your accountants*, *your investigators*, and *anyone else acting on your behalf* (hereinafter, "YOU").

D. PLAINTIFF means PLAINTIFF NORMAN RUNYAN.

E. TERMINATION means the termination of employment, and includes, but is not limited to, the actual or constructive termination of employment, discharge, firing, layoff, resignation, or completion of the term of the employment agreement.

F. DOCUMENT means a *writing or tangible thing*, as defined in California Evidence Code §250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them. The term DOCUMENT includes, by way of example and not limitation, the following and anything similar to any of the following:

   1. Letters, telegrams, telexes, cables, TXWs, memoranda, interoffice correspondence and other forms of correspondence and written communication;
   2. Agreements, contracts, policies, handbooks, practice guidelines, reports, studies, records, books, journals, papers, statements, pamphlets, circulars, publications, stenographic notebooks, files and their contents, file folders, file covers, file jackets, and notes;
   3. Summaries, abstracts, indexes, tabulations, graphs, charts, lists and inventories;
   4. Calendars, desk calendars, appointment books, schedules, logs, telephone messages, diaries, time sheets, minutes of meetings, and transcripts;
   5. Financial statements, checks, invoices and accounting records and books;

-2-

6. Pleadings, deposition transcripts, trial transcripts, interrogatories, answers to interrogatories, affidavits, declarations, papers filed or lodged with courts, and papers filed with or sent to administrative agencies.

7. Tape recordings, sound reproductions, objects, photographs, motion pictures, microfilm, computer data stored on magnetic tape, computer printouts, data processing cards or tapes, computer disks or diskettes, AND e-mail.

G. All DOCUMENTS that are responsive in whole or in part to any of the following numbered requests shall be produced in full, without abridgement, abbreviation, or expurgation of any sort. If any such DOCUMENTS cannot be produced in full, produce the writing to the extent possible and indicate in your written response what portion of the DOCUMENT is not produced and why it could not be produced.

H. This request requires that YOU produce all DOCUMENTS responsive to any of the following numbered requests that are in YOUR possession or control or subject to your control, wherever they may be located. The DOCUMENTS which YOU must identify and produce include not only DOCUMENTS which you presently possess, personally, but also DOCUMENTS which are in the possession or control of *your attorneys, accountants, bookkeepers, employees, representatives, or anyone else acting on your behalf.*

I. YOU are required to produce not only the original or an exact copy of the original of all DOCUMENTS responsive to any of the following numbered requests, but also all copies of such DOCUMENTS which bear any notes or markings not found on the originals and all preliminary intermediate, final and revised drafts of such DOCUMENTS.

J. It is not intended that these requests require production of any DOCUMENTS that are privileged. If YOU are not producing any DOCUMENTS that are responsive to any of the numbered requests below on the basis of a claimed privilege, or for any other reason, *you must state the following information:*

1. Identify and describe the DOCUMENT with reasonable particularity;

2. Identify the privilege claimed or other reason why the DOCUMENT is not produced;

3. State the names and capacities of all persons who participated in the preparation of the writing [i.e., the "maker(s)"];

4. State the names and capacities of all persons from whom the DOCUMENT was circulated or its contents communicated [i.e., the "sender(s)"]; and

5. State the names and capacities of all persons to whom the DOCUMENT was circulated or its contents communicated [i.e., the "recipient(s)"].[1]

---

[1] "The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not (in) fact privileged." *Wellpoint Health Networks, Inc. v. Sup.Ct. (McCombs)* (1997) 59 Cal.App.4th 110, 130.

-3-

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.  All DOCUMENTS reflecting or referring to the fact of the TERMINATION of the employment of PLAINTIFF, including electronic messages, generated prior to the TERMINATION of the employment of PLAINTIFF.

2.  All DOCUMENTS reflecting or referring to the fact of the TERMINATION of the employment of PLAINTIFF, including electronic messages, generated after to the TERMINATION of the employment of PLAINTIFF.

3.  All DOCUMENTS reflecting or referring to the reasons for the TERMINATION of the employment of PLAINTIFF, including electronic messages, generated prior to the TERMINATION of the employment of PLAINTIFF.

4.  All DOCUMENTS reflecting or referring to the reasons for the TERMINATION of the employment of PLAINTIFF, including electronic messages, generated after to the TERMINATION of the employment of PLAINTIFF.

5.  PLAINTIFF'S computer hard-drive used while PLAINTIFF was employed by River Rock Entertainment Authority ("RREA").

6.  The Dry Creek Rancheria Band of Pomo Indians ("DCRBPI") Articles of Association.

7.  The DCRBPI minutes from August 2007 – November 2007.

8.  The River Rock Entertainment Authority ("RREA") Act.

9.  ALL RREA minutes from August 2007 – November 2007.

10. The RREA Indenture.

11. The Dry Creek Rancheria Community Development minutes from August 2007 – November 2007, inclusive.

12. The Bob Small Contract signed in April/May of 2007.

13. The Lund and Manasse letter to DCR Harvey Hopkins to audit RRC Marketing department (their file would be best).

14. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 4.1 (a) – (g), served herewith.

15. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 4.2, served herewith.

16. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.3(a) – (d), served herewith.

-4-

1   17. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.4(a) – (c),

2   served herewith.

3   18. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.5(a) - (b),

4   served herewith.

5   19. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.6(a) - (b),

6   served herewith.

7   20. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 13.2(a) – (c),

    served herewith.

8   21. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 15.1(c), served

9   herewith

10  22. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.1(d), served

11  herewith.

12  23. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.2(c), served

13  herewith.

14  24. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.3(d),

15  served herewith.

16  25. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.4(d), served

17  herewith.

18  26. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.5(c), served

19  herewith.

20  27. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.6(d), served

21  herewith.

22  28. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.7(d), served

23  herewith.

24  29. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.8(d), served

25  herewith.

26  30. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.9(a) – (d),

27  served herewith.

28  31. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.10(a) – (c),

    served herewith.

    32. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 50.1(a), served

    herewith.

-5-

33. All DOCUMENTS *referred to* in YOUR *response(s)* to Form Interrogatory 50.1(c), served herewith.

34. All DOCUMENTS *referred to* in YOUR *response(s)* to Form Interrogatory 50.1(f), served herewith.

35. All DOCUMENT identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 200.1(c), served herewith.

36. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 200.2(c), served herewith.

37. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 200.3(c), served herewith.

38. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 200.4(a), served herewith.

39. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 201.1(d), served herewith.

40. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 201.2(d), served herewith.

41. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 201.3(d), served herewith.

42. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 201.4(d), served herewith.

43. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 201.6(d), served herewith.

44. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 204.3(d), served herewith.

45. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 204.6(d), served herewith.

46. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 207.1(a), served herewith.

47. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 207.1(b), served herewith.

48. All DOCUMENTS identified in YOUR *response(s)* to Form Interrogatory- Employment Law, No. 207.2(i), served herewith.

-6-

APR-03-2008(THU) 11:31    SHE LEGAL    (FAX)1+510+873+0984    P 022/043

1  49. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
2  Law, No. 208.1(a) – (h), served herewith.
3  50. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
4  Law, No. 208.2(d), served herewith.
5  51. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
   Law, No. 209.2(b), served herewith.
6  52. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
7  Law, No. 211.2(c), served herewith.
8  53. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
9  Law, No. 211.3(d) served herewith.
10  54. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
   Law, No. 214.1(a) – (g), served herewith.
11  55. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
12  Law, No. 215.2(d) served herewith.
13  56. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
14  Law, No. 216.1(c), served herewith.
15  57. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment
16  Law, No. 217.1(d), served herewith.
17  58. The complete contents of PLAINTIFF'S personnel file, to the extent not previously
   produced.
18  59. The complete contents of any other files maintained in PLAINTIFF'S name, to the extent
19  not previously produced.
20  60. All DOCUMENTS which reflect any performance deficiency on the part of PLAINTIFF
21  in his employment with any defendant.
22  61. All DOCUMENTS upon which the responding party relied in determining the
23  PLAINTIFF'S performance was deficient in any way.
24  62. All DOCUMENTS considered by any defendant in determining that any adverse
   employment action should be taken against PLAINTIFF.
25  63. All applications for employment signed by PLAINTIFF, to the extent not previously
26  produced.
27  64. All instruments signed by PLAINTIFF relating to the obtaining or holding of employment,
28  within the meaning of California Labor Code §432, to the extent not previously produced.

-7-

ACR-09-2008(FRI) 11:51 ??? DNC LEGAL ??? ??? (FAX)1+510+873+0984    P 023/042

65. All personnel files of PLAINTIFF which have been used to determine PLAINTIFF'S

qualifications for employment, promotion, additional compensation, or TERMINATION or

other disciplinary action, within the meaning of California Labor Code §1198.5, to the extent

not previously produced.

66. All medical, psychiatric or other health-related reports or DOCUMENTS which describe

or evaluate PLAINTIFF'S physical or mental condition or any treatment received by

PLAINTIFF in any year PLAINTIFF was employed by defendant, to the extent not previously

produced.

67. All performance appraisals, evaluations, and reviews of PLAINTIFF by any defendant, to

the extent not previously produced.

68. All DOCUMENTS containing any reference to PLAINTIFF'S performance in

PLAINTIFF'S last position, to the extent not previously produced.

69. All DOCUMENTS that have any notations or comments regarding the job performance,

honesty, ability, or diligence of PLAINTIFF, to the extent not previously produced.

70. All DOCUMENTS concerning any awards or commendations from any defendant to

PLAINTIFF and any written compliments or communications received by any defendant

concerning PLAINTIFF'S work, to the extent not previously produced.

71. All DOCUMENTS that relate or refer to PLAINTIFF'S hiring by any defendant, to the

extent not previously produced.

72. All DOCUMENTS which relate to or refer to any prehiring discussions between

PLAINTIFF and any defendant regarding PLAINTIFF'S future employment or possible

employment with any defendant, to the extent not previously produced.

73. All DOCUMENTS referring to the decision to effect the TERMINATION of PLAINTIFF

or any reason for that decision, to the extent not previously produced.

74. All DOCUMENTS that relate or refer to PLAINTIFF'S separation from employment or

any reason for PLAINTIFF'S separation from employment, to the extent not previously

produced.

75. All DOCUMENTS that were considered in making the decision to effect the

TERMINATION of PLAINTIFF, to the extent not previously produced.

76. All DOCUMENTS regarding, consisting of, or referring to any review or investigation of

PLAINTIFF'S separation from employment, to the extent not previously produced.

REQUEST FOR PRODUCTION OF DOCUMENTS

*Norman Runyan v. River Rock Entertainment Authority et al.; Sonoma County Sup. Ct. No. SCV-242491*

77. All DOCUMENTS reflecting, or consisting of, written or recorded statements taken by or from any person which are related to PLAINTIFF'S employment, or PLAINTIFF'S TERMINATION from employment, to the extent not previously produced.

78. All DOCUMENTS that support any contention by any defendant that good cause existed for PLAINTIFF'S separation from employment, to the extent not previously produced.

79. All DOCUMENTS relating to or referring to any reason for PLAINTIFF'S separation from employment, to the extent not previously produced.

80. All DOCUMENTS referring or relating to any attempts to find PLAINTIFF another position with any defendant in lieu of or after separation from employment, to the extent not previously produced.

81. All organizational charts (or the functional equivalent) which show the chain of authority above or below PLAINTIFF in the last position held by PLAINTIFF with any defendant, to the extent not previously produced.

82. All job descriptions for the last position held by PLAINTIFF with any defendant in effect at any time while PLAINTIFF held that position, to the extent not previously produced

83. All DOCUMENTS setting forth job duties or performance standards for persons employed in the last position held by PLAINTIFF with any defendant, to the extent not previously produced.

84. All DOCUMENTS concerning the any defendant's policies or procedures for employee discipline or separation from employment, to the extent not previously produced.

85. All employee handbooks, personnel policy manuals, personnel procedure manuals, lists of employee rules, supervisors' handbooks; DOCUMENTS used in seminars on TERMINATION or discipline given to supervisors and memoranda to supervisors regarding policies or procedures for discipline or TERMINATION of employees, but only those printed, typed or used at any time during PLAINTIFF'S employment with any defendant, to the extent not previously produced.

86. All employee handbooks or other DOCUMENTS or materials provided to employees or prospective employees setting forth or explaining any defendant's procedures or policies on hiring, promotion, transfer, layoff, TERMINATION, severance pay, salary, and employee benefits, but only those distributed during PLAINTIFF'S employment with any defendant, to the extent not previously produced.

-9-

1  87. All DOCUMENTS setting forth or describing any policies, procedures or general practices

2  of any defendant regarding the evaluation of employees' job performance, but only those

3  printed, typed, or in use during PLAINTIFF'S employment, to the extent not previously

4  produced.

5  88. All DOCUMENTS describing the policy of any defendant toward employees whose

6  performance is considered less than satisfactory, but only those printed, typed, or in use during

   PLAINTIFF'S employment, to the extent not previously produced.

7  89. All DOCUMENTS signed by PLAINTIFF, which relate to or refer to any terms or

8  conditions of PLAINTIFF'S employment with any defendant, to the extent not previously

9  produced.

10 90. All DOCUMENTS given to PLAINTIFF, shown to PLAINTIFF, or made available for

11 review by PLAINTIFF which relate to or refer to any terms or conditions of PLAINTIFF'S

   employment with any defendant, to the extent not previously produced.

12 91. All DOCUMENTS regarding or referring to any discussions between PLAINTIFF and any

13 defendant regarding the terms or conditions of PLAINTIFF'S employment with any

14 defendant, to the extent not previously produced.

15 92. All DOCUMENTS describing, summarizing or explaining any pension benefits and

16 employee benefits available to employees of any defendant at any time from PLAINTIFF'S

17 separation from employment to the present, to the extent not previously produced.

18 93. All DOCUMENTS by any individual defendant regarding or referring to PLAINTIFF, to

   the extent not previously produced.

19 94. All DOCUMENTS setting forth the criteria used by any defendant to determine which

20 positions would be eliminated in conjunction with PLAINTIFF'S employment, to the extent

21 not previously produced.

22 95. All job descriptions of present employees performing the identical or substantially similar

23 job duties, and responsibilities, as PLAINTIFF during the one-year period of PLAINTIFF'S

   employment immediately before his separation from employment, to the extent not previously

24 produced.

25 96. All DOCUMENTS relating to internal or union grievance procedures in effect during

26 PLAINTIFF'S employment, to the extent not previously produced.

27 97. All DOCUMENTS reflecting internal or union grievance procedures undertaken by

28 PLAINTIFF, during PLAINTIFF'S employment, to the extent not previously produced.

-10-

1  98. All timecards reflecting PLAINTIFF'S employment.

2  99. All insurance policies, including, and not limited to the Declaration page, naming any

3  defendant as a named or additional insured, in effect at any distinct or continuous point in time

4  during PLAINTIFF'S employment, to and including the present date, by or through which

5  such defendant was, or might be, insured in any manner for the damages, claims, or actions

6  that have arisen out of, or are alleged within, the Complaint in this lawsuit, including, but not

7  limited to, such policies which reflect or include primary, pro-rata, excess or umbrella liability

8  coverage, Commercial General Liability coverage, Employment Practices Liability coverage,

9  Errors and Omissions Liability coverage, Directors and Officers Liability coverage, and

10  Personal or Homeowner's Liability coverage, to the extent not previously produced.

11  100.    All DOCUMENTS that reflect whether any defendant's insurance carrier is disputing

12  coverage for the damages, claims, or actions that have arisen out of, or are alleged within, the

13  Complaint in this lawsuit, to the extent not previously produced.

Dated: April 3, 2008

14        Law Offices of David S. Secrest
         A Professional Corporation

15
16       David S. Secrest
         Attorney for Plaintiff Norman Runyan
17
18
19
20
21
22
23
24
25
26
27
28

-11-

# EXHIBIT E

1  Law Offices of David S. Secrest
   A Professional Corporation
2  David S. Secrest, Esq. [State Bar #142299]
   504 Plaza Alhambra, Suite 205
3  P. O. Box 1029
   El Granada, CA 94018-1029
4  Tel: 650-726-7461
   Fax: 650-726-7471
5  Attorney for Plaintiff
   Norman Runyan
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10 NORMAN RUNYAN,                     | Case No. SCV-242491

11              Plaintiff,            | NOTICE OF DEPOSITION AND REQUEST
                                      | FOR PRODUCTION OF DOCUMENTS - CCP
12 vs.                                | §2025.010

13 RIVER ROCK ENTERTAINMENT
   AUTHORITY, RIVER ROCK CASINO,
14 HARVEY HOPKINS, an individual, and
   DOES 1-50, inclusive,
15
16              Defendants.

17

18     TO DEFENDANTS RIVER ROCK ENTERTAINMENT AUTHORITY, RIVER

19 ROCK CASINO, HARVEY HOPKINS AND TO THEIR ATTORNEYS OF RECORD:

20     YOU ARE HEREBY NOTIFIED THAT, pursuant to the provisions of CCP

21 §§2025.010, the deposition(s) of the below named individuals and/or entities, which are

22 named parties in this action, or officers, directors, managing agents or employees of named

23 parties, will be commenced at the times and dates indicated below, continuing until

24 completed, at the Law Offices of David S. Secrest, 504 Plaza Alhambra, El Granada, CA

25 94018-1029:

| Deponent | Date | Time |
|---|---|---|
| HARVEY HOPKINS | May 13, 2008 | 9:00 a.m. |
| RIVER ROCK ENTERTAINMENT AUTH. | May 14, 2008 | 9:00 a.m. |
| SHAWN SMYTH | May 15, 2008 | 9:00 a.m. |

28     YOU ARE FURTHER NOTIFIED THAT:

-1-

1   X]   "DEPONENT" a corporation or other entity: The DEPONENT, DEFENDANT

2   RIVER ROCK ENTERTAINMENT AUTHORITY, each a party to this action

3   ("DEPONENT"), are not natural persons. The matters on which the DEPONENT will be

4   examined are as follows: See Attachment "A."

    [X]   Items to be produced by deponent party: The DEPONENT are required to produce at
5
    the date, time and location set forth above, the following documents, records or other
6
    materials: See Attachment "B."
7
    [X]   Recording of proceedings: The deposing party intends to cause the proceedings to be
8
    recorded both stenographically and by video tape, for use at trial pursuant to Code provisions.

9
    Dated: April 3, 2008
10
                    Law Offices of David S. Secrest
11                  A Professional Corporation

12                  _David S. Secrest (KM)_

13                  David S. Secrest
                    Attorney for Plaintiff Norman Runyan
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT "A"

Pursuant to Section §2025.230 of the California Code of Civil Procedure, the DEPONENT are required to designate and produce at the deposition those of its officers, directors, managing agents, employees or agents who are most qualified to testify on its behalf as to those matters to the extent of any information known or reasonably available to it, and to its attorneys.

The matters on which examination is requested are:

1.  Plaintiff's job performance while employed by the DEPONENT, including performance criticisms of any nature;

2.  The decision to terminate Plaintiff's employment, by resignation, termination or otherwise, including each and every reason for same;

3.  The value of Plaintiff's job benefits while employed with the DEPONENT, (e.g., medical coverage, life insurance, retirement pension contributions, salary and/or bonuses, and stock options).

4.  Examination about what documents, if any, are in the possession of the DEPONENT, in each of the categories listed in ATTACHMENT "B;" and

5.  Examination to identify and authenticate the documents which the DEPONENT are directed to provide at the deposition.

-3-

ATTACHMENT "B"

Plaintiff hereby requests that the responding party produce all DOCUMENTS, and allow the inspection of all original DOCUMENTS and tangible things which are itemized herein, which are responsive to any of the following numbered requests, on the date specified herein or as otherwise required under applicable provisions of the California Code of Civil Procedure, in accordance with the definitions and instructions below. This request is made pursuant to Section §2025.010 of the California Code of Civil Procedure.

The following definitions and instructions apply throughout this Inspection Demand, unless the context clearly indicates otherwise:

A. This Request for Production is directed to, and includes, you, *your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators,* and *anyone else acting on your behalf* (hereinafter, "YOU").

B. PLAINTIFF means PLAINTIFF NORMAN RUNYAN.

C. TERMINATION means the termination of employment, and includes, but is not limited to, the actual or constructive termination of employment, discharge, firing, layoff, resignation, or completion of the term of the employment agreement.

D. DOCUMENT means a *writing or tangible thing*, as defined in California Evidence Code §250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them. The term DOCUMENT includes, by way of example and not limitation, the following and anything similar to any of the following:

　　1. Letters, telegrams, telexes, cables, TXWs, memoranda, interoffice correspondence and other forms of correspondence and written communication;
　　2. Agreements, contracts, policies, handbooks, practice guidelines, reports, studies, records, books, journals, papers, statements, pamphlets, circulars, publications, stenographic notebooks, files and their contents, file folders, file covers, file jackets, and notes;
　　3. Summaries, abstracts, indexes, tabulations, graphs, charts, lists and inventories;
　　4. Calendars, desk calendars, appointment books, schedules, logs, telephone messages, diaries, time sheets, minutes of meetings, and transcripts;
　　5. Financial statements, checks, invoices and accounting records and books;

-1-

NOTICE OF DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS
*Norman Runyan v. River Rock Entertainment Authority et al.; Sonoma County Sup. Ct. No. SCV-242491*

6. Pleadings, deposition transcripts, trial transcripts, interrogatories, answers to interrogatories, affidavits, declarations, papers filed or lodged with courts, and papers filed with or sent to administrative agencies.

7. Tape recordings, sound reproductions, objects, photographs, motion pictures, microfilm, computer data stored on magnetic tape, computer printouts, data processing cards or tapes, computer disks or diskettes, AND e-mail.

E. All DOCUMENTS that are responsive in whole or in part to any of the following numbered requests shall be produced in full, without abridgement, abbreviation, or expurgation of any sort. If any such DOCUMENTS cannot be produced in full, produce the writing to the extent possible and indicate in your written response what portion of the DOCUMENT is not produced and why it could not be produced.

F. This request requires that YOU produce all DOCUMENTS responsive to any of the following numbered requests that are in YOUR possession or control or subject to your control, wherever they may be located. The DOCUMENTS which YOU must identify and produce include not only DOCUMENTS which you presently possess, personally, but also DOCUMENTS which are in the possession or control of *your attorneys, accountants, bookkeepers, employees, representatives, or anyone else acting on your behalf.*

G. YOU are required to produce not only the original or an exact copy of the original of all DOCUMENTS responsive to any of the following numbered requests, but also all copies of such DOCUMENTS which bear any notes or markings not found on the originals and all preliminary intermediate, final and revised drafts of such DOCUMENTS.

H. It is not intended that these requests require production of any DOCUMENTS that are privileged. If YOU are not producing any DOCUMENTS that are responsive to any of the numbered requests below on the basis of a claimed privilege, or for any other reason, *you must state the following information:*

    1. Identify and describe the DOCUMENT with reasonable particularity;

    2. Identify the privilege claimed or other reason why the DOCUMENT is not produced;

    3. State the names and capacities of all persons who participated in the preparation of the writing [i.e., the "maker(s)"];

    4. State the names and capacities of all persons from whom the DOCUMENT was circulated or its contents communicated [i.e., the "sender(s)"]; and

    5. State the names and capacities of all persons to whom the DOCUMENT was circulated or its contents communicated [i.e., the "recipient(s)"].[1]

---

[1] "The information in the privilege log must be sufficiently specific to allow a determination of whether each withheld document is or is not (in) fact privileged." *Wellpoint Health Networks, Inc. v. Sup.Ct. (McCombs)* (1997) 59 Cal.App.4th 110, 130.

-5-

(FAX)1+519+813+0984    P 008/043

1

2 ## REQUEST FOR PRODUCTION OF DOCUMENTS

3 ## REQUEST FOR PRODUCTION OF DOCUMENTS

4 1.  All DOCUMENTS reflecting or referring to the fact of the TERMINATION of the

employment of PLAINTIFF, including electronic messages, generated prior to the

5 TERMINATION of the employment of PLAINTIFF.

6 2.  All DOCUMENTS reflecting or referring to the fact of the TERMINATION of the

7 employment of PLAINTIFF, including electronic messages, generated after to the

8 TERMINATION of the employment of PLAINTIFF.

9 3.  All DOCUMENTS reflecting or referring to the reasons for the TERMINATION of the

10 employment of PLAINTIFF, including electronic messages, generated prior to the

TERMINATION of the employment of PLAINTIFF.

11 4.  All DOCUMENTS reflecting or referring to the reasons for the TERMINATION of the

12 employment of PLAINTIFF, including electronic messages, generated after to the

13 TERMINATION of the employment of PLAINTIFF.

14 5.  PLAINTIFF'S computer hard drive used while PLAINTIFF was employed by River Rock

15 Entertainment Authority ("RREA").

16 6.  The Dry Creek Rancheria Band of Pomo Indians ("DCRBPI") Articles of Association.

7.  The DCRBPI minutes from August 2007 – November 2007.
17
8.  The River Rock Entertainment Authority ("RREA") Act.
18
9.  ALL RREA minutes from August 2007 – November 2007.
19 10. The RREA Indenture.

20 11. The Dry Creek Rancheria Community Development minutes from August 2007 –

21 November 2007, inclusive.

22 12. The Bob Small Contract signed in April/May of 2007.

23 13. The Lund and Manasse letter to DCR Harvey Hopkins to audit RRC Marketing

department (their file would be best).
24
14. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 4.1 (a) – (g),
25 served herewith.

26 15. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 4.2, served

27 herewith.

28

16. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.3(a) – (d), served herewith.

17. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.4(a) – (c), served herewith.

18. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.5(a) - (b), served herewith.

19. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 12.6(a) - (b), served herewith.

20. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 13.2(a) – (c), served herewith.

21. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 15.1(c), served herewith

22. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.1(d), served herewith.

23. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.2(e), served herewith.

24. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory  16.3(d), served herewith.

25. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.4(d), served herewith.

26. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.5(c), served herewith.

27. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.6(d), served herewith.

28. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.7(d), served herewith.

29. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.8(d), served herewith.

30. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.9(a) – (d), served herewith.

31. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 16.10(a) – (c), served herewith.

-7-

APR-03-2008(THU) 11:50     ONE LEGAL     (FAX)1+510+873+0984     P 010/012

32. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 50.1(a), served herewith.

33. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 50.1(c), served herewith.

34. All DOCUMENTS referred to in YOUR response(s) to Form Interrogatory 50.1(f), served herewith.

35. All DOCUMENT identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 200.1(c), served herewith.

36. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 200.2(c), served herewith.

37. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 200.3(c), served herewith.

38. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 200.4(a), served herewith.

39. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 201.1(d), served herewith.

40. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 201.2(d), served herewith.

41. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 201.3(d), served herewith.

42. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 201.4(d), served herewith.

43. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 201.6(d), served herewith.

44. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 204.3(d), served herewith.

45. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 204.6(d), served herewith.

46. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 207.1(a), served herewith.

47. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 207.1(b), served herewith.

-8-

48. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 207.2(i), served herewith.

49. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 208.1(a) – (h), served herewith.

50. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 208.2(d), served herewith.

51. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 209.2(b), served herewith.

52. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 211.2(c), served herewith.

53. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 211.3(d) served herewith.

54. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 214.1(a) – (g), served herewith.

55. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 215.2(d) served herewith.

56. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 216.1(c), served herewith.

57. All DOCUMENTS identified in YOUR response(s) to Form Interrogatory- Employment Law, No. 217.1(d), served herewith.

58. The complete contents of PLAINTIFF'S personnel file, to the extent not previously produced.

59. The complete contents of any other files maintained in PLAINTIFF'S name, to the extent not previously produced.

60. All DOCUMENTS which reflect any performance deficiency on the part of PLAINTIFF in his employment with any defendant.

61. All DOCUMENTS upon which the responding party relied in determining the PLAINTIFF'S performance was deficient in any way.

62. All DOCUMENTS considered by any defendant in determining that any adverse employment action should be taken against PLAINTIFF.

63. All applications for employment signed by PLAINTIFF, to the extent not previously produced.

-9-

1  64. All instruments signed by PLAINTIFF relating to the obtaining or holding of employment,

2  within the meaning of California Labor Code §432, to the extent not previously produced.

3  65. All personnel files of PLAINTIFF which have been used to determine PLAINTIFF'S

4  qualifications for employment, promotion, additional compensation, or TERMINATION or

5  other disciplinary action, within the meaning of California Labor Code §1198.5, to the extent
   not previously produced.

6  66. All medical, psychiatric or other health-related reports or DOCUMENTS which describe

7  or evaluate PLAINTIFF'S physical or mental condition or any treatment received by

8  PLAINTIFF in any year PLAINTIFF was employed by defendant, to the extent not previously

9  produced.

10 67. All performance appraisals, evaluations, and reviews of PLAINTIFF by any defendant, to
   the extent not previously produced.

11 68. All DOCUMENTS containing any reference to PLAINTIFF'S performance in

12 PLAINTIFF'S last position, to the extent not previously produced.

13 69. All DOCUMENTS that have any notations or comments regarding the job performance,

14 honesty, ability, or diligence of PLAINTIFF, to the extent not previously produced.

15 70. All DOCUMENTS concerning any awards or commendations from any defendant to

16 PLAINTIFF and any written compliments or communications received by any defendant

17 concerning PLAINTIFF'S work, to the extent not previously produced.

18 71. All DOCUMENTS that relate or refer to PLAINTIFF'S hiring by any defendant, to the
   extent not previously produced.

19 72. All DOCUMENTS which relate to or refer to any prehiring discussions between

20 PLAINTIFF and any defendant regarding PLAINTIFF'S future employment or possible

21 employment with any defendant, to the extent not previously produced.

22 73. All DOCUMENTS referring to the decision to effect the TERMINATION of PLAINTIFF

23 or any reason for that decision, to the extent not previously produced.

24 74. All DOCUMENTS that relate or refer to PLAINTIFF'S separation from employment or

25 any reason for PLAINTIFF'S separation from employment, to the extent not previously
   produced.

26 75. All DOCUMENTS that were considered in making the decision to effect the

27 TERMINATION of PLAINTIFF, to the extent not previously produced.

28

-10-

76. All DOCUMENTS regarding, consisting of, or referring to any review or investigation of PLAINTIFF'S separation from employment, to the extent not previously produced.

77. All DOCUMENTS reflecting, or consisting of, written or recorded statements taken by or from any person which are related to PLAINTIFF'S employment, or PLAINTIFF'S TERMINATION from employment, to the extent not previously produced.

78. All DOCUMENTS that support any contention by any defendant that good cause existed for PLAINTIFF'S separation from employment, to the extent not previously produced.

79. All DOCUMENTS relating to or referring to any reason for PLAINTIFF'S separation from employment, to the extent not previously produced.

80. All DOCUMENTS referring or relating to any attempts to find PLAINTIFF another position with any defendant in lieu of or after separation from employment, to the extent not previously produced.

81. All organizational charts (or the functional equivalent) which show the chain of authority above or below PLAINTIFF in the last position held by PLAINTIFF with any defendant, to the extent not previously produced.

82. All job descriptions for the last position held by PLAINTIFF with any defendant in effect at any time while PLAINTIFF held that position, to the extent not previously produced

83. All DOCUMENTS setting forth job duties or performance standards for persons employed in the last position held by PLAINTIFF with any defendant, to the extent not previously produced.

84. All DOCUMENTS concerning the any defendant's policies or procedures for employee discipline or separation from employment, to the extent not previously produced.

85. All employee handbooks, personnel policy manuals, personnel procedure manuals, lists of employee rules, supervisors' handbooks, DOCUMENTS used in seminars on TERMINATION or discipline given to supervisors and memoranda to supervisors regarding policies or procedures for discipline or TERMINATION of employees, but only those printed, typed or used at any time during PLAINTIFF'S employment with any defendant, to the extent not previously produced.

86. All employee handbooks or other DOCUMENTS or materials provided to employees or prospective employees setting forth or explaining any defendant's procedures or policies on hiring, promotion, transfer, layoff, TERMINATION, severance pay, salary, and employee

-11-

HPR-03-2008(THU) 01-38    ONE LEGAL    (FAX)1+510+873+0980    P 012/012

1    benefits, but only those distributed during PLAINTIFF'S employment with any defendant, to

2    the extent not previously produced.

3    87. All DOCUMENTS setting forth or describing any policies, procedures or general practices

4    of any defendant regarding the evaluation of employees' job performance, but only those

5    printed, typed, or in use during PLAINTIFF'S employment, to the extent not previously
     produced.

6    88. All DOCUMENTS describing the policy of any defendant toward employees whose

7    performance is considered less than satisfactory, but only those printed, typed, or in use during

8    PLAINTIFF'S employment, to the extent not previously produced.

9    89. All DOCUMENTS signed by PLAINTIFF, which relate to or refer to any terms or

10   conditions of PLAINTIFF'S employment with any defendant, to the extent not previously
     produced.

11   90. All DOCUMENTS given to PLAINTIFF, shown to PLAINTIFF, or made available for

12   review by PLAINTIFF which relate to or refer to any terms or conditions of PLAINTIFF'S

13   employment with any defendant, to the extent not previously produced.

14   91. All DOCUMENTS regarding or referring to any discussions between PLAINTIFF and any

15   defendant regarding the terms or conditions of PLAINTIFF'S employment with any

16   defendant, to the extent not previously produced.

17   92. All DOCUMENTS describing, summarizing or explaining any pension benefits and

18   employee benefits available to employees of any defendant at any time from PLAINTIFF'S
     separation from employment to the present, to the extent not previously produced.

19   93. All DOCUMENTS by any individual defendant regarding or referring to PLAINTIFF, to

20   the extent not previously produced.

21   94. All DOCUMENTS setting forth the criteria used by any defendant to determine which

22   positions would be eliminated in conjunction with PLAINTIFF'S employment, to the extent
     not previously produced.

23   95. All job descriptions of present employees performing the identical or substantially similar

24   job duties, and responsibilities, as PLAINTIFF during the one-year period of PLAINTIFF'S

25   employment immediately before his separation from employment, to the extent not previously

26   produced.

27   96. All DOCUMENTS relating to internal or union grievance procedures in effect during

28   PLAINTIFF'S employment, to the extent not previously produced.

David S. Econoy
Attorney at law
An Plaza Amsterdam, Ste. 208
P.O. Box 620
Diamond, CA 94524-1609

-12-

HFK-03-2006(THU) 11:30    ONE LEGAL    (FHX)1+510+873+0984    P 015/042

97. All DOCUMENTS reflecting internal or union grievance procedures undertaken by PLAINTIFF, during PLAINTIFF'S employment, to the extent not previously produced.

98. All timecards reflecting PLAINTIFF'S employment.

99. All insurance policies, including, and not limited to the Declaration page, naming any defendant as a named or additional insured, in effect at any distinct or continuous point in time during PLAINTIFF'S employment, to and including the present date, by or through which such defendant was, or might be, insured in any manner for the damages, claims, or actions that have arisen out of, or are alleged within, the Complaint in this lawsuit, including, but not limited to, such policies which reflect or include primary, pro-rata, excess or umbrella liability coverage, Commercial General Liability coverage, Employment Practices Liability coverage, Errors and Omissions Liability coverage, Directors and Officers Liability coverage, and Personal or Homeowner's Liability coverage, to the extent not previously produced.

100.    All DOCUMENTS that reflect whether any defendant's insurance carrier is disputing coverage for the damages, claims, or actions that have arisen out of, or are alleged within, the Complaint in this lawsuit, to the extent not previously produced.

NOTICE OF DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS
*Norman Runyan v. River Rock Entertainment Authority et al.; Sonoma County Sup. Ct. No. SCV-242491*

# EXHIBIT F

DISC-002

☐ 210.5  Have you purchased any benefits to replace any benefits to which you would have been entitled if the ADVERSE EMPLOYMENT ACTION had not occurred? If so, state the cost for each benefit purchased.

☐ 210.6  Have you obtained other employment since any ADVERSE EMPLOYMENT ACTION? If so, for each new employment:
   (a)  state when the new employment commenced;
   (b)  state the hourly rate or monthly salary for the new employment; and
   (c)  state the benefits available from the new employment.

**211.0  Loss of Income—Interrogatories to Employer**
*[See Instruction 2(d).]*

☑ 211.1  Identify each type of BENEFIT to which the EMPLOYEE would have been entitled, from the date of the ADVERSE EMPLOYMENT ACTION to the present, if the ADVERSE EMPLOYMENT ACTION had not happened and the EMPLOYEE had remained in the same job position. For each type of benefit, state the amount the EMPLOYER would have paid to provide the benefit for the EMPLOYEE during this time period and the value of the BENEFIT to the EMPLOYEE.

☑ 211.2  Do you contend that the EMPLOYEE has not made reasonable efforts to minimize the amount of the EMPLOYEE'S lost income? If so:
   (a)  describe what more EMPLOYEE should have done;
   (b)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts that support your contention; and
   (c)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

☑ 211.3  Do you contend that any of the lost income claimed by the EMPLOYEE, as disclosed in discovery thus far in this case, is unreasonable or was not caused by the ADVERSE EMPLOYMENT ACTION? If so:
   (a)  state the amount of claimed lost income that you dispute;
   (b)  state all facts upon which you base your contention;
   (c)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
   (d)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**212.0  Physical, Mental, or Emotional Injuries—Interrogatories to Employee**

☐ 212.1  Do you attribute any physical, mental, or emotional injuries to the ADVERSE EMPLOYMENT ACTION? (If your answer is "no," do not answer interrogatories 212.2 through 212.7.)

☐ 212.2  Identify each physical, mental, or emotional injury that you attribute to the ADVERSE EMPLOYMENT ACTION and the area of your body affected.

☐ 212.3  Do you still have any complaints of physical, mental, or emotional injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each complaint state:
   (a)  a description of the injury;
   (b)  whether the complaint is subsiding, remaining the same, or becoming worse; and
   (c)  the frequency and duration.

☐ 212.4  Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure section 2034) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each HEALTH CARE PROVIDER state:
   (a)  the name, ADDRESS, and telephone number;
   (b)  the type of consultation, examination, or treatment provided;
   (c)  the dates you received consultation, examination, or treatment; and
   (d)  the charges to date.

☐ 212.5  Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each medication state:
   (a)  the name of the medication;
   (b)  the name, ADDRESS and telephone number of the PERSON who prescribed or furnished it;
   (c)  the date prescribed or furnished;
   (d)  the dates you began and stopped taking it; and
   (e)  the cost to date.

☐ 212.6  Are there any other medical services not previously listed in response to Interrogatory 212.4 (for example, ambulance, nursing, prosthetics) that you received for injuries attributed to the ADVERSE EMPLOYMENT ACTION? If so, for each service state:
   (a)  the nature;
   (b)  the date;
   (c)  the cost; and
   (d)  the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER.

(FAX)1+510+873+0984          P 042/043

☐ 212.7 Has any HEALTH CARE PROVIDER advised that you may require future or additional treatment for any injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each injury state:

 (a) the name and ADDRESS of each HEALTH CARE PROVIDER;

 (b) the complaints for which the treatment was advised; and

 (c) the nature, duration, and estimated cost of the treatment.

### 213.0  Other Damages—Interrogatories to Employee

☐ 213.1 Are there any other damages that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each item of damage state:

 (a) the nature;

 (b) the date it occurred;

 (c) the amount; and

 (d) the name, ADDRESS, and telephone number of each PERSON who has knowledge of the nature or amount of the damage.

☐ 213.2 Do any DOCUMENTS support the existence or amount of any item of damages claimed in Interrogatory 213.1? If so, identify the DOCUMENTS and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

### 214.0  Insurance

☑ 214.1 At the time of the ADVERSE EMPLOYMENT ACTION, was there in effect any policy of insurance through which you were or might be insured in any manner for the damages, claims, or actions that have arisen out of the ADVERSE EMPLOYMENT ACTION? If so, for each policy state:

 (a) the kind of coverage;

 (b) the name and ADDRESS of the insurance company;

 (c) the name, ADDRESS, and telephone number of each named insured;

 (d) the policy number;

 (e) the limits of coverage for each type of coverage contained in the policy;

 (f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and

 (g) the name, ADDRESS, and telephone number of the custodian of the policy.

☑ 214.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the ADVERSE EMPLOYMENT ACTION? If so, specify the statute.

### 215.0  Investigation                          DISC-002

☑ 215.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the ADVERSE EMPLOYMENT ACTION? If so, for each individual state:

 (a) the name, ADDRESS, and telephone number of the individual interviewed;

 (b) the date of the interview; and

 (c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

☑ 215.2 Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the ADVERSE EMPLOYMENT ACTION? If so, for each statement state:

 (a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;

 (b) the name, ADDRESS, and telephone number of the individual who obtained the statement;

 (c) the date the statement was obtained; and

 (d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

### 216.0  Denials and Special or Affirmative Defenses

☑ 216.1 Identify each denial of a material allegation and each special or affirmative defense in your PLEADINGS and for each:

 (a) state all facts upon which you base the denial or special or affirmative defense;

 (b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

 (c) identify all DOCUMENTS and all other tangible things, that support your denial or special or affirmative defense, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

### 217.0  Response to Request for Admissions

☐ 217.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

 (a) state the number of the request;

 (b) state all facts upon which you base your response;

 (c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

 (d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

DISC-001

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(name, State Bar number, and address):*<br>Law Offices of David S. Secrest, P.C.<br>David S. Secrest, Esq. [State Bar #142299]<br>P. O. Box 1029, 504 Plaza Alhambra, Suite 205<br>El Granada, CA 94018-1029<br>**TELEPHONE NO.:** (650) 726-7461<br>**FAX NO.** *(Optional):* (650) 726-7471<br>**E-MAIL ADDRESS** *(Optional):* dave.secrest@comcast.net<br>**ATTORNEY FOR** *(Name):* Plaintiff, Norman Runyan | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SONOMA

**SHORT TITLE OF CASE:**

Norman Runyan vs. River Rock Entertainment Authority, et al.

| | CASE NUMBER: |
|---|---|
| **FORM INTERROGATORIES—GENERAL**<br>Asking Party: Plaintiff Norman Runyan<br><br>Answering Party: Defendant River Rock Entertainment Authority<br>Set No.: One | SCV-242491 |

**Sec. 1. Instructions to All Parties**

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a) These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form Interrogatories—Limited Civil Cases (Economic Litigation) (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c) You may insert your own definition of INCIDENT in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d) The interrogatories in section 16.0, Defendant's Contentions–Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e) Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____     _____
(DATE)                                    (SIGNATURE)

**Sec. 4. Definitions**

Words in BOLDFACE CAPITALS in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☑ (1) INCIDENT includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

... ... .........-.-.-....    ....... ....    (ΓΠΛ)+1+510+015+0500    Γ. 020/042

DISC-001

**(2) INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(3)(2)"):*

**(b) YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c) PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d) DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e) HEALTH CARE PROVIDER** includes any PERSON referred to in Code of Civil Procedure section 667.7(e)(3).

**(f) ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
    Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

☑ **1.1** State the name, ADDRESS, telephone number, and relationship to you of each PERSON who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information—Individual**

☐ **2.1** State:
  (a) your name;
  (b) every name you have used in the past; and
  (c) the dates you used each name.

☐ **2.2** State the date and place of your birth.

☐ **2.3** At the time of the INCIDENT, did you have a driver's license? If so state:
  (a) the state or other issuing entity;
  (b) the license number and type;
  (c) the date of issuance; and
  (d) all restrictions.

☐ **2.4** At the time of the INCIDENT, did you have any other permit or license for the operation of a motor vehicle? If so, state:
  (a) the state or other issuing entity;
  (b) the license number and type;
  (c) the date of issuance; and
  (d) all restrictions.

☐ **2.5** State:
  (a) your present residence ADDRESS;
  (b) your residence ADDRESSES for the past five years; and
  (c) the dates you lived at each ADDRESS.

☐ **2.6** State:
  (a) the name, ADDRESS, and telephone number of your present employer or place of self-employment; and
  (b) the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the INCIDENT until today.

☐ **2.7** State:
  (a) the name and ADDRESS of each school or other academic or vocational institution you have attended, beginning with high school;
  (b) the dates you attended;
  (c) the highest grade level you have completed; and
  (d) the degrees received.

☐ **2.8** Have you ever been convicted of a felony? If so, for each conviction state:
  (a) the city and state where you were convicted;
  (b) the date of conviction;
  (c) the offense; and
  (d) the court and case number.

☐ **2.9** Can you speak English with ease? If not, what language and dialect do you normally use?

☐ **2.10** Can you read and write English with ease? If not, what language and dialect do you normally use?

(FAX)+510+8+5+0988    P 029/042

DISC-001

☐ 2.11 At the time of the INCIDENT were you acting as an agent or employee for any PERSON? If so, state:
(a) the name, ADDRESS, and telephone number of that PERSON; and
(b) a description of your duties.

☐ 2.12 At the time of the INCIDENT did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the INCIDENT? If so, for each person state:
(a) the name, ADDRESS, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the INCIDENT.

☐ 2.13 Within 24 hours before the INCIDENT did you or any person involved in the INCIDENT use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, ADDRESS, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the ADDRESS where each substance was used or taken;
(f) the name, ADDRESS, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information—Business Entity**

☑ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the ADDRESS of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and ADDRESS of each general partner; and
(e) the ADDRESS of the principal place of business.

☑ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the ADDRESS of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and ADDRESS of each joint venturer; and
(d) the ADDRESS of the principal place of business.

☑ 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the ADDRESS of the principal place of business.

☑ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the ADDRESS of the principal place of business.

☑ 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

☑ 4.1 At the time of the INCIDENT, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the INCIDENT? If so, for each policy state:
(a) the kind of coverage;
(b) the name and ADDRESS of the insurance company;
(c) the name, ADDRESS, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, ADDRESS, and telephone number of the custodian of the policy.

☑ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the INCIDENT? If so, specify the statute.

**5.0 [Reserved]**

**6.0 Physical, Mental, or Emotional Injuries**

☐ 6.1 Do you attribute any physical, mental, or emotional injuries to the INCIDENT? (If your answer is "no," do not answer interrogatories 6.2 through 8.7).

☐ 6.2 Identify each injury you attribute to the INCIDENT and the area of your body affected.

DISC-001

**6.3** Do you still have any complaints that you attribute to the INCIDENT? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

**6.4** Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the INCIDENT? If so, for each HEALTH CARE PROVIDER state:
(a) the name, ADDRESS, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

**6.5** Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the INCIDENT? If so, for each medication state:
(a) the name;
(b) the PERSON who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

**6.6** Are there any other medical services necessitated by the injuries that you attribute to the INCIDENT that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, ADDRESS, and telephone number of each provider.

**6.7** Has any HEALTH CARE PROVIDER advised that you may require future or additional treatment for any injuries that you attribute to the INCIDENT? If so, for each state:
(a) the name and ADDRESS of each HEALTH CARE PROVIDER;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0 Property Damage**

**7.1** Do you attribute any loss of or damage to a vehicle or other property to the INCIDENT? If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;
(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, ADDRESS, and telephone number of the seller, the date of sale, and the sale price.

**7.2** Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, ADDRESS, and telephone number of the PERSON who prepared it and the date prepared;
(b) the name, ADDRESS, and telephone number of each PERSON who has a copy of it; and
(c) the amount of damage stated.

**7.3** Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, ADDRESS, and telephone number of the PERSON who repaired it;
(e) the name, ADDRESS, and telephone number of the PERSON who paid for the repair.

**8.0 Loss of Income or Earning Capacity**

**8.1** Do you attribute any loss of income or earning capacity to the INCIDENT? (If your answer is "no," do not answer interrogatories 8.2 through 8.8).

**8.2** State:
(a) the nature of your work;
(b) your job title at the time of the INCIDENT; and
(c) the date your employment began.

**8.3** State the last date before the INCIDENT that you worked for compensation.

**8.4** State your monthly income at the time of the INCIDENT and how the amount was calculated.

**8.5** State the date you returned to work at each place of employment following the INCIDENT.

**8.6** State the dates you did not work and for which you lost income as a result of the INCIDENT.

**8.7** State the total income you have lost to date as a result of the INCIDENT and how the amount was calculated.

**8.8** Will you lose income in the future as a result of the INCIDENT? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

**9.0 Other Damages**

☐ 9.1 Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

☐ 9.2 Do any DOCUMENTS support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**10.0 Medical History**

☐ 10.1 At any time before the INCIDENT did you have complaints or injuries that involved the same part of your body claimed to have been injured in the INCIDENT? If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER whom you consulted or who examined or treated you.

☐ 10.2 List all physical, mental, and emotional disabilities you had immediately before the INCIDENT. (You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)

☐ 10.3 At any time after the INCIDENT, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, ADDRESS, and telephone number of any other PERSON involved;
(c) the nature of any injuries you sustained;
(d) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER who you consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

☐ 11.1 Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street ADDRESS or intersection) of the INCIDENT giving rise to the action, claim, or demand;
(b) the name, ADDRESS, and telephone number of each PERSON against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, ADDRESS, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☐ 11.2 In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the INCIDENT giving rise to the claim;
(b) the name, ADDRESS, and telephone number of your employer at the time of the injury;
(c) the name, ADDRESS, and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

☑ 12.1 State the name, ADDRESS, and telephone number of each individual:
(a) who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;
(b) who made any statement at the scene of the INCIDENT;
(c) who heard any statements made about the INCIDENT by any individual at the scene; and
(d) who YOU OR ANYONE ACTING ON YOUR BEHALF claim has knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

☑ 12.2 Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state:
(a) the name, ADDRESS, and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

☑ 12.3 Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:
(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;
(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

hr.e.ce.:05-EG000(rG0)(F7115:35 — ONE LEGAL — —     (FAX)175(0+873+0984     P 032.043

**DISC-001**

☑ **12.4   Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the INCIDENT or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;

(b) the places, objects, or persons photographed, filmed, or videotaped;

(c) the date the photographs, films, or videotapes were taken;

(d) the name, ADDRESS, and telephone number of the individual taking the photographs, films, or videotapes; and

(e) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of the photographs, films, or videotapes.

☑ **12.5   Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the INCIDENT? If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);

(b) the subject matter; and

(c) the name, ADDRESS, and telephone number of each PERSON who has it.

☑ **12.6   Was a report made by any PERSON concerning the** INCIDENT? If so, state:

(a) the name, title, identification number, and employer of the PERSON who made the report;

(b) the date and type of report made;

(c) the name, ADDRESS, and telephone number of the PERSON for whom the report was made; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of the report.

☑ **12.7   Have YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the INCIDENT? If so, for each inspection state:

(a) the name, ADDRESS, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and

(b) the date of the inspection.

**13.0  Investigation—Surveillance**

☑ **13.1   Have YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the INCIDENT or any party to this action? If so, for each surveillance state:

(a) the name, ADDRESS, and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, ADDRESS, and telephone number of the individual who conducted the surveillance; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of any surveillance photograph, film, or videotape.

☑ **13.2  Has a written report been prepared on the** surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, ADDRESS, and telephone number of the individual who prepared the report; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy.

**14.0  Statutory or Regulatory Violations**

☑ **14.1   Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT? If so, identify the name, ADDRESS, and telephone number of each PERSON and the statute, ordinance, or regulation that was violated.

☑ **14.2   Was any PERSON cited or charged with a violation of** any statute, ordinance, or regulation as a result of this INCIDENT? If so, for each PERSON state:

(a) the name, ADDRESS, and telephone number of the PERSON;

(b) the statute, ordinance, or regulation allegedly violated;

(c) whether the PERSON entered a plea in response to the citation or charge and, if so, the plea entered; and

(d) the name and ADDRESS of the court or administrative agency, names of the parties, and case number.

**15.0  Denials and Special or Affirmative Defenses**

☑ **15.1   Identify each denial of a material allegation and each** special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(c) identify all DOCUMENTS and other tangible things that support your denial or special or affirmative defense, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**16.0  Defendant's Contentions—Personal Injury**

☑ **16.1   Do you contend that any PERSON, other than you or** plaintiff, contributed to the occurrence of the INCIDENT or the injuries or damages claimed by plaintiff? If so, for each PERSON:

(a) state the name, ADDRESS, and telephone number of the PERSON;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.2   Do you contend that plaintiff was not injured in the** INCIDENT? If so:

(a) state all facts upon which you base your contention;

(b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(c) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.3** Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the INCIDENT? If so, for each injury:

(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.4** Do you contend that any of the services furnished by any HEALTH CARE PROVIDER claimed by plaintiff in discovery proceedings thus far in this case were not due to the INCIDENT? If so:

(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.5** Do you contend that any of the costs of services furnished by any HEALTH CARE PROVIDER claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.6** Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the INCIDENT? If so:

(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.7** Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the INCIDENT? If so:

(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

DISC-001

☑ **16.8** Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☑ **16.9** Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the INCIDENT by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each DOCUMENT;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

☑ **16.10** Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a HEALTH CARE PROVIDER not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER;
(b) a description of each DOCUMENT; and
(c) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**17.0 Responses to Request for Admissions**

☐ **17.1** Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and
(d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

☐ **20.1** State the date, time, and place of the INCIDENT (closest street ADDRESS or intersection).

☐ **20.2** For each vehicle involved in the INCIDENT, state:

(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

(c) the name, ADDRESS, and telephone number of each occupant other than the driver;

(d) the name, ADDRESS, and telephone number of each registered owner;

(e) the name, ADDRESS, and telephone number of each lessee;

(f) the name, ADDRESS, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the ADDRESS and location where your trip began and the ADDRESS and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the INCIDENT, and state the location of each stop, other than routine traffic stops, during the trip leading up to the INCIDENT.

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the INCIDENT for the 500 feet of travel before the INCIDENT.

☐ 20.6 Did the INCIDENT occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the INCIDENT? If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the INCIDENT.

☐ 20.8 State how the INCIDENT occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the INCIDENT;
(b) at the time of the INCIDENT; and (c) just after the INCIDENT.

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the INCIDENT? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, ADDRESS, and telephone number of each PERSON who is a witness to or has information about each malfunction or defect; and
(d) state the name, ADDRESS, and telephone number of each PERSON who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the INCIDENT? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, ADDRESS, and telephone number of each PERSON who is a witness to or has information about each malfunction or defect; and

DISC-001

(d) state the name, ADDRESS, and telephone number of each PERSON who has custody of each defective part.

☐ 20.11 State the name, ADDRESS, and telephone number of each owner and each PERSON who has had possession since the INCIDENT of each vehicle involved in the INCIDENT.

25.0 [Reserved]

30.0 [Reserved]

40.0 [Reserved]

50.0 Contract

☑ 50.1 For each agreement alleged in the pleadings:
(a) identify each DOCUMENT that is part of the agreement and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;
(b) state each part of the agreement not in writing, the name, ADDRESS, and telephone number of each PERSON agreeing to that provision, and the date that part of the agreement was made;
(c) identify all DOCUMENTS that evidence any part of the agreement not in writing and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;
(d) identify all DOCUMENTS that are part of any modification to the agreement, and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;
(e) state each modification not in writing, the date, and the name, ADDRESS, and telephone number of each PERSON agreeing to the modification, and the date the modification was made;
(f) identify all DOCUMENTS that evidence any modification of the agreement not in writing and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT.

☑ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☑ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☑ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☑ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

60.0 [Reserved]

P. U357082

DISC-002

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | |
|---|---|
| Law Offices of David S. Secrest, P.C.<br>David S. Secrest, Esq. [State Bar #142299]<br>P.O. Box 1029, 504 Plaza Alhambra, Suite 205<br>El Granada, CA 94018-1029<br>TELEPHONE NO.: (650) 726-7461   FAX NO. (Optional): (650) 726-7471<br>E-MAIL ADDRESS (Optional): dave.secrest@comcast.net<br>ATTORNEY FOR (Name): Plaintiff, Norman Runyan | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA

SHORT TITLE:
Norman Runyan vs. River Rock Entertainment Authority, et al.

| FORM INTERROGATORIES — EMPLOYMENT LAW<br>Asking Party: Plaintiff Norman Runyan<br>Answering Party: Defendant River Rock Entertainment Authority<br>Set No.: One | CASE NUMBER:<br>SCV-242491 |
|---|---|

**Sec. 1. Instructions to All Parties**

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in employment cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a) These form interrogatories are designed for optional use by parties in employment cases. (Separate sets of interrogatories, *Form Interrogatories—General* (form DISC-001) and *Form Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004) may also be used where applicable in employment cases.)

(b) Insert the names of the EMPLOYEE and EMPLOYER to whom these interrogatories apply in the definitions in sections 4(d) and (e) below.

(c) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(d) The interrogatories in section 211.0, Loss of Income interrogatories to Employer, should not be used until the employer has had a reasonable opportunity to conduct an investigation or discovery of the employee's injuries and damages.

(e) Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a) You must answer or provide another appropriate response to each interrogatory that has been checked below.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person is requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____   _____
(DATE)                              (SIGNATURE)

**Sec. 4. Definitions**

Words in BOLDFACE CAPITALS in these interrogatories are defined as follows:

(a) PERSON includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

... ... ...    ... ....    ... ....    ... .... ...    ... ... ...

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **EMPLOYMENT** means a relationship in which an EMPLOYEE provides services requested by or on behalf of an EMPLOYER, other than an independent contractor relationship.

(d) **EMPLOYEE** means a PERSON who provides services in an EMPLOYMENT relationship and who is a party to this lawsuit. For purposes of these interrogatories, EMPLOYEE refers to (insert name):

NORMAN RUNYAN

(If no name is inserted, EMPLOYEE means all such PERSONS.)

(e) **EMPLOYER** means a PERSON who employs an EMPLOYEE to provide services in an EMPLOYMENT relationship and who is a party to this lawsuit. For purposes of these interrogatories, EMPLOYER refers to (insert name):

RIVER ROCK ENTERTAINMENT AUTHOR.

(If no name is inserted, EMPLOYER means all such PERSONS.)

(f) **ADVERSE EMPLOYMENT ACTION** means any TERMINATION, suspension, demotion, reprimand, loss of pay, failure or refusal to hire, failure or refusal to promote, or other action or failure to act that adversely affects the EMPLOYEE'S rights or interests and which is alleged in the PLEADINGS.

(g) **TERMINATION** means the actual or constructive termination of employment and includes a discharge, firing, layoff, resignation, or completion of the term of the employment agreement.

(h) **PUBLISH** means to communicate orally or in writing to anyone other than the plaintiff. This includes communications by one of the defendant's employees to others. (Kelly v. General Telephone Co. (1982) 136 Cal.App.3d 278, 284.)

(i) **PLEADINGS** means the original or most recent amended version of any complaint, answer, cross-complaint, or answer to cross-complaint.

(j) **BENEFIT** means any benefit from an EMPLOYER, including an "employee welfare benefit plan" or employee pension benefit plan" within the meaning of Title 29 United States Code section 1002(1) or (2) or ERISA.

(k) **HEALTH CARE PROVIDER** includes any PERSON referred to in Code of Civil Procedure section 667.7(e)(3).

(l) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(m) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**
The following interrogatories for employment law cases have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

200.0   Contract Formation
201.0   Adverse Employment Action
202.0   Discrimination Interrogatories to Employee
203.0   Harassment Interrogatories to Employee
204.0   Disability Discrimination
205.0   Discharge in Violation of Public Policy
206.0   Defamation
207.0   Internal Complaints
208.0   Governmental Complaints
209.0   Other Employment Claims by Employee or Against Employer
210.0   Loss of Income Interrogatories to Employee
211.0   Loss of Income Interrogatories to Employer
212.0   Physical, Mental, or Emotional Injuries—Interrogatories to Employee
213.0   Other Damages Interrogatories to Employee
214.0   Insurance
215.0   Investigation
216.0   Denials and Special or Affirmative Defenses
217.0   Response to Request for Admissions

**200.0   Contract Formation**

☑ **200.1**  Do you contend that the EMPLOYMENT relationship was at "at will"? If so:
   (a)   state all facts upon which you base this contention;
   (b)   state the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and
   (c)   identify all DOCUMENTS that support your contention.

☑ **200.2**  Do you contend that the EMPLOYMENT relationship was not "at will"? If so:
   (a)   state all facts upon which you base this contention;
   (b)   state the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and
   (c)   identify all DOCUMENTS that support your contention.

☑ **200.3**  Do you contend that the EMPLOYMENT relationship was governed by any agreement—written, oral, or implied? If so:
   (a)   state all facts upon which you base this contention;
   (b)   state the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and
   (c)   identify all DOCUMENTS that support your contention.

DISC-002

☑ **200.4** Was any part of the parties' EMPLOYMENT relationship governed in whole or in part by any written rules, guidelines, policies, or procedures established by the EMPLOYER? If so, for each DOCUMENT containing the written rules, guidelines, policies, or procedures:

(a) state the date and title of the DOCUMENT and a general description of its contents;

(b) state the manner in which the DOCUMENT was communicated to employees; and

(c) state the manner, if any, in which employees acknowledged either receipt of the DOCUMENT or knowledge of its contents.

☑ **200.5** Was any part of the parties' EMPLOYMENT relationship covered by one or more collective bargaining agreements or memorandums of understanding between the EMPLOYER (or an association of employers) and any labor union or employee association? If so, for each collective bargaining agreement or memorandum of understanding, state:

(a) the names and ADDRESSES of the parties to the collective bargaining agreement or memorandum of understanding;

(b) the beginning and ending dates, if applicable, of the collective bargaining agreement or memorandum of understanding; and

(c) which parts of the collective bargaining agreement or memorandum of understanding, if any, govern (1) any dispute or claim referred to in the PLEADINGS and (2) the rules or procedures for resolving any dispute or claim referred to in the PLEADINGS.

☑ **200.6** Do you contend that the EMPLOYEE and the EMPLOYER were in a business relationship other than an EMPLOYMENT relationship? If so, for each relationship:

(a) state the names of the parties to the relationship;

(b) identify the relationship; and

(c) state all facts upon which you base your contention that the parties were in a relationship other than an EMPLOYMENT relationship.

**201.0  Adverse Employment Action**

☑ **201.1** Was the EMPLOYEE involved in a TERMINATION? If so:

(a) state all reasons for the EMPLOYEE'S TERMINATION;

(b) state the name, ADDRESS, and telephone number of each PERSON who participated in the TERMINATION decision;

(c) state the name, ADDRESS, and telephone number of each PERSON who provided any information relied upon in the TERMINATION decision; and

(d) identify all DOCUMENTS relied upon in the TERMINATION decision.

☑ **201.2** Are there any facts that would support the EMPLOYEE'S TERMINATION that were first discovered after the TERMINATION? If so:

(a) state the specific facts;

(b) state when and how EMPLOYER first learned of each specific fact;

(c) state the name, ADDRESS, and telephone number of each PERSON who has knowledge of the specific facts; and

(d) identify all DOCUMENTS that evidence these specific facts.

☑ **201.3** Were there any other ADVERSE EMPLOYMENT ACTIONS, including (the asking party should list the ADVERSE EMPLOYMENT ACTIONS):

If so, for each action, provide the following:

(a) all reasons for each ADVERSE EMPLOYMENT ACTION;

(b) the name, ADDRESS, and telephone number of each PERSON who participated in making each ADVERSE EMPLOYMENT ACTION decision;

(c) the name, ADDRESS, and telephone number of each PERSON who provided any information relied upon in making each ADVERSE EMPLOYMENT ACTION decision; and

(d) the identity of all DOCUMENTS relied upon in making each ADVERSE EMPLOYMENT ACTION decision.

☑ **201.4** Was the TERMINATION or any other ADVERSE EMPLOYMENT ACTIONS referred to in interrogatories 201.1 through 201.3 based in whole or in part on the EMPLOYEE'S job performance? If so, for each action:

(a) identify the ADVERSE EMPLOYMENT ACTION;

(b) identify the EMPLOYEE'S specific job performance that played a role in that ADVERSE EMPLOYMENT ACTION;

(c) identify any rules, guidelines, policies, or procedures that were used to evaluate the EMPLOYEE'S specific job performance;

(d) state the names, ADDRESSES, and telephone numbers of all PERSONS who had responsibility for evaluating the specific job performance of the EMPLOYEE;

(e) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the EMPLOYEE'S specific job performance that played a role in that ADVERSE EMPLOYMENT ACTION; and

(f) describe all warnings given with respect to the EMPLOYEE'S specific job performance.

UFR-09-2008-FROM FRJ-99-JUNE TEORE    (FHXJ)+51U+87340984    P 038/043

DISC-002

☑ 201.5  Was any PERSON hired to replace the EMPLOYEE after the EMPLOYEE'S TERMINATION or demotion? If so, state the PERSON'S name, job title, qualifications, ADDRESS and telephone number, and the date the PERSON was hired.

☑ 201.6  Has any PERSON performed any of the EMPLOYEE'S former job duties after the EMPLOYEE'S TERMINATION or demotion? If so:
  (a)  state the PERSON'S name, job title, ADDRESS, and telephone number;
  (b)  identify the duties; and
  (c)  state the date on which the PERSON started to perform the duties.

☑ 201.7  If the ADVERSE EMPLOYMENT ACTION involved the failure or refusal to select the EMPLOYEE (for example, for hire, promotion, transfer, or training), was any other PERSON selected instead? If so, for each ADVERSE EMPLOYMENT ACTION, state the name, ADDRESS, and telephone number of each PERSON selected; the date the PERSON was selected; and the reason the PERSON was selected instead of the EMPLOYEE.

**202.0  Discrimination—Interrogatories to Employee**

☐ 202.1  Do you contend that any ADVERSE EMPLOYMENT ACTIONS against you were discriminatory? If so:
  (a)  identify each ADVERSE EMPLOYMENT ACTION that involved unlawful discrimination;
  (b)  identify each characteristic (for example, gender, race, age, etc.) on which you base your claim or claims of discrimination;
  (c)  state all facts upon which you base each claim of discrimination;
  (d)  state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts; and
  (e)  identify all DOCUMENTS evidencing those facts.

☐ 202.2  State all facts upon which you base your contention that you were qualified to perform any job which you contend was denied to you on account of unlawful discrimination.

**203.0  Harassment—Interrogatories to Employee**

☐ 203.1  Do you contend that you were unlawfully harassed in your employment? If so:
  (a)  state the name, ADDRESS, telephone number, and employment position of each PERSON whom you contend harassed you;
  (b)  for each PERSON whom you contend harassed you, describe the harassment;

  (c)  identify each characteristic (for example, gender, race, age, etc.) on which you base your claim of harassment;
  (d)  state all facts upon which you base your contention that you were unlawfully harassed;
  (e)  state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts; and
  (f)  identify all DOCUMENTS evidencing those facts.

**204.0  Disability Discrimination**

☐ 204.1  Name and describe each disability alleged in the PLEADINGS.

☐ 204.2  Does the EMPLOYEE allege any injury or illness that arose out of or in the course of EMPLOYMENT? If so, state:
  (a)  the nature of such injury or illness;
  (b)  how such injury or illness occurred;
  (c)  the date on which such injury or illness occurred;
  (d)  whether EMPLOYEE has filed a workers' compensation claim. If so, state the date and outcome of the claim; and
  (e)  whether EMPLOYEE has filed or applied for disability benefits of any type. If so, state the date, identify the nature of the benefits applied for, and the outcome of any such application.

☐ 204.3  Were there any communications between the EMPLOYEE (or the EMPLOYEE'S HEALTH CARE PROVIDER) and the EMPLOYER about the type or extent of any disability of EMPLOYEE? If so:
  (a)  state the name, ADDRESS, and telephone number of each person who made or received the communications;
  (b)  state the name, ADDRESS, and telephone number of each PERSON who witnessed the communications;
  (c)  describe the date and substance of the communications; and
  (d)  identify each DOCUMENT that refers to the communications.

☐ 204.4  Did the EMPLOYER have any information about the type, existence, or extent of any disability of EMPLOYEE other than from communications with the EMPLOYEE or the EMPLOYEE'S HEALTH CARE PROVIDER? If so, state the sources and substance of that information and the name, ADDRESS, and telephone number of each PERSON who provided or received the information.

☐ 204.5  Did the EMPLOYEE need any accommodation to perform any function of the EMPLOYEE'S job position or need a transfer to another position as an accommodation? If so, describe the accommodations needed.

APR-03-2008(THU) 11:50        ONE LEGAL                (FAX)1+510+873+0984        P 039/042

**DISC-002**

☐ 204.6  Were there any communications between the
EMPLOYEE (or the EMPLOYEE'S HEALTH CARE
PROVIDER) and the EMPLOYER about any possible
accommodation of EMPLOYEE? If so, for each
communication:
- (a) state the name, ADDRESS, and telephone
number of each PERSON who made or
received the communication;
- (b) state the name, ADDRESS, and telephone
number of each PERSON who witnessed the
communication;
- (c) describe the date and substance of the
communication; and
- (d) identify each DOCUMENT that refers to the
communication.

☐ 204.7  What did the EMPLOYER consider doing to
accommodate the EMPLOYEE? For each
accommodation considered:
- (a) describe the accommodation considered;
- (b) state whether the accommodation was offered to the
EMPLOYEE;
- (c) state the EMPLOYEE'S response; or
- (d) if the accommodation was not offered, state all the
reasons why this decision was made;
- (e) state the name, ADDRESS, and telephone number of
each PERSON who on behalf of EMPLOYER made
any decision about what accommodations, if any, to
make for the EMPLOYEE; and
- (f) state the name, ADDRESS, and telephone number of
each PERSON who on behalf of the EMPLOYER
made or received any communications about what
accommodations, if any, to make for the
EMPLOYEE.

**205.0  Discharge in Violation of Public Policy**

☐ 205.1  Do you contend that the EMPLOYER took any
ADVERSE EMPLOYMENT ACTION against you in
violation of public policy? If so:
- (a) identify the constitutional provision, statute,
regulation, or other source of the public policy that
you contend was violated; and
- (b) state all facts upon which you base your contention
that the EMPLOYER violated public policy.

**206.0  Defamation**

☐ 206.1  Did the EMPLOYER'S agents or employees
PUBLISH any of the allegedly defamatory statements
identified in the PLEADINGS? If so, for each
statement:
- (a) identify the PUBLISHED statement;
- (b) state the name, ADDRESS, telephone number, and
job title of each person who PUBLISHED the
statement;
- (c) state the name, ADDRESS, and telephone number of
each person to whom the statement was
PUBLISHED:

- (d) state whether, at the time the statement was
PUBLISHED, the PERSON who PUBLISHED the
statement believed it to be true; and
- (e) state all facts upon which the PERSON who
published the statement based the belief that it was
true.

☐ 206.2  State the name and ADDRESS of each agent or
employee of the EMPLOYER who responded to any
inquiries regarding the EMPLOYEE after the
EMPLOYEE'S TERMINATION.

☐ 206.3  State the name and ADDRESS of the recipient
and the substance of each post-TERMINATION
statement PUBLISHED about EMPLOYEE by any
agent or employee of EMPLOYER.

**207.0  Internal Complaints**

☑ 207.1  Were there any internal written policies or
regulations of the EMPLOYER that apply to the making
of a complaint of the type that is the subject matter of
this lawsuit? If so:
- (a) state the title and date of each DOCUMENT
containing the policies or regulations and a
general description of the DOCUMENT'S
contents;
- (b) state the manner in which the DOCUMENT was
communicated to EMPLOYEES;
- (c) state the manner, if any, in which EMPLOYEES
acknowledged receipt of the DOCUMENT or
knowledge of its contents, or both;
- (d) state, if you contend that the EMPLOYEE failed
to use any available internal complaint
procedures, all facts that support that
contention; and
- (e) state, if you contend that the EMPLOYEE'S
failure to use internal complaint procedures was
excused, all facts why the EMPLOYEE'S use of
the procedures was excused.

☑ 207.2  Did the EMPLOYEE complain to the
EMPLOYER about any of the unlawful conduct
alleged in the PLEADINGS? If so, for each
complaint:
- (a) state the date of the complaint;
- (b) state the nature of the complaint;
- (c) state the name and ADDRESS of each
PERSON to whom the complaint was made;
- (d) state the name, ADDRESS, telephone number,
and job title of each PERSON who investigated
the complaint;
- (e) state the name, ADDRESS, telephone number,
and job title of each PERSON who participated
in making decisions about how to conduct the
investigation;

APR-03-20081(THU) 11:55    ONE LEGAL          (FAX)1451013713098          P 040/042

DISC-002

(f) state the name, ADDRESS, telephone number, and job title of each PERSON who was interviewed or who provided an oral or written statement as part of the investigation of the complaint;

(g) state the nature and date of any action taken in response to the complaint;

(h) state whether the EMPLOYEE who made the complaint was made aware of the actions taken by the EMPLOYER in response to the complaint, and, if so, state how and when;

(i) identify all DOCUMENTS relating to the complaint, the investigation, and any action taken in response to the complaint; and

(j) state the name, ADDRESS, and telephone number of each PERSON who has knowledge of the EMPLOYEE'S complaint or the EMPLOYER'S response to the complaint.

**208.0  Governmental Complaints**

☑ 208.1 Did the EMPLOYEE file a claim, complaint, or charge with any governmental agency that involved any of the material allegations made in the PLEADINGS? If so, for each claim, complaint, or charge:

(a) state the date on which it was filed;

(b) state the name and ADDRESS of the agency with which it was filed;

(c) state the number assigned to the claim, complaint, or charge by the agency;

(d) state the nature of each claim, complaint, or charge made;

(e) state the date on which the EMPLOYER was notified of the claim, complaint, or charge;

(f) state the name, ADDRESS, and telephone number of all PERSONS within the governmental agency with whom the EMPLOYER has had any contact or communication regarding the claim, complaint, or charge;

(g) state whether a right to sue notice was issued and, if so, when; and

(h) state whether any findings or conclusions regarding the complaint or charge have been made, and, if so, the date and description of the agency's findings or conclusions.

☑ 208.2 Did the EMPLOYER respond to any claim, complaint, or charge identified in Interrogatory 208.1? If so, for each claim, complaint, or charge:

(a) state the nature and date of any investigation done or any other action taken by the EMPLOYER in response to the claim, complaint, or charge;

(b) state the name, ADDRESS, telephone number, and job title of each person who investigated the claim, complaint, or charge;

(c) state the name, ADDRESS, telephone number, and job title of each PERSON who participated in making decisions about how to conduct the investigation; and

(d) state the name, ADDRESS, telephone number, and job title of each PERSON who was interviewed or who provided an oral or written statement as part of the investigation.

**209.0  Other Employment Claims by Employee or Against Employer**

☑ 209.1 Except for this action, in the past 10 years has the EMPLOYEE filed a civil action against any employer regarding the EMPLOYEE'S employment? If so, for each civil action:

(a) state the name, ADDRESS, and telephone number of each employer against whom the action was filed;

(b) state the court, names of the parties, and case number of the civil action;

(c) state the name, ADDRESS, and telephone number of any attorney representing the EMPLOYEE; and

(d) state whether the action has been resolved or is pending.

☑ 209.2 Except for this action, in the past 10 years has any employee filed a civil action against the EMPLOYER regarding his or her employment? If so, for each civil action:

(a) state the name, ADDRESS, and telephone number of each employee who filed the action;

(b) state the court, names of the parties, and case number of the civil action;

(c) state the name, ADDRESS, and telephone number of any attorney representing the EMPLOYER; and

(d) state whether the action has been resolved or is pending.

**210.0  Loss of Income—Interrogatories to Employee**

☐ 210.1 Do you attribute any loss of income, benefits, or earning capacity to any ADVERSE EMPLOYMENT ACTION? [If your answer is "no," do not answer interrogatories 210.2 through 210.6.]

☐ 210.2 State the total amount of income, benefits, or earning capacity you have lost to date and how the amount was calculated.

☐ 210.3 Will you lose income, benefits, or earning capacity in the future as a result of any ADVERSE EMPLOYMENT ACTION? If so, state the total amount of income, benefits, or earning capacity you expect to lose, and how the amount was calculated.

☐ 210.4 Have you attempted to minimize the amount of your lost income? If so, describe how; if not, explain why not.

☐ **210.5** Have you purchased any benefits to replace any benefits to which you would have been entitled if the ADVERSE EMPLOYMENT ACTION had not occurred? If so, state the cost for each benefit purchased.

☐ **210.6** Have you obtained other employment since any ADVERSE EMPLOYMENT ACTION? If so, for each new employment:
   (a)  state when the new employment commenced;
   (b)  state the hourly rate or monthly salary for the new employment; and
   (c)  state the benefits available from the new employment.

**211.0    Loss of Income—Interrogatories to Employer**
*[See Instruction 2(d).]*

☑ **211.1** Identify each type of BENEFIT to which the EMPLOYEE would have been entitled, from the date of the ADVERSE EMPLOYMENT ACTION to the present, if the ADVERSE EMPLOYMENT ACTION had not happened and the EMPLOYEE had remained in the same job position. For each type of benefit, state the amount the EMPLOYER would have paid to provide the benefit for the EMPLOYEE during this time period and the value of the BENEFIT to the EMPLOYEE.

☑ **211.2** Do you contend that the EMPLOYEE has not made reasonable efforts to minimize the amount of the EMPLOYEE'S lost income? If so:
   (a)  describe what more EMPLOYEE should have done;
   (b)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts that support your contention; and
   (c)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

☑ **211.3** Do you contend that any of the lost income claimed by the EMPLOYEE, as disclosed in discovery thus far in this case, is unreasonable or was not caused by the ADVERSE EMPLOYMENT ACTION? If so:
   (a)  state the amount of claimed lost income that you dispute;
   (b)  state all facts upon which you base your contention;
   (c)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
   (d)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**212.0  Physical, Mental, or Emotional Injuries—**
**Interrogatories to Employee**

☐ **212.1** Do you attribute any physical, mental, or emotional injuries to the ADVERSE EMPLOYMENT ACTION? *(If your answer is "no," do not answer interrogatories 212.2 through 212.7.)*

☐ **212.2** Identify each physical, mental, or emotional injury that you attribute to the ADVERSE EMPLOYMENT ACTION and the area of your body affected.

☐ **212.3** Do you still have any complaints of physical, mental, or emotional injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each complaint state:
   (a)  a description of the injury;
   (b)  whether the complaint is subsiding, remaining the same, or becoming worse; and
   (c)  the frequency and duration.

☐ **212.4** Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure section 2034) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each HEALTH CARE PROVIDER state:
   (a)  the name, ADDRESS, and telephone number;
   (b)  the type of consultation, examination, or treatment provided;
   (c)  the dates you received consultation, examination, or treatment; and
   (d)  the charges to date.

☐ **212.5** Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each medication state:
   (a)  the name of the medication;
   (b)  the name, ADDRESS and telephone number of the PERSON who prescribed or furnished it;
   (c)  the date prescribed or furnished;
   (d)  the dates you began and stopped taking it; and
   (e)  the cost to date.

☐ **212.6** Are there any other medical services not previously listed in response to Interrogatory 212.4 (for example, ambulance, nursing, prosthetics) that you received for injuries attributed to the ADVERSE EMPLOYMENT ACTION? If so, for each service state:
   (a)  the nature;
   (b)  the date;
   (c)  the cost; and
   (d)  the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER.

1FHXJ1+510+873+0984    P 042/043

212.7 Has any HEALTH CARE PROVIDER advised that you may require future or additional treatment for any injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each injury state:

(a) the name and ADDRESS of each HEALTH CARE PROVIDER;

(b) the complaints for which the treatment was advised; and

(c) the nature, duration, and estimated cost of the treatment.

## 213.0 Other Damages—Interrogatories to Employee

213.1 Are there any other damages that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each item of damage state:

(a) the nature;

(b) the date it occurred;

(c) the amount; and

(d) the name, ADDRESS, and telephone number of each PERSON who has knowledge of the nature or amount of the damage.

213.2 Do any DOCUMENTS support the existence or amount of any item of damages claimed in Interrogatory 213.1? If so, identify the DOCUMENTS and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

## 214.0 Insurance

214.1 At the time of the ADVERSE EMPLOYMENT ACTION, was there in effect any policy of insurance through which you were or might be insured in any manner for the damages, claims, or actions that have arisen out of the ADVERSE EMPLOYMENT ACTION? If so, for each policy state:

(a) the kind of coverage;

(b) the name and ADDRESS of the insurance company;

(c) the name, ADDRESS, and telephone number of each named insured;

(d) the policy number;

(e) the limits of coverage for each type of coverage contained in the policy;

(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and

(g) the name, ADDRESS, and telephone number of the custodian of the policy.

214.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the ADVERSE EMPLOYMENT ACTION? If so, specify the statute.

## 215.0 Investigation                               DISC-002

215.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the ADVERSE EMPLOYMENT ACTION? If so, for each individual state:

(a) the name, ADDRESS, and telephone number of the individual interviewed;

(b) the date of the interview; and

(c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

215.2 Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the ADVERSE EMPLOYMENT ACTION? If so, for each statement state:

(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;

(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;

(c) the date the statement was obtained; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

## 216.0 Denials and Special or Affirmative Defenses

216.1 Identify each denial of a material allegation and each special or affirmative defense in your PLEADINGS and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(c) identify all DOCUMENTS and all other tangible things that support your denial or special or affirmative defense, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

## 217.0 Response to Request for Admissions

217.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;

(b) state all facts upon which you base your response;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.