1   HOLLAND & KNIGHT LLP
       Frank R. Lawrence (State Bar. No. 147531)
2      Zehava Zevit (State Bar No. 230600)
       William Wood (State Bar No. 248327)
3   633 West Fifth Street, 21st Floor
    Los Angeles, California  90071-2040
4   Telephone: (213) 896-2400
    Facsimile: (213) 896-2450
5   frank.lawrence@hklaw.com
    zehava.zevit@hklaw.com
6   william.wood@hklaw.com

7   Attorneys for Specially-Appearing Defendants
    RIVER ROCK ENTERTAINMENT AUTHORITY
8   RIVER ROCK CASINO
    HARVEY HOPKINS
9

10

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15   NORMAN RUNYAN,                  )   CASE NO. 3:08-CV-01924-VRW
                                     )
16              Plaintiff,           )   Date:   July 10, 2008
                                     )   Time:   2:30 pm
17        vs.                        )   Judge:  Hon. Vaughn R. Walker
                                     )
18   RIVER ROCK ENTERTAINMENT        )
     AUTHORITY et al.,               )   NOTICE OF MOTION AND MOTION
19                                   )   TO DISMISS; MEMORANDUM OF
                Defendants           )   POINTS AND AUTHORITIES;
20                                   )   PROPOSED ORDER
                                     )
21                                   )   Fed. R. Civ. P. 12(b), 12(b)(1), 12(b)(2),
                                     )   12(b)(3), and 12(b)(6)
22                                   )
                                     )
23   _____)

24

25        TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

26        PLEASE TAKE NOTICE that on July 10, 2008 at 2:30 pm, or as soon thereafter as the

    matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, Courtroom
27
    6, 17th Floor, San Francisco, California, Specially-Appearing Defendants River Rock
28
                                          1

1  Entertainment Authority, River Rock Casino, and Harvey Hopkins will, and hereby do, move the

2  court to dismiss the above-titled action.

3        Specially-Appearing Defendants move the court to dismiss this action pursuant to FRCP

4  12(b), 12(b)(1)-(3) and 12(b)(6) with prejudice because this Court lacks jurisdiction over this

5  action on the grounds that (1) the defendants are immune from this lawsuit and have not waived

6  their sovereign immunity to suit; (2) the Tribe's Tort Claims Procedures establish that the

7  exclusive venue for filing permitted tort claims is a Tribal forum and not a federal court; (3)

8  plaintiff failed to exhaust Tribal remedies prior to filing suit in this Court; and (4) plaintiff's third

9  and fourth causes of action fail to state a claim upon which relief may be granted.

10        The motion will be, and is, based on this Notice of Motion and Motion, the Memorandum

11  of Points and Authorities filed herewith, the Declarations of Harvey Hopkins and Vernon L.

12  Jenkins, and the pleadings and papers filed herein.

13

14

15  Dated: April 18, 2008                 HOLLAND & KNIGHT LLP

16

17                               By:           /s/
                                     William Wood

18

19                               Attorneys for Specially-Appearing Defendants,
                             RIVER ROCK ENTERTAINMENT AUTHORITY

20                               RIVER ROCK CASINO
                             HARVEY HOPKINS

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

4

I.    INTRODUCTION ..................................................................................................1

5

6

II.   ARGUMENT ........................................................................................................3

7     A.   This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) And
           12(b)(2) Because Defendants Are Immune From This Action And This

8          Court Lacks Subject Matter And Personal Jurisdiction ............................3

9          1.   Legal Standards..............................................................................3

10         2.   Absent An Express Tribal Waiver Of Immunity This Court Lacks
                Jurisdiction Over The Tribe, Its Governmental Entities, Its

11              Governmental Gaming Operation And Its Officers....................3

12         3.   The Tribe Did Not Waive Its Sovereign Immunity With Respect
                To This Lawsuit ...........................................................................8

13              a.   The Compact Does Not Waive Tribal Sovereign
                     Immunity Against Employee Contract Claims..............................8

14
15              b.   The Compact Does Not Waive Immunity To Suits
                     Filed In Federal Court ......................................................10

16              c.   The Tribe's Immunity Was Not Waived Pursuant To
                     The Tribe's Tort Claims Procedures Because

17                   Plaintiff Failed To Comply With Those Procedures ...................12

18    B.   This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(3) For
           Improper Venue ......................................................................................13

19

20    C.   This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b) For Failure
           To Exhaust Tribal Remedies...................................................................14

21    D.   Plaintiff's Third And Fourth Causes Of Action Should Be Dismissed
           Under Fed. R. Civ. P. 12(b)(6)................................................................15

22

23         1.   The Third Cause Of Action For Intentional Interference With
                Contract Should Be Dismissed .................................................16

24              a.   Hopkins Is Not Individually Liable For Interference
                     With Contract....................................................................16

25
26              b.   The "Interference" Claim Is Based On Hopkins'
                     Alleged "Retaliation" And Can Not Be Asserted

27                   Against Hopkins Individually ......................................................17

28

i

2.    The Fourth Cause Of Action For Intentional Infliction of Emotional Distress Is Barred By The Exclusive Remedy Provisions Of California's Workers' Compensation Act ..........................18

III.    CONCLUSION...............................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

**FEDERAL CASES**

3

4

*A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*
    789 F.2d 785 (9th Cir. 1986) .................................................................................3, 4

5

6

*American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*
    780 F.2d. 1374 (8th Cir. 1985) ...........................................................................4, 5, 12

7

*American Vantage Cos., Inc. v. Table Mountain Rancheria*
    292 F.3d 1091 (9th Cir. 2002) ...................................................................................7

8

9

*Billingsley v. Comm'r Internal Revenue Serv.*
    868 F.2d 1081 (9th Cir. 1989) ...................................................................................3

10

11

*Burlington N. R.R. Co. v. Crow Tribal Council*
    940 F.2d 1239 (9th Cir. 1991) ...............................................................................14, 15

12

*Burlington Northern & Santa Fe Ry. Co. v. Vaughn*
    509 F.3d 1085 (9th Cir. 2007) ...................................................................................8

13

14

*California ex rel. Dep't of Fish and Game v Quechan Tribe of Indians*
    595 F.2d 1153 (9th Cir. 1979) .................................................................................4, 5

15

*Chemehuevi Indian Tribe v. California Bd. of Equalization*
    757 F.2d 1047 (9th Cir. 1985), *rev'd on other grounds*, 474 U.S. 9 (1985) ........................4, 5

16

17

*Cuyler v. Adams*
    449 U.S. 433 (1981).................................................................................................13

18

19

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc*
    557 F.2d 1280 (9th Cir. 1997) ...................................................................................3

20

21

*Fed. Nat'l Mortg. Ass'n v. LeCrone*
    868 F.2d 190 (6th Cir. 1989) .................................................................................7, 11

22

*Garcia v. Akwesasne Hous. Auth.*
    268 F.3d 76 (2d Cir. 2001).....................................................................................6, 11

23

24

*General Elec. Capital Corp. v. Grossman*
    991 F.2d 1376 (8th Cir. 1993) ..............................................................................6-7, 11

25

*Iowa Mutual Ins. Co. v. LaPlante*
    480 U.S. 9 (1987)................................................................................................14, 15

26

27

*Kacludis v. GTE Sprint Communications Corp.*
    806 F. Supp. 866 (N.D. Cal. 1992) ..........................................................................17, 18

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

*Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*
  523 U.S. 751 (1998)................................................................3, 4, 7

*Kokkonen v. Guardian Life Ins. Co.*
  511 U.S. 375 (1994)..........................................................................3

*Lane v. Peña*
  518 U.S. 187 (1996)......................................................................5, 12

*Marceau v. Blackfeet Hous. Auth.*
  455 F.3d 974 (9th Cir. 2006) ..........................................................7, 8

*Maritime Int'l Nominees Establishment v. Republic of Guinea*
  693 F.2d 1094 (D.C. Cir. 1982)........................................................7

*McCarthy v. United States*
  850 F.2d 558 (9th Cir. 1988) ...........................................................3

*McClendon v. United States*
  885 F.2d 627 (9th Cir. 1989) ...........................................................5

*McDonald v. Illinois*
  557 F.2d 596 (7th Cir. 1977) .......................................................7, 11

*Milk Industry Foundation v. Glickman*
  132 F.3d 1467 (D.C. Cir. 1998) .......................................................14

*Minnesota v. United States*
  305 U.S. 382 (1939).....................................................................6, 11

*Missouri River Services v. Omaha Tribe of Nebraska*
  267 F.3d 848 (8th Cir. 2001) ...........................................................6

*Montana v. Gilham*
  133 F.3d 1133 (9th Cir. 1998) .........................................................6

*Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*
  984 F.2d 821 (7th Cir. 1993) ...........................................................3

*Nat'l Farmers Union Ins. Co. v. Crow Tribe*
  471 U.S. 845 (1985)....................................................................14, 15

*Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*
  207 F.3d 21 (1st Cir. 2000)..............................................................7

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*
  498 U.S. 505 (1991)..........................................................................3

*Oklahoma v. New Mexico*
  501 U.S. 221 (1991)........................................................................13

iv

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Pan Am. Co. v. Sycuan Band of Mission Indians*
   884 F.2d 416 (9th Cir. 1989) ...................................................................................4

*Petty v. Tennessee Missouri Bridge Comm'n.*
   359 U.S. 275 (1959).......................................................................................7

*Pit River Home and Agric. Coop. Ass'n v. United States*
   30 F.3d 1088 (9th Cir. 1994) ...........................................................................4-5

*Puyallup Tribe, Inc. v. Dep't of Game*
   433 U.S. 165 (1977)....................................................................................3, 4

*Rehner v. Rice*
   678 F.2d 1340 (9th Cir. 1982), *rev'd on other grounds*, 463 U.S. 713 (1983) ........................4

*Riggle v. California*
   577 F.2d 579 (9th Cir. 1978) ............................................................................6

*Rio Properties, Inc. v. Rio Int'l Interlink*
   284 F.3d 1007 (9th Cir. 2002) ..........................................................................3

*Ritza v. Int'l Longshoremen's & Warehousemen's Union*
   837 F.2d 365 (9th Cir. 1988) ...........................................................................14

*Romanella v. Hayward*
   933 F. Supp. 163 (D. Conn. 1996).......................................................................4

*Rosebud Sioux Tribe v. Val-U-Constr. Co. of South Dakota, Inc.*
   50 F.3d 560 (8th Cir. 1995) .............................................................................4

*Sac and Fox Nation v. Hanson*
   47 F.3d 1061 (10th Cir. 1995) ..........................................................................7

*Santa Clara Pueblo v. Martinez*
   436 U.S. 49 (1978)...................................................................................3, 4, 15

*Snowbird Constr. Co. v. United States*
   666 F. Supp. 1437 (D. Idaho 1987) .....................................................................7

*St. Clair v. City of Chico*
   880 F.2d 199 (9th Cir.1989) ............................................................................3

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*
   873 F.2d 1221 (9th Cir. 1989) .......................................................................14, 15

*Terrell v. United States*
   783 F.2d 1562 (11th Cir. 1986) ......................................................................7, 11

*Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold Eng'g*
   476 U.S. 877 (1986)......................................................................................5

v

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

*Tribal Smokeshop, Inc. v. Alabama-Coushatta Tribes of Texas ex rel. Tribal Council*
   72 F. Supp. 2d 717 (E.D. Tex. 1999) ...............................................................4, 11

*United States v. Mazurie*
   419 U.S. 544 (1975) ...................................................................................15

*United States v. Shaw*
   309 U.S. 495 (1940) .................................................................................6, 11

*United States v. White Mountain Apache Tribe*
   537 U.S. 465 (2003) .................................................................................6, 12

*United States v. Yakima Tribal Court*
   806 F.2d 853 (9th Cir.1986) ...........................................................................8

*Ute Distribution Corp. v. Ute Indian Tribe*
   149 F.3d 1260 (10th Cir. 1998) ........................................................................5

*Wendt v. Smith*
   273 F. Supp. 2d 1078 (C.D. Cal. 2003) ...............................................................4

*West v. Gibson*
   527 U.S. 212 (1999) .....................................................................................6

*Wyatt v. Terhune*
   315 F.3d 1108 (9th Cir. 2003) ........................................................................14


**CALIFORNIA CASES**

*Cole v. Fair Oaks Fire Protect. Dist.*
   43 Cal.3d 148 (1987) ..............................................................................18, 19

*Dryden v. Tri-Valley Growers*
   65 Cal. App. 3d 990 (1977) ...........................................................................16

*Jones v. The Lodge At Torrey Pines*
   42 Cal.4th 1158 (2008) ...............................................................................18

*Shoemaker v. Myers*
   52 Cal.3d 1 (1990) .................................................................................17, 19


**FEDERAL STATUTES**

25 U.S.C. §§ 2701-21 ........................................................................................1

25 U.S.C. § 2710(d) ...................................................................................13, 14

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P.

    12(b)..........................................................................................................................1, 14

    12(b)(1).....................................................................................................................1, 3

    12(b)(2).....................................................................................................................1, 3

    12(b)(3)...................................................................................................................1, 13

    12(b)(6)...................................................................................................................1, 15

**OTHER FEDERAL AUTHORITIES**

65 Fed. Reg. 31189 ..............................................................................................................1

73 Fed. Reg. 18,553, 18,554 ................................................................................................1

**STATE STATUTES**

Cal. Lab. Code §§ 3600, 3601 and 36021...........................................................................18

**OTHER SOURCES**

Tribal-State Gaming Compact Between the State of California and the Dry Creek
    Rancheria of Pomo Indians

    § 9 .........................................................................................................................9, 10

    § 9.4.......................................................................................................................9-10

    § 10.2(d) ............................................................................................................. passim

Dry Creek Gaming Commission Procedures for Processing Tort Claims

    § 2.......................................................................................................................11, 12

    § 3.......................................................................................................................11, 13

    § 5.......................................................................................................................11, 12

    § 9.......................................................................................................................12, 13

    § 10.................................................................................................................11, 12, 13

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Specially Appearing Defendants River Rock Entertainment Authority, River Rock Casino, and Harvey Hopkins ("Tribal Governmental Defendants") hereby move to dismiss the above-captioned matter with prejudice on the grounds that (1) the Tribal Governmental Defendants are immune from this lawsuit, (2) venue is improper because the Tribe's Tort Claims Procedures establish that the exclusive venue for filing permitted tort claims is a Tribal forum and not a federal court, (3) plaintiff failed to exhaust Tribal remedies prior to filing suit in this Court, and (4) plaintiff's third and fourth causes of action fail to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b), 12(b)(1)-(3), and 12(b)(6).

This dispute is between the plaintiff and the Dry Creek Rancheria Band of Pomo Indians ("Tribe"), a federally recognized Indian tribe. *See* Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 73 Fed. Reg. 18,553, 18,554 (Apr. 4, 2008). *See also* Declaration of Tribal Chairman Harvey Hopkins ("Hopkins Dec.") at ¶ 2. Defendants are a Tribal governmental economic development project, a Tribal governmental agency, and the Tribal Chairman.

Defendant River Rock Casino ("Casino") is a governmental economic development project wholly owned and operated by the Tribe on its Reservation. The Casino operates pursuant to the terms of a Tribal-State Gaming Compact ("Compact") negotiated between the Tribe and the State of California and executed on September 10, 1999 and approved by the United States Department of Interior, *see* 65 Fed. Reg. 31189 (May 16, 2000), all as authorized by Congress in the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-21. *See* Hopkins Dec. at ¶ 10 and Exhibit A thereto. The Casino provides Tribal members with employment and job training opportunities and generates essential revenues that enable the Tribe to operate the Tribal government, run governmental programs and provide services to Tribal members. These programs and services include government health initiatives, education programs and grants, housing assistance, cultural programs, and other similar governmental undertakings. *See* Hopkins Dec. at ¶ 9. Defendant River Rock Entertainment Authority is a

1

1    Tribal governmental agency that oversees operations of the Casino.  *See* Hopkins Dec. at ¶ 8.

2    The third named defendant is Tribal Chairman Harvey Hopkins ("Hopkins").  *See* Hopkins Dec.

3    at ¶ 1.

4          Plaintiff seeks to sue the Tribal Governmental Defendants under federal, tribal and state

5    law.  *See* Complaint at ¶¶ 37-63.  But plaintiff fails to establish this Court's jurisdiction over the

6    defendants because the Tribe and its governmental entities and officials are immune from this

7    lawsuit.  Importantly for purposes of this Motion to Dismiss, the Tribe has not waived its

8    sovereign immunity in connection with this lawsuit.  Hopkins Dec. at ¶ 6.  Thus the Court lacks

9    personal jurisdiction over the Tribal Governmental Defendants and subject matter jurisdiction

10   over the Complaint.  Plaintiff has not proven – and cannot prove – that there was an express and

11   unequivocal waiver of Tribal sovereign immunity.  Sovereign immunity cannot be waived by

12   implication, nor is it subject to abrogation by equity.  Plaintiff's unsupported and unsupportable

13   assertion that the Tribe somehow waived its immunity from his lawsuit by entering into a Tribal-

14   State Compact with the State of California lacks foundation and is fundamentally wrong.

15   Because Mr. Runyan has failed to meet his burden of proving a clear, unequivocal waiver of

16   sovereign immunity, the Tribal Governmental Defendants respectfully request that the Court

17   grant the Motion to Dismiss on the grounds that it lacks personal and subject matter jurisdiction.

18         This Motion should also be granted because venue is improper in this Court and because

19   plaintiff has failed to exhaust the Tribal remedies that he alleged are available to him.  The

20   Complaint alleges that plaintiff's entitlement to file the present action – despite the Tribal

21   Governmental Defendants' sovereign immunity – stems from the Tribe's Gaming Compact.  *See*

22   Complaint at ¶ 12.  But the venue established under that Compact for the filing of patron tort

23   claims is a Tribal venue – not a federal or state court.  Moreover, plaintiff never filed his claim in

24   accordance with the forum and procedural requirements established under the very document

25   (the Compact) he cites as establishing jurisdiction in this case.  *See* Declaration of Vernon L.

26   Jenkins ("Jenkins Dec.") at ¶ 4.  For these reasons too plaintiff's action should be dismissed.

27   Finally, the third and fourth causes of action should be dismissed for failure to state a claim upon

28   which relief can be granted.

2

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1  **II.**  **ARGUMENT**

2      **A.**  **This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) And 12(b)(2)**

3          **Because Defendants Are Immune From This Action And This Court Lacks**

4          **Subject Matter And Personal Jurisdiction**

5          **1.**  **Legal Standards**

6        In a motion to dismiss under Rules 12(b)(1) and 12(b)(2) the plaintiff bears the burden of

7  proving that the court has jurisdiction to decide the case.  *See Kokkonen v. Guardian Life Ins.*

8  *Co.,* 511 U.S. 375, 377 (1994); *Rio Properties, Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1009

9  (9th Cir. 2002).  In resolving motions under Rules 12(b)(1) and 12(b)(2) a court is not restricted

10  to allegations in the complaint but may consider materials outside the pleadings, such as

11  affidavits.  *Data Disc, Inc. v. Sys. Tech. Assocs., Inc,* 557 F.2d 1280, 1289 (9th Cir. 1997); *St.*

12  *Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *McCarthy v. United States,* 850 F.2d

13  558, 560 (9th Cir. 1988).  A defendant who has removed an action to federal court may

14  subsequently seek dismissal of the action on the basis that the court lacks jurisdiction.  *See, e.g.*,

15  *Billingsley v. Comm'r Internal Revenue Serv.*, 868 F.2d 1081, 1085 (9th Cir. 1989) (lack of

16  subject matter jurisdiction can never be waived).  *See also Napoleon Hardwoods, Inc. v.*

17  *Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir. 1993).

18          **2.**  **Absent An Express Tribal Waiver Of Immunity This Court Lacks**

19          **Jurisdiction Over The Tribe, Its Governmental Entities, Its**

20          **Governmental Gaming Operation And Its Officers**

21        Absent an effective waiver of sovereign immunity, courts may not exercise jurisdiction

22  over federally recognized Indian tribes.  *See Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165,

23  172 (1977).  "Suits against Indian tribes are thus barred by sovereign immunity absent a clear

24  waiver by the tribe or congressional abrogation."  *Oklahoma Tax Comm'n v. Citizen Band*

25  *Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991) (*citing Santa Clara Pueblo v. Martinez,* 436

26  U.S. 49, 58-59 (1978)).  *See also Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751,

27  754 (1998);  *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 789 (9th Cir.

28  1986).

1   A waiver of tribal sovereign immunity may not be implied but rather must be

2   unequivocally expressed. *See Martinez*, 436 U.S. at 58; *A.K. Mgmt. Co.*, 789 F.2d at 789.

3   "[N]othing short of an express and unequivocal waiver can defeat the sovereign immunity of an

4   Indian nation." *American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*,

5   780 F.2d 1374, 1378 (8th Cir. 1985). Thus, the Court lacks jurisdiction over the Tribe and its

6   governmental divisions, enterprises and officials unless the Tribe grants an express and

7   unequivocal waiver. *Id.* Plaintiff's Complaint fails to point to any express or unequivocal waiver

8   of immunity. Indeed, the Tribe has not granted any such waiver. *See* Hopkins Dec. at ¶ 6.

9   Sovereign immunity is a jurisdictional bar to *any* claims against the tribe, "irrespective of

10  the merits of the claim." *Chemehuevi Indian Tribe v. California Bd. of Equalization,* 757 F.2d

11  1047, 1051 (9th Cir. 1985), *rev'd on other grounds*, 474 U.S. 9 (1985); *Rehner v. Rice*, 678 F.2d

12  1340, 1351 (9th Cir. 1982), *rev'd on other grounds*, 463 U.S. 713 (1983); *California ex rel. Dep't*

13  *of Fish and Game v Quechan Tribe of Indians*, 595 F.2d 1153, 1155 (9th Cir. 1979). *See also*

14  *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989); *Wendt v.*

15  *Smith*, 273 F. Supp. 2d 1078, 1082 (C.D. Cal. 2003). Sovereign immunity bars actions in tort.

16  *See, e.g.*, *Rosebud Sioux Tribe v. Val-U-Constr. Co. of South Dakota, Inc.,* 50 F.3d 560 (8th Cir.

17  1995) (sovereign immunity bars tort claims against tribe); *Tribal Smokeshop, Inc. v. Alabama-*

18  *Coushatta Tribes of Texas ex rel. Tribal Council*, 72 F. Supp. 2d 717 (E.D. Tex. 1999) (holding

19  that both tort and contract claims are barred by sovereign immunity); *Romanella v. Hayward,*

20  933 F. Supp. 163 (D. Conn. 1996) (sovereign immunity bars personal injury suit). Sovereign

21  immunity likewise bars actions in contract. *See, e.g., Kiowa,* 523 U.S. at 751 (sovereign

22  immunity bars contract action).

23  Moreover, because sovereign immunity is jurisdictional in nature, its recognition by the

24  Court is not discretionary. *Puyallup Tribe*, 433 U.S. at 172-73; *Quechan Tribe*, 595 F.2d at

25  1154-55. "[S]overeign immunity is not a discretionary doctrine that may be applied as a remedy

26  depending upon the equities of a given situation." *Chemehuevi*, 757 F.2d at 1052 n.6 (*citing*

27  *Quechan Tribe*, 595 F.2d at 1155). "'Sovereign immunity involves a right which courts have no

28  choice, in the absence of a waiver, but to recognize.'" *Pit River Home and Agric. Coop. Ass'n v.*

4

1    *United States*, 30 F.3d 1088, 1100 (9th Cir. 1994) (*quoting Quechan Tribe*, 595 F.2d at 1155).

2    Sovereign immunity may not be defeated even where its assertion may "unfairly deprive

3    contracting parties of the benefit of their bargains." *American Indian Agric. Credit Consortium*,

4    780 F.2d at 1379.  Accordingly, even if the Complaint's substantive allegations could be proven

5    (which defendants vigorously dispute), it would not defeat the Tribe's sovereign immunity.[1]

6         The Supreme Court has expressly rejected the application of equitable considerations in

7    the context of tribal sovereign immunity: "The perceived inequity of permitting the Tribe to

8    recover from a non-Indian for civil wrongs in instances where a non-Indian allegedly may not

9    recover against the tribe simply must be accepted in view of the overriding federal and tribal

10   interests in these circumstances." *Three Affiliated Tribes of the Ft. Berthold Reservation v. Wold*

11   *Eng'g,* 476 U.S. 877, 893 (1986).  *See also McClendon v. United States*, 885 F.2d 627 (9th Cir.

12   1989).  Thus "the requirement that a waiver of tribal immunity be 'clear' and 'unequivocally

13   expressed' is not a requirement that may be flexibly applied or even disregarded based on the

14   parties or the specific facts involved." *Ute Distribution Corp. v. Ute Indian Tribe*, 149 F.3d

15   1260, 1267 (10th Cir. 1998) (*citing Chemehuevi*, 757 F.2d at 1052 n.6).  When, as here, a tribe

16   does not expressly waive its immunity, courts lack jurisdiction over the tribe, its governmental

17   entities and officers regardless of the specific facts involved in the lawsuit.

18        Even where a tribe expressly waives its sovereign immunity, any limitations included in

19   that waiver are strictly construed.  A waiver of sovereign immunity "will be strictly construed, in

20   terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996).  *See also*

21

22        [1] Moreover, even if the Tribe had waived its sovereign immunity, plaintiff's lawsuit
     would still ultimately fail.  Plaintiff executed a Severance Agreement and General Release in
23   which he "irrevocably and unconditionally" released "all the Claims," including those raised in
     this action, against the Tribal Governmental Defendants.  *See* Severance Agreement and General
24   Release § 3.1, attached to Hopkins Dec. as Exhibit C.  Plaintiff further represented that he would
     "not in the future file any lawsuit or complaint against … [the Tribal Governmental Defendants]
25   based on the Claims purportedly released in this Release.  He promise[d] never to seek any
     damages, remedies, or other relief for [himself] personally (any right to which he hereby waive
26   [sic]) by filing or prosecuting a charge with any administrative agency with respect to any Claim
     purportedly released by th[e] Release." *Id.* at § 4.9.  Finally, Plaintiff represented that he had
27   "not suffered any job-related wrongs or injuries" and acknowledged and agreed that he had "not
     suffered any discrimination … on account of any other protected status." *Id.* at § 4.10.  In short,
28   plaintiff's lawsuit would fail even if the Tribe had expressly waived its sovereign immunity.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1   *Missouri River Services v. Omaha Tribe of Nebraska,* 267 F.3d 848, 852 (8th Cir. 2001) (any

2   conditional limitation imposed on a Tribe's consent must be strictly construed and applied).

3   Thus, a court may exercise jurisdiction over a tribal government only pursuant to a clear

4   statement from that government "waiving [its] sovereign immunity . . . together with a claim

5   falling within the terms of the waiver." *United States v. White Mountain Apache Tribe,* 537 U.S.

6   465, 472 (2003).

7          These settled legal principles apply both to the interpretation of the scope of the

8   government's waiver of immunity and to the interpretation of the scope of any exceptions to or

9   limitations on that waiver. *Id.* Where a tribe limits its waiver of immunity by specifying the

10  forum in which it consents to suit and the procedures that must be followed for its waiver to be

11  effective, a court will construe the waiver narrowly and allow suits only in the specified forum

12  and pursuant to the specified procedures.  The principle that waivers of sovereign immunity may

13  be limited – and limited to a specific forum – is well established.  *See, e.g.*, *West v. Gibson*, 527

14  U.S. 212, 226 (1999) (Kennedy, J., dissenting) ("It is settled law that *a waiver of sovereign*

15  *immunity in one forum does not effect a waiver in other forums*.") (emphasis added) (citations

16  omitted).  *See also Minnesota v. United States*, 305 U.S. 382, 388 (1939) ("[I]t rests with

17  Congress to determine not only whether the United States may be sued, but in what courts the

18  suit may be brought."); *United States v. Shaw*, 309 U.S. 495, 501 (1940) ("Even when suits are

19  authorized [by congressional waiver of the United States' sovereign immunity] they must be

20  brought *only in designated courts*."); *Montana v. Gilham*, 133 F.3d 1133, 1138 ("'A State's

21  constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it

22  may be sued.'") (9th Cir. 1998) (*quoting Pennhurst State School & Hosp. v. Halderman*, 465

23  U.S. 89, 99 (1984)) (emphasis in original); *Riggle v. California*, 577 F.2d 579, 585 (9th Cir.

24  1978) ("A state may waive immunity from suit in its own courts without thereby waving its

25  Eleventh Amendment immunity from suit in federal courts.").[2]

26

27          [2] *Accord Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 90 (2d Cir. 2001) ("[T]the tribe has only waived sovereign immunity for suit in tribal courts. . . .  Any additional waiver granting the right to sue in federal court will have to be negotiated in advance with the tribe.")

28  (Katzman, C.J., concurring in part and concurring in judgment in part); *General Elec. Capital*

1    Supreme Court precedent also makes it clear that tribal immunity from suit extends to a

2    tribally-owned economic development project like the River Rock Casino. *See Kiowa,* 523 U.S.

3    at 755 (sovereign immunity extends to "governmental and commercial activities of a tribe").

4    Other federal courts concur. *See Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974 (9th Cir. 2006)

5    (sovereign immunity extends to both the corporate and governmental activities of a tribe);

6    *American Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1100 (9th Cir. 2002)

7    ("A tribe does not shed immunity merely by embarking on a commercial enterprise."); *Sac and*

8    *Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir. 1995) ("[A] waiver of sovereign immunity

9    cannot be inferred from the Nation's engagement in commercial activity.").

10    Likewise, Supreme Court and other federal precedent holds that tribal immunity from suit

11    extends to tribal governmental entities such as the River Rock Entertainment Authority. *See*

12    *Kiowa,* 523 U.S. at 755 (sovereign immunity extends to "governmental . . . activities of a tribe");

13    *Marceau*, 455 F.3d 974 (sovereign immunity extends to agencies and subdivisions of a tribe);

14    *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.,* 207 F.3d 21, 29 (1st Cir.

15    2000) ("The Authority, as an arm of the Tribe, enjoys the full extent of the Tribe's sovereign

16    immunity.").

17

18

---

19    *Corp. v. Grossman*, 991 F.2d 1376, 1386 (8th Cir. 1993) ("Waiver of immunity from suit in the
United States courts cannot occur by implication unless the foreign state specifically
20    contemplates the United States as a possible forum.") (*citing Maritime Int'l Nominees
Establishment v. Republic of Guinea*, 693 F.2d 1094, 1100-1104 (D.C. Cir. 1982)); *Fed. Nat'l
21    Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 193 (6th Cir. 1989) ("If Congress had intended the state
courts to be proper fora for suits seeking judicial review under the APA Congress would have
22    waived sovereign immunity for suits in state courts as well.  By refusing to waive sovereign
immunity for APA actions in the state courts Congress has implicitly vested exclusive
23    jurisdiction over these actions in the federal courts."); *Terrell v. United States*, 783 F.2d 1562,
1565 (11th Cir. 1986) ("It is clear therefore that although Florida has waived its immunity from
24    tort actions filed in state court, Florida has not waived its immunity from tort suits in federal
fora."); *McDonald v. Illinois*, 557 F.2d 596, 601 (7th Cir. 1977) ("It has long been recognized
25    that states can limit their waiver of sovereign immunity to actions brought in their own courts
and, indeed, even as to particular state courts.") (*citing Petty v. Tennessee Missouri Bridge
26    Comm'n*, 359 U.S. 275 (1959)).  *See also Snowbird Constr. Co. v. United States*, 666 F. Supp.
1437 (D. Idaho 1987) (tribal housing authority's waiver of immunity "'d[id] not determine in
27    what forum a suit against the Housing Authority may properly be brought'") (*citing and quoting
Weeks Constr. Co. v. Oglala Sioux Hous. Auth.*, 797 F.2d 668, 672 (8th Cir. 1986)).

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1        Lastly, tribal immunity from suit also extends to tribal government officials such as

2    Chairman Hopkins.  *See Burlington Northern & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d 1085,

3    1093 (9th Cir. 2007) (suit against the Tribal Chairman barred by sovereign immunity).  "Indian

4    tribes, and tribal officials acting within the scope of their authority, are immune from lawsuits or

5    court process in the absence of congressional abrogation or tribal waiver." *Id.* at 1090 (*citing*

6    *United States v. Yakima Tribal Court,* 806 F.2d 853, 861 (9th Cir.1986)).  *See also Marceau,* 455

7    F.3d at 974 (sovereign immunity extends to tribal officials acting in their official capacity and

8    within the scope of their authority).  Accordingly, the Tribal Governmental Defendants in this

9    lawsuit enjoy tribal sovereign immunity from suit and cannot be sued unless the Tribe expressly

10   waives that immunity.

11       The Tribe has not expressly waived its sovereign immunity from suit here.  Because

12   sovereign immunity is jurisdictional in nature and its recognition by the Court is not

13   discretionary, this Court lacks jurisdiction over this action and the Tribal Governmental

14   Defendants.  *See* Hopkins Dec. at ¶ 6.

15                **3.    The Tribe Did Not Waive Its Sovereign Immunity With Respect To**

16                **This Lawsuit**

17                     **a.    The Compact Does Not Waive Tribal Sovereign Immunity**

18                          **Against Employee Contract Claims**

19       The Complaint erroneously alleges that the Tribe waived its immunity from this suit

20   when it entered into a Tribal-State Gaming Compact.  *See* Complaint at ¶ 12.  Specifically, the

21   Complaint cites Compact section 10.2(d) as the source of that purported waiver.  But section

22   10.2(d) does not mention – let alone waive sovereign immunity in connection with – claims filed

23   by anyone other than a casino "patron."  Nor does it waive immunity in connection with

24   contract-based claims, or as to any claims in federal or state court.

25       Compact § 10.2(d) provides:

26           For the purposes of this Gaming Compact, the Tribal Gaming
             Operation shall . . . [c]arry no less than five million dollars in public
27           liability insurance for *patron claims*, and that the Tribe provide reasonable
             assurance that *those claims* will be promptly and fairly adjudicated, and
28           that legitimate claims will be paid; provided that nothing herein requires

the Tribe to agree to liability for punitive damages or attorney's fees.  On or before the effective date of this Compact . . . the Tribe shall adopt and make available to *patrons* a *tort* liability ordinance setting forth the terms and conditions, *if any*, under which the Tribe waives immunity to suit for money damages resulting from intentional or negligent *injuries to person or property* at the Gaming Facility or in connection with the Tribe's Gaming Operation including procedures for processing any such claims for money damages . . . . (emphases added)[3]

This section does not waive the Tribe's immunity in connection with plaintiff's claims (which all arise out of his employment) because it allows only claims by casino patrons.  Section 10.2(d) reflects the Tribe's and the State's agreement on the manner in which patrons would be provided a remedy for torts incurred while visiting the Tribe's Casino.  The section deals on its face with "patrons" of the gaming operation and with "patron claims."  *Id*.  It does not deal with employees and/or their employment-related claims.

Yet the harms alleged in the Complaint all derive from Plaintiff's employment agreement.  Plaintiff was not, nor does he allege to have suffered his damages as, a "patron."  Thus, plaintiff does not belong to the class of persons protected by Compact section 10.2(d), and his allegation that the Compact somehow waives the Tribe's immunity in connection with his claims is wrong.  Accordingly plaintiff's claims should be dismissed.

Plaintiff's first cause of action is for breach of contract.  But the Compact does not express *any* intent by the Tribe to waive its sovereign immunity from contract claims other than alleged breaches of the Compact itself and then only as to the State of California.  *See* Compact § 9.4.  Section 10.2(d) does not even mention contract claims.  It focuses exclusively on tort claims.  Thus plaintiff fails to even allege any waiver of immunity in connection with his claim for breach of contract.

A review of Compact section 9 demonstrates that when the Tribe waived its immunity in the Compact, it did so with specificity.[4]  There, the Tribe established clear and specific

[3] The Compact is attached as Exhibit A to the Declaration of Tribal Chairman Harvey Hopkins.

[4] Section 9 of the Compact contains dispute resolution procedures for disputes arising out of the Compact.  It explicitly sets out the parameters under which the State and the Tribe agreed to waive their respective sovereign immunity against claims filed by the other party in federal court.  Section 9.4, entitled "Limited Waiver of Sovereign Immunity," provides detailed requirements for the parties' waiver of immunity to be valid including, among others, the

1   parameters for its waiver of immunity vis-à-vis the State, detailed the type of claims in

2   connection with which it agreed to waive its immunity and specified who may file such claims.

3   Had the Tribe intended the Compact to waive its immunity from contract claims by third parties

4   or employees in connection with contracts other than the Compact, it would have done so with

5   the same specificity demonstrated in section 9.  It did not do so in section 10.2(d) or anywhere

6   else in the Compact.  Section 10.2(d) does not even mention contract-based claims or employee

7   claims, let alone waive the Tribe's immunity from suit in connection with them.  It mentions only

8   patron tort claims.  With no expression of consent made by the Tribe to Plaintiff's claims, this

9   Court lacks jurisdiction to hear them.

10              **b.**      **The Compact Does Not Waive Immunity To Suits Filed In**

11                        **Federal Court**

12          Assuming arguendo that the Tribe waived its sovereign immunity in Compact section

13   10.2(d),[5] plaintiff's jurisdictional allegation would still fail because nothing in the Compact

14   waives the Tribe's immunity against lawsuits filed in *federal* (or state) court.  Even if Compact

15   section 10.2(d) could be read as a waiver, it would necessarily be limited to those claims filed in

16   the forum designated in the Dry Creek Gaming Commission Procedures for Processing Tort

17   Claims ("Tort Claims Procedures").[6]  The Tort Claims Procedures, which were adopted

18   "pursuant to Section 10.2(d) of the Tribal-State Gaming Compact," *see* Tort Claims Procedures §

19   2.0, set forth "the terms and conditions, if any, under which the Tribe waives its immunity to suit

20   for money damages resulting from intentional or negligent injuries to person or property at the

21   Gaming Facility . . . ."  Compact § 10.2(d).

22          Plaintiff alleges that the language Compact section 10.2(d) grants *this Court* jurisdiction

23   _____

24   requirements that any such dispute must be limited solely to issues arising under the Compact,
     neither party may make any claim for money damages, and no person or entity other than the
25   Tribe and the State may be a party to the action.  *Id.*  It is thus clear that when the Tribe wanted
     to waive its immunity from suit, it knew how to do so clearly and explicitly.

26          [5] The Tribe does not concede that the language contained in Compact section 10.2(d) is a
     waiver of the Tribe's sovereign immunity and hereby reserves all rights respecting that argument.

27          [6] The Tort Claims Procedures are attached as Exhibit B to the Declaration of Tribal
28   Chairman Harvey Hopkins.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1    over his lawsuit.  Complaint at ¶ 12.  Plaintiff errs in his reading of the Compact's plain

2    language.  To the extent that this language waives the Tribe's immunity at all, it does so only in

3    the following sense: The Tribe agreed to allow patron tort claims to be filed against it, but

4    reserved the right to determine the "terms and conditions . . . under which" such claims may be

5    filed.  Compact § 10.2(d).

6         In other words, the Compact left the question of *where* such claims could be filed for the

7    Tribe to determine.  The Compact does not grant *federal courts* (or state courts) jurisdiction over

8    claims against the Tribe.  Nor does it independently grant *any* court jurisdiction over claims

9    against the Tribe.  At most, the Compact requires the Tribe to permit patron tort claims to be

10   filed in whatever forum the Tribe specifies in the tort claims procedures it promulgates under the

11   section.

12        The Tribe's Tort Claims Procedures explicitly state that the forum for adjudication of

13   patron tort claims is a Tribal forum consisting of a tribal Claims Administrator, the Tribal

14   Gaming Commission, and a Neutral Arbitrator.  Tort Claims Procedures § 10.  The Tort Claims

15   Procedures further provide, repeatedly, that State and Federal courts have no jurisdiction over the

16   Tribe, its Casino, its governmental agencies, or its officers in connection with tort claims.  Tort

17   Claims Procedures §§ 2, 3.2, 5, and 10.3(2).

18        Because the Tribe's Tort Claims Procedures specify a *Tribal* forum as the only forum in

19   which the Tribe consents to suit, that is the only forum in which patron tort claims may be

20   brought.  *See, e.g., Minnesota*, 305 U.S. at 388; *Shaw*, 309 U.S. at 501; *Garcia*, 268 F.3d at 90;

21   *General Elec. Capital Corp.*, 991 F.2d at 1386; *LeCrone*, 868 F.2d at 193; *Terrell*, 783 F.2d at

22   1565; *McDonald,* 557 F.2d at 601.  The Tribe's waiver of immunity against claims in a Tribal

23   forum is not consent to having such suits brought against it in a non-tribal forum.  *Id.*  If a waiver

24   is present in section 10.2(d), claims filed pursuant to that waiver must be resolved *through the*

25   *process and in the forum specified in the tribe's Tort Claims Procedures*.  They cannot be filed in

26   federal or state court.

27        In short, the Tribe has never waived its immunity from lawsuits such as this one in

28   federal or state courts.  Neither the Compact nor the Tribe's Tort Claims Procedures express

1   Tribal consent to this Court's jurisdiction over claims filed against the Tribe or its entities or

2   officers.  Accordingly, the Court lacks jurisdiction over the Tribal Governmental Defendants and

3   over Plaintiff's claims.

4              c.      **The Tribe's Immunity Was Not Waived Pursuant To The**

5                      **Tribe's Tort Claims Procedures Because Plaintiff Failed To**

6                      **Comply With Those Procedures**

7              Even if plaintiff had been a "patron" (and not an employee) entitled to file tort claims

8   under the Compact and Tort Claims Procedures, which defendants deny, and even if the very

9   limited immunity waiver granted by the Tribe in those procedures applied to plaintiff's claims,

10  which defendants further deny, his Complaint would still be subject to dismissal.  As discussed

11  above, *supra* at 5:18-6:25, conditions and limitations placed on a tribal sovereign immunity

12  waiver are strictly construed.  *See Lane*, 518 U.S. at 192; *White Mountain Apache Tribe,* 537

13  U.S. at 472; *American Indian Agric. Credit Consortium,* 780 F.2d at 1378 (a tribe's waiver of

14  immunity is "altogether voluntary" on the part of the tribe and thus the tribe "may prescribe the

15  terms and conditions on which it consents to be sued, and the manner in which the suit shall be

16  conducted . . . .").

17             Here, the Tribe's Tort Claims Procedures require that patron tort claims (1) be filed

18  within 180 days of the alleged incident giving rise to the claim; (2) be initiated by a written

19  notice containing specified information; and (3) be pursued first with a Tribal Claims

20  Administrator and then with either the Tribe's Gaming Commission or (in certain circumstances)

21  with a Neutral Arbitrator.  *See* Tort Claims Procedures §§ 9 and 10.  The Procedures also provide

22  that they "shall be strictly construed to provide the exclusive process for the consideration,

23  evaluation and processing to conclusion of tort claims . . . ."  *Id.* at § 2.  The Procedures further

24  provide that "[t]ort claims against the Gaming Operation may be pursued solely under these

25  Procedures," *id.* at § 5.2, and that "[t]he limited waiver of sovereign immunity recognized in

26  these Procedures shall not extend to claims that do not strictly comply with the procedures and

27  timelines set forth herein."  *Id.* at § 5.4.

28             Plaintiff's Complaint does not even allege compliance with these procedures.  It does not

                                        12

1   point to any tort claim sent to the Claims Administrator, as required by the Tort Claims

2   Procedures.  Indeed, Plaintiff never filed a claim under the Tort Claims Procedures or pursued

3   his remedies thereunder.[7]  *See* Jenkins Dec. at ¶ 4.  Thus, Plaintiff fails to meet even the most

4   basic and preliminary requirements for an effective waiver of the Tribe's immunity under the

5   Tort Claims Procedures.  Given the Tribe's sovereign immunity from any tort claim brought by

6   the Plaintiff, this Court lacks jurisdiction over the Tribe, its entities and officers.

7       **B.      This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(3) For Improper**

8              **Venue**

9       The Complaint alleges that the Tribe's Compact authorizes the present action by waiving

10  the Tribe's sovereign immunity.  *See* Complaint at ¶ 12.  But that Compact requires that all

11  qualified claims be filed in accordance with the Tribe's Tort Claims Procedures, which in turn

12  establish a Tribal venue as the exclusive venue for filing such claims.[8]

13      Plaintiff has neglected to file his claim in the venue that is mandated by the very

14  document he cites as supporting the present action.  That document – the Tribe's Compact – is a

15  federal law.  *See Oklahoma v. New Mexico*, 501 U.S. 221, 234 n.5 (1991) (the Compact is both a

16  contract between the State and the Tribe, and also a federal law).[9]  Because federal law requires

17  _____

18      [7] Nor do the Tribal Governmental Defendants believe that he is entitled to do so, as discussed above.  *See supra* at 8:21-9:21.

19      [8] Under the Tort Claims Procedures the venue for all claims is, a Tribal forum consisting
20  of the Tribe's Claims Administrator, Tort Claims Procedures §§ 9 and 10; the Tribe's Gaming Commission, *id.* at §10.2(1); and a neutral arbitrator.  *Id.* at § 10.3(2).  Finally, a claimant may
21  file suit against the Tribe's insurance provider in state or federal court to enforce any arbitration award.  *Id.* at §3.2.  Clearly, the Tribe's procedures provide for a fair and effective venue for the
22  adjudication of claims.

23      [9] The Supreme Court has held that "where Congress has authorized the States to enter
24  into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement
    into federal law under the Compact Clause." *Cuyler v. Adams*, 449 U.S. 433, 440 (1981).
25  Notably for purposes of this case, "Congress may consent to an interstate compact by authorizing joint state action in advance or by giving expressed or implied approval to an agreement the
    States have already joined." *Id.* at 441.  In *Cuyler*, wherein the Court construed the Interstate
26  Agreement on Detainers, it found that "Congress gave its consent in advance . . . ." *Id.*  Thus for a Compact to be federal law under the Compacts Clause of the Constitution it is sufficient for
27  Congress to authorize the compact's negotiation and execution in advance, as Congress did with respect to the Compact in IGRA, 25 U.S.C. § 2710(d).  Moreover, when Congress approves a
28  compact in advance of its execution and grants an administrative agent the power to authorize

13

1   that plaintiff's claims be filed in an alternative venue, venue is improper in this Court and, for

2   this reason as well, the Tribe respectfully requests that this Court grant the Motion to Dismiss.

3   **C.    This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b) For Failure To**

4   **Exhaust Tribal Remedies**

5           This case should also be dismissed under Fed. R. Civ. P. 12(b) because plaintiff failed to

6   exhaust the Tribal remedies provided in the very laws – the Compact and the Tribe's Tort Claims

7   Procedures – that he alleges pave the way for this lawsuit.  *See* Complaint at ¶ 12.  A failure to

8   exhaust non-judicial remedies is subject to an unenumerated Rule 12(b) motion to dismiss.  *See*

9   *Wyatt v. Terhune,* 315 F.3d 1108, 1120 (9th Cir. 2003); *Ritza v. Int'l Longshoremen's &*

10  *Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir. 1988).  In deciding a motion to dismiss for

11  failure to exhaust non-judicial remedies, a court may look beyond the pleadings and decide

12  disputed issues of fact.  *See Wyatt,* 315 F.3d at 1119-20 (*citing Ritza*, 837 F.2d at 369).

13          It is well established that plaintiffs must exhaust available remedies in Tribal dispute

14  resolution forums before seeking relief in federal court.  *See Burlington N. R.R. Co. v. Crow*

15  *Tribal Council*, 940 F.2d 1239, 1244 (9th Cir. 1991) (*citing Nat'l Farmers Union Ins. Co. v.*

16  *Crow Tribe*, 471 U.S. 845, 857 (1985)); *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 16

17  (1987); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221 (9th

18  Cir. 1989)).  Both the Supreme Court and Ninth Circuit have made it clear that the exhaustion of

19  tribal remedies is mandatory.  *See Iowa Mutual*, 480 U.S. at 16 (non-Indian petitioners "must

20  exhaust available tribal remedies"); *Nat'l Farmers*, 471 U.S. at 857 ("[E]xhaustion is required

21  before . . . a claim may be entertained by a federal court."); *Burlington Northern*, 940 F.2d at

22  1245 ("The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory.").

23  Ninth Circuit authority also holds that the exhaustion requirement "functions as a prerequisite to

24  a federal court's exercise of its jurisdiction," *Burlington Northern*, 940 F.2d at 1245 (*citing Nat'l*

25

26  the compact once it is executed, as IGRA provides in section 2710(d), the authorizing agent
    exercises Congress' constitutional compacts power when it approves the compact.  *See, e.g.*, *Milk*
27  *Industry Foundation v. Glickman*, 132 F.3d 1467 (D.C. Cir. 1998) (holding that the power
    delegated by Congress to the Secretary of Agriculture to authorize an interstate compact was
28  delegable power).

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1    *Farmers*, 471 U.S. at 857), and that it is proper to dismiss a plaintiff's complaint solely on the

2    basis of the failure to exhaust tribal remedies.  *See Stock West*, 873 F.2d at 1228; *Burlington*

3    *Northern*, 940 F.2d at 1244-45.

4         Exhaustion of tribal remedies is required regardless of the type of forum in which such

5    remedies may be sought.  Thus, the fact that the Tribal dispute resolution forum established

6    under the Tort Claims Procedures is not a tribal court is of no import.  "Nonjudicial tribal

7    institutions have . . . been recognized as competent law-applying bodies."  *Martinez*, 436 U.S. at

8    66 (*citing United States v. Mazurie*, 419 U.S. 544 (1975)).  Allowing plaintiff to rely on the

9    Compact without first requiring him to exhaust the Tribal remedies provided thereunder would

10   undermine the federal policy of promoting tribal self-government and the development of tribal

11   governmental institutions, including tribal dispute resolution forums.  *See Iowa Mutual*, 480 U.S.

12   at 14-15 (noting that the federal policy of supporting tribal self-government and self-

13   determination is furthered by requiring exhaustion of tribal remedies).  *See also Nat'l Farmers*,

14   471 U.S. at 856 (same).

15        Assuming arguendo that the Tribe had waived its sovereign immunity with respect to Mr.

16   Runyan's claims under Compact § 10.2(d) and the Tribe's Tort Claims Procedures adopted

17   pursuant thereto (which the defendants deny), his exclusive remedy for pursuing such claims

18   would be under the Tribe's Tort Claims Procedures and the Tribal forum established thereunder.

19   *See supra* at 11:5-25.  But because he failed to pursue – much less exhaust – these Tribal

20   remedies, the tribal exhaustion doctrine precludes this Court from exercising jurisdiction over his

21   claims.  *See Nat'l Farmers*, 471 U.S. at 857; *Iowa Mutual*, 480 U.S. at 16; *Burlington Northern*,

22   940 F.2d at 1245; *Stock West*, 873 F.2d at 1228.  Thus the Tribal Governmental Defendants

23   respectfully request that the present action be dismissed for failure to exhaust Tribal remedies.

24        **D.**    **Plaintiff's Third And Fourth Causes Of Action Should Be Dismissed Under**

25             **Fed. R. Civ. P. 12(b)(6)**

26        Even if an immunity waiver existed, and even if state law applied (both of which

27   defendants emphatically deny), at least two of plaintiff's claims would be subject to dismissal for

28   failure to state a claim upon which relief can be granted.

15

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1    The Complaint alleges that at all "pertinent" times, Defendant Harvey Hopkins was "the

2    Tribe's Chairman and a Member of the RREA Board of Directors," either as Chairperson or a

3    Board member, Complaint at ¶ 3, and that, at all "material" times, he was "acting within the

4    course and scope" of his agency and employment.  Complaint at ¶ 5.  The specific factual

5    allegations against Hopkins with respect to the gravamen of plaintiff's action – his constructive

6    termination from employment – are limited.  Mr. Runyan alleges that he "opposed the actions by

7    Hopkins, by timely and repeatedly advising the RREA Board and RREA officers and Directors,

8    and demanding an independent audit."  Complaint at ¶ 32.  Mr. Ruynan also alleges that, as a

9    "direct and proximate result" of his vocal opposition, "Defendants intentionally retaliated against

10   [him], by forcing [his] resignation from employment based on false and pretextual grounds, and

11   by breaching and/or causing the breach of [his] Employment Contract . . . ."  Complaint at ¶ 33.

12   And Mr. Runyan further alleges that as a result of defendants' actions (including those of

13   Hopkins), he suffered "extreme emotional distress."  Complaint ¶¶ 34 and 35.  On the basis of

14   these allegations, plaintiff has failed to allege a claim against Hopkins.

15       **1.**     **The Third Cause Of Action For Intentional Interference With**

16                  **Contract Should Be Dismissed**

17                  **a.**     **Hopkins Is Not Individually Liable For Interference With**

18                              **Contract**

19       Hopkins, who acted at all times in the course and scope of his employment, cannot be

20   held individually liable for interference with contract.  Under well-settled California authority, a

21   claim for interference with contract cannot be brought against a contracting party but only

22   against third parties who are strangers to the contract.  *See Dryden v. Tri-Valley Growers,* 65 Cal.

23   App. 3d 990 (1977), *mod'f on denial of reh'g, hear'g denied* (holding that a tort cause of action

24   interference with contract could not lie against a contracting party because the essence of the

25   claim is still breach of the contract and thus the "interference" claim would be a subterfuge for

26   recovering tort damages, which are foreclosed in a breach of contract claim)  For purposes of

27   this claim, Hopkins is treated as a matter of law as an agent of the contracting party, i.e.,

28   Runyan's former employer River Rock Entertainment Authority, and thus he cannot be sued for

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1 interference with contract.

2      This principle was applied by the California Supreme Court in *Shoemaker v. Myers,* 52

3 Cal.3d 1, 24-25 (1990), where the court rejected a claim for interference with contract brought by

4 a terminated employee against his former supervisors.  The Court reasoned that "[i]t is . . . well

5 established that corporate agents and employees acting for and on behalf of a corporation cannot

6 be held liable for inducing a breach of the corporation's contract." 52 Cal.3d at 24.  In upholding

7 the dismissal of the claim against the individual manager, the Court stated,

> Here, the parties against whom plaintiff seeks recovery on this
> cause of action are plaintiff's supervisors: agents of the employer
> who are vested with the power to act for the employer (rightly or
> wrongly) in terminating plaintiff's employment.  For purposes of
> this cause of action, then, these defendants stand in the place of the
> employer, because the employer – the other party to the supposed
> contract – cannot act except through such agents.

13 52 Cal.3d at 25.

14      And in *Kacludis v. GTE Sprint Communications Corp.*, 806 F. Supp. 866 (N.D. Cal.

15 1992), where a terminated employee sued his former supervisor alleging that his termination

16 resulted from retaliation for complaints against management, this Court applied *Shoemaker* and

17 granted the defendants' motion to dismiss the "interference" claim, thus rejecting the plaintiff's

18 efforts to take his supervisor's actions outside the scope of the employment relationship.  The

19 principles announced in *Dryden, Shoemaker* and *Kacludis* apply with equal force to Mr.

20 Runyan's claim for interference against Hopkins and, accordingly, his claim should be

21 summarily dismissed.

22        **b.**    **The "Interference" Claim Is Based On Hopkins' Alleged**

23                **"Retaliation" And Can Not Be Asserted Against Hopkins**

24                **Individually**

25      The gist of plaintiff's interference with contract claim is that Hopkins retaliated against

26 him by forcing his resignation, which lead to the "breach" of his employment contract.  *See*

27 Complaint at ¶ 55.  *See also* Complaint at ¶ 33.  This claim, regardless of its label, is tantamount

28 to a claim for retaliation, as that is the principal conduct alleged against Hopkins.  The rationale

1   of the California Supreme Court's recent decision in *Jones v. The Lodge At Torrey Pines,* 42

2   Cal.4th 1158 (2008), rejecting individual manager liability for retaliation should equally apply

3   here.  The *Torrey Pines* court ruled (in the context of interpreting California's anti-discrimination

4   statute) that an individual manager should not be held liable for business or personnel

5   management decisions inherently necessary to performance of a supervisor's job, even if they

6   later may be challenged by the employee.  *Id*. at 1164 (citations omitted).  Hopkins's actions that

7   were alleged to have been taken "within the course and scope of [his] . . . employment" should be

8   given the same protection.  Complaint at ¶ 5.  Accordingly, Hopkins cannot be held liable on a

9   claim which is based on an allegation of retaliatory conduct.

10   **2.      The Fourth Cause Of Action For Intentional Infliction of Emotional**

11   **Distress Is Barred By The Exclusive Remedy Provisions Of**

12   **California's Workers' Compensation Act**

13   The general rule in California is that "where an employee states a cause of action for

14   either physical or emotional injury arising from termination, that claim is governed exclusively

15   by the provisions of California's workers' compensation system."  *Kacludis*, 806 F. Supp. at 870.

16   *See also* Cal. Lab. Code §§ 3600, 3601 and 36021 (establishing workers' compensation as the

17   "exclusive remedy" for workplace injuries.)  *Kacludis* applied well-settled California law

18   recognizing the exclusivity of the workers' compensation remedy "whether or not the employee

19   alleges improper or evil motives on the part of the employer[]" and dismissed claims for

20   intentional infliction of emotional distress against the former employer and co-workers on the

21   basis of workers' compensation preemption.  *Kacludis*, 806 F. Supp. at 870, 870-71.

22   The California Supreme Court affirmed the exclusive remedy of workers' compensation

23   for workplace injuries in *Cole v. Fair Oaks Fire Protect. Dist.*, 43 Cal.3d 148 (1987).  As the

24   *Cole* court stated in dismissing an action for intentional infliction of emotional distress that the

25   plaintiff brought against his former employer and fellow employees:

26   > We have concluded that, when the misconduct attributed to the
   > employer is actions which are a normal part of the employment
27   > relationship, such as demotions, promotions, criticism of work
   > practices, and frictions in negotiations as to grievances, an
28   > employee suffering emotional distress causing disability may not

18

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS COMPLAINT

1

2

3

> avoid the exclusive remedy provisions of the Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance resulting in disability. . . . [T]he action is barred by the exclusiveness clause no matter what its name or technical form if the usual conditions of coverage are satisfied.

4

5

6

7

8

> If characterization of conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the exclusive remedy provisions of the Labor Code, the exception would permit the employee to allege a cause of action in every case where he suffered mental disability merely by alleging an ulterior purpose of causing injury. Such an exception would be contrary to the compensation bargain and unfair to the employer.

9 *Id*. at 160 (internal citations omitted).

10 These principles of exclusive jurisdiction of a remedy under the Workers' Compensation

11 Act clearly apply to terminations from employment. "Disciplinary actions, such as termination,

12 are part of normal employment risks, and such supervisory conduct by an employer is inherently

13 intentional." *Shoemaker*, 52 Cal. 3d at 25 (dismissing a claim of intentional infliction of

14 emotional distress against plaintiff's supervisor based on the exclusive remedy provisions of

15 workers' compensation).

16 Accordingly, the fourth cause of action for intentional infliction of emotional distress

17 alleged against Hopkins should be dismissed because it is barred by the exclusive remedy

18 provisions found in California's Workers' Compensation Act.

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28

19

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1

**III.**     <u>**CONCLUSION**</u>

2          For all of the above reasons, the Tribal Governmental Defendants respectfully request

3   that the Court dismiss this lawsuit with prejudice.

4

5

6

7   Dated: April 18, 2008                          HOLLAND & KNIGHT LLP

8                                                  By:  _____ /s/ _____
                                                             William Wood
9

10                                                 Attorneys for Specially Appearing Defendants,
                                                   RIVER ROCK ENTERTAINMENT AUTHORITY
11                                                 RIVER ROCK CASINO
                                                   HARVEY HOPKINS
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   # 5224265_v7

28
                                                     20
                     DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
                                              DISMISS COMPLAINT