1  HOLLAND & KNIGHT LLP
     Frank R. Lawrence (State Bar No. 147531)
2    Zehava Zevit (State Bar No. 230600)
     William Wood (State Bar No. 248327)
3  633 West Fifth Street, 21st Floor
   Los Angeles, California 90071-2040
4  Telephone (213) 896-2400
   Facsimile (213) 896-2450
5  frank.lawrence@hklaw.com
   zehava.zevit@hklaw.com
6  william.wood@hklaw.com

7  Attorneys for Specially-Appearing Defendants
   RIVER ROCK ENTERTAINMENT AUTHORITY,
8  RIVER ROCK CASINO and
   HARVEY HOPKINS

9

10

11                **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                 **SAN FRANCISCO DIVISION**

14

15  NORMAN RUNYAN,                    )    CASE No. 3:08-CV-01924-VRW
                                      )
16              Plaintiff,            )
                                      )    **DEFENDANTS' RESPONSE TO**
17      vs.                           )    **ORDER TO SHOW CAUSE**
                                      )
18  RIVER ROCK ENTERTAINMENT          )
    AUTHORITY et al.,                 )
19                                    )
                                      )
20              Defendants.           )
                                      )
21                                    )
                                      )
22                                    )
                                      )
23  _____  )

24

25  //

26  //

27  //

28  //

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ............................................................................................1

II.     ARGUMENT ....................................................................................................2

    A.      Legal Standard ......................................................................................2

    B.      Plaintiff's Wrongful Termination For Violation Of Public Policy
        Claim Is   Completely Preempted By Federal Law ..................................3

    C.      Plaintiff's State Law Claims Arise Under Federal Law Because
        They Require The Resolution Of Substantial Federal Questions ...........7

        1.      Plaintiff's Complaint Necessarily Depends On Federal Law.......7

                a.      The Complaint Necessarily Depends On The
                        Bankruptcy Code And The Exchange Act Under
                        The Test Articulated In *Rains* ...........................................7

                b.      The Complaint Necessarily Implicates The Tribal-
                        State Compact ..................................................................10

                c.      The Complaint Necessarily Implicates The Indian
                        Gaming Regulatory Act .....................................................10

                  d.      The Complaint Necessarily Implicates Federal
                        Common Law .....................................................................11

        2.      The Federal Questions Implicated In The Complaint Are
            Substantial..............................................................................12

                 a.      The Bankruptcy Code Issues Are Substantial..................13

                b.      The Exchange Act Issues Are Substantial ......................14

                c.      The Issues Raised Under The Compact, IGRA, And
                        Federal Indian Common Law Are Substantial.................17

III.    CONCLUSION................................................................................................19

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Page No.(s)**

**FEDERAL CASES**

*Animal Legal Defense Fund v. Quigg,*
   900 F.2d 195 (9th Cir. 1990) .................................................................9

*Ansley v. Ameriquest Mortg. Co.,*
   340 F. 3d 858 (9th Cir. 2003) .................................................................3

*ARCO Environmental Remediations, LLC v. Montana,*
   213 F.3d 1108 (9th Cir. 2000) ............................................................. 2-3

*Arizona Health Care Cost Containment System v. McClellan,*
   508 F.3d 1243 (9th Cir. 2007) ...............................................................18

*Babbitt v. Youpee,*
   519 U.S. 234 (1997) ............................................................................12

*Banner v. United States,*
   238 F.3d 1348 (Fed. Cir. 2001)..............................................................19

*Beneficial Nat'l Bank v. Anderson,*
   539 U.S. 1 (2003)..................................................................................3

*Bird v. Glacier Elec. Coop., Inc.,*
   255 F.3d 1136 (9th Cir. 2001) ...............................................................12

*Brennan v. Southwest Airlines Company,*
   134 F.3d 1405 (9th Cir. 1998) .................................................................2

*Bugenig v. Hoopa Valley Tribe,*
   266 F.3d 1201 (9th Cir. 2001) ...............................................................12

*California ex rel. Lockyer v. Dynergy, Inc.,*
   375 F.2d 831 (9th Cir. 2004) .......................................................3, 10, 16

*California ex rel. Lockyer v. Mirant Corp.,*
   No. C-02-2207-VRW, 2002 WL 1897669, 2002 U.S. Dist. Lexis 15733 (N.D. Cal.
   Aug. 6, 2002) ...............................................................................2-3, 16

*California v. Cabazon Band of Mission Indians,*
   480 U.S. 202 (1987)...............................................................................5

*Casino Resource Corp. v. Harrah's Entertainment, Inc.,*
   243 F.3d 435 (8th Cir. 2001) ..................................................................5

*Cobell v. Norton*,
    240 F.3d 1081 (D.C. Cir. 2001) ...............................................................................19

*County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation*,
    502 U.S. 251 (1992)...................................................................................................12

*Cuyler v. Adams*,
    449 U.S. 433 (1981).....................................................................................................6

*D'Alessio v. New York Stock Exchange*,
    258 F.3d 93 (2d Cir. 2001).........................................................................................15

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006)...................................................................................................14

*Florida v. Semiole Tribe of Florida*,
    181 F.3d 1237 (11th Cir. 1999) ...................................................................................5

*Franchise Tax Board v. Constr. Laborers Vacation Trust for So. Cal.*,
    463 U.S. 1 (1983)..................................................................................................3, 7, 9

*Gaming Corp. of America v. Dorsey & Whitney*,
    88 F.3d 536 (8th Cir. 1996) .....................................................................................1, 5

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
    545 U.S. 308 (2005)......................................................................................... passim

*Hagen v. Utah*,
    510 U.S. 399 (1994)...................................................................................................12

*Herman v. Salomon Smith Barney, Inc.*,
    266 F. Supp. 2d 1208 (S.D. Cal. 2003)......................................................................17

*Illinois v. Milwaukee*,
    406 U.S. 91 (1972).....................................................................................................11

*In re Bradley*,
    989 F.2d 802 (5th Cir. 1993) .....................................................................................14

*In re Greene*,
    980 F.2d 590 (9th Cir. 1992) .....................................................................................13

*In re National Security Agency Telecomm. Records Litig.*,
    483 F. Supp. 2d 934 (N.D. Cal. 2005) ("*NSA*")...............................................3, 4, 6, 7

*In re White*,
    139 F.3d 1269 (9th Cir. 1998) ...................................................................................13

*Krystal Energy Co. v. Navajo Nation*,
    357 F.3d 1055-58 (9th Cir. 2004) ..............................................................................13

iii

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) ...............................................................................3, 8, 15, 17

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   No. 01-CV-748-VRW, 2001 WL 35827034, 2001 U.S. Dist. Lexis _____ (N.D. Cal.
   Aug. 6, 2002) .........................................................................................................................17

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
   478 U.S. 804 (1986).........................................................................................................2, 9, 12

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987)..........................................................................................................................3

*Nat'l Farmers Union Ins. Cos. v. Crow Indian Tribe*,
   471 U.S. 845 (1985)......................................................................................................................11

*New Mexico v. Mescalero Apache Tribe*,
   462 U.S. 324 (1983)......................................................................................................................11

*Oklahoma Tax Comm'n v. Sac and Fox Nation*,
   508 U.S. 114 (1993)......................................................................................................................12

*Oklahoma v. New Mexico*,
   501 U.S. 221 (1991).......................................................................................................................6

*Oneida Indian Nation v. County of Oneida*,
   414 U.S. 661 (1974)......................................................................................................................11

*Petty v. Tennessee-Missouri Bridge Comm'n*,
   359 U.S. 275 (1959).......................................................................................................................6

*Rains v. Criterion Systems, Inc.*,
   80 F.3d 339 (9th Cir. 1996) ...................................................................................................1, 7, 8, 9

*Roskind v. Morgan Stanley Dean Witter & Co.*,
   165 F. Supp. 2d 1059 (N.D. Cal. 2001) .......................................................................................9

*South Dakota v. Bourland*,
   508 U.S. 679 (1993).....................................................................................................................12

*Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers*,
   159 F.3d 1209 (9th Cir.1998) ............................................................................................2, 10, 16

*State ex rel. Dyer v. Sims*,
   341 U.S. 22 (1951).........................................................................................................................6

*Sycuan Band of Mission Indians v. Roache*,
   38 F.3d 402 (9th Cir. 1994) ........................................................................................................11

iv

*United States v. Enas*,
    255 F.3d 662 (9th Cir. 2001) .................................................................12

*United States v. Lara*,
    541 U.S. 193 (2004) .............................................................................18

*United States v. Male Juvenile*,
    280 F.3d 1008 (9th Cir. 2002) ...............................................................12

*Williams v. Lee*,
    358 U.S. 217 (1959) .............................................................................12

**FEDERAL STATUTES**

11 U.S.C.
    § 101(27) .............................................................................................14
    § 525 .............................................................................................1, 9, 14
    § 525(b) ...............................................................................................13

15 U.S.C.
    § 78a *et seq*.....................................................................................1, 2
    § 78aa ........................................................................................1, 16, 17

25 U.S.C.
    § 2701 *et seq*. ....................................................................................1
    § 2702 .....................................................................................................4
    § 2710(b)(2)(F) ...........................................................1, 4, 5, 7, 10
    § 2710(d)(2) ...........................................................................................5
    § 3601 ...................................................................................................18

26 U.S.C.
    § 6335 ...................................................................................................13

28 U.S.C.
    § 1331 .................................................................................................1, 13
    § 1441(b) ............................................................................................1, 2

**OTHER FEDERAL AUTHORITIES**

25 C.F.R.
    Part 556 (Jan. 22, 1993) ...................................................................4, 10
    Part 558 (Jan. 22, 1993) ...................................................................4, 10

67 Fed. Reg. 54823, 54824 (Aug. 26, 2002)......................................6

Exchange Act Rules
    Rule 13a-15(e) .............................................................................9, 15, 16
    Rule 15d-15(e) ............................................................................9, 15, 16

v

H.R. Rep. No. 107-414 (2002)..................................................................................15

S. Rep. No. 446, 100th Cong., 2d Sess. 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071 .......4, 5, 6

Tribal-State Gaming Compact Between the State of California and the Dry Creek
    Rancheria Band of Pomo Indians
      § 6.1.......................................................................................................6
      § 6.3.......................................................................................................6
      § 6.4.......................................................................................................6

United States Constitution
    Article I, § 8 ...............................................................................17, 18
    Article I, § 10, cl. 3 ............................................................................6

**MISCELLANEOUS SOURCES**

F. Cohen, Handbook of Federal Indian Law....................................................12, 17, 18

RESPONSE TO ORDER TO SHOW CAUSE                                     Case No. 3:08-CV-01924-VRW

# I.     **INTRODUCTION**

The Court's Order to Show Cause asks defendants to demonstrate that federal question jurisdiction exists here and to address three specific cases.  Removal was proper under the cases referenced in the Order and others like them because this action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and exclusive jurisdiction under 15 U.S.C. § 78aa.  Removal was also proper under 28 U.S.C. § 1441(b) because this action arises under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq*., and the federally-authorized and ratified Tribal-State Gaming Compact Between the State of California and the Dry Creek Band Rancheria of Pomo Indians ("Compact"),[1] which together completely preempt the state law on which plaintiff relies.  The action also arises under the Bankruptcy Code, 11 U.S.C. § 525, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*., and the federal common law of Indian affairs.

Two independent bases establishing federal jurisdiction exist here.  First, although the Complaint asserts state law causes of action, it implicates questions that are completely preempted by – and in this sense "arise under" – federal law.  28 U.S.C. § 1441(b).  Specifically, the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq*., and the Compact the Tribe entered into pursuant thereto completely preempt application of state law to an Indian tribe's employment-related actions in connection with "primary management officials and key employees."  *See* 25 U.S.C. § 2710(b)(2)(F)(ii)(II); *Gaming Corp. of America v. Dorsey & Whitney,* 88 F.3d 536, 543 (8th Cir. 1996) (IGRA preempts state law).

Second, the Complaint necessarily requires resolution of substantial questions of federal law under the three cases referenced in the Order.  The Complaint necessarily implicates federal questions under *Rains v. Criterion Systems, Inc*., 80 F.3d 339 (9th Cir. 1996), because plaintiff's claim for wrongful termination in violation of public policy is based *exclusively* on alleged violations of federal law and policy.  Because plaintiff cannot prevail on this claim without necessarily proving a violation of public policy under federal law, *Rains*' "necessarily

---

[1] A copy of the Compact is attached as Exhibit A to the Declaration of Harvey Hopkins filed in support of Defendants' Motion to Dismiss on April 18, 2008.

1

implicated" requirement is satisfied. Similarly, the Complaint necessarily implicates the Compact (itself a federal law) and federal Indian common law.

Furthermore, the factors establishing that these "necessarily implicated" federal issues are sufficiently "substantial," discussed in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), and *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), are present here. As in *Grable,* the questions raised here are significant, the "national interest in providing a federal forum . . . is sufficiently substantial to support the exercise of federal question jurisdiction over the disputed issue[s] on removal," and exercising federal question jurisdiction in this case would "not distort any division of labor between the state and federal courts . . . ." *Grable*, 545 U.S. at 310. And here, as in *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers*, 159 F.3d 1209, 1111-12 (9th Cir.1998), plaintiff's claim for wrongful termination in violation of public policy arises under a federal law – the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act") – that commits the matters raised in the Complaint exclusively to the jurisdiction of federal courts. This factor likewise supports federal jurisdiction. *See California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.2d 831, 840-41 (9th Cir. 2004); *Brennan v. Southwest Airlines Company,* 134 F.3d 1405 (9th Cir. 1998). For these reasons, defendants respectfully request that the Court retain jurisdiction over this case.

II.  **ARGUMENT**

A.  **Legal Standard**

A claim ostensibly based in state law arises under federal law for purposes of 28 U.S.C. § 1441(b) if: (1) federal law completely preempts the state law claim; (2) the state claim is necessarily federal in character; or (3) the right to relief requires the resolution of a substantial, disputed federal question. *See ARCO Environmental Remediations, LLC v. Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000).[2] Here, removal is proper under each one of these bases. If even one

---

[2] Although the *ARCO* court set out these three categories as being distinct and separate, the Ninth Circuit has alternatively framed the latter two categories as being subsumed within a larger category of "substantial federal question cases." *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041-42 (9th Cir. 2003). And this Court has recognized that "[t]he third exception, whether a claim raises a substantial, disputed federal question, overlaps somewhat with the second." *California ex rel. Lockyer v. Mirant Corp.*, No. C-02-2207-VRW, 2002 WL

2

1  claim establishes federal question jurisdiction under one of these exceptions to the well-pleaded

2  complaint rule, removal is proper as to the whole case. *See Franchise Tax Board v. Constr.*

3  *Laborers Vacation Trust for So. Cal.*, 463 U.S. 1, 13 (1983).

### B.  Plaintiff's Wrongful Termination For Violation Of Public Policy Claim Is Completely Preempted By Federal Law

6  Under the complete preemption doctrine, the force of certain federal statutes is

7  considered to be so "extraordinary" that it "converts an ordinary state common law complaint

8  into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metro. Life Ins.*

9  *Co. v. Taylor*, 481 U.S. 58, 66 (1987). "A state claim may be removed to federal court . . . when

10  a federal statute wholly displaces the state-law cause of action through complete pre-emption."

11  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "In such instances, any claim

12  purportedly based on that preempted state law is considered, from its inception, a federal claim,

13  and therefore arises under federal law." *Ansley v. Ameriquest Mortg. Co.,* 340 F. 3d 858, 862

14  (9th Cir. 2003) (citations omitted).

15  When a federal statute "lacks express statutory exclusivity language . . . the analysis

16  focuses upon factors such as the 'structure and purpose' of the relevant statutes; whether they

17  contain 'complex, detailed, and comprehensive provisions' that 'create a whole system under

18  federal control' and whether there exist 'extensive federal remedies.'" *In re National Security*

19  *Agency Telecomm. Records Litig.,* 483 F. Supp. 2d 934, 939 (N.D. Cal. 2005) ("*NSA*") (*citing In*

20  *re Miles,* 430 F. 3d 1083, 1088 (9th Cir. 2005)). Consideration of these factors here

21  demonstrates that plaintiff's claim is completely preempted by federal law.

22  As a high-level manager at the Tribe's casino, Mr. Runyan was subject to provisions in

23  the Indian Gaming Regulatory Act and National Indian Gaming Commission ("NIGC")

24  regulations that apply to "primary management officials and key employees of the gaming

25  enterprise[,]" and his employment was subject to the standards established therein and pursuant

26  thereto. *See* 25 U.S.C. § 2710(b)(2)(F)(ii) and 25 C.F.R. Parts 556 and 558 (Jan. 22, 1993).

27

28  1897669, 2002 U.S. Dist. Lexis 15733, slip op. at *4 (N.D. Cal. Aug. 6, 2002), *aff'd sub nom.*, *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831 (9th Cir. 2004).

1    Those federal provisions, together with the Compact and Tribal law, completely preempt

2    application of California state law to employment-related actions taken by an Indian tribe in

3    relation to a "primary management official" at the Tribe's casino.  25 U.S.C. § 2710(b)(2)(F).

4         IGRA's complete preemption of state law derives both from the Act's purposes and from

5    the structure it created.  *See NSA,* 483 F. Supp. 2d at 939 (citing purposes and structure as indicia

6    of preemption).  Congress enacted IGRA with the goal of providing "a statutory basis for the

7    operation of gaming by Indian tribes as a means of promoting tribal economic development, self-

8    sufficiency, and strong tribal governments."  25 U.S.C. § 2702 (1).  Congress wanted to ensure

9    that Tribes could conduct their gaming operations free "from organized crime and other

10   corrupting influences."  25 U.S.C. § 2702(2).  And Congress sought to establish "independent

11   regulatory authority for gaming on Indian lands," "Federal standards for gaming on Indian

12   lands," and "a National Indian Gaming Commission" to oversee implementation of the Act.  25

13   U.S.C. § 2702(3).  In order to achieve all of these goals concurrently Congress created a

14   regulatory structure that enabled Indian tribes to conduct gaming under federal law but

15   categorically precluding the application of state law to any aspect of the tribes' gaming operation.

16   *See* S. Rep. No. 446, 100th Cong., 2d Sess. 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071, 3075.

17        Thus Congress intended IGRA to preempt state law in the governance of gaming

18   activities on Indian lands.  Indeed, IGRA's legislative history specifically provides that the

19   statute "is *intended to expressly preempt the field* in the governance of gaming activities on

20   Indian lands."  S. Rep. No. 446 at 6 (1988), 1988 U.S.C.C.A.N. at 3076 (emphasis added).

21   Application of state law to the operation of tribal gaming was intentionally foreclosed:  "[U]nless

22   a tribe affirmatively elects to have State laws and State jurisdiction extend to tribal lands, the

23   Congress will not unilaterally impose or allow State jurisdiction on Indian lands for the

24   regulation of Indian gaming activities."  S. Rep. No. 446 at 5, 1988 U.S.C.C.A.N. at 3075.  In

25   thus foreclosing application of state law Congress was confirming the result in *California v.*

26   *Cabazon Band of Mission Indians,* 480 U.S. 202, 209-11 (1987), in which the Supreme Court

27   had held that California's civil laws did not apply to tribal governmental gaming on federal

28   Indian lands.

4

1    IGRA's preemption of state law is well established.  In *Gaming Corp. of America*, 88

2    F.3d at 547, the court held that IGRA "has the requisite extraordinary preemptive force necessary

3    to satisfy the complete preemption exception to the well-pleaded complaint rule."  Similarly, in

4    *Casino Resource Corp. v. Harrah's Entertainment, Inc*., 243 F.3d 435, 437 (8th Cir. 2001), the

5    court held that "Congress, by enacting IGRA, has established the preemptive balance between

6    tribal, federal, and state interests in the governance of gaming operations on Indian lands."  *See*

7    *also Florida v. Semiole Tribe of Florida*, 181 F.3d 1237, 1250 (11th Cir. 1999).  Thus, "[a]ny

8    claim which would directly affect or interfere with a tribe's ability to conduct its own [gaming]

9    licensing process . . . ." is completely preempted.  *Gaming Corp.*, 88 F.3d at 549.

10    IGRA created a complex and detailed system for the regulation of all gaming-related

11    activities on Indian lands, including those pertaining to establishment and implementation of

12    standards for employment of high-level officials.  Among the "gaming activities" that IGRA

13    excluded from the purview of state law – and relegated to tribal discretion – was the purveyance

14    of standards "whereby any person whose . . . reputation, habits and associations pose a threat to

15    the . . . effective regulation of gaming, or create or enhance the dangers of unsuitable, unfair, or

16    illegal practices and methods and activities in the conduct of gaming shall not be eligible for

17    employment."  25 U.S.C. § 2710(b)(2)(F)(ii).  IGRA explicitly requires that the Tribe adopt a

18    gaming ordinance that establishes the regulations and enforcement mechanisms that determine

19    management officials' suitability for employment.  *Id*.  Congress further required that such tribal

20    gaming ordinances be submitted, reviewed, and approved by the federal Chairman of the NIGC.

21    *See id.* at §§ 2710(b)(2) and 2710(d)(2).

22    In exercising its congressionally-recognized sovereignty the Tribe took two general

23    actions relevant here.  First, it adopted a gaming ordinance that, in compliance with IGRA,

24    establishes employment criteria for primary management officials like Mr. Runyan and standards

25    pursuant to which such management officials may be terminated or otherwise rendered ineligible

26    for employment.  *See* 67 Fed. Reg. 54823, 54824 (Aug. 26, 2002) (consolidated list of all Tribes

27    for which the NIGC Chairman has approved tribal gaming ordinances authorizing class III

28    gaming in conformance with IGRA).  Second, the Tribe entered into the Compact in which the

1    State and the Tribe agreed that all gaming employees would be licensed by the Tribal Gaming

2    Agency in accordance with the Tribe's gaming ordinance, *see* Compact §§ 6.1, 6.3 and 6.4.1, and

3    that absent such a license gaming employees may not be employed in connection with the Tribe's

4    casino. *Id*.; Compact § 6.4.4. The Compact is a federal law. *See Oklahoma v. New Mexico*, 501

5    U.S. 221, 234 n.5 (1991).[3] In short, Congress put in place an extensive statutory scheme to

6    address and enforce, among other things, standards and eligibility criteria for employment of

7    casino managers. State law was explicitly and purposely left out of that scheme. *See* S. Rep.

8    No. 446 at 6, 1988 U.S.C.C.A.N. at 3076.

9        That IGRA completely preempts state law in connection with plaintiff's claims is thus

10   manifest under the criteria cited in *Miles* and *NSA*. Congress expressly intended IGRA to

11   foreclose application of state law to questions pertaining to standards for employment (and

12   termination) of primary management officials, and it created a statutory structure designed to

13   achieve such preemption. *See NSA*, 483 F. Supp. 2d at 939 (*citing Miles,* 430 F. 3d at 1088).

14   The regulatory framework established in IGRA and implemented pursuant thereto provides for

15   "complex, detailed and comprehensive" provisions that "create a whole system" sanctioned by

16   federal law. *Id*.

17       Plaintiff asserts that his filing for bankruptcy was not proper grounds for terminating his

18   employment. Under IGRA, however, this is precisely the type of factor that Indian tribes may

19   consider in determining the suitability of high-level managers for gaming-related employment.

20

21   [3] The basis for the Compact's status as federal law rests in the United States Constitution. The

22   Compacts Clause prohibits a state from entering into a compact with another sovereign unless
     Congress consents. *See* U.S. Const. Art. I, § 10, cl. 3. *See also Petty v. Tennessee-Missouri*

23   *Bridge Comm'n*, 359 U.S. 275, 282 (1959) ("[T]he consent of Congress [is] a prerequisite to the
     validity of agreements by States."); *State ex rel. Dyer v. Sims*, 341 U.S. 22, 27-28 (1951)

24   ("[C]ongressional consent [to the state compact under review] required, as [it is] for all compacts
     . . . ."). The Supreme Court has held that "where Congress has authorized the States to enter into

25   a cooperative agreement, and where the subject matter of that agreement is an appropriate
     subject for congressional legislation, the consent of Congress ***transforms the States' agreement***

26   ***into federal law under the Compact Clause***." *Cuyler v. Adams*, 449 U.S. 433, 440 (1981)
     (emphasis added). The implication of this for the Court's Order to Show Cause is plain: "The

27   construction of a compact sanctioned by Congress under Art. I, § 10, cl. 3, of the Constitution
     presents a federal question." *Petty*, 359 U.S. at 278 (*citing Delaware River Joint Toll Bridge*

28   *Commission, Pennsylvania-New Jersey v. Colburn*, supra, 310 U.S. 419, 427 (1940)).

1  25 U.S.C. § 2710(b)(2)(F)(ii).  Indeed, the NIGC has expressly directed that "financial history

2  information" should generally be a "major area [] of focus" for tribal gaming commissions to

3  consider.[4]  IGRA's preemption of plaintiff's state law claims requires that the propriety of

4  termination based upon a bankruptcy filing be assessed under IGRA and not under state law that

5  would subversively permit application of rules that Congress did not mean to apply to Indian

6  tribes engaged in the highly federally regulated field of gaming under IGRA.  Thus federal law

7  completely preempts state law and removal jurisdiction is present.

8      **C.  Plaintiff's State Law Claims Arise Under Federal Law Because They Require**

9          **The Resolution Of Substantial Federal Questions**

10          **1.  Plaintiff's Complaint Necessarily Depends On Federal Law**

11  Removal jurisdiction exists where "a plaintiff's right to relief necessarily depends on

12  resolution of a substantial question of federal law."  *Franchise Tax Board*, 463 U.S. at 27-28.

13  Plaintiff's Complaint depends on federal law in a number of ways.

14          **a.  The Complaint Necessarily Depends On The Bankruptcy Code And**

15              **The Exchange Act Under The Test Articulated In *Rains***

16  Plaintiff alleges that he was terminated in violation of public policy.  "[I]n order to

17  prevail on such a claim a plaintiff must prove as one element that a fundamental public policy

18  exits that is 'delineated in constitutional or statutory provisions . . . .'"  *Rains,* 80 F.3d at 343

19  (*quoting Gantt v. Sentry Ins.,* 1 Cal.4th 1083, 1095 (1992)).  Thus plaintiff must allege and prove

20  the existence and violation of some public policy delineated in law.  *Id*.  The Complaint points to

21  two federal statutory schemes – the Bankruptcy Code and the Securities Exchange Act – as the

22  basis for the public policy element.  *See* Complaint at ¶¶ 44-52.  Because federal law provides

23  the sole basis for plaintiff's state law claims, the Complaint necessarily implicates federal law.

24  The Order to Show Cause cites *Rains*, in which an employee sued in state court for

25  wrongful termination in violation of public policy.  That complaint cited a number of bases –

26  both state and federal – for the alleged public policy: the California Constitution, a California

27  anti-discrimination statute, and Title VII of the Civil Rights Act of 1964.  *See Rains*, 80 F.3d at

28

---

[4] http://www.nigc.gov/ReadingRoom/Bulletins/BulletinNo19944/tabid/186/Default.aspx.

345-46. The court found no removal jurisdiction because questions of federal law were not necessarily implicated in plaintiff's state law claims. *Id*. In other words, federal law was not necessarily implicated because the plaintiff could prove his claim without any reference to, or decision regarding, federal law. But the present case does necessarily implicate federal law, as demonstrated by the *Rains* court's own analysis of the circumstances under which federal issues are "necessarily" implicated in state law claims.

*Rains* held that the invocation of a federal law as a "basis for establishing an element of a state law cause of action does not confer federal question jurisdiction *when the plaintiff also invokes a state constitutional provision or a state statute that can and does serve the same purpose*." *Id*. at 345 (emphasis added). Although the complaint "refer[red] to [federal law] as one basis for demonstrating that there [wa]s a public policy [against plaintiff's termination], the complaint also refer[red] to the California Constitution and to [California anti-discrimination law]," both of which established the same public policy as that allegedly established by the federal law cited in the complaint. *Id*. at 345-46.[5] And it concluded that "[w]hen a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Id*. at 346. *See also Lippitt*, 340 F.3d at 1045-46 (existence of alternative state law foundation, in addition to federal law, upon which state claim rested meant that analysis of federal law was not "necessary").[6]

The dispositive factor in *Rains* was thus that the plaintiff could prove his public policy claim without any reference to federal law. The state law cited in the complaint provided a complete and independent basis upon which that plaintiff could prevail. But ours is not a case like *Rains* where federal law is "one of several similar sources of public policy supporting [plaintiff]'s state law claims." *Rains*, 80 F.3d at 344.

---

[5] The court thus found that federal law was not a "'necessary element' of the state law claim because state law independently espouse[d] the same public policy established by the [federal law cited in the complaint]." *Rains*, 80 F.3d at 845.

[6] *Cf. Merrell Dow*, 478 U.S. at 809-10 (holding that removal was improper where plaintiffs' state court action for negligence was based only in part on an alleged violation of federal law).

8

1    Where, as here, a complaint cites *exclusively* federal law as the basis for a wrongful

2    termination claim based on public policy[7] and does not provide any alternative state-law theory,

3    an adjudicating court must – necessarily – construe federal law.  In such circumstances, the

4    claims arise under federal law, and the rationale underlying *Rains* strongly supports the existence

5    of removal jurisdiction.[8]   Where "[t]here are no[] alternative theories upon which [p]laintiffs can

6    base their claim that do not depend on a construction of federal . . . law," the Ninth Circuit has

7    applied the *Rains* analysis to uphold federal jurisdiction.  *Animal Legal Defense Fund v. Quigg,*

8    900 F.2d 195, 196 (9th Cir. 1990).

9    Under *Rains,* Mr. Runyan's public policy claim necessarily implicates questions of

10   federal law.  To succeed on his claim, he must plead and prove the existence, and violation, of

11   public policy based in law.  But the only grounds for public policy cited in the Complaint are the

12   Bankruptcy Code and the Securities Exchange Act and concomitant rules.  Thus, as in later

13   Ninth Circuit cases that are likewise distinguishable from *Rains*, removal was proper here

14   because federal law "wholly governs the lawfulness of the [defendants'] conduct."  *Lockyer*, 375

15   F.3d at 841 n.6.  Plaintiff's claims "are founded on the defendants' conduct . . . , the propriety of

16   which must be exclusively determined by federal law[,]" and the "viability of any action founded

17   on [defendants'] conduct . . . depends on whether [federal law] w[as] violated."  *Sparta*, 159 F.3d

18   at 1212.[9]   Federal law is therefore essential to plaintiff's claim – and removal is proper – because

19   the claim depends entirely on whether federal law was violated in the first instance.

20   _____

21   [7] Plaintiff alleges that his "termination" from employment was "a direct result of his opposition" to actions that he claims violated "the terms and conditions of the Securities and Exchange Act, Rule 13a-15(e), 15d-15(e)."  Complaint at ¶ 50.  He also alleges that his "termination" was the direct result of his expressing opposition that constituted protected activity under 11 U.S.C. § 525.  *Id.* at ¶ 49.

22

23

24   [8] *See Franchise Tax Board*, 463 U.S. at 10 ("[A]n action 'arises under' federal law 'if in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law.'") (internal citation and quotation omitted); *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1067 n.8 (N.D. Cal. 2001) ("*Sparta* and *Franchise Tax Board* make clear that *removal is available if the federal question is essential to the state claim*.") (*citing Sparta*, 159 F.3d at 1212; *Franchise Tax Board*, 463 U.S. at 22) (emphasis added).

25

26

27

28   [9] *See also Grable*, 545 U.S. at 314-15 (substantial federal question existed where compliance with a federal statute was essential element of state claim and meaning of statute was in dispute).

9

### b.  The Complaint Necessarily Implicates The Tribal-State Compact

The Complaint implicates federal law in other ways as well: It expressly and necessarily turns on interpreting the Tribal-State Gaming Compact.  As explained above, the Compact is federal law, *see supra* at 6:4-5 and n.3 (*citing Oklahoma v. New Mexico*, 501 U.S. at 234 n.5), so that any case that requires an interpretation of the Compact necessarily implicates federal law.

Questions about the Compact are necessarily implicated in plaintiff's Complaint for the reasons explained above in Part II.B**.**  Moreover, plaintiff points to the provisions of the Tribe's Compact wherein the Tribe agreed to carry public liability insurance for personal injury and property damage claims and suggests that his claim meets the threshold requirements for coverage set forth therein.  Complaint at ¶ 12.  *See also* Complaint at ¶ 14 (discussing Compact and IGRA).  This allegation, which plaintiff must prove to proceed with his case, requires analysis and interpretation of the Compact's provisions.  Thus, an adjudicating court must engage substantial questions of federal law that are directly in dispute, including whether the insurance allegedly mandated in the Compact covers plaintiff and his claims.

### c.  The Complaint Necessarily Implicates The Indian Gaming Regulatory Act

As explained above in Part II.B., Mr. Ruynan, as a high-level casino manager, was directly subject to IGRA and the NIGC regulations and gaming ordinance promulgated thereunder (including provisions dealing with standards for the licensure, employment and termination of high-level casino managers).  *See* 25 U.S.C. § 2710(b)(2)(F)(ii); 25 C.F.R. Parts 556 and 558.  The Tribe was likewise subject to these enactments when it  acted in connection with plaintiff's alleged termination.  Plaintiff's allegations that his filing for bankruptcy was not proper grounds for defendants' terminating his employment will thus necessarily implicate an analysis of IGRA in that it will require the court to determine whether filing for bankruptcy constitutes permissible grounds under IGRA, NIGC regulations and the Tribal law promulgated pursuant thereto for terminating a casino manager's employment.  *See, e.g.*, Complaint at ¶¶ 46-49.

10

### d. **The Complaint Necessarily Implicates Federal Common Law**

Plaintiff's claims also necessarily require the resolution of fundamental questions of the federal common law of Indian affairs.  Actions directly involving federal Indian affairs, even if not brought under a specific federal statute or Constitutional provision, can fall within federal jurisdiction as "arising under" federal common law.  *See Nat'l Farmers Union Ins. Cos. v. Crow Indian Tribe*, 471 U.S. 845, 851-52 (1985) (questions regarding the extent of tribal jurisdiction are questions that must be decided by federal law); *Sycuan Band of Mission Indians v. Roache*, 38 F.3d 402, 405 (9th Cir. 1994) (holding that that federal common law, in addition to IGRA, confers federal jurisdiction concerning gaming operations on Indian land).[10]

Here, the Complaint alleges four claims ostensibly pled under California state law, against defendants that are inarguably governmental entities of a federally recognized Indian Tribe and its Chairman, for activities on and relating to the Tribe's reservation-based government gaming project.  Yet the fundamental question of whether state law even applies to tribal entities and officials under these circumstances poses a fundamental question of federal law: "State jurisdiction is pre-empted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority."  *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334 (1983).

The Supreme Court long ago noted that "absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."  *Williams v. Lee*, 358 U.S. 217, 220 (1959).  Federal common law recognizes a "'deeply rooted policy in our Nation's history of leaving Indians free from state jurisdiction and control."  *Oklahoma Tax Comm'n v. Sac and Fox Nation*, 508 U.S. 114, 123 (1993) (internal quotations and citations omitted).  Tribes "long have been distinct political communities, having territorial boundaries, within which their authority is exclusive."  *Id*. (internal quotations and citations omitted).  This "Indian sovereignty doctrine . . . historically

---

[10] *Cf. Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 676 (1974) (questions regarding Indian possessory rights are federal questions).  *See also Illinois v. Milwaukee*, 406 U.S. 91, 100 (1972).

1    gave state law no role to play within a tribe's territorial boundaries . . . ."  *Id*. at 123-24 (internal

2    quotations and citations omitted).  Thus the leading treatise in the field of federal Indian law

3    declares that "[a] state ordinarily may not regulate the property or conduct of tribes or tribal-

4    member Indians in Indian country[,]" and that [b]ecause of plenary federal authority in Indian

5    affairs, there is no room for state regulation."  F. Cohen, *Handbook of Federal Indian Law* at 520

6    (2005 ed.) ("*Cohen*").[11]

7              For our purposes, this common law doctrine presents a necessary and substantial question

8    of federal law, which plaintiff must necessarily litigate if he is to prevail on his employment and

9    contract claims.

10              **2.    The Federal Questions Implicated In The Complaint Are Substantial**

11              Along with Rains, the Order to Show Cause cites *Grable,* 545 U.S. 308 (2005) and

12    *Merrell Dow*, 478 U.S. 804 (1986).  These cases establish that "federal jurisdiction demands not

13    only a contested federal issue, but a substantial one, indicating a serious federal interest in

14    claiming the advantages thought to be inherent in a federal forum."  *Grable*, 545 U.S. at 313.

15              The cases cited in the Order also provide insight into the factors that contribute to a

16    finding that a contested federal issue is "substantial."  In *Grable,* the Court found that there was a

17    national interest in providing a federal forum for litigating the federal question at issue there, *id*.

18    at 310, and that the federal question was sufficiently substantial to support removal jurisdiction

19    because the meaning of a federal statute (26 U.S.C. § 6335) was in dispute.  *Id*. at 315.  And the

20    *Merrell Dow* Court held that when the federal statute that is implicated in a state law claim

21    provides a private federal cause of action, that too mitigates in favor of finding federal

22    jurisdiction – but the lack of a federal private right of action "is evidence relevant to, but not

23    dispositive of, the 'sensitive judgments about congressional intent' § 1331 requires."  *Grable*,

24

25    _____

      [11]  *Cohen* is undisputedly the leading treatise on the subject of federal Indian law, and is routinely
      cited by the United States Supreme Court and the Ninth Circuit in that regard.  *See, e.g., Babbitt*

26    *v. Youpee*, 519 U.S. 234, 237-38 (1997); *Hagen v. Utah*, 510 U.S. 399, 402 (1994); *Sac and Fox
      Nation*, 508 U.S. at 123; *South Dakota v. Bourland*, 508 U.S. 679, 697 (1993); *County of Yakima

27    v. Confederated Tribes and Bands of Yakima Indian Nation*, 502 U.S. 251, 254 (1992); *United
      States v. Male Juvenile*, 280 F.3d 1008, 1013 (9th Cir. 2002); *Bugenig v. Hoopa Valley Tribe*,

28    266 F.3d 1201, 1205 (9th Cir. 2001); *United States v. Enas*, 255 F.3d 662, 667 (9th Cir. 2001);
      *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1143 (9th Cir. 2001).

                                                    12

545 U.S. at 318 (*citing Merrell Dow*, 478 U.S. at 810).  Finally, both cases held that "the importance of having a federal forum of the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts," must also be considered. *Grable,* 545 U.S. at 319 (interpreting and explaining *Merrell Dow*).

Here, as in *Grable*, "it is plain that a controversy respecting the construction and effect of the [federal] laws is involved and is sufficiently real and substantial." *Grable*, 545 U.S. at 316 (*quoting Hopkins v. Walker*, 244 U.S. 486, 490 (1917)).  And, as in *Grable*, plaintiff's claims involve important issues of federal law that belong in federal court.

### a.  The Bankruptcy Code Issues Are Substantial

Plaintiff's Complaint alleges that his termination from employment was "a direct result" of the violation by defendants of 11 U.S.C. § 525.  Complaint at ¶ 49.  *See also id*. at ¶¶ 46-48.  The section of the Bankruptcy Code that plaintiff cites, 11 U.S.C. § 525(b), provides that no "private employer" may terminate or discriminate with respect to employment against "an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act . . . solely because such debtor or bankrupt is or has been a debtor under this title or bankrupt under the Bankruptcy Act . . . ." *Id*.

Plaintiff's claim thus requires that a court determine whether defendants' alleged conduct violated section 525(b) of the Bankruptcy Code – a question which in turn requires that the court reach conclusions about the section's meaning – and that the court determine, in the first instance, whether this section even applies to the defendants.  The issue of whether Indian tribes and Indian tribal entities are "private employers" for purposes of section 525 is an important question of federal law that has not previously been addressed in the Ninth Circuit.[12]  Under *Grable*, the Bankruptcy Code questions implicated in the Complaint are of sufficient importance to merit a finding of federal jurisdiction because, first, the meaning of an important federal

---

[12] *Cf. Krystal Energy Co. v. Navajo Nation*, 357 F.3d 1055-58, 1060 (9th Cir. 2004) (finding that Indian tribes are "governmental units" within the meaning of section 101(27) of the Bankruptcy Code); *In re White*, 139 F.3d 1269, 1270 n.1 (9th Cir. 1998) ("express[ing] no view on whether an Indian tribe is a 'governmental unit' for purposes of [Code section] 106(a) or (b)"); *In re Greene*, 980 F.2d 590, 597 (9th Cir. 1992) ("assum[ing], without deciding, that Indian tribes are 'governmental units' for purposes of [section] 106").

1    statute is at issue, and second because there is a strong federal interest in ensuring that questions

2    of federal Indian law be resolved in federal forums.  *See infra* Part II.C.2.c.

3          Furthermore, the *Merrell Dow* factor – the existence of a private right of action – is also

4    present here because a debtor can go to federal court to enforce an alleged violation of 11 U.S.C.

5    § 525.  *See, e.g.*, *In re Bradley*, 989 F.2d 802 (5th Cir. 1993).  Under *Merrell Dow* this factor

6    supports a finding that the federal questions implicated in the Complaint are substantial because

7    it indicates that Congress intended questions about section 525 to be litigated in federal court.

8    *See Grable*, 545 U.S. at 318 (*citing Merrell Dow*, 478 U.S. at 810).

9          Finally, unlike in *Merrell Dow*, where it appeared that allowing for federal court

10   jurisdiction would have opened the floodgates to "a horde of original filings and removal cases

11   raising other state claims with embedded federal issues," *Grable,* 545 U.S. at 318 (discussing

12   *Merrell Dow*), no such concern exists here.  The number of employment cases brought by tribal

13   casino management officials raising substantial federal questions under the Bankruptcy Code

14   will necessarily be small.  And under the approach articulated in *Empire Healthchoice*

15   *Assurance, Inc. v. McVeigh,* 547 U.S. 677, 700 (2006), some of the bankruptcy questions that

16   arise here are pure questions of law whose resolution "would be controlling in numerous other

17   cases" where applicability of § 525 to tribal employers is at issue and thus are more likely to

18   qualify as substantial federal cases.  Accordingly, removal is appropriate because the Complaint

19   arises under the Bankruptcy Code.

20                       **b.  <u>The Exchange Act Issues Are Substantial</u>**

21         There is a strong national interest in having the Exchange Act questions implicated in the

22   Complaint litigated in federal court.  The Exchange Act plays an important role in the national

23   financial markets because it regulates almost every aspect of the secondary market for securities,

24   including securities exchanges, securities issuers, broker-dealers, and self-regulatory

25   organizations.  The exchange rules cited in the Complaint—Rules 13a-15(e) and 15d-15(e)—

26   were promulgated in 2003 in response to the corporate scandals that occurred during the early

27

28

1    part of this decade.[13]  The Complaint, which implicates these rules and requires the court to

2    interpret them and their application to defendants and their actions, raises a substantial federal

3    question because the rules play an important part in the federal government's plan for improving

4    corporate governance and corporate disclosure.  Thus the federal courts have an important

5    interest in speaking on those SEC rules, which are new and virtually uninterpreted.

6         Furthermore, the federal Exchange Act questions at issue in this case are comparable to

7    those at issue in *Grable* in that they require the court to analyze and interpret federal law.

8    Federal interest in this case is sufficient to sustain removal of the action to this Court because, as

9    in *D'Alessio v. New York Stock Exchange,* 258 F.3d 93, 101 (2d Cir. 2001), the "gravamen" of

10   plaintiff's claims requires a finding that federal securities laws have been violated by defendants'

11   alleged failure to perform statutory duties created under federal law.  Because a determination

12   about the propriety of defendants' actions under federal law is at the heart of plaintiff's claim, the

13   case properly belongs in federal court.  *See also Lippitt,* 340 F. 3d at 1045 (*citing D'Alessio,* 258

14   F.3d at 101).

15        While the Exchange rules cited in the Complaint do not give rise to a private federal

16   cause of action, *Grable* held that the absence thereof is only evidence related to, but is not

17   dispositive of, the question of whether the federal law issue warrants removal jurisdiction.

18   Indeed, in *Grable* itself the Supreme Court found that despite the lack of a private cause of action

19   the national interest in providing a federal forum for the federal questions at issue there "was

20   sufficiently substantial to support the exercise of federal question jurisdiction over the disputed

21   issue on removal." *Id.* at 310.  The same is true here.  The national interest in providing a federal

22   forum for the adjudication of alleged violations of the Exchange Act and its rules supports the

23   exercise of federal question jurisdiction.

24        That the Exchange Act issues implicated in the Complaint are substantial is further

25   established by the fact that federal courts have exclusive jurisdiction over them.  A claim is

26

27   ---

     [13] The Securities and Exchange Commission amended Rules 13a-15(e) and 15d-15(e) pursuant to
     the Sarbanes-Oxley Act of 2002, which Congress enacted "[f]ollowing the bankruptcies of Enron
28   Corporation and Global Crossing LLC, and restatements of earnings by several prominent market
     participants . . . "  H.R. Rep. No. 107-414 (2002).

15

1    "necessarily federal," and its removal is proper, "'when it falls within the express terms of a

2    statute granting federal courts exclusive jurisdiction over the subject matter of the claim.'"

3    *California ex rel. Lockyer v. Mirant Corp.*, No. C-02-2207-VRW, 2002 WL 1897669, 2002 U.S.

4    Dist. Lexis 15733, slip op. at *4 (N.D. Cal. Aug. 6, 2002), *aff'd sub nom.*, *California ex rel.*

5    *Lockyer v. Dynergy, Inc.*, 375 F.3d 831 (9th Cir. 2004).[14]  *See also Lockyer*, 375 F.3d at 839-41

6    (upholding removal where plaintiff's state law was predicated on a violation of a federal tariff

7    adopted under the Federal Power Act, providing exclusive federal  jurisdiction of violations of

8    the Act and rules, regulations, and orders promulgated thereunder); *Sparta*, 159 F.3d at 1211-12

9    (holding removal of plaintiff's state claims proper where plaintiff sought relief based in part on a

10   violation of rules adopted pursuant to the Securities Exchange Act, which vests exclusive federal

11   jurisdiction over claims concerning violations of the Act and exchange rules)..

12        Removal was proper here because Section 27 of the Exchange Act provides that "[t]he

13   district courts of the United States . . . shall have exclusive jurisdiction of violations of this

14   chapter or the rules and regulations thereunder . . . ."  15 U.S.C. § 78aa.  Determining whether

15   the defendants' alleged conduct violated the Exchange Act is thus within the exclusive

16   jurisdiction of the federal courts.[15]  Accordingly, plaintiff's claim is necessarily federal and

17   substantial because it falls within the express terms of Section 27.  *See Sparta*, 159 F.3d at 1211-

18   12.  *See also Herman v. Salomon Smith Barney, Inc.*, 266 F. Supp. 2d 1208, 1213 (S.D. Cal.

19   2003) (plaintiff's state law claim turned on whether an exchange rule had been violated and that

20   removal was therefore proper because of Section 27's exclusive jurisdiction provision).  As in

21   *Sparta* and *Herman*, plaintiff's state law claim expressly alleges and turns on the existence of a

22   violation of rules promulgated under the Exchange Act[16] and is therefore removable.

23

24   [14] *See also id.* ("[I]n determining whether a claim is necessarily federal, courts focus on whether
     the federal issue falls within the statutory grant of exclusive jurisdiction.").

25
26   [15] Plaintiff alleges violations of Rule 13a-15(e) and 15d-15(e) and the Exchange Act, Complaint
     at ¶¶ 21 and 50, and that  "reclassification of expenses" occurred without proper approval or
     appropriate disclosure (presumably under the exchange rules).  Complaint at ¶ 27.

27
28   [16] *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003) is
     distinguishable.  *Lippitt* was an action under California law against brokerage firms for their
     sales and marketing practices.  Although the Ninth Circuit found removal improper because the

16

The exercise of federal jurisdiction over the Exchange Act issues that are implicated in the Complaint "would not distort any division of labor between the state and federal courts provided or assumed by Congress" because Congress expressly anticipated and safeguarded the exercise of federal jurisdiction over such issues. *Grable*, 545 U.S. at 310; 15 U.S.C. § 78aa.

### c. The Issues Raised Under The Compact, IGRA, And Federal Indian Common Law Are Substantial

Federal Indian law issues – including, for example, questions about the applicability of state civil law to tribal entities and officials, tribes' status as private or governmental employers, and the preemptive force of IGRA and the Compact – are substantial federal questions that belong in federal court.

The federal government's unique relationship with Indian affairs has its roots in the Constitution. Under the Articles of Confederation, James Madison observed, the states " entered into treaties and wars with" Indian tribes. *Cohen* at 25 (*citing* R. Clinton, *The Dormant Indian Commerce Clause*, 27 Conn. L. Rev. 1055, 1149 (1995)). Madison's proposal to centralize authority over Indian affairs in the federal government was "ultimately incorporated into article I, section 8 of the Constitution, which reserved to Congress the power to 'regulate commerce with foreign nations, among the several states, and with the Indian tribes.'" *Id*. (*quoting* U.S. Const., Art. I, § 8). This history contributed "to the understanding of the Indian commerce clause as a broad grant of power to the federal government and a limit on state power to interfere with federal Indian policy." *Id*. The Indian Commerce Clause, together with the Treaty Clause and inherent federal power, have led the Supreme Court to recognize that "the Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as plenary and exclusive." *United States v. Lara*, 541 U.S. 193, 200 (2004) (*citing Washington v. Confederated Bands and Tribes of Yakima Nation*, 439 U.S. 463,

plaintiff's state false advertising claim did not require the court to determine whether defendants violated the Exchange Act or an exchange rule, the court observed that "[t]o be sure, if [plaintiff] were asserting a violation of an [exchange] rule, then . . . this would be a matter of exclusive federal jurisdiction, and therefore removal would be proper." *Id*. Unlike *Sparta*, *Herman*, and the instant case, the *Lippitt* complaint did not allege that defendants violated the Exchange Act or related rules or regulations. *See Lippitt v. Raymond James Fin. Servs., Inc.*, No. 01-CV-748-VRW, 2001 WL 35827034, [Lexis cite unavailable], slip op. at *3 (N.D. Cal. Aug. 15, 2001).

1  470-471 (1979); *Negonsott v. Samuels*, 507 U.S. 99, 103 (1993); *United States v. Wheeler*, 435

2  U.S. 313, 323 (1978)) (internal quotations omitted).

3      As *Cohen* notes, "Native American legislative policy and historic case law draw from

4  more than five centuries of varied elements of" law, including "constitutional principles [and]

5  federal jurisdiction . . . ." *Cohen* at 8. The centuries-old relationship between the United States

6  and Indian Tribes "is founded upon historic government-to-government dealing and a long held

7  recognition of Indians' special legal status." *Id.* The United States' unique government-to-

8  government relationship with Indian Tribes is well established. *See, e.g., Lara*, 541 U.S. at 202

9  ("Congress . . . seeks greater tribal autonomy within the framework of a 'government-to-

10  government relationship' with federal agencies); *Arizona Health Care Cost Containment System*

11  *v. McClellan*, 508 F.3d 1243, 1245 (9th Cir. 2007) ("As part of its unique government-to-

12  government relationship with American Indian Tribes . . . the federal government provides health

13  care services to roughly 1.9 million American Indian and Alaska Native people") (*citing* 25

14  U.S.C. § 1601; *Lincoln v. Vigil*, 508 U.S. 182, 185 (1993)).

15      Indeed, Congress has expressly recognized the United States' government-to-government

16  relationship with Tribes, having found and declared that:

17      (1) there is a government-to-government relationship between the United States and each
    Indian tribe; (2) the United States has a trust responsibility to each tribal government that

18      includes the protection of the sovereignty of each tribal government; (3) Congress,
    through statutes, treaties, and the exercise of administrative authorities, has recognized

19      the . . . inherent sovereignty of Indian tribes . . . .

20  25 U.S.C. § 3601.

21      In addition to the United State's intergovernmental relationship with Tribes, a second

22  cornerstone of federal Indian law is that "[t]he federal government has substantial trust

23  responsibilities toward Native Americans. This is undeniable. Such duties are grounded in the

24  very nature of the government-Indian relationship." *Cobell v. Norton*, 240 F.3d 1081, 1086

25  (D.C. Cir. 2001). Indeed, "[t]he United States has 'charged itself with moral obligations of the

26  highest responsibility and trust,' and its management of Native American affairs must be 'judged

27  by the most exacting fiduciary standard.'" *Banner v. United States*, 238 F.3d 1348, 1352 (Fed.

28  Cir. 2001) (*quoting Seminole Nation v. United States*, 316 U.S. 286, 296-97 (1942)).

18

In light of the United States' centuries-old unique government-to-government relationship with Indian tribes, its plenary authority to regulate Indian affairs, and its trust and fiduciary relationship with tribes, it is apparent that the federal government has a "clear interest" in having cases requiring adjudication of questions of federal Indian law, such as this case, heard in federal court. *Grable*, 545 U.S. at 319.

Moreover, the questions raised here related to the Compact and IGRA, including the Tribe's regulatory authority over key management employees at its casino, are also important to the other 60-plus Indian tribes that signed compacts with the same terms as Dry Creek Rancheria. Any interpretation rendered in this case, while not necessarily binding on them, would impact their compacts.

III.    **CONCLUSION**

For the reasons stated above, defendants respectfully request that the Court retain jurisdiction over this case.

Dated: April 29, 2008                    HOLLAND & KNIGHT LLP

By: _____/s/_____
                              William Wood

Attorneys for Specially Appearing Defendants,
RIVER ROCK ENTERTAINMENT AUTHORITY
RIVER ROCK CASINO
HARVEY HOPKINS

# 5284794_v14