HOLLAND & KNIGHT LLP
Frank R. Lawrence (State Bar. No. 147531)
Zehava Zevit (State Bar No. 230600)
William Wood (State Bar No. 248327)
633 West Fifth Street, 21st Floor
Los Angeles, California 90071-2040
Telephone: (213) 896-2400
Facsimile: (213) 896-2450
frank.lawrence@hklaw.com
zehava.zevit@hklaw.com
william.wood@hklaw.com

Attorneys for Specially-Appearing Defendants
RIVER ROCK ENTERTAINMENT AUTHORITY
RIVER ROCK CASINO
HARVEY HOPKINS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| NORMAN RUNYAN, | CASE NO. 3:08-CV-01924-VRW |
| Plaintiff, | Date: Aug. 14, 2008<br>Time: 2:30 pm |
| vs. | Judge: Hon. Vaughn R. Walker |
| RIVER ROCK ENTERTAINMENT AUTHORITY et al., | DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS |
| Defendants | |

//
//
//
//
//
//

SPECIALLY-APPEARING DEFENDANTS' REPLY TO OPPOSITION TO MOTION TO DISMISS                       Case No. 3:08-CV-01924-VRW

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................1

    A. Sovereign Immunity Bars Subject Matter Jurisdiction And Plaintiff's Request To Conduct Discovery In Connection Therewith Should Be Denied ..........................................................................................................................1

    B. Sovereign Immunity Bars Personal Jurisdiction......................................................3

        1. The Fact That Defendants Removed This Case To Federal Court Is Irrelevant For Purposes Of Determining Whether This Court Has Personal Jurisdiction Over Defendants......................................................3

        2. The Forum Selection Clause In Plaintiff's Employment Agreement Is Irrelevant For Purposes Of Determining Whether This Court Has Personal Jurisdiction ................................................................................4

    C. This Case Should Be Dismissed Because Defendants Are Immune From This Action And, In Light of This Immunity, The Court Lacks Jurisdiction..........4

        1. Plaintiff Concedes That The Compact Does Not Waive Defendants' Immunity..................................................................................5

        2. The Employment Agreement Does Not Waive The Tribe's Immunity From This Lawsuit In This Court................................................5

        3. The Severance Agreement Does Not Waive The Tribe's Immunity From This Lawsuit ..................................................................9

        4. Plaintiff Concedes That The Tribe's Immunity Was Not Waived Pursuant To The Tribe's Tort Claims Procedures .....................................10

    D. Plaintiff's New Request For A Determination Of The Enforceability Of The Arbitration Provision Should Be Denied.........................................................10

    E. This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(3) For Improper Venue .......................................................................................................11

    F. This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b) For Failure To Exhaust Tribal Remedies..................................................................................12

    G. Plaintiff's Third And Fourth Causes Of Action Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6).................................................................................13

        1. The Opposition Fails To Assert Any Basis For Defendant Hopkins' Individual Liability ...................................................................13

        2. The Opposition Fails to Assert Any Grounds To Support The "Intentional Infliction" Claim .................................................................14

III. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*American Fire & Casualty Co. v. Finn,*
  341 U.S. 6 (1951) .................................................................................................................. 4

*Billingsly v. Comm'r Internal Revenue Serv.,*
  868 F.2d 1081 (9th Cir. 1989) ............................................................................................... 4

*Blinco v. Green Tree Servicing, LLC,*
  366 F.3d 1249 (11th Cir. 2004) ............................................................................................. 3

*Bryan v. Itasa County,*
  426 U.S. 373 (1976) .............................................................................................................. 9

*Burlington N. & Santa Fe Ry. Co. v. Vaughn,*
  509 F.3d 1085 (9th Cir. 2007) ............................................................................................... 3

*Burlington Northern R.R. Co. v. Crow Tribal Council,*
  940 F.2d 1239 (9th Cir. 1991) ............................................................................................. 12

*C&L Enterprises v. Potawatomi Indian Tribe,*
  532 U.S. 411 (2001) ..................................................................................................... 5, 6, 7, 8

*Data Disc., Inc. v. Sys Tech. Assocs., Inc.,*
  557 F.2d 1280 (9th Cir. 1997) ............................................................................................... 1

*Donovan v. Coeur D'Alene Tribal Farm,*
  751 F.2d 1113 (9th Cir. 1985) ............................................................................................... 7

*Elliott v. Perez,*
  751 F.2d 1472 (5th Cir.1985) ................................................................................................ 3

*Florida Paraplegic Ass'n v. Miccosukee Tribe,*
  166 F.3d 1126 (11th Cir. 1999) ............................................................................................. 2

*Hardin v. White Mountain Apache Tribe,*
  779 F.2d 476 (9th Cir. 1985) ................................................................................................. 2

*Imperial Granite Co. v. Pala Band of Mission Indians,*
  940 F.3d 1269 (9th Cir. 1991) ............................................................................................... 2

*Iowa Mut. Ins. Co. v. LaPlante,*
  480 U.S. 9 (1987) ................................................................................................................ 12

*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.,*
  523 U.S. 751 (1998) .............................................................................................................. 6

*Laub v. U.S. Dept. of Interior,*
  342 F.3d 1080 (9th Cir. 2003) ............................................................................................... 3

*Linneen v. Gila River Indian Community*,
  276 F.3d 489 (9th Cir. 2002) .................................................................................... 2

*Martin v. Dist. of Columbia Metro. Police Dep't*,
  812 F.2d 1425 (D.C. Cir. 1987) ............................................................................... 3

*Marx v. Gumbinner*,
  855 F.2d 783 (11th Cir. 1988) ................................................................................. 3

*Maynard v. Narragansett Indian Tribe*,
  984 F.2d 14 (1st Cir. 1993) ...................................................................................... 4

*McCarty v. United States*,
  850 F.2d 558 (9th Cir. 1988) ................................................................................... 1

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ................................................................................................. 3

*National Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
  471 U.S. 845 (1985) ............................................................................................... 12

*Roberts v. Corrothers*,
  812 F.2d 1173 (9th Cir. 1987) ................................................................................. 2

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978) ................................................................................................... 7

*St. Clair v. City of Chico*,
  880 F.2d 199 (9th Cir. 1989) ................................................................................... 1

*State of Okl. ex rel. Oklahoma Tax Com'n v. Graham*,
  822 F.2d 951 (10th Cir. 1987) ................................................................................. 4

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
  873 F.2d 1221 (9th Cir. 1989) ............................................................................... 12

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
  687 F.Supp. 832 (S.D.N.Y.1988) .......................................................................... 10

*United States v. Moats*,
  961 F.2d 1198 (5th Cir. 1992) ................................................................................. 3

**California Cases**

*Big Valley Band of Pomo Indians v. Superior Court*,
  133 Cal.App.4th 1185 (1st Dist. 2005) ............................................................... 8, 9

*Ginns v. Savage*,
  61 Cal.2d 520 (1964) ............................................................................................... 9

*Hartwell Corp. v. Superior Court*,
  27 Cal.4th 256 (2002) .............................................................................................. 9

Case 3:08-cv-01924-VRW   Document 17   Filed 07/31/2008   Page 5 of 20
</a>

<a
*Lamere v. Superior Court*,
  131 Cal.App.4th 1059 (2005) .................................................................................... 9

*Lawrence v. Barona Valley Ranch Resort and Casino*,
  153 Cal.App.4th 1364 (4th Dist. 2007) ...................................................................... 9

*Long v. Chemehuevi Indian Reservation*,
  115 Cal.App.3d 853 (1981) ....................................................................................... 9

*Redding Rancheria v. Superior Court*,
  88 Cal.App.4th 384 (2001) ........................................................................................ 9

*Shoemaker v. Myers*,
  52 Cal.3d 1 (1990) ................................................................................................... 14

*Smith v. Hopland Band of Pomo Indians*,
  95 Cal.App.4th 1 (1st Dist. 2002) ........................................................................... 8, 9

*Trudgeon v. Fantasy Springs Casino*,
  71 Cal.App.4th 632 (1999) ........................................................................................ 9

*Woods v. Fox Broadcasting Sub., Inc.*,
  129 Cal. App. 4th 344 (2005) .................................................................................. 13


**Federal Authorities**

Fed. R. Civ. P. 12(b) ........................................................................................................ 12

Fed. R. Civ. P. 12(b)(3) ................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 13


**California Statutes**

Code of Civil Procedure § 1293 ........................................................................................ 7
</a>

<a

SPECIALLY-APPEARING DEFENDANTS' REPLY                              Case No. 3:08-CV-01924-VRW
TO OPPOSITION TO MOTION TO DISMISS
</a>

## I.   INTRODUCTION

Recognizing that absent a waiver of Defendants' sovereign immunity this lawsuit cannot proceed, Plaintiff attempts to find alternative ways of grounding this Court's jurisdiction. His attempts fail. While removal was proper, sovereign immunity bars this action. Plaintiff's efforts at finding implied waivers where none exist are unsupportable. Equally unsupportable is Plaintiff's attempt to reinvent this lawsuit by requesting that the Court remand the case and instruct the State court to determine whether an arbitration clause in his Employment Agreement is enforceable. As argued in the Defendants' motion, this case should be dismissed for lack of jurisdiction, failure to exhaust Tribal remedies, and improper venue, and the third and fourth causes of action should also be dismissed for failure to state a claim.

## II.   ARGUMENT

### A.   Sovereign Immunity Bars Subject Matter Jurisdiction And Plaintiff's Request To Conduct Discovery In Connection Therewith Should Be Denied

Plaintiff attempts to cast the motion to dismiss as one requiring a determination about "extrinsic evidence" and "contested facts" in an attempt to circumvent Defendants' sovereign immunity and secure an opportunity to conduct discovery. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opp'n") at 5:2, 5:5. But the limited jurisdictional facts at issue, all of which this Court is permitted to consider in resolving this motion,[1] are not contested. No one contests the existence of an Employment Agreement, a Severance Agreement, a Tribal-State Compact between the Tribe and the State of California, and the Tribe's status as a sovereign federally-recognized Indian Tribe. These are the only major facts relevant to resolving Defendants' motion. And none of the claims' essential elements are at issue, as Plaintiff implies they might be, Opp'n at 5:6-7, because resolving Defendants' motion does not require inquiry into Plaintiff's

---

[1] In resolving motions under Rules 12(b)(1) and 12(b)(2) a court is not restricted to allegations in the complaint and may consider materials outside the pleadings, such as affidavits. *Data Disc., Inc. v. Sys Tech. Assocs., Inc.,* 557 F.2d 1280, 1289 (9th Cir. 1997); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989); *McCarty v. United States,* 850 F.2d 558, 560 (9th Cir. 1988). Defendants attached affidavits to their motion and referenced documents that were presented as exhibits to the affidavits. Thus, the Court may consider all materials currently in the record in resolving Defendants' motion. Note also that the Opposition references the same documents that Defendants do and accordingly Plaintiff cannot argue that the Court should not consider these documents.

1

SPECIALLY-APPEARING DEFENDANTS' REPLY                                    Case No. 3:08-CV-01924-VRW
TO OPPOSITION TO MOTION TO DISMISS

substantive claims.[2] Thus, no justification exists for the discovery that Plaintiff requests. Opp'n at 5:16-19.

Plaintiff notes that dismissals are rare when federal question jurisdiction is challenged. Opp'n at 5:9-10. But Plaintiff's observation, and the case law he cites, are irrelevant because the absence of jurisdiction here is not due to a lack of federal questions. On the contrary, Defendants asserted in their response to the Court's Order to Show Cause, and continue to assert here, that the issues currently under review are federal questions. Defts' Resp. to OSC §§ B and C. Jurisdiction is not absent here because of a lack of a federal question. Rather, the Court lacks jurisdiction because Defendants are Tribal Governmental entities and officers that are sovereign and immune from suit.

A court can have subject matter jurisdiction over a claim based in federal law (i.e., "federal question jurisdiction," *cf.* Opp'n at 5:9) without having jurisdiction to hear the case because of sovereign immunity. "Whether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Florida Paraplegic Ass'n v. Miccosukee Tribe,* 166 F.3d 1126, 1130 (11th Cir. 1999) (holding ADA applied to Tribe's casino and restaurant but that private action against casino and restaurant was nonetheless barred because of sovereign immunity). In fact, lawsuits are routinely dismissed due to lack of jurisdiction when Tribal governments are sued. *See, e.g., Linneen v. Gila River Indian Community*, 276 F.3d 489, 491 (9th Cir. 2002); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.3d 1269, 1271 (9th Cir. 1991); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 479-80 (9th Cir. 1985). As in other cases of dismissal based on sovereign immunity, here too the lawsuit should be dismissed.

Furthermore, the Court should deny Plaintiff's request because sovereign immunity is a bar to all burdens of litigation, including discovery. "The defense of sovereign or qualified immunity protects government officials not only from having to stand trial, but from having to

---

[2] The Opposition cites *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987), Opp'n at 5:5-6. That case demonstrates that a claim's essential elements are only at issue when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Id.* (citations omitted). In this case resolving the motion does not require that the Court resolve disputed factual issues going to the merits, so no discovery is required.

2

Case 3:08-cv-01924-VRW   Document 17   Filed 07/31/2008   Page 8 of 20

bear the burdens attendant to litigation, including pretrial discovery." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004) (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). *See also Burlington N. & Santa Fe Ry. Co. v. Vaughn,* 509 F.3d 1085, 1090 (9th Cir. 2007) (tribal sovereign immunity bars court process); *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992) ("[S]overeign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself."); *Marx v. Gumbinner*, 855 F.2d 783, 788 (11th Cir. 1988) (official immunity protects government officials from having to bear the burdens attendant to litigation, including pretrial discovery); *Martin v. Dist. of Columbia Metro. Police Dep't*, 812 F.2d 1425, 1430 (D.C. Cir. 1987) ("Discovery is itself one of the burdens from which defendants are sheltered by the immunity doctrine."); *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir.1985) ("[S]ubjecting officials to … discovery … undercuts the protection from government disruption which official immunity is supposed to afford."). Where, as here, the facts required to determine whether jurisdiction exists are known,[3] and where sovereign immunity exists, the Court should not permit discovery.

**B.   Sovereign Immunity Bars Personal Jurisdiction**

**1.   The Fact That Defendants Removed This Case To Federal Court Is Irrelevant For Purposes Of Determining Whether This Court Has Personal Jurisdiction Over Defendants**

The Opposition makes much of the fact that Defendants removed this case to federal court, as if the fact of removal somehow constitutes a concession that this Court has personal jurisdiction over Defendants. But removal on the basis of federal question jurisdiction – which is what Defendants did here – does not constitute an admission that personal jurisdiction exists. As explained at Section II-A *supra*, there is a difference between a court's federal question jurisdiction and the separate and distinct question of whether tribal sovereign immunity bars a lawsuit. Thus, courts have consistently permitted an Indian tribe that removed an action to

---

[3] Plaintiff cites *Laub v. U.S. Dept. of Interior,* 342 F.3d 1080, 1093 (9th Cir. 2003) for the proposition that discovery should be granted if it is requested. Opp'n at 5:19-20. But *Laub* holds no such thing. It holds that "a refusal to grant discovery to establish jurisdiction is not an abuse of discretion when 'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'" *Id.* at 1093 (citations omitted). Here the relevant facts are fully before the Court. Discovery is not required and, in light of sovereign immunity, is not permitted.

3

SPECIALLY-APPEARING DEFENDANTS' REPLY   Case No. 3:08-CV-01924-VRW
TO OPPOSITION TO MOTION TO DISMISS

federal court to subsequently seek dismissal of the action on the basis of sovereign immunity and a lack of jurisdiction.  *See, e.g., Maynard v. Narragansett Indian Tribe*, 984 F.2d 14 (1st Cir. 1993); *State of Okl. ex rel. Oklahoma Tax Com'n v. Graham,* 822 F.2d 951 (10th Cir. 1987).  And of course, federal courts always have jurisdiction to determine their own lack of jurisdiction.  *See Billingsly v. Comm'r Internal Revenue Serv.*, 868 F.2d 1081 (9th Cir. 1989).  Plaintiff tries to distinguish *Billingsley* on the basis that it involved a tax court, Opp'n at 6:6-8, but that fact is irrelevant to the general principle established (that a defendant who removes to federal court may subsequently seek dismissal for lack of jurisdiction), which applies with equal force here.[4]

### 2. The Forum Selection Clause In Plaintiff's Employment Agreement Is Irrelevant For Purposes Of Determining Whether This Court Has Personal Jurisdiction

While it may be true that, as Plaintiff claims, "[a] forum-selection clause in a written contract may be prima facie evidence that personal jurisdiction is proper[,]" Opp'n at 6:25-7:1, there is no written contract here with a clause selecting this forum.  Plaintiff has not pointed to any forum selection clause – in any agreement – that grants this Court jurisdiction over this lawsuit.  Thus, Plaintiff's rhetoric about forum selection clauses and their relationship to personal jurisdiction is irrelevant.

As argued in Defendants' motion and below, Defendants are immune from this lawsuit and the Court lacks personal jurisdiction over them.  Plaintiff fails to show otherwise.

### C. This Case Should Be Dismissed Because Defendants Are Immune From This Action And, In Light of This Immunity, The Court Lacks Jurisdiction

Plaintiff does not deny, and thereby concedes, that absent an effective waiver of sovereign immunity by the Dry Creek Rancheria Band of Pomo Indians ("Tribe") this Court may not exercise jurisdiction over the specially appearing Tribal Governmental Defendants.  Instead, the Opposition makes a number of erroneous arguments as Plaintiff casts about for some way to overcome Defendants' immunity from this lawsuit.

---

[4] Plaintiff also fruitlessly cites a paragraph from *American Fire & Casualty Co. v. Finn,* 341 U.S. 6 (1951), Opp'n at 12-17, but that paragraph has nothing to do with whether a court to which a case has been removed pursuant to federal question jurisdiction may dismiss the case because of a defendant's sovereign immunity.

4

### 1. Plaintiff Concedes That The Compact Does Not Waive Defendants' Immunity

The Tribal-State Compact between the Tribe and the State of California does not waive Defendants' immunity from this lawsuit. Motion to Dismiss (hereinafter "Mot. Dis.") at 8:15-12:3. While the Complaint alleges that the Compact does waive such immunity, Complaint at ¶ 12, Plaintiff has abandoned this argument in his Opposition and, in so doing, apparently concedes that the Compact does not waive Defendants' immunity. Instead, Plaintiff now attempts, but fails, to ground this Court's jurisdiction elsewhere.

### 2. The Employment Agreement Does Not Waive The Tribe's Immunity From This Lawsuit In This Court

Citing the Supreme Court's decision in *C&L Enterprises v. Potawatomi Indian Tribe,* 532 U.S. 411 (2001), Plaintiff asserts that the arbitration provision in his employment agreement somehow waived the Tribe's immunity from *this lawsuit* in federal (or any other) court. Plaintiff is wrong for two reasons. First, *C&L* does not apply to Plaintiff's agreement because the contract at issue here, unlike the one at issue in *C&L*, is a governmental contract for on-reservation governmental services, and as such is subject to stricter interpretive principles than the principles espoused in *C&L*. Second, even if *C&L* were applicable to Plaintiff's employment agreement, *C&L* does not support the notion that the Tribe waived its immunity from this lawsuit.

The arbitration clause in Plaintiff's employment agreement only waives the Tribe's immunity, if at all, from *arbitration* (in a non-judicial forum). The clause entitles Plaintiff to arbitrate against the Tribe under the Uniform Arbitration Act. It certainly does not expressly and unequivocally waive the Tribe's immunity from *this* tort and contract lawsuit. Plaintiff did not seek arbitration, and this lawsuit is not a suit to enforce an arbitration award. Accordingly, the arbitration clause on which Plaintiff hangs his case is of no help to him. The Tribe has not waived its immunity from this lawsuit and the suit should be dismissed.

In *C&L*, an Indian tribe contracted for the installation of a roof on a building off of the tribe's reservation. Before C&L commenced performance, the Tribe decided to change the roofing material, solicited new bids, and retained another contractor. C&L claimed the tribe

5

1  breached the contract and demanded arbitration. The tribe declined to participate in the
2  arbitration and the arbitrator rendered an award for damages to C&L. C&L then sued in state
3  court to enforce this arbitration award. The Tribe asserted that it was immune from the suit to
4  enforce the arbitration award, and thus arose the question of whether the Tribe, by signing a
5  contract for off-reservation services that included an arbitration clause and a clause providing
6  that the contract was governed by state law that gave that state's courts jurisdiction to enforce
7  arbitration awards, had waived its immunity from a lawsuit in state court seeking enforcement of
8  such an award.

9  The Supreme Court in *C&L* emphasized that the contract at issue there was a contract for
10  services rendered "not on the Tribe's reservation or on land held by the Federal Government in
11  trust for the Tribe." *Id.* at 415. *See also id.* at 418 ("[T]his case arises out of the breach of a
12  commercial, off-reservation contract by a federally recognized Indian Tribe."). This fact was
13  important because *C&L* was decided in the wake of another case, *Kiowa Tribe of Okla. v.*
14  *Manufacturing Technologies, Inc.,* 523 U.S. 751 (1998), which held that tribal sovereign
15  immunity extends to lawsuits about contracts for off-reservation commercial undertakings. The
16  *C&L* Court, also faced with a contract stemming from an Indian tribe's off-reservation
17  commercial activity, needed to interpret the contract in order to determine if its language
18  constituted a waiver of the immunity that *Kiowa* suggested applied to such contracts. *C&L* thus
19  stands for the proposition that when <u>off reservation commercial contracts</u> are at issue, arbitration
20  clauses containing the language that C&L's contract contained waive a tribe's immunity from
21  suits to enforce arbitration awards once those awards have been granted by an arbitrator.

22  But the employment agreement that is at issue here is a very different type of contract
23  than the one in *C&L*. Here, Plaintiff was hired by the Tribal government to assist it in running
24  its on-reservation governmental operations. *See* Employment Agreement §§ 1 and 2. The
25  Casino is a wholly owned and operated Tribal governmental economic development project,
26  Declaration of Harvey Hopkins at ¶ 7, and its COO is an officer of a Tribal governmental entity.
27  Plaintiff's employment agreement thus directly implicates matters of tribal governance.
28  In interpreting C&L's arbitration clause the *C&L* court applied principles of interpretation

6

1 that enabled it to find a waiver of immunity where no such waiver had explicitly been granted
2 because the contract at issue there involved off-reservation commercial activities. But these
3 principles do not apply when, as here, matters of on-reservation tribal governance are at stake.
4 Courts consistently exert caution when asked to interfere with tribal government and consistently
5 apply restrictive interpretive principles that safeguard tribal governments from judicial
6 interference. *See, e.g., Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58-59 (1978) (refusing to
7 read the Indian Civil Rights Act as including a waiver of immunity that would allow interference
8 with tribal governmental decisions about tribal membership); *Donovan v. Coeur D'Alene Tribal*
9 *Farm,* 751 F.2d 1113 (9th Cir. 1985) (recognizing that when purely intramural matters of tribal
10 governance are at issue, traditional rules do not apply.)[5] Thus whereas the *C&L* Court could
11 read the contractual provisions at issue there as providing an explicit waiver of immunity in light
12 of the type of contract that was at issue, the same is not possible here. When, as here, a contract
13 touches upon tribal governance, a court should not find a waiver of immunity to exist unless the
14 Tribe issues an express and unequivocal waiver. *See Id.* Plaintiff has not pointed to any express
15 or unequivocal waiver here, and *C&L* is of no avail to him.

16       Furthermore, even if *C&L* were to apply to the type of contract at issue here, it would not
17 lead to the conclusion for which Plaintiff hopes. The *C&L* Court held that the arbitration clause
18 in C&L's contract constituted a waiver of the Potawatomi Tribe's immunity only from actions to
19 *enforce* an arbitration award *after* the award had been issued by an arbitrator (which, of course, is
20 a prerequisite to its being enforced). Under *C&L,* a tribe that enters into a contract containing a
21 provision consenting to arbitration under a state Uniform Arbitration Act and a provision stating
22 that the contract will be governed by the laws of a state that allow that state's courts to enforce
23 awards rendered pursuant to that Act agrees to grant state courts jurisdiction to enforce an
24 arbitration award *after* such an award has been granted. Thus, for example, in California the
25 Code of Civil Procedure § 1293 provides:

---

[5] *Santa Clara Pueblo* and *Donovan* dealt with statutory interpretation, which is a different issue from that discussed here, but the principle established in that case – that traditional rules of interpretation do not apply when matters of tribal governance are involved – applies equally in the context of contractual interpretation.

7

> The making of an agreement in this State providing for arbitration to be had within this State shall be deemed a consent of the parties thereto to the jurisdiction of the courts of this State to <u>enforce such agreement</u> by the making of any orders provided for in this title and by entering of judgment on an award under the agreement.

(emphasis added). Under *C&L,* a tribe that agrees to apply § 1293 to a contract for off-reservation commercial activity might be deemed to have waived its sovereign immunity with respect to <u>enforcement actions</u> covered by that section following properly conducted arbitration.

But the action at issue here is not an enforcement action. Unlike the Tribe in *C&L,* the Plaintiff here has never asked Defendants to enter into arbitration and no arbitration award has been issued. Thus, no enforcement proceeding has been – nor could one have been – commenced, so that the limited type of waiver that allowed for the *C&L* litigation does not apply to the proceeding that is at issue here. While Plaintiff may argue that his employment agreement constitutes a waiver of the Tribe's immunity from enforcement of an arbitration award, he cannot claim a waiver as to this contract and tort lawsuit.

As explained extensively in Defendants' motion, waivers of immunity must be narrowly construed. Mot. Dis. at 5:18-6:6. They must be strictly limited to their terms. Mot. Dis. at 6:7-25. A waiver of immunity from lawsuits to enforce arbitration awards is limited to the enforcement of arbitration awards. The existence of such a waiver in Plaintiff's agreement does not pave the way for other lawsuits (i.e., non-enforcement lawsuits), because the Tribe never waived its immunity from those types of suits.

The Opposition, at 7:15, cites without any discussion *Smith v. Hopland Band of Pomo Indians,* 95 Cal.App.4th 1 (1st Dist. 2002), to support the claim that the arbitration clause in Plaintiff's Employment Agreement waives the Tribe's immunity from an action to enforce that agreement. In *Smith*, a California appellate court reversed an order dismissing a breach of contract claim arising from a tribal contract containing an arbitration clause. But "the *Smith* court had no occasion to consider whether the scope of the waiver was limited because the parties did not timely raise the issue." *Big Valley Band of Pomo Indians v. Superior Court*, 133 Cal.App.4th 1185, 1195 (1st Dist. 2005). Indeed, in a footnote, the *Smith* court noted: "We ...

8

1  express no opinion on the question whether the scope of the contractual waiver of immunity is
2  limited to a suit to enforce an arbitration award, or a motion to compel arbitration, because the
3  issue was not raised until respondents' petition for rehearing. [Citations.]"  *Smith*, 95 Cal.App.4th
4  at 12 n.11.  It is fundamental that an opinion is to be "'understood in the light of the facts and the
5  issue then before the court, and an opinion is not authority for a proposition not therein
6  considered.'"  *Hartwell Corp. v. Superior Court*, 27 Cal.4th 256, 281 (2002), quoting *Ginns v.*
7  *Savage,* 61 Cal.2d 520, 524 n.2 (1964).  Thus *Smith* cannot be relied upon for a proposition the
8  court expressly declined to reach.  *See Big Valley*, 133 Cal.App.4th at 1195.

### 3. The Severance Agreement Does Not Waive The Tribe's Immunity From This Lawsuit

11    The Opposition points out that Plaintiff's severance agreement contains a clause
12  providing that California law governs the agreement, Opp'n at 8:16-18, but this provision is
13  irrelevant in determining whether that agreement contains an immunity waiver.  The fact that the
14  Tribe agreed to have California law govern the severance agreement does not mean that in so
15  doing the Tribe waived its immunity in that agreement.  On the contrary, the Tribe upheld its
16  immunity because under California law tribes and tribal entities are immune from suit.  *See, e.g.*,
17  *Long v. Chemehuevi Indian Reservation*, 115 Cal.App.3d 853 (1981) (tribally-operated for-profit
18  marina was immune from suit); *Trudgeon v. Fantasy Springs Casino*, 71 Cal.App.4th 632 (1999)
19  (tribal corporation operating tribe's casino was immune from suit); *Redding Rancheria v.*
20  *Superior Court*, 88 Cal.App.4th 384, 388-89 (2001) (tribal casino was immune from suit);
21  *Lamere v. Superior Court*, 131 Cal.App.4th 1059, 1065 (2005) (members of tribe's enrollment
22  committee were immune from suit).  *See also id*. ("'[T]here is notably absent any conferral of
23  jurisdiction over the tribes themselves . . . .'") (*quoting Bryan v. Itasa County*, 426 U.S. 373, 389
24  (1976)).  And California law also requires a clear, express and unequivocal waiver before
25  sovereign immunity will be deemed waived.  *See Lawrence v. Barona Valley Ranch Resort and*
26  *Casino,* 153 Cal.App.4th 1364, 1368 (4th Dist. 2007); *Trudgeon,* 71 Cal.App.4th at 635-36.  No
27  such waiver is present in the severance agreement.
28

### 4. Plaintiff Concedes That The Tribe's Immunity Was Not Waived Pursuant To The Tribe's Tort Claims Procedures

The Opposition concedes that Plaintiff's claims could not have been filed under the Tribe's Tort Claims Procedures – and thus that immunity was not waived under the Procedures – and questions why Defendants discuss these Procedures in their motion. Opp'n at 9:6-17. Defendants' motion discussed the Procedures because the Complaint cited Compact section 10.2(d) for the proposition that the Tribe had waived its immunity to this lawsuit. The Complaint did not cite *C&L Enterprises*, or the arbitration clause found in Plaintiff's employment agreement, as possible sources of an immunity waiver.[6] Defendants' motion attached and discussed the Tort Claims Procedures in order to explain that any waiver that could be found in 10.2(d) has nothing to do with the present Complaint. Plaintiff now concedes this point. Opp'n at 9:6-18.

In sum, Plaintiff fails to point to any waiver of immunity that would permit this lawsuit and confer jurisdiction on this Court.

### D. Plaintiff's New Request For A Determination Of The Enforceability Of The Arbitration Provision Should Be Denied

The Opposition raises a new request for relief that was not raised in the Complaint. Plaintiff now asks this Court to "remand [the case] to state court for a determination of the enforceability of the arbitration provision" in the Employment Agreement. Opp'n at 8:24-25. Plaintiff should not be allowed to request new relief in his opposition to the motion to dismiss. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F.Supp. 832, 836 (S.D.N.Y.1988) (a claim to relief may not be amended by briefs in opposition to a motion to dismiss).

More importantly, Plaintiff's request is at odds with the lawsuit he filed. Plaintiff's arguments here rely on the existence of a valid arbitration clause. *See* Opp'n at 8:1-12. If Plaintiff recognized the existence of a valid arbitration clause and wanted to arbitrate his dispute with the Tribe, he should have done so at the outset (as he obligated himself to do under his

---

[6] Those arguments are raised only in the Opposition, perhaps because Plaintiff realized that his original argument – that immunity was waived in Compact section 10.2(d) (and in the Tort Claims Procedures referenced in that section) – was baseless.

10

SPECIALLY-APPEARING DEFENDANTS' REPLY                                                          Case No. 3:08-CV-01924-VRW
TO OPPOSITION TO MOTION TO DISMISS

1 employment agreement) rather than filing this lawsuit. Asking a court to determine the clause's
2 validity now runs counter to the lawsuit Plaintiff filed.

3     On the other hand, Plaintiff maintains that the arbitration provision is invalid. Opp'n at
4 8:26-27. If the arbitration provision is invalid, Plaintiff's arguments in reliance on that provision,
5 including any purported limited immunity waiver permitting arbitration, are likewise invalid.
6 Thus, Plaintiff effectively negates the validity of his own arguments.

7     Regardless of Plaintiff's flip-flopping concerning the arbitration clause's validity, this
8 Court (like the state court) lacks jurisdiction to determine the clause's validity. The Tribe is
9 immune from any lawsuit unless it waived its immunity against such suit. *See* Mot. Dis. at 3:18-
10 8:14. Plaintiff fails to point to any immunity waiver that would grant a court jurisdiction to
11 determine the validity of any clause in the employment agreement. As explained above, that
12 agreement contains at most a very limited waiver of immunity in connection with the
13 enforcement of arbitration awards.[7] There is no immunity waiver for suits declaring the validity
14 or lack thereof of any of the agreement's provisions. Thus, Plaintiff's novel request should be
15 denied and the Complaint dismissed.

16     **E.    This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b)(3) For Improper Venue**
17

18     Plaintiff has neglected to file his claim in the venue that is mandated by the very
19 documents he cites as supporting the present action. Those documents – the Tribe's Compact
20 (relied upon at Complaint at ¶ 12) and the Employment Agreement (relied upon at Opp'n at 8:1-
21 12) – require that complaints be filed in another venue, not in this court.[8] For this reason as well,
22 the Tribe respectfully requests that this Court grant the Motion to Dismiss.

---

[7] Defendants maintain, and reserve the right to argue, that the arbitration clause in the Employment Agreement does not contain any waiver of immunity. And in any event, the Severance Agreement waives Plaintiff's remedies and claims under the Employment Agreement. For the limited purpose of argument here, however, Defendants are willing to assume that the clause may contain a waiver of immunity from suits against enforcement of arbitration awards.

[8] Claims filed under Compact § 10.2(d) must be filed in a Tribal forum, *see* Mot. Dis. at 10:22-11:14, and claims filed pursuant to the Employment Agreement must be filed with an arbitrator.

11

### F.     This Case Should Be Dismissed Under Fed. R. Civ. P. 12(b) For Failure To Exhaust Tribal Remedies

This case should also be dismissed under Fed. R. Civ. P. 12(b) because Plaintiff failed to exhaust the Tribal remedies provided in the very documents – the Compact and the Employment Agreement – that he alleges pave the way for this lawsuit.[9]  Complaint at ¶12; Opp'n at 8:1-12.

As explained in Defendants' motion, it is well established that a plaintiff must exhaust available remedies in tribal dispute resolution forums before seeking relief in federal court.  Mot. Dis. at 14.  Both the Supreme Court and Ninth Circuit have made it clear that the exhaustion of tribal remedies is mandatory.  *Id.*  Ninth Circuit authority also holds that the exhaustion requirement "functions as a prerequisite to a federal court's exercise of its jurisdiction," *Burlington Northern R.R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir. 1991) (*citing National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985)), and that it is proper to dismiss a plaintiff's complaint solely on the basis of the failure to exhaust tribal remedies.  *See Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989); *Burlington Northern*, 940 F.2d at 1244-45.

Assuming *arguendo* that the Tribe had waived its sovereign immunity with respect to Mr. Runyan's claims under Compact § 10.2(d) or the Employment Agreement (which Defendants deny), his exclusive remedy for pursuing such claims would be under the Tribe's Tort Claims Procedures and the Tribal forum established thereunder or the arbitral forum established in the Employment Agreement, as appropriate.  But because he failed to pursue – much less exhaust – these Tribal remedies, the tribal exhaustion doctrine precludes this Court from exercising jurisdiction over his claims.  *See Nat'l Farmers*, 471 U.S. at 857; *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987); *Burlington Northern*, 940 F.2d at 1245; *Stock West*, 873 F.2d at 1228.  Thus the present action should also be dismissed for failure to exhaust Tribal remedies.

---

[9] As explained in the motion, a failure to exhaust non-judicial remedies is subject to a Rule 12(b) motion to dismiss.  In deciding a motion to dismiss for failure to exhaust non-judicial remedies, a court may look beyond the pleadings and decide disputed issues of fact.  *See* Mot. Dis. at 14:7-12.

12

### G. Plaintiff's Third And Fourth Causes Of Action Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)

#### 1. The Opposition Fails To Assert Any Basis For Defendant Hopkins' Individual Liability

Defendant Hopkins is Chairman of the Dry Creek Rancheria Band of Pomo Indians and is immune from this lawsuit. *See* Mot. Dis. at 8:1-14 (explaining that tribal immunity from suit extends to tribal government officials.) Thus, even if the arbitration clause in Plaintiff's employment agreement waived immunity to allow arbitration between Plaintiff and the Tribe, it would not permit any claims against Chairman Hopkins. Moreover, even if the Tribe *had* waived Chairman Hopkins' immunity, there is no basis for Defendant Hopkins' individual liability.

Citing *Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 355–356 (2005), Plaintiff argues that the Third Cause of Action alleges a viable claim against Defendant Hopkins individually because "owners or managers of a corporation may be liable in tort for intentionally interfering with the corporation's contracts unless they can prove their conduct was privileged or justified." Opp'n at 10:1-4. Plaintiff does not explain why a principle applicable to "owners or managers" would apply to Hopkins, who, as Plaintiff concedes, was neither an owner nor a manager of River Rock Casino at all relevant times, but rather was an agent thereof. Indeed, Plaintiff himself asserts that Hopkins was an "agent, employee and/or working in concert with his co-defendants and was acting within the course and scope of such agency, employment and/or concerted activity" at all material times. Complaint at ¶ 5. The principle that Plaintiff cites is thus inapplicable to Hopkins and the *Woods* case that implements it is distinguishable.

Hopkins can have no individual liability because he falls squarely within the line of cases, cited in the motion at 16:19-17:21, that apply to corporate agents. Those cases hold that a corporate agent cannot be sued by a party to a contract for interfering with his corporation's contract with that party. Accordingly, the motion to dismiss the Third Cause of Action should be granted in its entirety without leave to amend.

13

### 2. The Opposition Fails to Assert Any Grounds To Support The "Intentional Infliction" Claim

Plaintiff argues that the Fourth Cause of Action for "intentional infliction of emotional distress" is not preempted by the exclusive remedy provisions of workers' compensation because workers' compensation does not bar a claim for wrongful termination in violation of "public policy." This argument misstates applicable legal principles. It is well-settled that a *separate and independent* claim for "intentional infliction of emotional distress," as is alleged in the Complaint at ¶¶ 61 and 62, is barred by the exclusive remedies of workers' compensation.

In the seminal case *Shoemaker v. Myers,* 52 Cal.3d 1 (1990), the California Supreme Court-applied the exclusivity of the workers' compensation remedy to a separately-alleged claim for "intentional infliction of emotional distress" arising from termination from employment. The plaintiff in *Shoemaker,* like Runyan, incorporated all allegations previously stated in his complaint and added allegations that the conduct was "intentional, malicious and outrageous." *Shoemaker,* 52 Cal.3d at 25. The Court found as a matter of law that the "intentional infliction" claim arising from a termination of employment was barred by the exclusivity provisions of workers' compensation. *Id.* at 25. The Court held that "the kinds of conduct at issue (e.g., discipline or criticism) are a normal part of the employment relationship. Even if such conduct may be characterized as intentional, unfair or outrageous, it is nevertheless covered by the workers' compensation exclusivity provisions." *Id.*

*Shoemaker* remanded the issue of whether the separately alleged "public policy" *Tameny* claim could survive workers' compensation preemption. On remand, the Court of Appeal in *Shoemaker,* 2 Cal.App.4th 1407 (1992), in the opinion cited by Plaintiff, determined that a *Tameny*-type "public policy" claim could survive workers' compensation preemption. The court emphasized that the allegations required a "substantial public interest" in order to take the claim "outside the compensation bargain." 2 Cal.App.4th at 1418. Significantly, however, the survival of the public policy claim did not alter the Supreme Court's prior ruling that the separate "intentional infliction" claim was barred by workers' compensation.

The Opposition confuses the "intentional infliction" issue with the "public policy" issue,

14

1  citing *Shoemaker's* treatment of the public policy issue as though that treatment applies equally
2  to the intentional infliction issue. It clearly does not. Plaintiff's argument is thus irrelevant and,
3  accordingly, the motion to dismiss the Fourth Cause of Action should be granted without leave to
4  amend.[10]

## III.   CONCLUSION

For all of the above reasons, the Tribal Governmental Defendants respectfully request that the Court dismiss this lawsuit with prejudice.

Dated: July 31, 2008                                HOLLAND & KNIGHT LLP

                                                    By:  _____/s/_____
                                                              Zehava Zevit

                                                    Attorneys for Specially Appearing Defendants,
                                                    RIVER ROCK ENTERTAINMENT AUTHORITY
                                                    RIVER ROCK CASINO
                                                    HARVEY HOPKINS

# 5499751_v6

---

[10] Furthermore, Plaintiff's claim for alleged "violation of public policy" is asserted in the Second Cause of Action wherein he also seeks damages for, among other alleged injuries, "extreme and severe mental anguish and emotional distress." Complaint at ¶ 51. Accordingly, the Fourth Cause of Action for "emotional distress" damages is superfluous and, on this ground alone, the motion should be granted.

15