IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORMAN RUNYAN,  　　　　　　　　　　　　No   C 08-1924 VRW

　　　　Plaintiff,

　　　　　　　　　　　　　　　　　　　　　　ORDER

　　　　v

RIVER ROCK ENTERTAINMENT
AUTHORITY, et al,

　　　　Defendants.
_____/

　　　　Defendants filed a notice of removal in this case on April 11, 2008.  Doc #1.  On April 15, 2008, the court ordered defendants to show cause in writing why this case should not be remanded for lack of subject matter jurisdiction.  Doc #4. Defendants filed their response to the order to show cause on April 29, 2008, Doc #11, and plaintiff filed a response on May 7, 2008.  Doc #12.  Having considered the parties' arguments, and for the

reasons discussed below, the court REMANDS this case to the Sonoma County superior court.

I

On March 7, 2008, plaintiff Norman Runyan filed a complaint for damages in the Sonoma County superior court against River Rock Entertainment Authority ("RREA"), River Rock Casino, Harvey Hopkins and fifty Doe defendants. Doc #1-3 at 9. The complaint alleges four state-law causes of action: breach of contract, wrongful termination in violation of public policy, intentional interference with contract and intentional infliction of emotional distress. Doc #1-3 at 9. The complaint does not allege any federal causes of action.

According to the complaint, Runyan served as chief operations officer of defendants RREA and RRC beginning in 2002. Doc #1-3 at 9 ¶2. From November 8, 2005 through April 13, 2006, Runyan was the acting chief executive officer and general manager of RREA. Doc #1-3 at 11 ¶9. RREA is a government instrumentality of the Dry Creek Rancheria Band of Pomo Indians of California ("the Tribe"), a federally recognized Indian tribe. Doc #1-3 at 11 ¶13. Pursuant to the Indian Gaming Regulatory Act of 1988 ("IGRA"), 25 USC § 2701 et seq, and the compact between the Tribe and the State of California, RREA owns and operates the River Rock Casino, a Class III gaming facility located on the Tribe's reservation. Doc #1-3 at 11-12 ¶¶11, 14. Defendant Harvey Hopkins is the Tribe's Chairman and a member of the RREA Board of Directors. Doc #1-3 at 10 ¶3. Hopkins served as RREA's Chairperson from November 20, 2004 to July 14, 2006. Doc #1-3 at 10 ¶3.

According to the complaint, defendants forced Runyan to resign his employment under threat of immediate termination on November 14, 2007. Doc #1-3 at 16 ¶34. According to Runyan, in 2003, RREA sold notes in a private placement pursuant to Regulation 144A of the Securities Act of 1933. Doc #1-3 at 12 ¶16. The notes were issued under an indenture that prohibited certain self-dealing transactions. See Doc #1-3 at 12 ¶¶16-19. According to the complaint, Hopkins engaged in systematic violations of the indenture and Exchange Act Rules 13a-15(e), 17 CFR § 240.13a-15(e), and 15d-15(e), 17 CFR § 240.15d-15(e), "by controlling the activities, developmental and otherwise, of RREA to his own financial and pecuniary benefit, and contrary to the benefit of RREA, the Tribe, and the members, agents, officers and employees of RREA." Doc #1-3 at 14 ¶21. Runyan alleges that he repeatedly opposed Hopkins's improper actions through communications with the RREA Board and that he demanded an independent audit of RREA's activities. Doc #1-3 at 16 ¶¶30-32. According to Runyan, defendants retaliated against him by forcing his resignation on "false and pretextual grounds." Doc #1-3 at 16 ¶33. The stated grounds for the decision by defendants to force Runyan to resign was Runyan's "prospective petition for protection under Chapter 13, Title 11, United States Code." Doc #1-3 at 18 ¶46.

Although the complaint does not allege any federal causes of action, one of Runyan's causes of action, "wrongful, constructive termination in violation of public policy," Doc #1-3 at 17, is based on Runyan's allegation that the stated reason for his constructive termination was his "prospective petition" for bankruptcy. Doc #1-3 at 18 ¶46. Runyan alleges that terminating

3

him for this reason was a violation of public policy established by 11 USC § 525, which prohibits discrimination by employers against individuals who are or have been bankruptcy debtors. Doc #1-3 at 18 ¶¶47-49. In addition, Runyan alleges that his termination was a "direct result of his opposition to the continuous and systematic violations by Hopkins of the terms and conditions of Securities and Exchange Act, Rule 13a-15(e), 15d-15(e), which opposition constituted protected activity under applicable law." Doc #1-3 at 18 ¶50. Runyan's complaint does not allege any public policies derived from state law as bases for his claim, but in his response to the order to show cause, Runyan argues that to prove his claim, he "need only prove that a 'nexus' exists between the termination and the employee's protected activity relating to one or more the [sic] public policies referenced in the Complaint, but not necessarily limited to those public policies * * *." Doc #12 at 5.

On April 11, 2008, defendants removed the state court action to this court. Doc #1. In their notice of removal, defendants stated the following grounds for federal jurisdiction:

> 6. This action is a civil action of which this Court has original jurisdiction under 28 USC § 1331, and is one which may be removed to this Court by defendants pursuant to the provisions of 28 USC § 1441(b) because plaintiff's Complaint arises under federal law in that it expressly and necessarily turns on interpretations of fundamental questions of federal law, including the Tribal-State Gaming Compact between the Dry Creek Rancheria Band of Pomo Indians and the State of California * * *, the Securities Exchange Act of 1934, 15 USC § 78a et seq, and the Bankruptcy Act, 11 USC § 525.
> 7. This case further arises under federal law because the relief sought is predicated on subject matters committed exclusively to federal jurisdiction, namely an alleged violation of the Securities Exchange Act, which is exclusively committed to federal jurisdiction under 15 USC § 78 aa and/or Rule 10b-5 thereunder, and an interpretation of the Compact, which is exclusively committed to federal jurisdiction under the Indian Gaming

4

1     Regulatory Act, 25 USC § 2710 et seq.
2 Doc #1 at 2-3.

## II

"Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 USC § 1441(b). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." <u>Prize Frize Inc v Matrix Inc</u>, 167 F3d 1261, 1265 (9th Cir 1999). There is a strong presumption against removal, <u>Gaus v Miles, Inc</u>, 980 F2d 564, 566 (9th Cir 1992), and if there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." <u>Duncan v Stuetzle</u>, 76 F3d 1480, 1485 (9th Cir 1996). "Subject matter jurisdiction cannot be established by consent of the parties, and a lack of subject matter jurisdiction is a non-waivable defect." <u>Gibson v Chrysler Corp</u>, 261 F3d 927, 948 (9th Cir 2001). "Thus, the court can, in fact must, dismiss a case when it determines that it lacks subject matter jurisdiction, whether or not a party has a filed a motion." <u>Page v City of Southfield</u>, 45 F3d 128, 133 (6th Cir 1995).

"The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Sacramento Metropolitan Air Quality Management Dist v</u>

United States, 215 F3d 1005, 1014 (9th Cir 2000).  "A defense is not part of a plaintiff's pleaded statement of his or her own claim."  Lockyer v Dynegy, Inc, 375 F3d 831, 838 (9th Cir 2004).  Accordingly, "a case may not be removed on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue."  Caterpillar, Inc v Williams, 482 US 386, 392 (1987).  Three related doctrines – complete preemption, the artful pleading doctrine and the substantial federal question doctrine – may allow federal question jurisdiction over a cause of action that is nominally based on state law.

"A corollary to the well-pleaded complaint rule – one that gives content to 'well-pleaded' – is the doctrine of complete preemption."  In re National Security Agency Telecommunications Records Litig, 483 F Supp 2d 934, 928 (ND Cal 2007)(Walker, J).  Under the complete preemption doctrine, when the preemptive force of a statute is so strong that it "completely preempt[s]" an area of state law, the federal law displaces a plaintiff's state-law claim and the state claim is considered, from its inception, a federal claim that arises under federal law.  Valles v Ivy Hill Corp, 410 F3d 1071, 1075 (9th Cir 2005).  Put simply, the test for complete preemption "is whether Congress clearly manifested an intent to convert state law claims into federal-question claims."  Ansley v Ameriquest Mortgage Co, 340 F3d 858, 862 (9th Cir 2003)(citing Wayne v DHL Worldwide Express, 294 F3d 1179, 1184 (9th Cir 2002).  Complete preemption arises only in "extraordinary" situations.  DHL Worldwide Express, 294 F3d at 1184.

Another corollary to the well-pleaded complaint rule is the artful pleading doctrine. It "provides that although the plaintiff is the master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." Lippitt v Raymond James Financial Services, Inc, 340 F3d 1033, 1041 (9th Cir 2003).

Finally, even if the complete preemption and artful pleading doctrines do not apply, federal jurisdiction "may still lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims[.]'" Rains v Criterion Systems, Inc, 80 F3d 339, 345 (9th Cir 1996)(quoting Franchise Tax Bd of California v Construction Laborers Vacation Trust for Southern California, 463 US 1, 13 (1983).

In this case, defendants predicate federal jurisdiction on the complete preemption and substantial federal question doctrines. Defendants do not argue that jurisdiction is proper under the artful pleading doctrine.

### III

Defendants make three main arguments in favor of federal jurisdiction under these two doctrines. First, defendants argue that Runyan's wrongful termination in violation of public policy claim is completely preempted by federal law. Doc #11 at 10-14. Next, defendants argue that the wrongful termination in violation of public policy claim necessarily depends on the Bankruptcy Code and the Exchange Act. Doc #11 at 14-16. Finally, defendants argue

7

that Runyan's complaint necessarily implicates the tribal-state compact, the IGRA and federal common law. Doc #11 at 17-19. The court addresses each argument in turn.

### A

Defendants' contend that the IGRA, 25 USC § 2701 et seq, and regulations issued thereunder completely preempt Runyan's state-law claims. Doc #11 at 10-15. As discussed above, complete preemption arises only in "extraordinary circumstances," DHL Worldwide Express, 294 F3d at 1184, in which Congress has "clearly manifested an intent to convert state law claims into federal-question claims." Ansley, 340 F3d at 862. If a federal statute lacks express preemption language, as does the IGRA, "the analysis focuses upon factors such as the 'structure and purpose' of the relevant statutes; whether they contain 'complex, detailed, and comprehensive provisions' that 'create a whole system under federal control' and whether there exist 'extensive federal remedies.'" In re National Security Agency, 483 F Supp 2d at 939 (citing In re Miles, 430 F3d 1083, 1088 (9th Cir 2005)). And even if federal law completely preempts some areas of state law, "[o]nly those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions * * *." Gaming Corp of America v Dorsey & Whitney, 88 F3d 536, 543 (8th Cir 1996)(citing Metropolitan Life Ins Co v Taylor, 481 US 58, 64-66 (1987)).

Defendants cite no authority holding that IGRA completely preempts generally applicable state employment laws in federally regulated Indian casinos. Indeed, it appears that no court has so

8

held. Defendants instead rely on an Eighth Circuit case holding that the IGRA completely preempts state regulation of Indian gaming. See Doc #11 at 12; <u>Gaming Corp</u>, 88 F3d 536 (8th Cir 1996). In <u>Gaming Corp</u>, two casino management companies brought state-law claims against the attorneys of an Indian tribe after the tribe denied their application for a permanent gaming license and terminated their management contract. <u>Gaming Corp</u>, 88 F3d at 540. After examining the IGRA, which establishes guidelines for licensing of gaming activities and management contracts, see generally 25 USC §§2710, 2711, and the IGRA's legislative history, the Eighth Circuit held that "[a]ny claim which would directly affect or interfere with a tribe's ability to conduct its own licensing process should fall within the scope of complete preemption." <u>Gaming Corp</u>, 88 F3d at 549. In reaching this decision, the Eighth Circuit relied on a Senate committee report stating that:

> [IGRA] is intended to expressly preempt the field in the governance of gambling activities on Indian lands. Consequently, Federal courts should not balance competing Federal, State, and tribal interests to determine the extent to which various gaming activities are allowed.

S Rep No 446, 100th Cong, 2d Sess 6 (1988), reprinted in 1988 USCCAN 3071, 3076.

But the Ninth Circuit has not held that the IGRA completely preempts state law and it is not clear that the Ninth Circuit would do so; in <u>Cabazon Band of Mission Indians v Wilson</u>, 37 F3d 430 (9th Cir 1994), the court examined the Senate Report quoted above, see <u>Cabazon</u>, 37 F3d at 434, and analyzed the question whether IGRA preempts state taxation of offtrack betting on Indian reservations by balancing federal, tribal and state interests.

1 <u>Cabazon</u>, 37 F3d at 433-35.  Although the court did not address the
2 question, such balancing would not have been necessary if the court
3 had concluded that IGRA completely preempted state law.  See also
4 <u>Confederated Tribes of Siletz Indians of Oregon v Oregon</u>, 143 F3d
5 481, 486 n7 (9th Cir 1998)(quoting the same passage of the Senate
6 Report recited above and rejecting tribe's argument that state
7 public records law is preempted by IGRA because "the application of
8 Oregon law here has no effect on the determination 'of which gaming
9 activities are allowed.'").

10        But even if the Ninth Circuit were to adopt <u>Gaming Corp</u>'s
11 holding that "[a]ny claim which would directly affect or interfere
12 with a tribe's ability to conduct its own licensing process should
13 fall within the scope of complete preemption," <u>Gaming Corp</u>, 88 F3d
14 at 549, it is far from clear that the state law at issue here –
15 generally applicable employment and contract claims – fall within
16 the scope of the complete preemption doctrine.  The claims in
17 <u>Gaming Corp</u> stemmed from the failure of the tribe to grant
18 permanent gaming licenses to casino management companies; they
19 clearly affected the tribe's ability to conduct its own licensing
20 process.  That is not the case with Runyan's claims.  Defendants
21 cite a portion of IGRA that requires tribes to set standards for
22 employment whereby individuals whose "prior activities, criminal
23 record, if any, or reputation, habits and associations pose a
24 threat to the public interest or to the effective regulation of
25 gambling * * *."  25 USC § 2710(b)(2)(F)(ii)(II); see also 25 USC §
26 2710(d)(2)(A) (making quoted provision applicable to Class III
27 gaming).  But this is hardly a "complex, detailed, and
28 comprehensive provision[]," <u>In re Miles</u>, 430 F3d at 1088.  While

10

the IGRA requires the creation of standards for employment, it does not create any remedies for resolving disputes.  Nothing about IGRA suggests that Congress intended IGRA completely to preempt all state regulation of employment relationships in Indian gaming facilities.

Accordingly, the court declines to hold that IGRA completely preempts Runyan's state law claims.  To the extent that Runyan's prosecution of his claims would be incompatible or would interfere with specific federal and tribal interests, defendants may be able to assert a preemption defense, see New Mexico v Mescalero Apache Tribe, 462 US 324, 334 (1983), but the preemptive force of IGRA is not so strong as to convert Runyan's claims themselves into federal questions.

B

Defendant next contends that federal subject matter jurisdiction exists because Runyan's wrongful termination in violation of public policy claim necessarily depends on the two sources of public policy stated in Runyan's complaint: a federal bankruptcy provision and two rules promulgated under the Exchange Act.  Doc #11 at 14-16.  This argument is based on the proposition that when a complaint does not allege any federal causes of action, federal jurisdiction "may still lie if 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims[.]'"  Rains, 80 F3d at 345 (quoting Franchise Tax Bd, 463 US at 13).

Runyan's wrongful discharge in violation of public policy claim is based on California law providing that "while an at-will

11

employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy." Gantt v Sentry Insurance, 1 Cal 4th 1083, 1094 (1992), overruled on other grounds by Green v Ralee Engineering Co, 19 Cal 4th 66, 80 (1998).

The Ninth Circuit has addressed a case in which a defendant removed a state action to federal court based on California's wrongful termination in violation of public policy cause of action.  In Rains, the plaintiff's complaint listed Title VII as well as several California constitutional and statutory provisions to establish the basis for a public policy against religious discrimination in employment.  Rains, 80 F3d at 343.  The court held that the case should have been remanded to the state court:

> The invocation of Title VII as a basis for establishing an element of a state law cause of action does not confer federal question jurisdiction when the plaintiff also invokes a state constitutional provision or a state statute that can and does serve the same purpose. * * * When a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim.

Rains, 80 F3d at 345-46.

Grasping onto this language, defendants argue that because Runyan's complaint cites only federal law as a source of the public policies that were allegedly violated, federal law is a necessary element of the claim.  Doc #11 at 16.  Runyan counters that the public policies violated by his termination are not necessarily grounded solely in the cited federal laws.  Doc #12 at

**12**

5.  Runyan seems to be implying that the public policies he alleges defendants violated – apparently, policies against retaliation for disclosure of securities violations and against discrimination against bankruptcy debtors – could be based on as-yet unspecified state law and therefore that federal law is not a necessary element of his claim.  The court need not resolve this particular dispute, however, because the federal questions raised by Runyan's reference to bankruptcy law and the Exchange Act rules are not substantial, as they must be if they are to confer federal subject matter jurisdiction.

In <u>Merrell Dow Pharmaceuticals v Thompson</u>, 478 US 804 (1986), the Supreme Court considered whether a state court negligence lawsuit against a drug manufacturer presented a federal question merely because it was based in part on the theory that the manufacturer's alleged violation of federal labeling standards constituted negligence.  The Court determined that federal question jurisdiction did not lie:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

<u>Merrell Dow</u>, 478 US at 814.  The implication of <u>Merrell Dow</u> appears to be that if the federal public policies alleged as an element of Runyan's claim do not have federal remedies for their violation, then they probably do not confer federal question jurisdiction.

Runyan cites 11 USC § 525 as grounds for his argument that defendants' stated grounds for terminating him, his "prospective petition" for bankruptcy, Doc #1-3 at ¶46, were a

13

violation of public policy. Runyan's argument, apparently, is that 11 USC § 525, which outlaws discrimination by employers against "an individual who is or has been a debtor under this title," 11 USC § 525(a),(b), establishes a fundamental public policy against discrimination against bankruptcy debtors. While the parties do not dispute that 11 USC § 525 creates a private right of action for its violation, the Ninth Circuit has held that the legislation provides no remedy for individuals who are merely prospective bankruptcy debtors. In re Majewski, 310 F3d 653, 656 (9th Cir 2002). Runyan does not allege that the stated cause for his termination was that he had filed for bankruptcy, but rather his status as a prospective filer. While Runyan is free to argue in state court that termination due to his status as a prospective filer is nonetheless a violation of public policy, there being no federal remedy for such a "violation," Merrell Dow suggests that Runyan's reliance on bankruptcy law does not raise a substantial federal question.

  The other federal laws cited by Runyan in support of his wrongful termination in violation of public policy claim are Exchange Act Rules 13a-15(e), 17 CFR § 240.13a-15(e), and 15d-15(e), 17 CFR § 240.15d-15(e), which relate to disclosure controls and procedures applicable to securities issuers such as RREA. Runyan apparently relies on these rules for the proposition that by terminating him for disclosing to the RREA Board his concerns about Hopkins's improper activities and Hopkins's nondisclosure of those activities, defendants violated public policy favoring disclosure. Defendants concede that the Exchange Act rules cited by Runyan do not give rise to a private federal cause of action. Doc #11 at 22.

14

Accordingly, under the *Merrell Dow* rule discussed above, it appears that Runyan's citation to Exchange Act rules do not confer federal question jurisdiction on his claim.

Defendants point out that the Supreme Court has expanded on and softened its holding in *Merrell Dow*:

> *Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires."

*Grable & Sons Metal Prods v Darue Engineering & Manufacturing*, 545 US 308, 318 (2005).

Defendants' reliance on *Grable* is unavailing, however. In *Grable*, the Supreme Court upheld removal jurisdiction over a state-law quiet title action in which the basis of the claim was that the IRS's seizure of the property at issue had been invalid due to notice problems. *Grable*, 545 US at 310-11. The Court held that jurisdiction existed despite the absence of a federal quiet title cause of action in part because "it is the rare state quiet title action that involves contested issues of federal law. Consequently jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 US at 319 (internal citation omitted). But according to the Court, allowing federal question jurisdiction over cases like *Merrell Dow* would be problematic:

> For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.
> One only needed to consider the treatment of federal violations generally in garden variety state tort law. "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort

15

> proceedings." Restatement (Third) of Torts § 14, Reporters' Note, Comment a, p 195 (Tent Draft No 1, Mar 28, 2001). A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.

Grable, 545 US at 318-19 (internal citation omitted).

Runyan's wrongful termination in violation of public policy claim is analogous to the negligence claim at issue in Merrell Dow. It is a state law claim based on federal standards of conduct. Even though Runyan likely could have cited state law as a basis for the alleged public policy violations, he did not. That circumstance should not and does not open the door to federal court. If the court held otherwise, any non-diverse plaintiff could bring a garden variety state-law employment dispute in federal court by simply alleging that the termination violated public policy as defined by one of any number of federal standards. The "potentially enormous shift of traditionally state cases into federal courts," Grable, 545 US at 319, that might ensue is exactly the result the Supreme Court suggests must be avoided. Accordingly, the court declines to assert subject matter jurisdiction on the basis of the federal laws implicated by Runyan's wrongful termination in violation of public policy claim.

Defendants also argue that federal subject matter jurisdiction is somehow present because Runyan has alleged violations of federal securities laws and the federal district courts have exclusive of violations of those laws. Doc #11 at 23; see 15 USC §78aa. This argument has no merit. Runyan does not seek redress for defendants' alleged violations of the securities

16

laws. He has alleged contract and tort causes of action based on state law; the fact that Runyan argues that his allegations of securities violations led to his termination does not transform his claims into federal securities claims.

### C

Finally, defendants argue that federal question jurisdiction exists because Runyan's complaint necessarily implicates the tribal-state compact, the IGRA and federal common law. Doc #11 at 17-19. Defendants fail to meet their burden of establishing that "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims[.]'" Rains, 80 F3d at 345 (9th Cir 1996)(quoting Franchise Tax Bd, 463 US at 13). Rather than explain exactly what substantial and disputed questions based on the compact, IGRA or federal common law are **necessary** elements of any of Runyan's claims, defendants merely argue that these sources of federal law must be engaged in order to adjudicate Runyan's dispute. See, e g, Doc #11 at 17. This is likely true, but defendants have not explained how these issues are necessary elements of Runyan's claims rather than grounds for defenses such as preemption and sovereign immunity. As discussed above, a case cannot be removed to federal court on the basis of a federal defense. Caterpillar, 482 US at 392. The court declines to assert jurisdiction simply because as yet ill-defined issues relating to the compact, IGRA and federal common law may arise in this litigation.

17

IV

For the reasons discussed above, the court **REMANDS** the case to the Sonoma County superior court. The clerk is **DIRECTED** to close the file and **TERMINATE** all pending motions.


**IT IS SO ORDERED.**

_____
**VAUGHN R WALKER**
United States District Chief Judge